UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                               :

NEW YORK CITY TRANSIT AUTHORITY,       :
                               :
               Plaintiff,        :
                               :        19-CV-5196 (JMF)
       -v-                      :
                               :       OPINION AND ORDER
EXPRESS SCRIPTS, INC.,              :
                               :
             Defendant.     :
                               :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      In 2015, Plaintiff New York City Transit Authority ("NYCTA") hired Defendant Express

Scripts, Inc., ("Express Scripts") to manage its prescription drug benefit plan for employees,

retirees, and their dependents.  During the three-year contract term, costs of compound drug

prescriptions under the plan rose significantly.  NYCTA terminated its contract with Express

Scripts in 2019 and, thereafter, filed this suit for breach of contract.  Express Scripts now moves,

pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment and,

pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), to exclude expert testimony.  For the reasons that

follow, the motion for summary judgment is GRANTED in part and DENIED in part and the

motion to exclude is DENIED in its entirety.

## BACKGROUND

      The relevant facts, taken from the Amended Complaint, ECF No. 42 ("Am. Compl."),

and admissible materials submitted in connection with the pending motions, are either

undisputed or described in the light most favorable to NYCTA.  *See Costello v. City of*

*Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

A.  The Contract

NYCTA, the public authority that operates the public subway and bus systems in New York City, provides prescription drug benefits for its employees, retirees, and their dependents. Am. Compl. ¶¶ 13, 18.  As of 2018, NYCTA covered approximately 155,000 members under its prescription drug benefit plan (the "Plan").  *Id.* ¶ 18.

In October 2015, NYCTA hired Express Scripts to serve as its pharmacy benefits manager ("PBM") for the Plan pursuant to a three-year contract (the "Contract") set to begin on April 1, 2016.  *Id.* ¶ 27.  Six provisions of the Contract bear particular relevance here.  The first, Section 4.1, establishes the standard of care that governs Express Scripts's "exercise of its duties under th[e] Agreement" — that is, the "degree of care and reasonable diligence that an experienced and prudent plan administrator of pharmacy benefits under a group health plan familiar with such matters would use acting in like circumstances, and consistent with industry standards."  ECF No. 116-1 ("Contract Part 1"), at 19.[1]

The second, Section 4.2, broadly lays out Express Scripts's claims processing duties.  *Id.* at 19-20.  It provides, in relevant part, as follows:

> Contractor shall process Claims incurred during the Term of this Agreement and provide customer service in a prudent and expert manner, including investigating and reviewing such Claims to determine what amount, if any, is due and payable according to the terms and conditions of the Plan documents and this Agreement.

*Id.*  Third, Section 4.14 of the Contract describes various hiring and auditing responsibilities that Express Scripts must undertake.  *Id.* at 25.  It requires Express Scripts to "exercise due diligence and care in its selection and retention of the staff and personnel . . . that administer the pharmacy

---

[1]    References to page numbers in all parts of the Contract are to the page numbers automatically generated by the Court's Electronic Case Filing ("ECF") system.

benefits management services described in this Agreement" and to "maintain a comprehensive internal audit program for pharmacy benefits management services."  *Id.*

Fourth, Section 4.16 tasks Express Scripts with maintaining and monitoring an adequate network of pharmacies throughout the Contract term.  *Id.* at 25-26.  It also provides that Express Scripts "shall be solely responsible for the selection, monitoring, and retention of its Network Pharmacies.  Contractor represents and warrants that . . . Contractor has exercised and shall exercise due diligence in the selection and retention of Network Pharmacies . . . ."  *Id.*  Fifth, Section 4.7 requires Express Scripts to pursue recovery of "Overpayment of any Claim made to a Participant," and makes Express Scripts "liable for all un-recovered Overpayments due to Contractor's breach of this Agreement (including, without limitation, Contractor's failure to meet the standard of care) . . . ."  *Id.* at 22.  "Overpayments" are defined, in turn, as "payments that exceed the amount payable under the Plan and this Agreement."  *Id.* at 14.

Finally, Section 4.35 lays out an optional "Fraud Detection and Prevention" service that Express Scripts will provide for a fee:

> Upon the AUTHORITY's request, the Contractor shall administer, for the fees set forth in Exhibit A, a fraud prevention and detection program, including system edits and other procedures to critically examine charges for all services that appear abusive, excessive, or fraudulent, and cooperate with the AUTHORITY's efforts to eliminate and prosecute health care fraud.  Without limiting any of its obligations hereunder, Contractor shall supply the AUTHORITY with real-time desktop claim reporting capability.

*Id.* at 37.  The parties describe this as Express Scripts's "Enhanced Fraud, Waste and Abuse" program.  *See* ECF No. 111 ("Def.'s SOF"), ¶ 15.[2]  Significantly, the parties agree that NYCTA

---

[2]     There is another provision, Section II, Article VII, in the "Scope of Work" section of the Contract that appears to impose "Fraud Detection and Prevention" duties on Express Scripts without payment of an additional fee.  *See* ECF No. 116-4 ("Contract Part 4"), at 46 ("The Contractor shall administer a fraud prevention and detection program and cooperate with the Authority's efforts to eliminate and prosecute health care fraud.  Contractor will notify the Authority of any fraudulent activity they are pursuing.").  Curiously, neither party cites to the

did *not* enroll in this program and did *not* pay the required fee.  *Id.* ¶ 14; ECF No. 131-4 ("Pl.'s

Resp. to SOF"), ¶ 15 ("NYCTA admits it did not enroll in the Enhanced Fraud, Waste, and

Abuse program.").[3]  But the parties do dispute what the program would have entailed.  *See*

Def.'s SOF ¶ 15; Pl.'s Resp. to SOF ¶ 15; COF ¶¶ 29-33.  They also dispute whether and to what

extent Express Scripts offers "basic fraud, waste and abuse protection to its clients at no cost."

COF ¶ 27; *cf.* SOF ¶ 15.[4]

## B.  NYCTA's Compound Drug Expenditures

When Express Scripts began serving as NYCTA's PBM, NYCTA's prescription drug

benefit plan covered prescriptions for all compound drugs with no cost limit.  SOF ¶ 5.[5]  A

compound prescription, as defined in the Contract, is a "customized medication derived from

---

provision, let alone develops any arguments based upon it.  Accordingly, the Court deems any such arguments to be forfeited.  *See, e.g.*, *Lima v. Hatsuhana of USA, Inc.*, No. 13-CV-3389 (JMF), 2014 WL 177412, at *1 (S.D.N.Y. Jan. 16, 2014).

[3]     ECF No. 131-4 contains NYCTA's Response to Express Scripts's Rule 56.1 Statement *and* NYCTA's Counterstatement of Material Facts.  To avoid confusion (because the paragraph numbers restart in the Counterstatement), citations to paragraphs from NYCTA's Response to Express Scripts's Rule 56.1 Statement are designated with "Pl.'s Resp. to SOF" and citations to paragraphs from NYCTA's Counterstatement are designated with "COF."

[4]     NYCTA claims this point is "undisputed," ECF No. 123 ("Pl.'s Opp'n"), at 9 n.2, but Express Scripts's Rule 56.1 Statement of Facts makes clear that is not the case, *see* SOF ¶ 15.

