UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **NEW YORK CITY TRANSIT AUTHORITY,**<br><br>Plaintiff,<br><br>v.<br><br>**EXPRESS SCRIPTS, INC.**<br><br>Defendant. | Case No. 1:19-cv-05196<br><br>**Memorandum of Law in Support of Express Scripts, Inc.'s Motion for Reconsideration** |

Under Local Civil Rule 6.3, Express Scripts, Inc. submits this memorandum of law in support of its Motion for Reconsideration. To support its motion, Express Scripts states as follows:

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................... 1

LEGAL STANDARD ..................................................................................................................... 2

ARGUMENT .................................................................................................................................. 2

    I.    The Court should exclude NYCTA's compensatory damages evidence under Rule 37 because Express Scripts never had—and still does not have—access to the data. ........................................................................................ 2

    II.    NYCTA's Rule 1006 damages evidence is inadmissible. ...................................... 3

        A.    Kozlowski's calculations are not based on admissible evidence. ............... 4

        B.    Kozlowski lacks the personal knowledge necessary to introduce the summary charts. ....................................................................................... 6

        C.    The Rule 1006 summaries must be excluded because they are inaccurate. ..................................................................................................... 6

    III.    NYCTA needs—but does not have—expert testimony to introduce the Rule 1006 evidence and to tie this evidence to its damages theories. .................... 8

    IV.    NYCTA still has not provided a calculation of its compensatory damages calculation for the non-FDA claims. ......................................................... 10

CONCLUSION ............................................................................................................................. 10

CERTIFICATE OF SERVICE ..................................................................................................... 11

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ............................................................................................................... 9

*Diomed, Inc. v. AngioDynamics, Inc.*,
  450 F. Supp. 2d 130 (D. Mass. 2006) .................................................................................. 10

*Fagiola v. Nat'l Gypsum Co. AC & S.*,
  906 F.2d 53 (2d Cir. 1990) ..................................................................................................... 4

*In re Int'l Mgmt. Assocs., LLC*,
  781 F.3d 1262 (11th Cir. 2015) .............................................................................................. 5

*In re Qudian Inc. Sec. Litig.*,
  2020 WL 3893294 (S.D.N.Y. July 10, 2020) ........................................................................ 2

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp.*,
  424 F.3d 195 (2d Cir. 2005) ................................................................................................... 4

*Lavalette v. Ion Media Networks, Inc.*,
  2019 WL 3409899 (S.D.N.Y. July 29, 2019) ........................................................................ 9

*Leon v. Transam Trucking, Inc.*,
  2020 WL 728785 (S.D.N.Y. Feb. 13, 2020) .......................................................................... 8

*Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*,
  500 F.3d 171 (2d Cir. 2007) ................................................................................................... 9

*Ortho Pharm. Corp. v. Cosprophar, Inc.*,
  828 F. Supp. 1114 (S.D.N.Y. 1993)
  *aff'd*, 32 F.3d 690 (2d Cir. 1994) ...................................................................................... 5, 6

*Rouviere v. DePuy Orthopaedics*,
  2021 WL 1687478 (S.D.N.Y. April 29, 2021) .................................................................... 10

*Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Roseen Realty Corp.*,
  308 F. Supp. 3d 132 (D.D.C. 2018) .................................................................................. 4, 6

*Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*,
  230 F. Supp. 3d 290 (S.D.N.Y. 2017) .................................................................................... 3

*Stiglitz v. Bank*,
  2011 WL 13254022 (D.D.C. June 14, 2011) ......................................................................... 9

*Tamarin v. Adam Caterers, Inc.*,
  13 F.3d 51 (2d Cir. 1993) ................................................................................................. 4

*Terra Sec. ASA Konkursbo v. Citigroup, Inc.*,
  820 F. Supp. 2d 558 (S.D.N.Y. 2011) ............................................................................... 2

*Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*,
  487 F.3d 89 (2d Cir. 2007) ............................................................................................ 9, 10

*United States v. Earls*,
  2004 WL 350725 (S.D.N.Y. Feb. 25, 2004) ................................................................. 4, 6

