**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**NEW YORK CITY TRANSIT AUTHORITY,**

       Plaintiff,

       v.

**EXPRESS SCRIPTS, INC.**

       Defendant.

Case No. 1:19-cv-05196

**EXPRESS SCRIPTS, INC.'S**
**MOTIONS IN LIMINE**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES .......................................................................................................... ii

INTRODUCTION ..........................................................................................................................1

ARGUMENT ..................................................................................................................................1

MIL 1: The Court should exclude the damages totals from NYCTA's Amended Initial
Disclosures and testimony about those totals from Mr. Frye or others. ..............................1

MIL 2: The Court should exclude the Aon Report, the Caribou Datasets, and testimony on
damages from Mr. Kozlowski, Ms. Ridgway, or others......................................................9

MIL 3: The Court should exclude the total amount of money NYCTA paid during the
contract term. ....................................................................................................................13

MIL 4: The Court should exclude evidence or testimony on Express Scripts' size and
financials and Cigna's ownership of Express Scripts. .......................................................15

MIL 5: The Court should exclude evidence or testimony on NYCTA's struggling
financial situation...............................................................................................................16

MIL 6: The Court should exclude David Ross' testimony on events for which he lacks
personal knowledge or that amounts to hearsay. ...............................................................17

MIL 7: The Court should exclude evidence of damages associated with prescription drug
claims filled after April 6, 2017. .......................................................................................19

MIL 8: The Court should exclude evidence about Express Scripts' contractual
relationship with TRICARE. .............................................................................................20

MIL 9: The Court should exclude Express Scripts' reports on Dr. Cohen for other Express
Scripts' clients in March 2019. ..........................................................................................21

CONCLUSION..............................................................................................................................22

CERTIFICATE OF SERVICE .....................................................................................................23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*523 IP LLC v. CureMD.Com*,
    48 F. Supp. 3d 600 (S.D.N.Y. 2014) ........................................................................... 2, 11

*A&G Tree Serv., Inc. v. Tennessee Valley Auth.*,
    2007 WL 922172 (E.D. Tenn. Mar. 23, 2007) ................................................................. 14

*Abraham v. Leigh*,
    471 F. Supp. 3d 540 (S.D.N.Y. 2020) ............................................................................. 18

*Am. Stock Exch., LLC v. Mopex, Inc.*,
    215 F.R.D. 87 (S.D.N.Y. 2002) ................................................................................... 4, 12

*Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*,
    2019 WL 2330855 (E.D.N.Y. May 31, 2019) .................................................................. 17

*Bryant v. Farmers Ins. Exch.*,
    432 F.3d 1114 (10th Cir. 2005) ......................................................................................... 8

*Castro v. City of New York*,
    2009 WL 2461144 (E.D.N.Y. Aug. 10, 2009) ............................................................... 4, 13

*Christians of Cal., Inc. v. Clive Christian N.Y., LLP*,
    2014 WL 6467254 (S.D.N.Y. Nov. 10, 2014) ................................................................. 11

*Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*,
    650 F. Supp. 2d 314 (S.D.N.Y. 2009),
    *aff'd*, 976 F.3d 239 (2d Cir. 2020) ................................................................................... 6

*Design Strategy, Inc. v. Davis*,
    469 F.3d 284 (2d Cir. 2006) ......................................................................................... 2, 4

*Desly Int'l Corp. v. Otkrytoe Aktsionernoe Obshchestvo* "Spartak",
    2017 WL 9989599 (E.D.N.Y. June 16, 2017) ................................................................. 15

*Downey v. Adloox Inc.*,
    2018 WL 794592 (S.D.N.Y. Feb. 8, 2018) ................................................................... 2, 12

*DVL, Inc. v. Gen. Elec. Co.*,
    490 F. App'x 378 (2d Cir. 2012) ...................................................................................... 6

*Dynamic Concepts, Inc. v. Tri-State Surgical Supply & Equip. Ltd.*,
    716 F. App'x 5 (2d Cir. 2017) .......................................................................................... 8

*Edmark Auto, Inc. v. Zurich Am. Ins. Co.*,
   2019 WL 1002952 (D. Idaho Mar. 1, 2019) ........................................................ 16

*Eiben v. A. Epstein & Sons Int'l, Inc.*,
   57 F. Supp. 2d 607 (N.D. Ill. 1999) .................................................................... 14

*ESPN, Inc. v. Office of the Comm'r of Baseball*,
   76 F. Supp. 2d 383 (S.D.N.Y. 1999) .................................................................... 21

*Fournier v. Erickson*,
   242 F. Supp. 2d 318 (S.D.N.Y. 2003) .................................................................. 14

*Funk v. Belneftekhim*,
   2020 WL 7642868 (E.D.N.Y. Dec. 23, 2020) ................................................. 3, 11

*In re Lyman Good Dietary Supplements Litig.*,
   2020 WL 3414927 (S.D.N.Y. June 22, 2020) .................................................. 4, 5

*In re: Gen. Motors LLC Ignition Switch Litig.*,
   2016 WL 4410008 (S.D.N.Y. Aug. 18, 2016) .................................................. 6, 8

*IV Solutions, Inc. v. United Healthcare Serv., Inc.*,
   2014 WL 5817224 (C.D. Cal. Nov. 10, 2014) ...................................................... 16

*Lavalette v. Ion Media Networks, Inc.*,
   2019 WL 3409899 (S.D.N.Y. July 29, 2019) ........................................................ 7

*Leon v. Transam Trucking, Inc.*,
   2020 WL 728785 (S.D.N.Y. Feb. 13, 2020) .......................................................... 6

*Leong v. 127 Glen Head Inc.*,
   2016 WL 845325 (E.D.N.Y. Mar. 2, 2016) .......................................................... 12

*Lewis v. City of New York*,
   2013 WL 6283507 (S.D.N.Y. Dec. 4, 2013) ........................................................ 13

*Linkco, Inc. v. Fujitsu Ltd.*,
   232 F. Supp. 2d 182 (S.D.N.Y. 2002) .................................................................. 14

*Loussier v. Universal Music Grp., Inc.*,
   2005 WL 5644421 (S.D.N.Y. Jul. 14, 2005) ........................................................ 16

*Macolor v. Libiran*,
   2015 WL 1262256 (S.D.N.Y. Mar. 19, 2015) ................................................. 2, 13

*Moore v. Rubin*,
   2020 WL 13573582 (E.D.N.Y. Jan. 31, 2020) ..................................................... 16

*Nielsen Co. (US), LLC v. Success Sys.*,
   112 F. Supp. 3d 83 (2015) ................................................................. 20

*Park W. Radiology v. CareCore Nat. LLC*,
   675 F. Supp. 2d 314 (S.D.N.Y. 2009) ................................................ 22

*Patterson v. Balsamico*,
   440 F.3d 104 (2d Cir. 2006) ......................................................... 2, 12

*Patton v. Wal-Mart Stores, Inc.*,
   2013 WL 6158461 (D. Nev. Nov. 20, 2013) ........................................ 5

*Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*,
   2013 WL 5502852 (E.D.N.Y. Oct. 1, 2013),
   *aff'd sub nom. Dynamic Concepts, Inc. v. Tri-State Surgical Supply & Equip. Ltd.*,
   716 F. App'x 5 (2d Cir. 2017) ........................................................... 8

*Reilly v. Natwest Mkts. Grp. Inc.*,
   181 F.3d 253 (2d Cir. 1999) .............................................. 15, 16, 17

*Reyes v. Aqua Life Corp.*,
   2012 WL 12892213 (S.D. Fla. Jul. 9, 2012) ...................................... 16

*Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*,
   280 F.R.D. 147 (S.D.N.Y. 2012) ................................................... 2, 12

*Rodriguez v. JLG Indus., Inc.*,
   2012 WL 12882925 (C.D. Cal. Oct. 29, 2012) .................................. 16

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
   624 F.3d 123 (2d Cir. 2010) ......................................................... 2, 12

*Scott v. City of New York*,
   591 F. Supp. 2d 554 (S.D.N.Y. 2008) ............................................. 19

*SEC v. Am. Growth Funding II, LLC*,
   2019 WL 1748186 (S.D.N.Y. Apr. 19, 2019) .................................... 14

*Simon v. City of New York*,
   2017 WL 57860 (S.D.N.Y. Jan. 5, 2017) ...................................... 4, 13

*Smith v. Lightning Bolt,*
   *Prods.*, 861 F.2d 363 (2d Cir. 1988) .............................................. 15

*Spotnana, Inc. v. Am. Talent Agency, Inc.*,
   2010 WL 3341837 (S.D.N.Y. Aug. 17, 2010) .................................... 3

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
   538 U.S. 408 (2003) ............................................................................................ 17

*State v. United Parcel Serv., Inc.*,
   253 F. Supp. 3d 583 (S.D.N.Y. 2017),
   *aff'd*, 942 F.3d 554 (2d Cir. 2019) ...................................................................... 2

*Stiglitz v. Bank*,
   2011 WL 13254022 (D.D.C. June 14, 2011) ...................................................... 8

*Stone Brewing Co., LLC v. Millercoors LLC*,
   2021 WL 63139 (S.D. Cal. Jan. 7, 2021) ........................................................... 14

*Tamarin v. Adam Caterers, Inc.*,
   13 F.3d 51 (2d Cir. 1993) .................................................................................. 4

*Tesser v. Board of Educ.*,
   370 F.3d 314 (2d Cir. 2004) ......................................................................... 15, 17

*United States v. Garcia*,
   413 F.3d 201 (2d Cir. 2005) ........................................................................ 6, 7, 8

*Wingates, LLC v. Commonwealth Ins. Co. of Am.*,
   21 F. Supp. 3d 206 (E.D.N.Y. 2014),
   *aff'd*, 626 F. App'x 316 (2d Cir. 2015) .............................................................. 8

## **Rules**

Fed. R. Civ. P. 26 ..................................................................................... passim

Fed. R. Civ. P. 37 ..................................................................................... passim

Fed. R. Evid. 401 ............................................................................ 15, 16, 17, 22

Fed. R. Evid. 402 ......................................................................................... 15

Fed. R. Evid. 403 ............................................................................ 15, 16, 17, 22

Fed. R. Evid. 602 ......................................................................................... 18

Fed. R. Evid. 701 ........................................................................................ 6, 7

Fed. R. Evid. 702 ......................................................................................... 6

Fed. R. Evid. 801 ......................................................................................... 18

Fed. R. Evid. 1006 .................................................................................. 5, 8, 9

## INTRODUCTION

Under ¶ 5.B.i of the Court's Individual Rules and Practices in Civil Cases, Express Scripts, Inc. submits these motions in limine asking the Court to bar New York City Transit Authority from introducing certain testimony or other evidence at trial. Express Scripts seeks to exclude these specific categories of testimony and other evidence: (1) the damages totals from NYCTA's Amended Initial Disclosures and testimony about those totals from Mr. Frye or others; (2) the Aon Report, the Caribou Datasets, and testimony on damages from Mr. Kozlowski, Ms. Ridgway, or others; (3) the total amount of money NYCTA paid during the contract term; (4) Express Scripts' size and financials and Cigna's ownership of Express Scripts; (5) NYCTA's struggling financial situation; (6) David Ross' testimony on events for which he lacks personal knowledge or that amounts to hearsay; (7) damages associated with prescription drug claims filled after April 6, 2017; (8) Express Scripts' contractual relationship with TRICARE.; and (9) Express Scripts' reports on Dr. Cohen for other Express Scripts' clients in March 2019.

## ARGUMENT

**MIL 1:      The Court should exclude the damages totals from NYCTA's Amended Initial Disclosures and testimony about those totals from Mr. Frye or others.[1]**

The Court should exclude NYCTA's Amended Initial Disclosures and any testimony about them under Rule 37. Even after being sanctioned for its "repeated failures to comply with its discovery obligations" (ECF No. 178 at 9), on November 9, 2022—over two months after the Court struck Plaintiff NYCTA's prior damages calculations (and two weeks before pretrial filings were due)—NYCTA, for the first time, served Express Scripts with "Amended Initial Disclosures." *See* Ex. 1.[2] This last-minute disclosure must be excluded under Rule 37.

---

[1] NYCTA's damages disclosure in the parties' joint pretrial submission uses the same methodology as that in the Amended Initial Disclosures but is around $10 million dollars higher and includes values for three additional pharmacies. This MIL also seeks to exclude the damages totals in the joint pretrial submission, which were not disclosed to Express Scripts until the day this motion in limine is being filed.

[2] All referenced exhibits are attached to the Declaration of Elizabeth A. Bozicevic filed in support of this motion.

Rule 26 has clear disclosures requirements: "[W]ithout awaiting a discovery request," a party seeking damages must disclose "a computation of each category of damages claimed," and "make available for inspection and copying as under Rule 34 the documents or other evidentiary material . . . on which each computation is based." Fed. R. Civ. P. 26(a)(1)(A)(iii). Rule 26(a)(1)(A)(iii) is "designed to prevent undue surprise regarding damages." *State v. United Parcel Serv., Inc.*, 253 F. Supp. 3d 583, 684 (S.D.N.Y. 2017), *aff'd*, 942 F.3d 554 (2d Cir. 2019). The Rules also "require[] a party to supplement those disclosures in a timely manner should it discover that they were incorrect or incomplete." *Macolor v. Libiran*, 2015 WL 1262256, at *2 (S.D.N.Y. Mar. 19, 2015) (Furman, J.) (citing Fed. R. Civ. P. 26(e)(1)(A)). In fact, Rule 26(e) "anticipates supplemental disclosures with ever-greater level of detail as discovery progresses." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006) (citation omitted).

If a party flouts their Rule 26 disclosure requirements, "the party is not allowed to use that information . . . to supply evidence . . . at a trial, unless" the party can show that its "failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also 523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600, 634 (S.D.N.Y. 2014). Together with Rule 26, "[t]he purpose of Rule 37(c) is to prevent the practice of 'sandbagging' an adversary with new evidence." *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 156 (S.D.N.Y. 2012) (citation omitted). District courts consider four non-exclusive factors to exclude evidence under Rule 37(c): "(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the new evidence; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new evidence; and (4) the possibility of a continuance." *Downey v. Adloox Inc.*, 2018 WL 794592, at *1 (S.D.N.Y. Feb. 8, 2018) (Furman, J.) (quoting *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)); *see also S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (noting that the ultimate inquiry is whether the district court's remedy is "just"). In the end, "[a] district court has wide discretion to impose sanctions, including severe sanctions, under [Rule] 37." *Design Strategy, Inc.*, 469 F.3d at 294.