[5]     In its response to Express Scripts's Rule 56.1 Statement of Facts, NYCTA "[n]either admit[s] nor denie[s]" this point.  Pl.'s Resp. to SOF ¶ 5.  Instead, it states "[t]he Contract is the best evidence of its terms and speaks for itself."  *Id.*  But Local Rule 56.1 is clear: "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless *specifically controverted* by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  S.D.N.Y. Loc. Civ. R. 56.1(c) (emphasis added).  Thus, Paragraph 5 in Express Script's Rule 56.1 Statement of Facts, and all other paragraphs to which NYCTA responds by simply stating that the Contract "speaks for itself," are deemed to be admitted for the purposes of this motion.  *See, e.g.*, *Verlus v. Liberty Mut. Ins. Co.*, No. 14-CV-2493 (NSR), 2015 WL 7170484, at *1 n.1 (S.D.N.Y. Nov. 12, 2015).

two or more raw chemicals, powders and devices, . . . prepared by a pharmacist according to a doctor's specifications the Prescriber's order and the pharmacist's professional capabilities." Contract Part 1, at 11.  Such bespoke medications are often significantly more expensive than non-compound prescription drugs, making them attractive targets for fraudulent claims and kick-back schemes.  *See* Am. Compl. ¶ 4.

Express Scripts offers its clients a program called the Compound Management Solution, which is designed to control compound drug spending by prohibiting claims for compound drugs that contain certain high-cost ingredients.  *See* COF ¶ 92; ECF No. 110 ("Def.'s Mem.), at 4. NYCTA declined to implement the Compound Management Solution from the start of the contract term until January 20, 2019, *see* SOF ¶ 6, based on the belief that it could not implement programs that imposed a dollar limit or prior authorization requirements on compound drugs due to a 2004 arbitration decision, *see* Def.'s Mem. 6; ECF No. 123 ("Pl.'s Opp'n"), at 22; Pl.'s Resp. to SOF ¶ 21.

Shortly after Express Scripts took over as NYCTA's PBM, NYCTA's compound drug spending skyrocketed.  In the year prior to Express Scripts' Contract term, NYCTA spent approximately $6 million on compound drugs.  COF ¶ 6 (citing ECF No. 127-1, at 4).[6]  By contrast, in the first year under Express Scripts's management, NYCTA spent over $38 million on compound drugs and, in the second year, over $43 million.  COF ¶¶ 7-8.  NYCTA's total spending on compound drugs during the Contract term was approximately $93 million.  COF

---

[6]     In a footnote to its reply brief, Express Scripts contends that this document has "no foundation" and is therefore inadmissible.  ECF No. 134 ("Def.'s Reply"), 2 n.1.  An argument "relegated to a footnote," however, "does not suffice to raise [an] issue."  *Pirnik v. Fiat Chrysler Autos., N.V.*, 327 F.R.D. 38, 43 n.2 (S.D.N.Y. 2018) (citing cases); *see also, e.g., Medacist Sols. Grp., LLC v. CareFusion Sols., LLC*, No. 19-CV-1309 (JMF), 2021 WL 293568, at *5 (S.D.N.Y. Jan. 28, 2021).  Accordingly, the Court will consider the document for purposes of these motions.

¶ 13; ECF No. 125-1 ("Kozlowski Decl. Exh. A").  Notably, the bulk of that spending could be traced to a single Utah-based pharmacy, Fusion Specialty Pharmacy ("Fusion"), and two out-of-state physicians, Dr. Mitchell Cohen ("Cohen"), and Dr. Jaimy Honig ("Honig").  Collectively, these three providers accounted for approximately $41 million in compound claims — over forty percent of NYCTA's entire compound drug spend during the Contract term.  ECF No. 125-2 ("Kozlowski Decl. Exh. B"); *see* Pl.'s Opp'n 5.

Express Scripts provided periodic reports to NYCTA regarding compound drug spending under the Plan.  *See* COF ¶ 26.  But NYCTA disputes the extent to which these reports adequately alerted it to the three major outlier providers — Fusion, Honig, and Cohen — and the scale of the compound drug spending they were generating.  *See* Pl.'s Opp'n 3 (contending Express Scripts "fail[ed] to identify and inform the NYCTA of extreme outlier claims").  Express Scripts also conducted investigations of Fusion and Honig during the Contract term.  *See* ECF No. 122-25 ("Stockwell Dep."), 134-36, 281; Pl.'s Opp'n 6-7.  But, according to NYCTA, Express Scripts did not notify NYCTA about the investigations or share any of their findings.  *See* Pl.'s Opp'n 7; Am. Compl. ¶ 55.  Similarly, Express Scripts did not inform NYCTA of the fact that Cohen had pleaded guilty to federal fraud charges arising out of a workers' compensation kickback scheme, which NYCTA independently discovered later.  Am. Compl. ¶ 59.

NYCTA alleges it first became aware of the scale of the compound drug spending originating from out-of-state providers in early 2017.  *See* Pl.'s Opp'n 7-8.  On March 28, 2017, NYCTA's consultant, AON Consulting, Inc. ("AON"), notified NYCTA that Fusion was responsible for $20 million of compound spending, including $12 million over a nine-month period in 2016.  Am. Compl. ¶ 54.  In April 2017, NYCTA instructed Express Scripts to block

all prescription claims by Fusion.  *Id.* ¶ 55.  Likewise, after NYCTA learned in 2018 that Cohen had prescribed nearly $20 million in compound claims in 2016, NYCTA instructed Express Scripts to block all prescription claims authorized by Cohen.  *Id.* ¶¶ 59, 61.  Over the course of 2017 and 2018, NYCTA directed Express Scripts to block an additional thirty-five pharmacies and twenty-seven prescribers from fulfilling claims for NYCTA members.  *Id.* ¶ 62; SOF ¶ 17. NYCTA's compound drug spending decreased significantly after these measures were implemented — from over $43 million in the second year of the Contract to approximately $11 million in the third year. COF ¶ 80; Kozlowski Decl. Exh. A.

In January 2019, NYCTA decided to implement Express Scripts's Compound Management Solution, effective February 15, 2019, despite its earlier statements that a 2004 arbitration agreement prohibited it from doing so.  SOF ¶ 6.  Thereafter, NYCTA's compound spending declined even further; by March 2019, its monthly spending was down to approximately $39,000, as compared with approximately $700,000 in December 2018.  *Id.* ¶ 16. After implementing the Compound Management Solution, NYCTA directed Express Scripts to unblock the pharmacies and providers it had previously excluded.  SOF ¶ 18.

## C.  NYCTA's Non-Compound Drug Expenditures

Separate and apart from its compound drug spending, NYCTA contends that Express Scripts erroneously approved thousands of claims for non-FDA approved drugs that were outside the scope of NYCTA's Plan.  Am. Compl. ¶ 66.  According to an audit conducted by AON, these claims amounted to $3.2 million in 2017 alone.  *Id.* ¶ 68.

## D.  Termination of the Contract

Near the end of the Contract term, NYCTA initiated an emergency procurement procedure to search for a new PBM.  *Id.* ¶ 70.  NYCTA ultimately selected CVS Caremark to

replace Express Scripts, and the Contract between NYCTA and Express Scripts terminated on

May 31, 2019. *Id.* ¶¶ 27, 71.

## SUMMARY JUDGMENT MOTION

The Court begins with the motion for summary judgment. Express Scripts argues it is

entitled to summary judgment with respect to NYCTA's breach-of-contract claims based on

(1) NYCTA's compound drug expenditures; and (2) its non-compound drug expenditures. The

Court will summarize the relevant legal standards and then address each set of arguments in turn.