*United States v. Garcia*,
  413 F.3d 201 (2d Cir. 2005) ............................................................................................. 8

*United States v. Pluta*,
  176 F.3d 43 (2d Cir. 1999) ............................................................................................... 4

*United States v. Ray*,
  2022 WL 558146 (S.D.N.Y. Feb. 24, 2022) ................................................................. 4, 7

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
  956 F.2d 1245 (2d Cir. 1992) ........................................................................................... 2

## **Rules**

Fed. R. Civ. P. 26 .................................................................................................................. 1, 5, 9

Fed. R. Evid. 37 ........................................................................................................................ 2, 3

Fed. R. Evid. 70 ............................................................................................................................ 8

Fed. R. Evid. 803(6) ..................................................................................................................... 5

Fed. R. Evid. 1006 ............................................................................................................... passim

Local Civil Rule 6.3 .................................................................................................................. 1, 2

## **Additional Authorities**

31 Wright & Miller, *Fed. Prac. & Proc.* § 8043 (2d ed.) ...................................................... 4, 5, 7

## **INTRODUCTION**

NYCTA's opposition to Express Scripts' motion for summary judgment included NYCTA's first disclosure of its computation of damages. NYCTA represented to the Court that this calculation—performed by Vince Kozlowski, a previously undisclosed employee of NYCTA's consultant Aon—was not prejudicially untimely to Express Scripts and was admissible under Federal Evidence Rule 1006 because the calculations were performed using claims data that "ESI has (and the NYCTA has produced)." ECF No. 123 at 24. Kozlowski's declaration submitted in support stated the same—that he performed the calculations using raw claims data that Express Scripts had provided to Aon. ECF No. 125 at ¶ 2. Relying on these representations, the Court denied Express Scripts' motion as it related to damages, stating that Express Scripts could not be prejudiced since it "had access [to the data] all along," and that the calculations were admissible under Rule 1006 since there was "no question that the data was available to" Express Scripts. ECF No. 144 at 22.

NYCTA's and Kozlowski's representations were false. The data Kozlowski used to perform NYCTA's damages calculations was not produced to Express Scripts until days before his May 31, 2022 deposition, almost a year after NYCTA represented in its summary judgment opposition that it had previously been produced. That produced data was *not* Express Scripts' raw claims data but data summaries prepared by non-NYCTA and non-Aon personnel, and Kozlowski had no knowledge as to how those summaries were prepared or what they were based on. NYCTA's repeated assertion that all it is doing is adding up numbers in Express Scripts' own data is not supported by Kozlowski or any other disclosed witness.

On top of establishing that NYCTA has not produced—and Express Scripts still does not have—whatever underlying base data was used to create the summaries that Kozlowski relied on, Kozlowski's deposition also established two other key points: (1) The calculations in his declaration (which, in many cases, he did not even personally perform) do not satisfy any of the requirements for admissibility under Rule 1006; and (2) the calculations are entirely unreliable because they are riddled with mathematical and methodological flaws.

1

Because the Court's summary judgment order was reliant upon false premises, Express Scripts respectfully requests that the Court reconsider the order and find that NYCTA's untimely damages disclosure was prejudicial and warrants sanctions and that NYCTA cannot present evidence of compensatory damages.

## LEGAL STANDARD

A party may move for reconsideration under Local Civil Rule 6.3 because of "the availability of new evidence." *Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 820 F. Supp. 2d 558, 560 (S.D.N.Y. 2011) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). "[A] district court has broad discretion in determining whether to grant a motion [for reconsideration]." *In re Qudian Inc. Sec. Litig.*, 2020 WL 3893294, at *1 (S.D.N.Y. July 10, 2020) (Furman, J.) (citation omitted).