All four Rule 37(c) factors favor exclusion here. *First*, NYCTA has no explanation for its repeated Rule 26 violations. *See* ECF No. 144 at 21 ("NYCTA does not provide an explanation for its failure to comply with Rule 26(a)[.]"). Rather, NYCTA has amended its Rule 26 disclosures on the eve of trial to again "fill an evidentiary gap of its own making." ECF No. 178 at 4; *see Spotnana, Inc. v. Am. Talent Agency, Inc.*, 2010 WL 3341837, at *2 (S.D.N.Y. Aug. 17, 2010) (excluding evidence under Rule 37(c) because the party "offered no explanation for its failure to disclose a computation of its damages" and discovery had closed). *Second*, the amended damages disclosures are not critical to NYCTA's case. In denying Express Scripts' motion for reconsideration, the Court cited other record evidence that NYCTA could use at trial to show damages. ECF No. 178 at 7–8. The Court did not, as NYCTA claims (ECF No. 200 at 1–2), state that NYCTA could disclose a new set of damages calculations and a new witness to discuss those damages less than two weeks before submitting pretrial filings.

*Third*, it would be highly prejudicial to allow NYCTA to present its amended damages disclosures. Fact discovery closed in December 2020 and expert discovery closed on March 1, 2021. Had NYCTA disclosed its damages calculations at the appropriate time—at this point, years ago—rather than **two weeks** before the pretrial filings deadline, Express Scripts would have been afforded the opportunity to "adequately prepare for trial." *Funk v. Belneftekhim*, 2020 WL 7642868, at *6 (E.D.N.Y. Dec. 23, 2020) (explaining the purpose of mandatory disclosures). Express Scripts could have deposed Mr. Frye on the damages calculations, ensured that it had all the documents used to calculate damages, and most importantly, identified its own damages expert to counter NYCTA's damages calculations.[3] But now, Express Scripts cannot depose Mr.

---

[3] NYCTA continues to misleadingly claim that "Mr. Frye's summary totals are consistent with Mr. Kozlowski's summary totals[.]" ECF No. 200 at 4. Not true. For example, the value of compound prescriptions filled and authorized by all blocked pharmacies and prescribers during the contract term jumped from $62,121,247 in Mr. Kozlowski's declaration to "approximately" $67 million in the amended disclosures (and $76 million in NYCTA' pretrial filing). *Compare* ECF No. 125-1, *with* Ex. 1 at 5. For Dr. Mitchell Cohen and Dr. Jaimy Honig, NYCTA's two key prescribers, Mr. Kozlowski calculated their total value of authorized compound prescriptions at $21,925,880 and $15,855,302; NYCTA's amended damages disclosures calculate $22,304,052.40 and $17,152,909.76. *Compare* ECF No. 125-3, *and* ECF No. 125-4, *with* Ex. 1 at

Frye to determine whether he, like Vince Kozlowski and Valerie Ridgway, lacks the necessary foundational knowledge, must speculate about the "other sources of claims data and related analysis" that support the calculations (Ex. 1 at 5), and lacks the damages expert needed to counter NYCTA's calculations. *See Design Strategy, Inc.*, 469 F.3d at 297 ("The prejudice to the defendants in having to prepare for this evidence would have been severe, as discovery would have had to be reopened to determine whether [the] calculations were proper."); *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53 (2d Cir. 1993) (summary evidence is inadmissible if the underlying documents are not disclosed).

At bottom, NYCTA cannot meet its burden to show a lack of prejudice to Express Scripts if the Court allowed NYCTA to present these damages calculations at trial.[4] *See Castro v. City of New York*, 2009 WL 2461144, at *6 (E.D.N.Y. Aug. 10, 2009) ("It is *plaintiff's* burden to demonstrate lack of prejudice, not *defendants'* burden to demonstrate that they are prejudiced.") (emphasis in original). Admitting this evidence would condone NYCTA's flagrant disregard for the federal rules, handicap Express Scripts from defending a substantial and material element of the case, and undermine Rule 26 disclosures' purpose— "to avoid 'surprise' or 'trial by ambush.'" *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002).

*Finally*, "a continuance is not appropriate at this late date." *Simon v. City of New York*, 2017 WL 57860, at *6 (S.D.N.Y. Jan. 5, 2017) (Furman, J.). The Court has made clear that it has no appetite for further delays, and given this, NYCTA's "offer" to have Mr. Frye sit for a deposi-

---

5. And for Fusion Pharmacy, NYCTA's key pharmacy, Mr. Kozlowski calculated total damages as $25,157,347, yet the amended disclosures list $29,577,173.82. *Compare* ECF No. 125-2, *with* Ex. 1 at 4. The stark differences in NYCTA's own calculations highlights the unreliability of the calculations, the difficulty in creating them, and Express Scripts' need for—and now inability to secure—its own damages expert to analyze and contest the damages asserted.

[4] NYCTA represented to the Court that Express Scripts did not have a dispute over the dollar value of compound drugs listed in its Amended Initial Disclosures. (ECF No. 200 at 4). That is not true. Express Scripts is still reviewing the new damages totals, but upon its initial review, disagreement remains. For example, Express Scripts' calculations of the claims dispensed by one pharmacy is 48% lower than NYCTA's total. Express Scripts' inability to question Mr. Frye about these numbers before trial, or to present a witness to contest Mr. Frye's calculations, is undeniably prejudicial.

tion on their brand-new disclosures is an empty one.[5] *See In re Lyman Good Dietary Supplements Litig.*, 2020 WL 3414927, at *4 (S.D.N.Y. June 22, 2020) ("[T]he closure of discovery weighs strongly against the possibility of a continuance." (cleaned up)). In sum, because NYCTA cannot meet its burden to show that its Rule 26 violation is substantially justified or harmless, and that there is no prejudice to Express Scripts, the Amended Initial Disclosures and any testimony about them must be precluded under Rule 37. *See, e.g.*, *Patton v. Wal-Mart Stores, Inc.*, 2013 WL 6158461, at *5 (D. Nev. Nov. 20, 2013) (excluding amended damages disclosures from trial that were disclosed after discovery had closed).

The Court should also exclude Mr. Frye from introducing the Amended Initial Disclosures as Rule 1006 summary evidence for at least two reasons. *First*, NYCTA still has not fully disclosed the documents used to prepare the damages totals. The Amended Initial Disclosures state that NYCTA calculated the totals using the claims data produced by Express Scripts "and other sources of claims data and related analysis." Ex. 1 at 5. NYCTA does not identify these "other sources," and, to date, Express Scripts has been unable to duplicate NYCTA's calculations using the claims data Express Scripts produced.

Indeed, NYCTA's damages computation remains a moving target to this day. Although NYCTA states that "[t]he damages attributable to the pharmacies and prescribers listed above are estimated to be approximately $67 million," the "Damages Attributable" column for pharmacies and prescribers adds up to $124,270,277.65, making it impossible to know the claims and period for which NYCTA seeks damages. Ex. 1 at 4–5. What is more, just today, in the Proposed Joint Pretrial Order, NYCTA added **three new pharmacies** to its "summary evidence" that were not

---

[5] NYCTA's protest that Mr. Frye was designated as a fact witness in its 2019 initial disclosures misses the point. For one, NYCTA's disclosure that Mr. Frye has knowledge on the same five generic topics as the other 19 witnesses disclosed tells Express Scripts nothing. *See* Ex. 2 at 1–2. But more to the point, had NYCTA disclosed a damages computation when it was supposed to, Express Scripts could have discovered who NYCTA intended to use to present this evidence and planned accordingly. Even NYCTA recognizes that Mr. Frye is a "new summary witness" who will produce "new summaries." ECF No. 200 at 2. If Express Scripts had a fair chance to depose Mr. Frye on his damages calculations earlier, NYCTA would not be eagerly offering him up for a deposition now.

listed in its Amended Initial Disclosures (CareDirect Rx, Eastside Pharmacy, and Fresh Rx), and increased its total damages attributed to the pharmacies and prescribers by almost $10 million dollars, to "$76,971,961." Compare Ex. 1 at 5, *with* Proposed Joint Pretrial Order. NYCTA's summary evidence—and its portrayal of that evidence—is not reliable and a constant moving target (although always getting higher).