### A. Applicable Legal Standards

Summary judgment is appropriate where the admissible evidence and pleadings

demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir.

2012) (per curiam). A dispute over an issue of material fact qualifies as genuine "if the evidence

is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v.

Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35

(2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a

genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In

moving for summary judgment against a party who will bear the ultimate burden of proof at trial,

the movant's burden will be satisfied if he can point to an absence of evidence to support an

essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects

Found*., 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc.

v. Coca-Cola Co*., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light

most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*,

373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).  To defeat a motion for summary judgment, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible."  *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).

To make out a claim for breach of contract under New York law — which applies to the Contract, *see* ECF 116-2 ("Contract Part 2"), at 8 — a plaintiff must show "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages."  *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).  The plaintiff must also "identify what provisions of the contract were breached as a result of the acts at issue."  *Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*, No. 14-CV-8467 (JMF), 2016 WL 5416498, at *8 (S.D.N.Y. Sept. 28, 2016) (quoting *Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001)).  Significantly, a court may grant summary judgment "only when the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning."  *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008); *accord Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir. 2005) (explaining that "when the meaning of the contract is ambiguous and the intent of the parties becomes a matter of inquiry, a question of fact is presented which cannot be resolved on

a motion for summary judgment" (internal quotation marks omitted)).  A contract is ambiguous if its language is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement."  *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993) (internal quotation marks omitted).  Conversely, "a contract is unambiguous if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion."  *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011). "Whether contract language is ambiguous is a question of law that is resolved by reference to the contract alone."  *O'Neil v. Ret. Plan for Salaried Emps. of RKO Gen., Inc.*, 37 F.3d 55, 58-59 (2d Cir. 1994) (internal quotation marks omitted).

## B.  NYCTA's Compound Drug Claims

The Court begins with Express Scripts's motion for summary judgment regarding NYCTA's breach-of-contract claims based on its compound drug expenditures.  Express Scripts challenges these claims on four grounds: (1) none of the contractual provisions identified by NYCTA imposed on Express Scripts duties to detect and prevent fraud; (2) Express Scripts did not breach any duty to detect and prevent fraud, even if one existed under the contract; (3) NYCTA lacks evidence that Express Scripts caused its alleged damages; and (4) NYCTA cannot establish actual damages.  The Court will examine each argument in turn.[7]

---

[7]     NYCTA does not oppose Express Scripts's summary judgment motion with respect to Count 6, its claim under Section 4.35 of the Contract regarding NYCTA's Employer Group Waiver Plan beneficiaries. *See* Pl.'s Opp'n 17 ("NYCTA is discontinuing its sixth cause of action").  Accordingly, the motion is GRANTED with respect to that claim.

### 1.  Express Scripts's Duties Under the Contract

First, Express Scripts argues that NYCTA has failed to identify any provision of the Contract that imposed on it a duty to detect and prevent fraud.  *See* Def.'s Mem. 8-16.  In arguing otherwise, NYCTA cites Sections 4.1, 4.2, 4.7, 4.14, and 4.16 of the Contract.  Pl.'s Opp'n 14.  The Court will address each, albeit taking them somewhat out of order.

### a.  Duties Under Section 4.2

Beginning with Section 4.2, NYCTA alleges in Count 2 that Express Scripts breached that provision of the Contract by failing to "identify and respond to obvious indications of fraud" in its compound drug claims and by failing to "prevent the accumulation of fraudulent prescription drug claims."  Am. Compl. ¶ 79.  As noted, Section 4.2 provides, in relevant part, that:

> Contractor shall process Claims incurred during the Term of this Agreement and provide customer service in a prudent and expert manner, including investigating and reviewing such Claims to determine what amount, if any, is due and payable according to the terms and conditions of the Plan documents and this Agreement.

Contract Part 1, at 19-20.  Express Scripts contends that Section 4.2 of the Contract does not "impose any . . . Fraud Prevention Duties."  Def.'s Mem. 9.

The Court is not persuaded.  Section 4.2's broad command to "process Claims incurred during the Term of this Agreement . . . in a prudent and expert manner," Contract Part 1, at 19, does not "unambiguous[ly]" exclude a duty to identify and respond to clear indicia of fraud.  *Topps Co.*, 526 F.3d at 68.  Moreover, other language within Section 4.2 suggests that the phrase "prudent and expert manner" has broad scope.  For example, Section 4.2 specifies that processing claims in such a manner "includ[es] investigating and reviewing such Claims to determine what amount, if any, is due and payable according to the terms and conditions of the Plan documents and this Agreement."  Contract Part 1, at 20.  At a minimum, that clarification

11

provides a "reasonable basis," *Lockheed Martin Corp.*, 639 F.3d at 69, on which to conclude that some form of active monitoring and investigation regarding the validity of claims is required to process claims in a "prudent and expert manner," Contract Part 1, at 19.  Given that the scope of Express Scripts's duty under Section 4.2 largely hinges on what it means to process claims in a "prudent and expert manner" in the PBM industry *and* that phrase lacks a "definite and precise meaning," the Court cannot conclude that the Contract unambiguously forecloses NYCTA's claim under Section 4.2.  *Lockheed Martin Corp.*, 639 F.3d at 69.

Express Scripts's arguments to the contrary are unpersuasive.  Express Scripts relies heavily on Section 4.35 of the Contract, which imposes "Fraud Detection and Prevention" duties, but only "for [a] fee[]," Contract Part 1, at 37, which NYCTA indisputably did not pay, *see* COF ¶ 15.  Section 4.2, Express Scripts insists, is simply a "provision on claims processing" and nothing more.  Def.'s Mem. 13.  But it does not follow from the fact that one provision of the Contract provides the option for an enhanced fraud detection and prevention program, *see* SOF ¶ 15 (describing the Section 4.35 program as an "Enhanced Fraud, Waste, and Abuse" program); *see also* ECF No. 140-1, at 24, that Section 4.2 does not impose a basic duty to investigate and flag claims that bear indicia of fraud.  Express Scripts also points to the Technical Questionnaire attached to the Contract, arguing that it details the claims processing and customer service duties that are "plainly the subject of Section 4.2" and does not include "Fraud Prevention Duties." Def.'s Mem. 13.  But Section 4.2 does not expressly incorporate the Technical Questionnaire. *See* Contract Part 1, at 19-20.  Nor does the Technical Questionnaire reference Section 4.2.  *See* ECF No. 140-1.  At a minimum, therefore, the Contract is ambiguous as to whether Express Scripts's claims processing duties are limited to those detailed in the Technical Questionnaire.

In short, Express Scripts is not entitled to summary judgment as to NYCTA's compound drug claims under Count 2, at least based on the theory that there are no duties imposed by Section 4.2 that Express Scripts could have breached.  *See Postlewaite*, 411 F.3d at 67 ("[W]hen the meaning of the contract is ambiguous and the intent of the parties becomes a matter of inquiry, a question of fact is presented which cannot be resolved on a motion for summary judgment." (internal quotation marks omitted)); *see also, e.g.*, *Medacist Sols. Grp., LLC v. CareFusion Sols., LLC*, No. 19-CV-1309 (JMF), 2021 WL 293568, at *7 (S.D.N.Y. Jan. 28, 2021) (denying motion for summary judgment as to one theory of breach because there was "ambiguity in the . . . Agreement.").