## ARGUMENT

**I.    The Court should exclude NYCTA's compensatory damages evidence under Rule 37 because Express Scripts never had—and still does not have—access to the data.**

Kozlowski testified that the calculations in his declaration were prepared using data prepared—not by Express Scripts—but by "Caribou"—a "separate company that provides auditing services on behalf of Aon." Kozlowski Dep. at 69:8-70:6, 108:25-109:14.[1] Caribou provided Aon, Kozlowski's employer, with six summary spreadsheets prepared by Caribou that Kozlowski *believed* contained summaries of NYCTA's 2017–2019 compound claims.[2] Kozlowski testified that his calculations relied on these Caribou spreadsheets alone; he did not review any claims data, and, critically, he did not know what data Caribou used to populate the spreadsheets. *Id.* 99:3-24.

Whatever data used by Caribou to create the summary spreadsheets that Kozlowski relied

---

[1] Relevant excerpts from Kozlowski's deposition are attached to the Declaration of Christopher Smith, filed contemporaneously.

[2] Without explanation, Aon produced a seventh spreadsheet late on the afternoon of May 27, less than one business day before Kozlowski's deposition on May 31. This spreadsheet, which contained data on 2016 compound claims, was prepared by Litong Sun, another undisclosed Aon employee that Kozlowski had never met. Kozlowski Dep. 65:8-11, 67:17–68:2.

on has never been produced to Express Scripts.[3] Nor can it be said that whatever data used by Caribou—an entity whose involvement was not disclosed until Kozlowski's deposition—must be data within Express Scripts' possession. The reason for this is simple: prescription claims data is dynamic not static; it changes over time as a result of pharmacy claims reversals, recoupments and reconciliations, and other cost adjustments, which can take months (if not years) to reconcile. A claims report received by NYCTA in December 2017 for claims processed from January through December 2017 *will differ* from a claims report pulled in March 2018 for the *same claims*.

So although Express Scripts has claims data reflecting the claims it processed on behalf of NYCTA, it does not necessarily have the claims data used by Caribou to create the spreadsheets that Kozlowski reviewed. As a result, Express Scripts remains unable to duplicate the calculations in Kozlowski's declaration (and neither can he, for that matter, *see infra* § II.C). For the taint of prejudice to even begin to be removed, Express Scripts would need that data, but even after deposing Kozlowski, Express Script still does not know what raw claims data was used let alone have access to it. Kozlowski did not have those answers. *See supra* § II.A. Express Scripts' prejudice remains unchanged, and the evidence should be excluded under Rule 37.

Without evidence of damages, summary judgment is appropriate, and Express Scripts requests that the Court grant its motion for reconsideration. *See, e.g.*, *Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F. Supp. 3d 290, 302– 03 (S.D.N.Y. 2017) (granting summary judgment when plaintiff did not have "actual evidence that it suffered damages").

**II.     NYCTA's Rule 1006 damages evidence is inadmissible.**

A party may use "a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006. "Summary evidence is admissible as long as the underlying documents also constitute admissible evidence and are made available to the adverse party." *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53 (2d Cir. 1993). Further, "the summary must be accurate and nonprejudicial," and

---

[3] If NYCTA had produced this data already—as it represented to the Court—it should have pointed Express Scripts to the bates-labeled spreadsheets in Express Scripts' possession. It did not.

"the witness who prepared the summary should introduce it." *Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Roseen Realty Corp.*, 308 F. Supp. 3d 132, 136 (D.D.C. 2018); *see also United States v. Earls*, 2004 WL 350725, at *9 (S.D.N.Y. Feb. 25, 2004) ("Rule 1006 is designed as a safeguard to assure the accuracy and correctness where a summary or chart is the only practicable means of presenting certain voluminous evidence to the fact-finder."). Indeed, "when summaries are used . . . the court must ascertain with certainty that they are based upon and fairly represent competent evidence . . . ." *United States v. Ray*, 2022 WL 558146, at *21 (S.D.N.Y. Feb. 24, 2022) (citation omitted). NYCTA's evidence fails across the board.