*Second*, the preparation of these damages calculations is neither simple nor easy. Nor is it based on information Mr. Frye obtained or work he performed in the ordinary course of his duties outside this litigation. Indeed, Mr. Frye analyzed NYCTA's claims data sometime between the Court's order on reconsideration and now. It is thus expert testimony, which NYCTA never disclosed. Rule 701 provides that a witness may offer an opinion only if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *In re: Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 4410008, at *2 (S.D.N.Y. Aug. 18, 2016) (Furman, J.) (finding witnesses' opinions violated Rule 701(c) where the issues were "beyond the ken of the average layman" (citation omitted)). As a result, "a lay opinion must be the product of reasoning processes familiar to the average person in everyday life." *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005). For that reason, "[t]he Second Circuit has made clear that '[i]f the opinion rests '*in any way*' upon scientific, technical, or other specialized knowledge, its admissibility must be determined by reference to Rule 702, not Rule 701.'"[6] *Leon v. Transam Trucking, Inc.*, 2020 WL 728785, at *3 (S.D.N.Y.

---

[6] Indeed, "[t]he purpose of this final foundation requirement is to prevent a party from conflating expert and lay opinion testimony thereby conferring an aura of expertise on a witness without satisfying the reliability standard for expert testimony set forth in Rule 702 and the [Rule 26] pre-trial disclosure requirements . . . ." *Garcia*, 413 F.3d at 215. *see generally* Fed. R. Evid. 701, Advisory Committee Notes on 2000 Amendments (explaining Rule 701 was amended to its current text "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing" and to prevent "simply calling an expert witness in the guise of a layperson"); *see, e.g.*, *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 650 F. Supp. 2d 314, 321 n.4 (S.D.N.Y. 2009), *aff'd*, 976 F.3d 239 (2d Cir. 2020) (excluding testimony of fact witness where the "proposed damages calculations amount to nothing more than lay testimony masquerading as expert testimony");

Feb. 13, 2020) (quoting *Garcia*, 413 F.3d at 215) (emphasis added). "As the proponent of lay opinion testimony, Plaintiff has the burden of establishing the prerequisites of Rule 701." *Id.*

Creating the summary damages evidence and testifying on this process requires an expert. To calculate the alleged damages, NYCTA disclosed that it used, in part, claims data produced at Express_Scripts_1095_00004729. Ex. 1 at 5. In its native form, Express_Scripts_1095_00004729, a text file, looks (in part) like this:



This unintelligible file contains NYCTA's claims information from April 2016 through May 2019 for all compound and non-compound claims adjudicated by Express Scripts. All told, the file contains data on 6 million claims with at least 47 data columns on each claim. The process required to go from text file to the table disclosed in NYCTA's Amended Initial Disclosures will presumably be no different from the process that Mr. Kozlowski misleadingly represented to the Court that he performed to create his summary charts. It involves, at a minimum, selecting columns to identify relevant fields (themselves comprised of specialized nomenclature, abbreviations, and data fields); understanding how to filter millions of prescription drug claims to select specific pharmacies, prescribers, date ranges, and compound drugs; and knowing how to exclude duplicates and account for overlap and adjustments. None of which Mr. Frye did in the regular course of his duties for this data or otherwise has any percipient knowledge of. His work was done solely for this litigation; it is thus expert not fact testimony.

For Mr. Kozlowski's part, when asked if he "[w]ould [] describe this as a simple mathematical exercise," he answered, "**Simple, no**." ECF No. 167-1 at 74 (244:4-7) (emphasis added);

---

*DVL, Inc. v. Gen. Elec. Co.*, 490 F. App'x 378, 381–82 (2d Cir. 2012) (affirming district court's Rule 37(c) exclusion of purported lay witness opining as an expert where party failed to disclose the witness as an expert under Rule 26).

*see, e.g.*, *Lavalette v. Ion Media Networks, Inc.*, 2019 WL 3409899, at *18 (S.D.N.Y. July 29, 2019) (agreeing that the "selection of data points, and [] calculations and adjustments using those data points, involve expertise beyond a basic lay knowledge of simple arithmetic"). Similarly, when NYCTA disclosed Ms. Ridgeway—its *second* post-discovery witness—to shore up the gaping holes in Mr. Kozlowski's testimony, the Court recognized that "her vague description of the steps [taken] to 'extract[],' 'limit[],' and 'export' the data from two Express Scripts files into a 'single excel spreadsheet' raises more questions than it answers[.]" ECF No. 178 at 5.

Simply put, calculating total compound spend over the contract period from millions of data points from an incomprehensible text file—and other undisclosed sources—is not "the product of reasoning processes familiar to the average person in everyday life, *Garcia*, 413 F.3d at 215; it is "based on scientific, technical, or other specialized knowledge," far "beyond the ken of the average layman," *In re: Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 4410008, at *2 (citations omitted); *see Stiglitz v. Bank*, 2011 WL 13254022, at *1 (D.D.C. June 14, 2011) (holding that the "quite complicated" damages analysis "falls squarely within the type of 'specialized knowledge'" that must be offered by an expert). For this reason, NYCTA enlisted Mr. Frye, a senior audit specialist at Aon—and before that two other specialized consultants—rather than a regular fact witness (like any of the NYCTA employees who were disclosed), to perform these calculations. NYCTA's damages calculations are not "well within the ability of anyone with a grade-school education." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005). They require an expert, which NYCTA failed to disclose when it had the chance.[7]

---

[7] Rule 37 also prevents Mr. Frye from testifying as a Rule 26(a)(2)(C) non-retained expert at this late hour. *See Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, 2013 WL 5502852, at *6 (E.D.N.Y. Oct. 1, 2013) (excluding untimely non-retained expert disclosures where opponent was "clearly prejudiced" in losing the "opportunity to retain rebuttal experts"), *aff'd sub nom. Dynamic Concepts, Inc. v. Tri-State Surgical Supply & Equip. Ltd.*, 716 F. App'x 5, 9–10 (2d Cir. 2017); *Wingates, LLC v. Commonwealth Ins. Co. of Am.*, 21 F. Supp. 3d 206, 216 (E.D.N.Y. 2014), *aff'd*, 626 F. App'x 316 (2d Cir. 2015) ("The fact that (1) the Plaintiffs' disclosed Hess as a possible lay witness and (2) Hess was previously deposed in this case, does not cure their failure to disclose him as an expert under Fed. R. Civ. 26(a)(2).").

NYCTA's Amended Initial Disclosures are untimely and prejudicial to Express Scripts, and they should be struck under Rule 37. Alternatively, the damages disclosures and Rule 1006 testimony about those disclosures should be excluded as non-compliant with admissibility under Rule 1006.

**MIL 2:**      **The Court should exclude the Aon Report, the Caribou Datasets, and testimony on damages from Mr. Kozlowski, Ms. Ridgway, or others.**

The Court has already ruled that the summary charts attached to Mr. Kozlowski's declaration are inadmissible because NYCTA lacks a witness who can lay the necessary foundation to connect the summaries to Express Scripts' raw data. ECF No. 178 at 4. The Court's order on reconsideration identified categories of documents that NYCTA "could potentially use" to present evidence of its damages, which included: (1) an Aon report titled "MTA Compound Drug Analysis" dated February 1, 2018 (AONNYCTAESI-0002270) ("**Aon Report**"); and (2) the claims dataset created by Caribou using Express Scripts' data (NYCTA000064924–NYCTA000064937) ("**Caribou Pharmacy Claims Dataset**"). *Id*. at 7–8. NYCTA's preliminary witness list identified Mr. Kozlowski and Ms. Ridgway as trial witnesses who would testify on damages. The Court should exclude the Aon Report and the Caribou Pharmacy Claims Dataset as evidence of damages and should exclude Mr. Kozlowski and Ms. Ridgway from testifying on damages.