### b.  Duties Under Section 4.16

The same goes for Express Scripts's argument related to Count 4, NYCTA's claim under Section 4.16 of the Contract.  Section 4.16 provides, in relevant part, that Express Scripts "shall be solely responsible for the selection, monitoring, and retention of its Network Pharmacies" and that Express Scripts "shall exercise due diligence in the selection and retention of Network Pharmacies."  Contract Part 1, at 25-26.  Express Scripts argues that, like Section 4.2, "Section 4.16 contains no reference to fraud detection," and instead details "specific promises with regard to [Express Scripts's maintenance of its] retail network."  Def.'s Mem 14-15 (emphasis omitted).

The Court disagrees.  To be sure, Section 4.16, like Section 4.2, does not contain an explicit fraud detection and response requirement.  *See* Contract Part 1, at 25-26.  But, as explained above, it does not follow that Section 4.16 "unambiguous[ly]" excludes a duty to identify and respond to clear indicia of fraudulent activity by certain pharmacies in Express Script's network.  *Topps Co.*, 526 F.3d at 68.  Instead, the scope of Express Scripts's obligations under this provision largely turns on the meaning of "due diligence" in the context of "select[ing]

and ret[aining] Network Pharmacies," Contract Part 1, at 26 — language that lacks a "precise and definite meaning" under the Contract, *Lockheed Martin Corp.*, 639 F.3d at 69.  Furthermore, Section 4.16 requires Express Scripts to "*monitor*[]" its Network Pharmacies and exercise "due diligence in the selection *and retention* of [its] Network Pharmacies."  Contract Part 1, at 25-26 (emphasis added).  This language arguably imposes on Express Scripts a duty to identify and respond to evidence that pharmacies in its network were engaged in large scale fraud (i.e., by choosing not to "re[tain]" those pharmacies in its network).  *Id.*  In short, because Express Scripts fails to show that the Contract "wholly unambiguous[ly]" forecloses NYCTA's theory of breach under Section 4.16, it is not entitled to summary judgment as to Count 4, at least based on its construction of the Contract.  *Topps Co.*, 526 F.3d at 68.

### c. Duties Under Section 4.14

The Court next turns to Count 3, NYCTA's claim for breach of Section 4.14 of the Contract.  Am. Compl. ¶ 83.  Section 4.14 lays out Express Scripts's duties regarding "selection and retention of the staff and personnel" and maintenance of a "comprehensive internal audit program."  Contract Part 1, at 25.  Express Scripts argues it is entitled to summary judgment as to this claim because "[t]here is no language in Section 4.14 addressing a duty to monitor for or prevent third-parties' fraudulent conduct."  Def.'s Mem. 12.

Notably, NYCTA fails to respond to these arguments.  Indeed, setting aside the Factual Background section of its opposition brief, NYCTA references Section 4.14 only in passing.  *See* Pl.'s Opp'n 14, 17.  The Court therefore deems Count 3 to be abandoned.  *See, e.g.*, *Fieldcamp v. City of New York*, 242 F. Supp. 2d 388, 391 (S.D.N.Y. 2003) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue." (quoting *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997), *aff'd*, 130 F.3d 1101 (2d Cir. 1997));

*cf. Lima v. Hatsuhana of USA, Inc.*, No. 13-CV-3389 (JMF), 2014 WL 177412, at *1 (S.D.N.Y.

Jan. 16, 2014) ("It is well established that issues mentioned in a perfunctory manner,

unaccompanied by some effort at developed argumentation, are deemed waived." (cleaned up)).

In any event, Express Scripts is entitled to summary judgment on the merits too.  NYCTA makes

no argument that Express Scripts fell short "in its selection and retention of the staff and

personnel . . . that administer [its] pharmacy benefits management services."  Contract Part 1, at

25.  And the other provisions of Section 4.14 required only "a comprehensive *internal* audit

program for pharmacy benefits management services," Contract Part 1, at 25 (emphasis added),

which cannot be construed to impose a duty on Express Scripts to review *third-party* compound

drug claims for fraud, let alone proactively report such fraud to NYCTA.  (Indeed, per the terms

of the Contract, the results of the internal audits were available to NYCTA only "upon request."

Contract Part 1, at 25.)  Thus, Express Scripts's motion for summary judgment as to Count 3

must be and is GRANTED.

### d.  Duties under Section 4.7

Fourth, in Count 5, NYCTA alleges Express Scripts breached Section 4.7 of the Contract.

Am. Compl. ¶¶ 89-92.  Section 4.7, in relevant part, provides as follows:

> With respect to any Overpayment of any Claim made to a Participant, Contractor
> shall pursue recovery of such Overpayment in accordance with applicable law and
> industry standards and, upon recovery, repay the amount of such Overpayment to
> the Plan. . . .  Notwithstanding the foregoing, Contractor shall be liable for all un-
> recovered Overpayments due to Contractor's breach of this Agreement (including,
> without limitation, Contractor's failure to meet the standard of care) . . . .  After
> termination of this Agreement, Contractor shall continue to identify
> Overpayments, and pursue recovery on Claims, as required by this section, paid
> during the Term of this Agreement and the Run-Out Period.

Contract Part 1, at 22.  Express Scripts argues it is entitled to summary judgment as to this claim

because, "[i]f a claim is paid pursuant to NYCTA's Plan coverage terms it is, by definition, not

an Overpayment, and compound claims were covered."  Def.'s Mem. 15.  Not so.  The definition

of Overpayments in Section 1.32 makes plain that Express Scripts is liable for Overpayments that "exceed the amount payable under the Plan *and this Agreement*." Contract Part 1, at 14 (emphasis added). And Section 4.7 itself states that "Contractor shall be liable for all un-recovered Overpayments due to Contractor's breach of *this Agreement (including, without limitation, Contractor's failure to meet the standard of care)*." *Id.* at 22 (emphasis added). At a minimum, that language creates ambiguity as to whether Section 4.7 makes Express Scripts liable for excess payments that occur due to its failure to adhere to the standard of care in the exercise of its duties under the Contract — including its duties pursuant to Sections 4.2 and 4.16, discussed above — in addition to payments that exceed the amount payable under the Plan. Because Section 4.7 does not unambiguously exclude a duty to "reimburse the NYCTA for claims that exceed the amount payable under . . . the Contract," Am. Compl. ¶ 91, Express Scripts argument for summary judgment on that ground fails.

### e.  Duties Under Section 4.1

Finally, Express Scripts argues that it is entitled to summary judgment as to Count 1, which alleges breach of Section 4.1 of the Contract, because "[a]s a basic standard-of-care provision, Section 4.1 is applicable only to other provisions in the Contract" and "does not create any new obligations that are not set forth in the four corners of the Contract." Def.'s Mem. 12 (emphasis omitted). In light of the Court's conclusions regarding Sections 4.2, 4.16, and 4.7, however, this argument falls short. As Express Scripts itself concedes, Section 4.1, by its plain terms, establishes a standard of care that Express Scripts must meet "[i]n the exercise of its duties under th[e] Agreement." Contract Part 1, at 19. Although this provision does not create *independent* duties under the Contract, *see, e.g.*, *Louisiana Mun. Police Emps.' Ret. Sys. v. JPMorgan Chase & Co.*, No. 12-CV-6659 (DLC), 2013 WL 3357173, at *12 (S.D.N.Y. July 3,

2013) (rejecting an argument that a standard-of-care provision created obligations that were "nowhere require[d]" by the contract), it can give rise to a claim for breach if Express Scripts fails to adhere to the standard of care in the exercise of *another* duty under the Contract.  It follows that Express Scripts is not entitled to summary judgment as to Count 1 on this ground.