### A. Kozlowski's calculations are not based on admissible evidence.

NYCTA's Rule 1006 evidence is not based on admissible evidence.[4] *See Tamarin*, 13 F.3d at 53; *see also LaSalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 205 (2d Cir. 2005) ("The evidence considered on summary judgment must generally be admissible evidence."). A summary must "be based on foundation testimony connecting it with the underlying evidence summarized." *Fagiola v. Nat'l Gypsum Co. AC & S.*, 906 F.2d 53, 57 (2d Cir. 1990). "[E]vidence purporting to be a summary of a party's records can be admitted only where it is shown that the source materials were, in fact, that party's records." 31 Wright & Miller, *Fed. Prac. & Proc.* § 8043 (2d ed.); *see also United States v. Pluta*, 176 F.3d 43, 49 (2d Cir. 1999).

As explained above, Kozlowski's summaries are several steps removed from any original data from Express Scripts. Although this game of telephone may not be (as a rule) insurmountable, here, Kozlowski's deposition testimony makes certain that he cannot lay sufficient foundation to connect the calculations in his declaration to any admissible evidence. Kozlowski testified that he did not create the seven spreadsheet summaries or know how they were created (Kozlowski Dep. 250:14-21); did not disclose any documents showing how he "actually manipulated the data to get to" the summaries in his declaration (*id.* 186:14–187:16); did not review the spreadsheets to look for duplicate records or data anomalies (*id.* 136:1-24); has "no personal knowledge" of the data

---

[4] The original raw claims data was also neither produced before summary judgment nor "made available" afterward. *Tamarin*, 13 F.3d at 53. *See supra* § I.

4

used to create the summary spreadsheets (*id.* 99:3–100:10); does not know when the data in the spreadsheets was created (*id.* 102:20–103:6); cannot validate or verify that the data is accurate (*id.* 92:10-20, 135:6-16); does not know the storage file format of the original data or what software was used to create the excel spreadsheets from the original data sets (*id.* 124:16–125:15); does not know what criteria were used to isolate compound claims from the original data sets (*id.* 133:3-17); and did not consider whether multiple pharmacies were using the same name (*id.* 184:20-24). In the end, Kozlowski could not "attest" that the data he used is an "accurate" and "complete reflection" of the original claims data. *Id.* 92:21–93:6. In short, Kozlowski cannot lay a single brick establishing a foundation to connect the summary evidence with the raw claims data.

The spreadsheets prepared by non-party Caribou and relied on by Kozlowski are also inadmissible hearsay. Rule 1006 evidence "may be excluded where the summarized source materials are inadmissible hearsay or even where just some parts of those materials are inadmissible hearsay." Wright & Miller, *supra*, § 8043; *see, e.g.*, *In re Int'l Mgmt. Assocs., LLC*, 781 F.3d 1262, 1266 (11th Cir. 2015) ("Because the trustee used the summaries based on the underlying documents to prove the truth of the information contained in those documents, they are hearsay and were not admissible [under Rule 1006] unless covered by a hearsay exception."). Between the Caribou spreadsheets, whatever data Caribou used to create them, and the representations made to Kozlowski about that data,[5] the layers of hearsay are dizzying and cannot be solved by any hearsay exception, as the Caribou spreadsheets are neither party admissions (Express Scripts did not create them) nor do they qualify for the business records exception.[6] *See, e.g.*, *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 828 F. Supp. 1114, 1120 (S.D.N.Y. 1993) (refusing to apply Rule 803(6) because "the reliability of the exhibit cannot be measured" when the testifier "had insufficient knowledge of the methods of preparation, the selectivity and [the]

---

[5] Kozlowski relied on representations that the Caribou data he summarized was derived from some set of Express Scripts data, but he "did not verify" that this was true and could not identify the source data. Kozlowski Dep. 97:20–99:24.

[6] Should NYCTA rejoin that it can provide "another qualified witness" to testify on the authenticity and reliability of the Caribou spreadsheets, the original raw claims data, or both, *see* Fed. R. Evid. 803(6)(D). At some point NYCTA must be precluded from remedying Rule 26 violations with more Rule 26 violations.

methodology"), *aff'd*, 32 F.3d 690 (2d Cir. 1994).