***The Aon Report.*** The calculations in the Aon Report do not purport to tie the alleged overpayments to any breaches of the contract and the numbers are thus misleading, irrelevant, and prejudicial. The Aon Report, which Aon created for NYCTA on or around February 1, 2018, contains summary charts comparing the compound spend under Express Scripts for the first 20 months of its contract (April 1, 2016 to December 6, 2017) to the compound spend under Optum for the last full-year of its contract with NYCTA (April 1, 2015 to March 30, 2016). Ex. 3 at AONNYCTAESI-0002272. According to NYCTA's Amended Initial Disclosures, served on November 9, 2022, NYCTA is seeking three categories of damages: (1) "the value of all compound prescription claims filled and authorized" by 30 pharmacies and 26 prescribers listed in

9

the Amended Initial Disclosures, which allegedly amounts to about $67 million; (2) the total cost that NYCTA paid for compound prescriptions attributed to the fraud of the two criminally convicted former NYCTA employees, which is "subsumed by category (1)"; and (3) the "total cost to the NYCTA of non-fraudulent claims that nevertheless exceeded the scope of the Benefit Plan," which NYCTA estimates amounts to $3,215,743.30. Ex. 1 at 3–6.

None of these three categories can be calculated using the Aon Report. The Aon Report is not relevant to the first category of NYCTA's allegation damages—*i.e.*, the value of the compound claims filled by the top 30 pharmacies and 26 prescribers—because the Aon Report only contains summary information about the dollar value of compounds for the top 10 pharmacies and the top 10 prescribers through December 6, 2017. Ex. 3 at AONNYCTAESI-0002275, 2278. And the amounts attributed to the pharmacies and prescribers listed in both the Aon Report and Amended Initial Disclosures differ. *Compare* Ex. 1 at 4–5 (listing amounts attributable to the 30 pharmacies and the 26 prescribers), *with* Ex. 3 at AONNYCTAESI-0002275, 2278 (listing amounts attributable to top 10 pharmacies and top 10 prescribers). The Aon Report is also irrelevant to the second categories of damages because it does not reference the two NYCTA employees that were criminally convicted in connection with compound prescription fraud. Finally, the Aon Report is not relevant to the third category of damages because it only concerns compound spend and says nothing about the non-fraudulent claims that allegedly exceed the scope of NYCTA's benefits under the contract. For these reasons, the Aon Report is inadmissible to establish damages.

***The Caribou Pharmacy Claims Dataset.*** The Court's order on reconsideration referred to the "Pharmacy Claims Dataset" created by Caribou and produced by NYCTA at NYC-TA000064924-64937, stating that Express Scripts did not dispute that these files were produced during discovery. Express Scripts does dispute this point. As acknowledged in NYCTA's filings, NYCTA produced the Caribou Pharmacy Claims Dataset on January 29, 2021, a month after the close of fact discovery in December 2020. ECF No. 170-6. As a result, the documents were not timely produced, and Express Scripts had no opportunity to obtain discovery on them. As the

Court stated with regard to other untimely produced datasets, the production after the close of fact discovery "was plainly prejudicial to Express Scripts as it was deprived of the opportunity to obtain discovery relating to the dataset." ECF No. 178 at 7 n.7.

NYCTA produced the Caribou Pharmacy Claims Datasets during the expert discovery period, but its expert did not create the spreadsheets; she received the data and took no actions to verify its accuracy because doing so would have been too complicated. *See* Ex. 4 (Hayes Dep. 50:12-51:13). These datasets were created by Caribou (ECF No. 168 at 5 n.2), and NYCTA failed to timely disclose a witness from Caribou who could provide a foundation for the datasets and describe how they were created. Such testimony would be necessary to admit the datasets because, as the Court noted, Caribou "altered the underlying raw claims data from Express Scripts," before extracting, limiting, and exporting data into new spreadsheets. ECF No. 178 at 5. So even if the spreadsheets had been timely produced, NYCTA cannot lay a foundation for what the datasets are or how they were created. They should be excluded for this secondary reason as well.

***Damages Witnesses.*** The Court should preclude NYCTA witnesses Mr. Kozlowski and Ms. Ridgway from offering trial testimony because their post-discovery disclosure violates Rule 26. Under Rule 26 of the Federal Rules of Civil Procedure, a party must disclose the witnesses that it "may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A). "Rule 26's disclosure requirement is aimed at apprising a party of the witnesses on whom their opponent intends to rely to support their claims or defenses, so as to prevent unfair surprise and to give the party the opportunity to respond tactically." *Christians of Cal., Inc. v. Clive Christian N.Y., LLP*, 2014 WL 6467254, at *5 (S.D.N.Y. Nov. 10, 2014); *see also Funk*, 2020 WL 7642868, at *6 ("Mandatory disclosures serve to notify the parties of . . . the individuals who may have relevant information so that the parties can adequately prepare for trial.") (cleaned up).

If a party violates their Rule 26 disclosure requirements, "the party is not allowed to use that . . . witness to supply evidence . . . at a trial, unless" the party can show that its "failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *523 IP LLC*, 48 F. Supp. 3d at

634. Together with Rule 26, "[t]he purpose of Rule 37(c) is to prevent the practice of 'sandbagging' an adversary with new evidence." *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd.*, 280 F.R.D. at 156 (citation omitted). When considering whether to exclude witnesses under Rule 37(c), district courts consider four non-exclusive factors: "(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the new evidence; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new evidence; and (4) the possibility of a continuance." *Downey*, 2018 WL 794592, at *1 (quoting *Patterson*, 440 F.3d at 117); *see also S. New England Tel.*, 624 F.3d at 144 (noting that the ultimate inquiry is whether the district court's remedy is "just"). In the end, "[t]he Court has the ultimate discretion on whether to preclude witnesses from testifying at trial [under] Rule 37(c)(1)." *Leong v. 127 Glen Head Inc.*, 2016 WL 845325, at *6 (E.D.N.Y. Mar. 2, 2016) (citation omitted).

All four Rule 37(c) factors favor exclusion here. *First*, NYCTA has provided no explanation—let alone a good one—for its repeated Rule 26 violations. *See* ECF No. 144 at 21 ("NYCTA does not provide an explanation for its failure to comply with Rule 26(a)[.]"). Rather, the only explanation for introducing Mr. Kozlowski and Ms. Ridgway after the close of discovery is for NYCTA "to fill an evidentiary gap of its own making." ECF No. 178 at 4.

*Second*, Mr. Kozlowski and Ms. Ridgway's testimony is unimportant to NYCTA's case because the Court has held that their damages calculations were inadmissible. ECF No. 178 at 5. They bring no value to the case, and given the Court's order on reconsideration, Express Scripts does not understand why NYCTA included them on their pretrial witness list.