### 2.  Breach

The Court turns next to Express Scripts's argument that it is entitled to summary judgment as to all of NYCTA's compound drug claims because "NYCTA . . . lacks any evidence to establish that Express Scripts breached the [C]ontract."  Def.'s Mem. 16 (emphasis omitted). Specifically, Express Scripts contends that, "[e]ven assuming" the Contract imposed fraud detection and response duties, NYCTA "must [still] present admissible evidence of fraudulent conduct on behalf of a pharmacy, prescriber, or member that Express Scripts either failed to identify or failed to address upon identifying" in order to demonstrate breach.  *Id.* at 17.

That is incorrect.  Under the relevant sections of the Contract, NYCTA need not provide evidence that each of the compound drug claims at issue was *in fact* fraudulent in order to demonstrate breach.  Instead, NYCTA need only present evidence that Express Scripts breached its obligations to process claims in a "prudent and expert manner," Contract Part 1, 19; "monitor[]" its Network Pharmacies and "exercise due diligence in the selection and retention of Network Pharmacies," *id.* at 25-26; "pursue recovery of . . . Overpayments" and reimburse NYCTA for "un-recovered Overpayments due to [Express Scripts's] breach" of the Contract, *id.* at 22; and meet the contractual standard of care as to the exercise of any of those duties, *id.* at 19 — which NYCTA has, *see* Pl.'s Opp'n 15, 17-21; *see also* ECF No. 116-15, ("Hayes Report"), at 5-20 (opining on the industry standard of care for processing claims and monitoring network pharmacies and Express Scripts's deviations from those standards).  Given that a "reasonable

jury" could conclude Express Scripts breached its obligations under Sections 4.1, 4.2, 4.7, and 4.16 based on the evidence NYCTA has presented, Express Scripts is not entitled to summary judgment on these grounds.  *Anderson*, 477 U.S. at 248; *see also Roe*, 542 F.3d at 35.

### 3.  Causation

Express Scripts's next argument — that it is entitled to summary judgment because NYCTA cannot "establish that Express Scripts caused any of its damages" related to its compound drug claims, Def's Mem. 20 — is similarly fruitless.  Under New York law, "[a] plaintiff seeking damages for breach of contract . . . must demonstrate that the damages were caused by and are directly traceable to the . . . breach." *Bausch & Lomb, Inc. v. Bressler,* 977 F.2d 720, 731 (2d Cir.1992) (internal quotation marks omitted); *see also Petitt v. Celebrity Cruises, Inc.*, 153 F. Supp. 2d 240, 263 (S.D.N.Y. 2001) ("[I]n order to prove a breach of contract claim, a plaintiff must establish that his damages were caused by the defendant's wrongful conduct.").  Thus, to survive a motion for summary judgment, a plaintiff alleging breach of contract must "raise an issue of material fact that would enable a reasonable jury to conclude that their injuries were sustained as a result of [the defendant's] actions." *Id.* at 263-64. There is no question that NYCTA does so here.  NYCTA presents sufficient evidence to raise a genuine dispute of material fact as to whether it would have acted sooner to block the outlier pharmacies and prescribers, or taken other measures to reduce compound drug expenditures, if Express Scripts had alerted NYCTA to the indicia of large-scale fraud earlier.  *See* Pl.'s Opp'n 7-9, 22.  Express Scripts's alternative theories about "the true cause of NYCTA's increased compound drug spend," Def.'s Mem. 19, and its contention that "the evidence shows that even with information, NYCTA consistently failed to act," Def.'s Reply 5, merely confirm that there

is a genuine dispute of fact regarding causation.[8]  Accordingly, Express Scripts's argument for summary judgment on these grounds also fails.

### 4. Compensatory Damages

Finally, Express Scripts makes two arguments for why it is entitled to summary judgment on compensatory damages for NYCTA's compound drug claims.  First, it contends that Rule 37(c) of the Federal Rules of Civil Procedure "compels preclusion of any evidence [of] . . . actual damages" related to NYCTA's compound drug claims because NYCTA failed to comply with its disclosure requirements under Rule 26.  Def.'s Mem. 23; *see also id.* 20-23.  Second, "[e]ven if the Court declines to impose Rule 37 sanctions," Express Scripts contends, "NYCTA does not have admissible evidence of damages" for its compound drug claims.  *Id.* at 23.

Express Scripts is on firm ground in arguing that NYCTA failed to comply with its Rule 26 obligation to disclose "a computation of each category of damages claimed" and to "make available for inspection and copying . . . the documents or other evidentiary material . . . on which each computation is based."  Fed. R. Civ. Pro. 26(a)(1)(A)(iii); *see* Def.'s Mem. 20-23. NYCTA's initial damages disclosures stated only that "damages . . . are currently estimated to be greater than $20 million," without citing to any documents on which that figure was based. Def.'s SOF ¶ 22.  And NYCTA failed to supplement that disclosure with any "computation" of the damages claimed, as required by Rule 26(a).  Conspicuously, NYCTA does not even dispute that it failed to provide a "computation" of its damages.  Instead, it cites to excerpts from a colloquy with the Court in a discovery conference and to an interrogatory response, both of which suggest how NYCTA *could* calculate damages.  *See* Pl.'s Opp'n 23.  But these

---

[8]     Express Scripts also contends that, to demonstrate causation, NYCTA must present admissible evidence that the claims at issue were in fact fraudulent.  *See* Def.'s Mem. 19.  That argument fails for substantially the same reasons discussed above with respect to breach.

submissions do not satisfy Rule 26(a)'s requirements. *See, e.g.*, *Scantibodies Lab'y, Inc. v. Church & Dwight Co.*, No. 14-CV-2275 (JGK) (DF), 2016 WL 11271874, at *31 (S.D.N.Y. Nov. 4, 2016) (concluding that the plaintiff violated Rule 26(a) where its disclosure "simply stated that Plaintiff estimated its damages to be in excess of $20,000,000" and "included no damages computation whatsoever, let alone a computation of each category of damages" (cleaned up)), *report and recommendation adopted*, No. 14-CV-2275 (JGK), 2017 WL 605303 (S.D.N.Y. Feb. 15, 2017).

It does not follow, however, that preclusion of NYCTA's evidence of compensatory damages is appropriate. Rule 37(c)(1) provides that, "[i]f a party fails to provide information . . . as required by Rule 26(a) . . . , the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Rule further provides that, "[i]n addition to or instead of this sanction," the court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure"; "may inform the jury of the party's failure"; and "may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." *Id.* Rule 37(b)(2)(A)(i)-(vi), in turn, lists a range of available sanctions, from staying further proceedings until the order is obeyed to rendering a default judgment against a party. By its "plain text," therefore, Rule 37 grants district courts broad "discretion to impose other, less drastic, sanctions" than preclusion. *Design Strategy, Inc. v. Davis,* 469 F.3d 284, 298 (2d Cir. 2006). In fact, preclusion is a "harsh remed[y]" that "should be imposed only in rare situations." *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988); *accord Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004) ("Courts in this Circuit recognize that preclusion of evidence pursuant to Rule 37(c)(1) is a drastic remedy and should be exercised with discretion and

caution."). Indeed, "[b]efore the extreme sanction of preclusion may be used," courts "should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988).