      **B.    Kozlowski lacks the personal knowledge necessary to introduce the summary charts.**

Kozlowski is the wrong witness to introduce the summary charts. *See Serv. Emps. Int'l*, 308 F. Supp. at 132 (requiring "the witness who prepared the summary [to] introduce it"). Although Kozlowski stated in his declaration, "I created the summary charts," he did not, in fact, do so. ECF No. 125 ¶ 2. Rather, other Aon employees performed calculations, and Kozlowski had no knowledge as to how many calculations he personally did and admitted that perhaps other Aon employees may have prepared **all** the initial calculations. Kozlowski Dep. 51:13-15, 56:9-59:5, 59:24-61:2, 63:2-11, 66:5-67:5, 68:25-69:7, 72:25-73:25, 74:13-24, 75:2-76:20, 90:8-22, 91:22-92:9, 123:10-15.

      **C.    The Rule 1006 summaries must be excluded because they are inaccurate.**

Rule 1006 evidence also must be accurate and nonprejudicial. *See Serv. Emps. Int'l*, 308 F. Supp. at 132; *Earls*, 2004 WL 350725, at *9. Kozlowski's summary charts are anything but; they are riddled with errors and are incapable of replication not only by Express Scripts, but by Kozlowski himself who, when asked to replicate certain calculations, calculated—again and again—different numbers than those listed in his declaration. For example, Kozlowski calculated $3 million *less* than the number listed in Exhibit A for the value of compounds filled in December 2017, *compare* Kozlowski Dep. 173:5-176:15, *with* ECF No. 125, Ex. A, and he confirmed that he "cannot recall at this time what I did to generate the numbers that we are seeing." Kozlowski Dep. 235:17-21.

Kozlowski was also unable to replicate his calculations in Exhibit E, which lists 11 pharmacies by both name and unique pharmacy ID. To calculate the value of compounds filled by Century Pharmacy in May 2016, Kozlowski first testified that he isolated Century Pharmacy by the Pharmacy ID number listed in Exhibit E to his declaration, "3309451." *Id.* 203:14-204:18. But the value of the compounds for Century Pharmacy associated with ID 3309451 did not match up with the value disclosed in his declaration. *Id.* 206:18-209:14. Kozlowski then figured out that the

6

spreadsheet actually included the total claims for three pharmacies with the name "Century Pharmacy," each of which had a unique Pharmacy ID, rather than the Century Pharmacy with the Pharmacy ID listed in Exibit E. *Id.* 208:21–214:7. After this discovery, Kozlowski could neither explain why he considered the compound claims for all three Century Pharmacies while purporting to total the amount of compound claims associated with only one of those pharmacies nor could he otherwise clarify how he performed the analysis in the first place. *Id.* 209:14-215:6. The calculation errors did not end there. Kozlowski could not recalculate the numbers in his summary for Right Care Pharmacy's May 2016 spend (*id.* 230:13–232:21) or ProHealth Pharmacy's December 2018 spend (*id.* 243:1–247:15). In the end, Kozlowski admitted that he cannot recreate the numbers found in Exhibits A–E. *Id.* 255:3-9. *See* Wright & Miller, *supra*, § 8043 ("[T]he proponent must show that Rule 1006 evidence accurately summarizes the source materials.").

Likewise, Kozlowski's declaration describes Exhibits A and B as "reflecting the NYCTA's monthly compound claims expenditures." ECF No. 125 ¶¶ 3–4. That was also a false representation. In truth, Kozlowski testified that his calculations purport to represent amounts that *Express Scripts* reimbursed *pharmacies* for prescription drug claims; they are ***not*** the amounts that NYCTA paid to Express Scripts (i.e., "NYCTA's monthly compound claims expenditures"), which Kozlowski did not consider. *See* Kozlowski Dep. 151:11-152:13 ("I am not aware of what the Transit Authority paid ESI."); *id.* 152:14-22, 261:20–262:6. Kozlowski also did not consider whether later payment adjustments were reflected in the data, *id.* 104:17-24, 147:23–149:18, or when the original data was pulled, *id.* 102:13-19, critical details for analyzing fluid claims data.