*Third*, it would be highly prejudicial to allow Mr. Kozlowski and Ms. Ridgway to testify at trial. Allowing these undisclosed witnesses to testify would skirt the purpose of Rule 26 disclosures—"to avoid 'surprise' or 'trial by ambush.'" *Am. Stock Exch., LLC*, 215 F.R.D. at 93. Express Scripts has had no opportunity to depose Ms. Ridgway or obtain written discovery from her, as NYCTA disclosed her role for the first time in NYCTA's opposition to Express Scripts' motion for reconsideration. Express Scripts deposed Mr. Kozlowski, but his counsel instructed him not to answer questions outside the scope of his damages declaration. *See* Ex. 5 (Kozlowski

Dep. at 45:12–48:21). Because the Court has excluded the evidence in that declaration, Express Scripts is left with no testimony from Mr. Kozlowski on admissible issues. Like Ms. Ridgway, if Mr. Kozlowski were to testify at trial, Express Scripts would be ambushed by brand-new testimony. *See Macolor*, 2015 WL 1262256, at *2 (finding preclusion of undisclosed witnesses "just and proper"). At bottom, NYCTA cannot meet its burden to show a lack of prejudice to Express Scripts if the Court allowed Mr. Kozlowski and Ms. Ridgway to surprise Express Scripts at trial. *See Castro*, 2009 WL 2461144, at *6 ("It is *plaintiff's* burden to demonstrate lack of prejudice, not *defendants'* burden to demonstrate that they are prejudiced.") (emphasis in original); *Lewis v. City of New York*, 2013 WL 6283507, at *1 (S.D.N.Y. Dec. 4, 2013) (Furman, J.) (excluding witness from testifying at trial when the plaintiff "fail[ed] to show that Defendants would *not* suffer such prejudice") (emphasis in original).

Finally, "a continuance is not appropriate at this late date." *Simon*, 2017 WL 57860, at *6. *See* supra at 4. In sum, NYCTA cannot meet its burden of showing that its Rule 26 violations were substantially justified or harmless. Mr. Kozlowski and Mr. Ridgway must be precluded.

**MIL 3:      The Court should exclude the total amount of money NYCTA paid during the contract term.**

The Court should exclude evidence or testimony about the total amount of money NYCTA awarded or transferred to Express Scripts over the term of the contract for all prescription claims—both compound and non-compound claims—because it is irrelevant and prejudicial. Under the contract, Express Scripts paid pharmacies for *all* NYCTA prescription claims; NYCTA then reimbursed Express Scripts for these claims' cost. ECF No. 112-1 at 17–18 (¶ 3.5). The $728 million figure referenced by NYCTA on summary judgment (ECF No. 123 at 3), was the total estimated cost to NYCTA for its members' pharmacy benefits—***including both compound and non-compound claims***—through the life of the Express Scripts PBM contract. Ex. 6. In other words, that figure includes payments to Express Scripts that merely reimburse Express Scripts for payments made to pharmacies for NYCTA's members' prescription claims. *See* Ex. 7 at MTAOIG005361. That figure is not Express Scripts' revenue or profit earned on the contract,

which if required to be established at trial, was a very small proportion of the overall number for the commercial non-EGWP services.

This figure, let alone the misrepresentation that it constitutes Express Scripts' revenue or profits (it does not), is irrelevant. NYCTA's claims pertain to compounds and a specific set of non-compound claims. NYCTA's total cost for its prescription drug benefits under the contract is not a proper measure of damages, even if NYCTA can establish breach. Nor is Express Scripts' revenue or profit under the contract relevant to damages. Unless there is a connection to damages calculations, courts have consistently barred evidence of total revenue under a contract as irrelevant. *See, e.g.*, *SEC v. Am. Growth Funding II, LLC*, 2019 WL 1748186, at *2 (S.D.N.Y. Apr. 19, 2019) ("Even if the allegedly misleading monthly statements were relevant, this evidence should be excluded because its probative value is substantially outweighed by the risk of unfair prejudice and confusion."); *Linkco, Inc. v. Fujitsu Ltd.*, 232 F. Supp. 2d 182, 191 (S.D.N.Y. 2002) (excluding defendant's sales projections as inaccurate evidence of the damages amount "because they are irrelevant, highly prejudicial to [defendant], and would tend to mislead the jury"); *A&G Tree Serv., Inc. v. Tennessee Valley Auth.*, 2007 WL 922172, at *2 (E.D. Tenn. Mar. 23, 2007) (finding "documents which refer or relate to [the contracting party]'s profit or loss under the Contract are also irrelevant" to the breach of contract claims); *Eiben v. A. Epstein & Sons Int'l, Inc.*, 57 F. Supp. 2d 607, 614 (N.D. Ill. 1999) (precluding irrelevant evidence of gross revenue); *Stone Brewing Co., LLC v. Millercoors LLC*, 2021 WL 63139, at *8 (S.D. Cal. Jan. 7, 2021) ("[T]otal revenue figures are irrelevant and would likely cause unfair prejudice.").

Presentation of Express Scripts' total revenue and profit to the jury would also be prejudicial. The figures misleadingly suggest that Express Scripts made hundreds of millions of dollars from the contract, which could prejudice and confuse the jury. *See Fournier v. Erickson*, 242 F. Supp. 2d 318, 330 (S.D.N.Y. 2003) (excluding under Rule 403 a document with speculative revenue and profit figures based on the large "size of the figures" which "are likely to significantly prejudice the jury"); *Desly Int'l Corp. v. Otkrytoe Aktsionernoe Obshchestvo "Spartak"*, 2017 WL 9989599, at *3 (E.D.N.Y. June 16, 2017) (excluding under Rule 403 imprecise and

incorrect descriptions of the defendant's revenue and profit because it "will have an entirely predictable effect: the jury, with likely prejudice to [the defendant], will be misled and confused, in a case that is already complex").

**MIL 4:**     **The Court should exclude evidence or testimony on Express Scripts' size and financials and Cigna's ownership of Express Scripts.**

The Court should exclude evidence or testimony about Express Scripts' gross revenues, relative size, and parent company Cigna Corporation because it is irrelevant and prejudicial under Rules 401, 402, and 403.

*First*, Express Scripts' general financial circumstances are irrelevant to whether it satisfied its obligations under the contract or to any other disputed fact. Express Scripts expects that NYCTA will seek to introduce evidence about Express Scripts generally being a large and profitable company, but that evidence should be excluded because it is not "of consequence in determining" any issue in this case. Fed. R. Evid. 401(b). "Evidence of wealth . . . is generally inadmissible in trials not involving punitive damages." *Tesser v. Board of Educ.*, 370 F.3d 314, 318 (2d Cir. 2004) (quoting *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 266 (2d Cir. 1999)). This is a breach of contract case, and NYCTA does not (and could not) seek punitive damages.

Because Express Scripts' size and financials are irrelevant, allowing NYCTA to exploit Express Scripts' size or financial position would be prejudicial. This evidence may incite the jury toward abandoning its duty to objectively observe and assess the facts and instead favor liability solely based on Express Scripts' perceived ability to pay damages. *See Smith v. Lightning Bolt Prods.*, 861 F.2d 363, 373–74 (2d Cir. 1988) ("[I]t often would be prejudicial to a defendant to attempt to litigate its financial condition during the trial on the issues of liability and compensatory damages[.]"). In other words, this evidence "can be taken as suggesting that the defendant should respond in damages because he is rich[.]" *Reilly*, 181 F.3d at 266 (citation omitted); *see also, e.g.*, *Loussier v. Universal Music Grp., Inc.*, 2005 WL 5644421, at *2 (S.D.N.Y. Jul. 14, 2005) ("Any probative value that evidence of [defendants'] wealth, financial condition, and unrelated revenues may have during the liability phase of the trial is substantially outweighed by the

danger of unfair prejudice that might result from jurors basing their conclusions on the relative wealth of the parties."); *Moore v. Rubin*, 2020 WL 13573582, at *2 (E.D.N.Y. Jan. 31, 2020) (granting motion in limine in bifurcated trial to exclude evidence of net worth unless jury found liability); *IV Solutions, Inc. v. United Healthcare Serv., Inc.*, 2014 WL 5817224, at *4–*5 (C.D. Cal. Nov. 10, 2014) (granting motions in limine to exclude evidence of relative wealth, net worth, size, and revenue).