In determining whether preclusion or another sanction is appropriate, courts in this Circuit consider "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the . . . precluded [evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new [evidence]; and (4) the possibility of a continuance." *Design Strategy, Inc.*, 469 F.3d at 296; *accord Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.,* 118 F.3d 955, 961 (2d Cir. 1997). Additionally, in some circumstances, "[c]onsiderations of fair play may dictate that courts eschew the harshest sanctions . . . where failure to comply is due to a mere oversight of counsel amounting to no more than simple negligence." *Outley*, 837 F.2d at 591 (quoting *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979)).

Applying those standards here, the Court concludes that preclusion is not warranted. Although NYCTA does not provide an explanation for its failure to comply with Rule 26(a), the evidence that Express Scripts seeks to preclude is vital to NYCTA's case. As Express Scripts's concedes, only nominal damages would be available to NYCTA if all evidence of its actual damages is precluded. *See* Def.'s Mem. 22. Such a "particularly severe result . . . weighs against preclusion." *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 162 (S.D.N.Y. 2012) (explaining that "precluding Plaintiffs from pursuing $12-plus million in damages would seem a particularly severe result" and declining to preclude the evidence in question). Moreover, the "prejudice suffered by [Express Scripts] as a result of having to prepare to meet the new [evidence]" is minimal. *Design Strategy, Inc.*, 469 F.3d at

296.  The evidence of compensatory damages that NYCTA now presents is based on raw claims

data that Express Scripts itself provided to AON, NYCTA's consultant.  *See* ECF No. 125

("Kozlowski Decl."), ¶ 2.  Express Scripts will not be unduly prejudiced by having to prepare to

meet evidence of compensatory damages to which it has had access all along — and certainly not

prejudiced to the extent sufficient to warrant the "extreme sanction of preclusion."  *Outley*, 837

F.2d at 591; *cf. Ebewo*, 309 F. Supp. 2d at 607 ("The purpose of [Rule 37(c)] is to prevent the

practice of 'sandbagging' an opposing party with *new* evidence." (emphasis added)).  Because

this is not one of those "rare situations" in which the "harsh remed[y]" of preclusion is

warranted, *Update Art, Inc.*, 843 F.2d at 71, Express Scripts's argument for summary judgment

premised on preclusion of NYCTA's evidence of compensatory damages fails.

Express Scripts's second argument related to compensatory damages is similarly

unpersuasive.  It contends that, "[e]ven if the Court declines to impose Rule 37 sanctions, it

should, nonetheless, grant summary judgment on compensatory damages because NYCTA does

not have admissible evidence of damages for the Compound Claims."  Def.'s Mem. 23; *see also*

Def.'s Reply 7-10.  Specifically, Express Scripts argues that NYCTA's Rule 1006 summary

charts in the Kozlowski Declaration — which break out NYCTA's monthly compound drug

spending for the "blocked" pharmacies and the three outlier providers, as compared with other

providers, *see* ECF Nos. 125-1-5 — are "not admissible as presented," Def.'s Reply 7-8.  Under

Federal Rule of Evidence 1006, "[s]ummary evidence is admissible as long as the underlying

documents also constitute admissible evidence and are made available to the adverse party."

*Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53 (2d Cir. 1993).  Here, because the underlying

raw claims data was initially created by Express Scripts, *see* Kozlowski Decl. ¶ 2, there is no

question that the data was available to it.  And Express Scripts does not dispute that the

underlying raw claims data it collected as NYCTA's PBM, which Kozlowski avers he relied on, *id.*, would be admissible.[9]

Express Scripts's final argument — that, even if admissible, the Kozlowski value calculations are not adequate evidence of actual contract damages because NYCTA must provide evidence to support a specific "compensatory damage *amount*," Def.'s Reply 9 (emphasis added) — requires little discussion.  Although damages "must be *reasonably certain* and such only as actually follow or may follow from the breach of the contract," "'[c]ertainty,' as it pertains to general damages, refers to the *fact* of damage, not the amount."  *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 110 (2d Cir. 2007) (internal quotation marks omitted).  That is, "[t]he plaintiff need only show a stable foundation for a reasonable estimate of the damage incurred as a result of the breach."  *Id.* (internal quotation marks omitted).  Courts in this Circuit have recognized that "[s]uch an estimate necessarily requires some improvisation, and the party who has caused the loss may not insist on theoretical perfection."  *Id.* at 111.  The summary charts provided in the Kozlowski Declaration satisfy this requirement.  They are sufficient to provide a "stable foundation for a reasonable estimate of the damage incurred" as a result of Express Scripts's alleged breach.  *Id.*; *see* ECF Nos. 125-1-5.

*               *               *               *

In light of the foregoing, Express Scripts's motion for summary judgment must be and is DENIED as to NYCTA's compound drug claims in Counts 1, 2, 4 and 5, but is GRANTED as to NYCTA's compound drug claims in Counts 3 and 6.

---

[9]    Express Scripts's additional argument that the charts in the Kozlowski Declaration exhibits are inconsistent with those in Hayes's Report, *see* Def.'s Reply n. 34, is unfounded for the reasons discussed below with respect to the charts in Hayes's Report.

**C.  NYCTA's Non-Compound Drug Claims**

Express Scripts's argument for summary judgment with respect to NYCTA's non-compound drug claims in Counts 2 and 5 requires little discussion.  Express Scripts contends that, to prevail on its non-compound drug claims, "NYCTA needs specialized, expert testimony to establish whether Express Scripts breached the Contract by approving prescription claims for drugs that lacked FDA approval."  Def.'s Mem. 25.  More specifically, Express Scripts argues that expert testimony is required to establish which "drugs were, in fact, not FDA-approved."  *Id.* But Express Scripts fails to demonstrate that determining whether the relevant drugs were FDA approved is more complicated than simply comparing two lists: the list of FDA-approved drugs at the time of processing and the list of drugs for which Express Scripts processed claims.  Such an exercise falls squarely within the "reasoning processes familiar to the average person in everyday life," *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005), and thus does not require expert testimony.  Accordingly, Express Scripts motion to dismiss NYCTA's non-compound drug claims is DENIED.

## MOTION TO PRECLUDE EXPERT TESTIMONY

With that, the Court turns to Express Scripts's motion to exclude the expert opinions and testimony of Susan A. Hayes, ECF No. 114 ("Def.'s *Daubert* Mem.").  In her expert report, Hayes offers opinions on three topics: (1) "the degree of care and reasonable diligence that should be applied by a PBM" in processing claims; (2) the conduct required to monitor and investigate pharmacy networks in a "prudent and expert manner" in the PBM industry; and (3) the financial incentives created by the "spread pricing model" in the Contract.  Hayes Report 5; *see also id.* at 16, 21.  Express Scripts moves to exclude testimony with respect to all three

opinions.  Once again, the Court will begin with the applicable legal standards and then turn to the parties' arguments.