At bottom, "[a] chart which for any reason presents an unfair picture can be a potent weapon for harm, and permitting the jury to consider it is error." *United States v. Ray*, 2022 WL 558146, at *21 (S.D.N.Y. Feb. 24, 2022) (citation omitted). Kozlowski's declaration falls short of the panacea that NYCTA represented it to be. In opposition to summary judgment, NYCTA cobbled together an unreliable, inaccurate, and prejudicial compilation of never-produced numbers to stave off dismissal. The prejudice to Express Scripts is real; NYCTA's "damages" calculations are not. Express Scripts is entitled to a summary judgment ruling that NYCTA lacks admissible

evidence of compensatory damages.

### III. NYCTA needs—but does not have—expert testimony to introduce the Rule 1006 evidence and to tie this evidence to its damages theories.

NYCTA cannot introduce its compensatory damages evidence without expert testimony. "[A] lay opinion must be the product of reasoning processes familiar to the average person in everyday life." *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005). On the other hand, "[t]he Second Circuit has made clear that if the opinion rests in any way upon scientific, technical, or other specialized knowledge," Rule 702 governs admissibility. *Leon v. Transam Trucking, Inc.*, 2020 WL 728785, at *3 (S.D.N.Y. Feb. 13, 2020) (citations omitted). NYCTA failed to disclose a damages expert by the January 11, 2021 expert disclosure deadline, and Kozlowski's testimony shows that aggregating the relevant claims data stretches far beyond the product of reasoning processes familiar to the average person in everyday life.

Caribou's six spreadsheets each contained at least 300 columns and hundreds of thousands of lines of data.[7] NYCTA's proposed method of calculating damages involves reviewing these columns to identify relevant fields (themselves comprised of esoteric nomenclature, abbreviations, and data fields); understanding how to filter the hundreds of thousands of prescription drug claims to select specific pharmacies, prescribers, and date ranges; and knowing how to exclude duplicates and account for adjustments. This process requires data manipulation through filters, "pivot tables," and formulas in other spreadsheets. *Id.* 166:14-169:11; *see id*. 176:12-13 (summing this up as "my manipulation of the data"). Not surprisingly then, when asked if he "[w]ould [] describe this as a simple mathematical exercise," Kozlowski answered, "Simple, no." *Id.* 244:4-7.

NYCTA's damages calculation process requires knowledge so specialized that even Kozlowski appears to no longer possess it. When Kozlowski was asked to duplicate his work, he consistently failed, even admitting that his efforts were "[n]ot going well." *Id.* 169:11. *See supra* § I.C. His work is not the simple aggregation that NYCTA represented to the Court, and it may

---

[7] Aon's seventh spreadsheet was slightly more manageable—it has only 18 columns and 26,901 rows.

not be introduced by a lay witness.[8] *See Lavalette v. Ion Media Networks, Inc.*, 2019 WL 3409899, at *18 (S.D.N.Y. July 29, 2019) (agreeing that the "selection of data points, and [] calculations and adjustments using those data points, involve expertise beyond a basic lay knowledge of simple arithmetic"); *Stiglitz v. Bank*, 2011 WL 13254022, at *1 (D.D.C. June 14, 2011) (holding that the "quite complicated" damages analysis "falls squarely within the type of 'specialized knowledge'" that must be offered by an expert).

NYCTA's summary evidence also reveals more problems than it solves. Without expert testimony, NYCTA's damages calculations roam hopelessly untethered from its damages theory. If NYCTA is able to "present evidence that Express Scripts breached its obligations" under the contract, ECF No. 144 at 17, NYCTA is still only "entitled to be placed in the position it would have occupied had the contract been fulfilled according to its terms." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 185 (2d Cir. 2007). In other words, the damages must compensate for the specific breach alleged. *See Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 110 (2d Cir. 2007) (requiring that damages must "actually follow" from the breach of the contract). To place NYCTA in the position it would have occupied had the contract been fulfilled, NYCTA must calculate the difference between what it paid and what it would have paid had Express Scripts fulfilled its contractual obligation to, as the Court explained, process claims in a "prudent and expert manner," "exercise due diligence in the selection and retention of Network Pharmacies," and "pursue recovery of . . . Overpayments," ECF No. 144 at 17, all the while accounting for the date of breach, which NYCTA has yet to specify. That difficult evaluation cannot be gleaned by a layperson from numbers in a chart.