*Second*, reference to Cigna Corporation—Express Scripts' parent company—is similarly irrelevant and prejudicial. Cigna is not a party to this case, and the only reason NYCTA would try to inject Cigna into the case is to evoke its size and financial success. "In general, . . . presentation of a parent company's financial information is inappropriate because the evidence is irrelevant and unfairly prejudicial when just the subsidiaries' conduct is at issue." *Edmark Auto, Inc. v. Zurich Am. Ins. Co.*, 2019 WL 1002952, at *3 (D. Idaho Mar. 1, 2019). Only Express Scripts' conduct is at issue, so Cigna is irrelevant here. *See, e.g.*, *Rodriguez v. JLG Indus., Inc.*, 2012 WL 12882925, at *12 (C.D. Cal. Oct. 29, 2012) (granting motion in limine to preclude references to defendants' "wealth, insurance status, and relationship to" its non-party parent company); *Reyes v. Aqua Life Corp.*, 2012 WL 12892213, at *2 (S.D. Fla. Jul. 9, 2012) (excluding evidence of wealth, net worth, and income of defendant's corporate owners under Rules 401 and 403).

**MIL 5:**     **The Court should exclude evidence or testimony on NYCTA's struggling financial situation.**

Express Scripts expects that NYCTA will try to introduce evidence on its poor financial situation because it has invoked NYCTA's "dire financial condition" throughout the case. ECF No. 42 (Am. Compl.) ¶ 70; *see also id.* ¶ 1 (referencing the "substantial financial challenges" facing New York City's "massive and aged subway and bus system"). The Court should exclude evidence or testimony on the financial situation of NYCTA because it is irrelevant and prejudicial under Federal Rules of Evidence 401 and 403.

Evidence of NYCTA's financial condition should be excluded because it is irrelevant— not "of consequence in determining" the elements of the remaining breach of contract claims.

Fed. R. Evid. 401(b). In fact, "[e]vidence of wealth . . . is generally inadmissible in trials not involving punitive damages." *Tesser*, 370 F.3d at 318 (quoting *Reilly*, 181 F.3d at 266). And it is unduly prejudicial for NYCTA to portray itself as a cash-strapped public agency to "characteriz[e] th[e] dispute as a battle between David and Goliath." *Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, 2019 WL 2330855, at *5 (E.D.N.Y. May 31, 2019). Just as courts must guard against the "potential that juries will use their verdicts to express biases against big businesses," *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003), so too must courts ensure that jurors will not be motivated to decide liability or damages out of sympathy or with the desire to ameliorate the condition of a public transit system that they may very well rely on for transportation.

**MIL 6:**     **The Court should exclude David Ross' testimony on events for which he lacks personal knowledge or that amounts to hearsay.**

NYCTA's witness list includes David Ross, whom NYCTA states it will call to testify on "the circumstances of how he learned about the problem" and to "place [NYCTA]'s excess compound spend into the [Metropolitan Transit Authority's] broader fiscal context." As discussed above, the Court should exclude NYCTA's proposed testimony from Mr. Ross concerning "MTA's broader fiscal context." *See supra* at 15–16 (MIL No. 4). The Court should also exclude NYCTA's proposed testimony from Mr. Ross related to any events for which Mr. Ross lacks personal knowledge. It is apparent from NYCTA's trial witness list and from Mr. Ross's prior affidavit filed in the related New York state court action (Ex. 8), NYCTA intends to use Mr. Ross as a mouthpiece for their affirmative case. But Mr. Ross was not employed by NYCTA; he was Chief Procurement Officer for the MTA, which oversees the NYCTA among other departments. Ex. 9 (Ross Dep. at 18:23-25). The MTA did not hire Mr. Ross until ***August 2017***, after most of the relevant events. *Id.* Most importantly, Mr. Ross did not learn about NYCTA's compound spend until November 2018 (when Jim Masella asked Mr. Ross to recommend to the MTA board that it extend the NYCTA-Express Scripts contract for another year), long after the relevant events relating to NYCTA's breach of contract claim occurred. *Id.* at 44:12–46:23. All

of his purported knowledge is thus second-hand, based on what he purportedly heard from others.

The Court should exclude any of Mr. Ross' testimony on events for which he lacks personal knowledge or that amounts to hearsay. Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); Fed. R. Evid. 801. Mr. Ross was not involved with NYCTA or Express Scripts in the relevant day-to-day events—in fact, Mr. Ross has testified that he categorically knows nothing about any individual claim under the contract because it was not his "specific responsibility" to "manage the vendor that was managing claims." Ex. 9 (Ross Dep. at 148:18–149:10) ("I've said, categorically, that I don't know or remember specifics with – with regard to any individual claim under the contract. And that should be of no surprise to anyone, given that I was managing a Contracts Office with a hundred people and it was not my specific responsibility under this contract to manage claims or manage the vendor that was managing claims."). Mr. Ross also lacks personal knowledge about: Express Scripts' pharmacy selection or monitoring practices, *id.* at 138:3-13; payments, including overpayments, for any claims, *id.* at 141:19–142:17; Aon audits of Express Scripts' performance, *id.* at 142:18–143:3; reporting that Express Scripts provided NYCTA during the contract concerning compound claims, *id.* at 150:4–13; and Express Scripts' fraud investigations, *see id.* at 150:14–25.

Instead, Mr. Ross gained any knowledge he has from "getting briefed and having discussions with people from Aon and from the MTA office responsible for managing the Express Scripts contract." *Id.* at 144:1-20; *see also id.* at 157:6–18 ("that's belief and understanding based on conversations with the Project Office and the payor"). Such testimony should be excluded. *Abraham v. Leigh*, 471 F. Supp. 3d 540, 554 (S.D.N.Y. 2020) (excluding testimony of witness who "had no firsthand knowledge of these facts, and could have only learned them from others"); *Scott v. City of New York*, 591 F. Supp. 2d 554, 566 (S.D.N.Y. 2008) ("No such exemption or exclusion exists for 'common knowledge' testimony. Nor may hearsay become personal knowledge just because a witness has internalized statements made by others and decided they

must be true. Even if a witness attests that she has received the same information from many sources, it does not overcome the fundamental notion that the witness is repeating the content of out-of-court statements. Unattributed out-of-court statements also cannot be offered in court to build a foundation for testimony that relies on no other source. This formulation merely re-phrases the hearsay rule."). Mr. Ross thus lacks personal knowledge about any events through November 2018.