## A. Applicable Legal Standards

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides, in relevant part that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify" to his or her opinion if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  In *Daubert*, the United States Supreme Court defined the "gatekeeping role" of district courts with respect to expert testimony, declaring that "the Rules of Evidence — especially Rule 702 —[ ] assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  509 U.S. at 597. Although *Daubert* applies with equal force to testimony that is based on "personal knowledge or experience" rather than scientific expertise, *Daubert*'s list of factors is "meant to be helpful, not definitive."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150-51 (1999).  Additionally, because "there are many different kinds of experts, and many different kinds of expertise," a court must be granted "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."  *Id.* at 150-52.  Overall, "exclusion remains the exception rather than the rule."  *Vazquez v. City of New York*, No. 10-CV-6277 (JMF), 2014 WL 4388497, at *12 (S.D.N.Y. Sept. 5, 2014) (internal quotation marks and citation omitted).

**B.  Opinion One**

Applying the foregoing standards, the Court concludes that there is no basis to preclude Hayes's testimony as to Opinion One.  Express Scripts moves to exclude the opinion on four primary grounds: (1) Hayes is unqualified, Def.'s *Daubert* Mem. 6-8; (2) her methodology is not reliable, *id.* at 8-16; (3) her opinion is not sufficiently based on the facts, *id.* at 4-6, 16-20, and (4) her opinion contains legal conclusions, *id.* at 23-24.  The first three of these objections fail for the same reason: They ultimately go to the weight, not the admissibility, of Hayes's testimony. *See, e.g.*, *McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1044 (2d Cir. 1995) ("Disputes as to the strength of [an expert's] credentials, faults in his use of different etiology as a methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony."); *Vazquez*, 2014 WL 4388497, at *12 (explaining that objections to an expert's "qualifications and the reliability of his methods and data . . . ultimately [went] to the weight of his testimony" and rejecting arguments for preclusion on those grounds).  The fourth fails for other reasons.  The Court will address each in turn.

Beginning with Hayes's qualifications, "[t]o determine whether a witness qualifies as an expert, courts compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *United States v. Tin Yat Chin,* 371 F.3d 31, 40 (2d Cir. 2004).  Here, Hayes's twenty-five years of professional experience in the PBM industry — including experience directly relevant to the industry standards for processing claims and managing pharmacy networks, *see* ECF No. 124 ("Pl.'s *Daubert* Opp'n"), at 6, combined with her accreditation as a Health Care Fraud Investigator (the highest industry accreditation by the National Health Care Anti-Fraud association), *id.* at 7, and her recent completion of a doctoral program related to fraud in the pharmaceutical industry, *id.*

— are more than enough to qualify her as an expert in practices in the PBM industry related

detecting and preventing fraud. *See, e.g.*, *Argus Health Sys., Inc. v. Benecard Servs., Inc.*, No.

10-CV-0187-W (JTM), 2011 WL 5822408, at *1 (W.D. Mo. Nov. 16, 2011) (concluding that

"[Susan A.] Hayes has . . . sufficient qualifications to testify about the usual and customary

practices in the pharmacy claims industry" and noting that "[t]o the extent that [the plaintiff]

believes those qualifications are wanting, it may explore the matter during the cross-examination

of Hayes").  The fact that Hayes has worked only with "*other* PBMs who were operating under

*different* contracts," Def.'s *Daubert* Mem. 7, does not render her unqualified to speak on PBM

industry standards and practices generally.

Turning to Hayes's methodology, although Opinion One may not rest on specific

numerical standards or statistical studies that control for certain variables, *see* Def.'s *Daubert*

Mem. 8-16, it is, nevertheless, based on data "of a type reasonably relied upon by experts in the

field," *Hananburgh v. Metro-N. Commuter R.R.*, No. 13-CV-2799 (JMF), 2015 WL 1267145, at

*6 (S.D.N.Y. Mar. 18, 2015); *see also Kumho*, 526 U.S. at 148-49 (acknowledging that, in some

fields, the reliability inquiry may turn on personal knowledge and experience rather scientific

method).  In addition to drawing on "extensive and specialized experience" in the industry, *id.* at

156; *see* Hayes Report 1-3, Hayes relies on PBM reports related to compound drug spending

from "hundreds of meetings" between other PBM account management teams and clients, *id.* at

11; reports on national prescription claims statistics,[10] *id.* at 11-12; reports created by Express

---

[10]     Contrary to Express Scripts's contention, *see* Def.'s *Daubert* Mem. 14-15, Hayes's
reliance on national statistics — specifically, her reference to the national percentage of
prescription claims that are for compound drugs — does not warrant preclusion of her testimony.
Although Express Scripts makes a compelling case that the national share is a misleading
benchmark because, unlike many health plans, NYCTA's does not limit compound drug claims,
Hayes's failure to qualify her reliance on the national share does not render Opinion One
inadmissible.  Such "minor flaws in an expert's analysis" can instead "be probed through cross-

Scripts for NYCTA, *id.* at 11; and summaries of NYCTA's claims data produced by NYCTA's

consultant, AON, using data provided by Express Scripts, *id.* at 6-7. "To the extent [Express

Scripts] questions the weight of [this] evidence . . . or the conclusions generated from [Hayes's]

assessment of that evidence, it may present those challenges through cross-examination of the

expert." *R.F.M.A.S., Inc.*, 748 F. Supp. 2d at 252.

       Express Scripts's related argument that "Hayes failed to validate the data she used to

form her opinion," including the AON report summarizing NYCTA's raw claims data, Def.'s

*Daubert* Mem. 12, similarly goes to the weight of Hayes's testimony rather than to its

admissibility. Express Scripts does not cite, *see id.* at 12-13; Def.'s *Daubert* Reply 6-7, and the

Court has not found, precedent requiring experts to validate the data underlying each source on

which they rely in order to satisfy the reliability threshold for admissibility. Instead, Express

Scripts cites to cases in which experts failed to take basic steps to verify the data that they used

to prepare their *own* calculations or statistical analyses. *See, e.g.*, *Forte v. Liquidnet Holdings,

Inc.*, 675 F. App'x 21, 23-24 (2d Cir. 2017) (summary order) (expert "simply input the numbers

he was given by [the plaintiff] and used them to calculate pay discrepancies"); *Dreyer v. Ryder

Auto. Carrier Grp., Inc.,* 367 F. Supp. 2d 413, 446 (W.D.N.Y. 2005) (expert presented

calculations of "injury per exposure frequency rate" using "accident data derived from

Defendants' records" without verifying the data). Here, Hayes does not present her own

calculations or statistical analyses based on the AON summary reports. *See* Hayes Report 7-12.

Thus, her reliance on that data without independently verifying its accuracy does not render her

---

examination and generally go to the weight to be accorded to the expert's testimony rather than
admissibility." *R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 252 (S.D.N.Y. 2010).

opinion so unreliable as to warrant preclusion.  Express Scripts's further objections to the accuracy of the charts produced in Hayes's report, *see* Reply 7-8, also fall short.  The charts show compound drug spending in the "first 13 months of the contract" between NYCTA and Express Scripts as compared with the year before, under NYCTA's prior PBM.  Hayes Report 9; *see id.* 9-11.  By contrast, the summary charts in the Kozlowski Declaration, which Express Scripts contends are "facially inconsistent," Def.'s *Daubert* Reply 8, show compound drug spending "[d]uring the Contract [t]erm."  ECF No. 125-5 (Kozlowski Decl. Exh. E), *see also* Kozlowski Decl. Exh. B; Kozlowski Decl. ¶ 4.  Such an apples-to-oranges comparison does not demonstrate that Hayes's opinion is so unreliable as to warrant preclusion.