Or take NYCTA's representation to the Court that its damages consist of compound drugs filled "during certain very specific periods of time . . . where the results show that their claims were huge spikes over what would have been ordinary and customary." ECF No. 123 at 23. If, for

---

[8] And even if NYCTA could circumvent its failure to disclose Kozlowski as an expert—adding another Rule 26 violation to the list—for all the reasons explained above, *see supra* § I, Express Scripts would be entitled to challenge his work through a *Daubert* motion.

9

example, NYCTA contends that every dollar of every claim submitted by a pharmacy or provider that was eventually blocked is the proper calculation of damages, then it needs an expert to explain why $1,994 in compounds filled by blocked providers in January 2019 compensates it for Express Scripts' breach, but it does not challenge the $1,131,986 in compound claims filled by non-blocked providers in the same month. ECF No. 125, Ex. A. Without an expert, NYCTA also cannot explain how paying Forest Hill Pharmacy only $4,210 and $6,438 in two months one year apart constitutes a "huge spike[] over what would have been ordinary and customary," ECF No. 123 at 23, yet it does not challenge the $968,989 and $270,884 of compound drugs filled by non-blocked providers in the same months. ECF No. 125, Exs. A, E. At bottom, NYCTA's foundation is not "stable," and its estimate of damages is not "reasonable." *See Tractebel*, 487 F.3d at 110–11. To allow NYCTA to waive these charts at a jury without an expert to connect the data to NYCTA's actual claims would be severely prejudicial.[9]

## IV. NYCTA still has not provided a calculation of its compensatory damages calculation for the non-FDA claims.

NYCTA represented that it "intends to aggregate and present a summary of . . . the non-compound claims for non-FDA approved drugs." ECF No. 123 at 24. But Kozlowski did not attempt to summarize these claims. *See* ECF No. 125. And assuming that this summary evidence would resemble the summary evidence presented already, it would be inadmissible under Rule 1006 and would require an expert to introduce it.

## CONCLUSION

Express Scripts requests that the Court grant its motion for reconsideration and grant summary judgment on NYCTA's Amended Complaint. At the least, Express Scripts requests leave to submit a rebuttal expert report on damages.

---

[9] If, however, the Court permits NYCTA to present the Kozlowski evidence at trial, Express Scripts requests leave to file a rebuttal expert on the issue of NYCTA's alleged damages. *See Rouviere v. DePuy Orthopaedics*, 2021 WL 1687478, at *5-6 (S.D.N.Y. Apr. 29, 2021) (finding good cause to allow supplemental expert report to rebut untimely new evidence); *see also Diomed, Inc. v. AngioDynamics, Inc.*, 450 F. Supp. 2d 130, 137 (D. Mass. 2006) (granting defendants leave to identify a rebuttal expert and produce a rebuttal report where plaintiff failed to timely disclose a witness's damages theory).

Dated: June 24, 2022      By:      */s/ Christopher A. Smith*
Christopher A. Smith, Admitted Pro Hac Vice
Sarah C. Hellmann, Admitted Pro Hac Vice
Matthew D. Knepper, Admitted Pro Hac Vice
Elizabeth A. Bozicevic, Admitted Pro Hac Vice
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
P: (314) 480-1500
chris.smith@huschblackwell.com
sarah.hellmann@huschblackwell.com
matt.knepper@huschblackwell.com
elizabeth.bozicevic@huschblackwell.com


Carmine J. Castellano
Hodgson Russ, LLP
605 Third Avenue, Suite 2300
New York, NY 10158
P: (212) 751-4300
ccastellano@hodgsonruss.com

***Attorneys for Defendant Express Scripts, Inc.***

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 24, 2022, the foregoing was filed electronically with the Clerk of Court, to be served through the Court's electronic filing system upon all counsel of record.

*/s/ Christopher A. Smith*

11