**MIL 7:**     **The Court should exclude evidence of damages associated with prescription drug claims filled after April 6, 2017.**

NYCTA claims that Express Scripts breached the contract by not informing NYCTA of "outlier" pharmacies and prescribers, red flags associated with those providers, and investiga-tions conducted into them. ECF No. 123 (NYCTA's Opp. Summ. J.) at 1–2, 13. NYCTA claims that if Express Scripts had provided NYCTA with this information, then it could have blocked the providers earlier than it ultimately did. *Id.* at 13. For example, NYCTA argues that if Express Scripts had notified it of the high compound spend associated with Dr. Cohen and Fusion Phar-macy—it would have blocked these providers earlier and prevented millions of dollars in com-pound costs. *Id.*

Under this theory of breach, causation, and damages, Express Scripts' liability should cease once it brought the "outlier" pharmacies and physicians to NYCTA's attention. Express Scripts did just that on April 6, 2017. On that day, Express Scripts provided NYCTA with a list identifying the top 25 prescribers and top 25 pharmacies based on the cost of the compound drugs prescribed and filled ("April 6 List"). In other words, Express Scripts provided NYCTA with a list of "outliers," after which point, under NYCTA's own theory, the burden shifted to NYCTA to block those pharmacies and providers—as Express Scripts cannot block them with-out a request by NYCTA—which NYCTA ultimately did. Indeed, of the 30 pharmacies that NYCTA blocked, 10 were included on the April 6 List. *See* Ex. 10 at Ex-press_Scripts_1095_00161253. Of the 26 prescribers blocked, 5 were included on the April 6 List, including Drs. Cohen and Honig. *Compare id.*, *with* Ex. 1 at 5. Because NYCTA's delay in

blocking those providers is attributed solely to NYCTA, admitting evidence of the value of post-April 6, 2017 claims attributed to the 10 blocked pharmacies and the 5 blocked providers on the April 6 List would be misleading and prejudicial to Express Scripts.

**MIL 8:     The Court should exclude evidence about Express Scripts' contractual relationship with TRICARE.**

In its Amended Complaint, NYCTA invoked Express Scripts' prior work as TRICARE's PBM as evidence that Express Scripts "was well-aware of the growing problem of compound prescription drug fraud before it became the NYCTA's PBM." ECF No. 42 (Am. Compl.) ¶¶ 46–47. But evidence relating to TRICARE—which has a separate contract with Express Scripts—is irrelevant, prejudicial, and will require a mini trial to explain. This evidence should be excluded.

NYCTA brought this action claiming that Express Scripts breached the parties' PBM contract. To succeed on its breach of contract claim, NYCTA must prove, among other things, that Express Scripts' failure to perform under the contract damaged NYCTA. *See Nielsen Co. (US), LLC v. Success Sys.*, 112 F. Supp. 3d 83, 97 (2015) (listing elements of breach of contract). Accordingly, the only relevant evidence to NYCTA's case is what can establish whether Express Scripts performed under *this specific* PBM contract—not whether there are analogous facts associated with a different contract. NYCTA here insinuates that Express Scripts' relationship with TRICARE informs Express Scripts' failure to perform. But other than a superficial similarity—that TRICARE experienced issues with fraudulent compound spend—Express Scripts' relationship with TRICARE is irrelevant to the issues here. In particular, Express Scripts' relationship with TRICARE (i) was governed by a bespoke contract with its own terms, (ii) covered an exponentially larger and more geographically diverse set of covered lives than NYCTA, and (iii) took place before NYCTA's contract became effective. Any attempt to link the TRICARE experience with Express Scripts' conduct vis-à-vis NYCTA cannot be permitted.

Even if the Court sees some probative value, NYCTA's stated purpose for discussing TRICARE is, in fact, uncontested by Express Scripts. Express Scripts has never disputed that it understood the implications and risks of a prescription drug plan covering compound drugs. Its

20

own witnesses have testified that by the time the NYCTA PBM Contract went into effect, it was aware of how compound drug spend had become an industry-wide issue for prescription drug plans, especially those like NYCTA that covered compound claims without exception. *See* Ex. 11 (Stockwell Dep. 40:5-20); Ex. 12 (Dalal Dep. 96:16–100:20). Contemporaneous documents establish that during the contract set-up process and in the first months after the NYCTA PBM Contract became effective, Express Scripts advised NYCTA that it was vulnerable to elevated compound drug expenses and that it should take preventive measures. *See* Exs. 13–14. Thus, there is no need for introducing evidence relating to TRICARE in the first instance.

The real reason NYCTA seeks to introduce evidence about TRICARE is to draw false and misleading equivalencies between TRICARE and NYCTA that only prejudice Express Scripts, confuse the jury, and require a mini trial to correct. In its opposition to summary judgment, NYCTA suggested that TRICARE was "unable to implement" Express Scripts' Compound Management Solution. ECF No. 123 at 10. Setting aside that the record ultimately established that not even NYCTA was "unable to implement" the Compound Management Solution, nothing in the record supports NYCTA's assertion. This example shows the type of misperception and prejudice that can result from NYCTA's attempt to compare one client's circumstances to another where the commercial relationships are disparate and varied. Such irrelevant and unnecessary evidence can only confuse and distract the jury from the key issues here and should thus be excluded. *See, e.g.*, *ESPN, Inc. v. Office of the Comm'r of Baseball*, 76 F. Supp. 2d 383 (S.D.N.Y. 1999) (excluding evidence of prior acts to avoid a trial within a trial where "other, better evidence" exists).

**MIL 9:      The Court should exclude Express Scripts' reports on Dr. Cohen for other Express Scripts' clients in March 2019.**

The Court should exclude NYCTA exhibits PX-26, PX-138, PX-139, PX-140, and PX-141 as irrelevant under Rule 401 or Rule 403. Each of these proposed exhibits is an investigation report concerning Dr. Mitchell Cohen issued to other Express Scripts clients ***in March 2019 <u>after</u>*** NYCTA notified Express Scripts it would not extend the contract, ***<u>after</u>*** NYCTA implement-

ed the compound management solution, and a year **_after_** NYCTA blocked Dr. Cohen from its plan (February 27, 2018). These reports, prepared after the relevant period and for separate clients under different contracts, are irrelevant to NYCTA's claims. *See* Ex. 15 (Battelle Dep. 224:8-19, 261:17–262:12). No report discusses NYCTA or its members' prescription claims. Nor are they probative of Express Scripts' knowledge of Dr. Cohen or his prescriptions to NYCTA members during the relevant events. Moreover, if the reports are admitted, Express Scripts would need to seek leave to amend the exhibit list to include the related contracts, and then conduct mini-trials as to the provisions of those separate contracts. *See Park W. Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314, 325 (S.D.N.Y. 2009) (excluding evidence because of the "risk of turning the trial into a multi-ringed sideshow of mini-trials on collateral issues pertaining to the conduct and relationships of third parties that may have only tangential bearing, if at all, to the issues and claims disputed in this case." (cleaned up)).

## CONCLUSION

Express Scripts asks the Court to grant the above motions in limine.

Dated:  November 23, 2022          By: */s/ Elizabeth A. Bozicevic*
Christopher A. Smith, *Admitted Pro Hac Vice*
Sarah C. Hellmann, *Admitted Pro Hac Vice*
Elizabeth A. Bozicevic, *Admitted Pro Hac Vice*
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
P: (314) 480-1500 / F: (314) 480-1505
chris.smith@huschblackwell.com
sarah.hellmann@huschblackwell.com
elizabeth.bozicevic@huschblackwell.com

Michael J. Lyle, *Admitted Pro Hac Vice*
Eric Lyttle, *Admitted Pro Hac Vice*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I St. NW, Ste. 900
Washington, DC 20005
Tel.: 202-538-8000
Fax: 202-538-8100
mikelyle@quinnemanuel.com
ericlyttle@quinnemanuel.com

Rollo Baker
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel.: 212-849-7000
Fax: 212-849-7100
rollobaker@quinnemanuel.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 23, 2022, the foregoing was filed electronically with the Clerk of Court, to be served by operation of the Court's electronic filing system upon all counsel of record.

*s/ Elizabeth A. Bozicevic*