Express Scripts's third argument — that Hayes's opinion is not sufficiently based on the factual record, Def.'s *Daubert* Mem. at 4-6, 16-20 — fails for similar reasons.  For starters, it is largely a recitation of Express Scripts's arguments in support of its motion for summary judgment regarding its duties under the Contract, *compare id.* at 4, *with* Def.'s Mem. 9, which the Court has rejected in relevant part, as detailed above.  Moreover, Express Scripts's quibbles with Hayes's characterization of the facts, *see* Def.'s *Daubert* Mem. 5-6, 16-21, go to the weight of her testimony, not its admissibility.  In short, the weaknesses in Hayes's qualifications, methodology, and characterization of the facts alleged by Express Scripts "are fair ground for cross-examination, but they are not a basis for preclusion."  *Vazquez*, 2014 WL 4388497, at *12; *see also Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Express Scripts's final argument as to Opinion One — that it contains improper legal conclusions, *id.* at 23-24 — likewise fails.  The Second Circuit has "distinguish[ed] between

factual conclusions that may be included in an expert's testimony — [even] though they embrace an ultimate issue to be decided by the jury — and opinions embodying legal conclusions that encroach upon the court's duty to instruct on the law." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991). The conclusions in Opinion One to which Express Scripts objects, namely that Express Scripts deviated from the standard of care with respect to its duties to process claims "in a prudent and expert manner" and "failed to use that degree of care and reasonable diligence that should be applied by a PBM," Hayes Report 5, fall into the former category. Moreover, to the extent Hayes seeks to offer legal conclusions, the Court can and will address the issue at trial in response to objections to particular questions. Accordingly, Express Scripts's motion to exclude Opinion One and any related testimony by Hayes is DENIED.

## C. Opinion Two

Express Scripts moves to preclude Opinion Two — Hayes's opinion on the conduct required to monitor and investigate pharmacy networks in a "prudent and expert manner" in the PBM industry — on similar grounds as Opinion One. Specifically, Express Scripts argues that Opinion Two is "not based upon any reliable methodology or standard," Def.'s *Daubert* Mem. 21; is "not tied to the facts," *id.*; and contains inappropriate legal conclusions, *id.* at 23. These arguments fail for substantially the same reasons discussed above with respect to Opinion One. That is, "[m]inor flaws" and alleged weaknesses in Hayes's methodology and characterization of the facts "go to the weight to be accorded to [Hayes's] testimony rather than admissibility." *R.F.M.A.S., Inc.*, 748 F. Supp. at 252. And, to the extent that Hayes's testimony on Opinion Two crosses the line from "factual conclusions" to "legal conclusions that encroach upon the court's duty to instruct on the law," the Court can address the issue at trial in response to objections to

particular questions.  *Bilzerian*, 926 F.2d at 1294.  As such, Express Scripts's motion to exclude

Opinion Two and to preclude any related testimony from Hayes is DENIED.

## D.  Opinion Three

That leaves Express Scripts's argument that Opinion Three — regarding whether Express

Scripts had "financial incentives to process excessive compound prescriptions" due to the pricing

model in the Contract, Hayes Report 21 — should be excluded.  Express Scripts argues that

Opinion Three (1) "is an improper opinion as to Express Scripts'[s] motives," Def.'s *Daubert*

Mem. 24; (2) is "irrelevant," *id.*; and (3) that "any purported probative value is 'substantially

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury,'"

*id.* at 25 (quoting Fed. R. Evid. 403).  None of these arguments prevails.  For starters, although

"[d]etermining what motivated a particular person or entity is generally not an appropriate

subject matter for expert testimony," *R.F.M.A.S., Inc.*, 748 F. Supp. 2d at 268, Hayes does not

opine on Express Scripts's motive in Opinion Three.  She merely offers her opinion on the

*existence* of financial incentives created by the pricing model in the Contract, not whether

Express Scripts was in fact motivated to breach the Contract as a result of these incentives.  *See*

Hayes Report 21.  Moreover, Opinion Three easily meets the low threshold for relevance.  *See*

Fed. R. Evid. 401.  The existence of "financial interest[s] to not diligently monitor the network,"

Hayes Report 5, "has [a] tendency to make a [material] fact" — namely whether Express Scripts

in fact failed to diligently monitor the network, which NYCTA alleges constitutes a breach of the

Contract — "more or less probable than it would be without the evidence,'" *United States v.*

*White*, 692 F.3d 235, 246 (2d Cir. 2012), *as amended* (Sept. 28, 2012) (quoting Fed. R. Evid.

401).  And Express Scripts fails to articulate how Hayes's opinion on the matter would run afoul

of Rule 403 except to say that opining on financial incentives is improper, which the Court has

concluded is not the case. *See* Def.'s *Daubert* Mem. 24-25; *see also* Def.'s *Daubert* Reply 10. Accordingly, Express Scripts's motion to exclude Opinion Three is DENIED.

## CONCLUSION

For the reasons stated above, Express Scripts's motion for summary judgment is GRANTED IN PART and DENIED IN PART and its motion to exclude Hayes's testimony is DENIED. More specifically, the motion for summary judgment is DENIED as to NYCTA's compound drug claims in Counts 1, 2, 4 and 5, and its non-compound drug claims in Counts 2 and 5. By contrast, the motion is granted as to Counts 3 and 6.

One housekeeping matter remains: the parties filed letter-motions to seal portions of their motion papers. *See* ECF Nos. 108, 116, 117, 121, 129, 131, 139. The Court granted these letter-motions temporarily, pending its decision on the underlying motions. ECF Nos. 118, 119, 130, 133, 141. It is well established that filings that are "relevant to the performance of the judicial function and useful in the judicial process" are considered "judicial documents" to which a presumption in favor of public access attaches. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). Significantly, assessment of whether the presumption in favor of public access is overcome by countervailing factors must be made on a document-by-document basis. *See, e.g.*, *Brown v. Maxwell*, 929 F.3d 41, 48 (2d Cir. 2019). Accordingly, **no later than two weeks from the date of this Opinion and Order**, any party that believes any materials currently under seal or in redacted form should remain under seal or in redacted form is ORDERED to show cause in writing, on a document-by-document basis, why doing so would be consistent with the presumption in favor of public access. If, by that deadline, no party contends that a particular document should remain under seal or in redacted form, then the parties shall promptly file that document publicly on ECF.

Unless and until the Court orders otherwise, the parties shall submit a proposed joint pretrial order and associated materials (in accordance with Section 5 of the Court's Individual Rules and Practices in Civil Cases, available at https://www.nysd.uscourts.gov/hon-jesse-m-furman) **within forty-five days of the date of this Opinion and Order**. The Court will schedule a pretrial conference after reviewing the parties' submissions to discuss the procedures for and timing of trial in light of, among other things, the COVID-19 pandemic.

In the meantime, the Court is firmly of the view that the parties should try to settle this case without the need for an expensive and potentially risky trial. To that end, the Court directs the parties **to confer immediately** about the prospect of settlement and about conducting a settlement conference before the designated Magistrate Judge (or before a mediator appointed by the Court or retained privately). If the parties agree that a settlement conference would be appropriate, they should promptly advise the Court and, if needed, seek an appropriate referral and extension of the pretrial deadlines.

The Clerk of Court is directed to terminate ECF Nos. 109 and 113.

SO ORDERED.

Dated: March 1, 2022
New York, New York

_____
JESSE M. FURMAN
United States District Judge