**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NEW YORK CITY TRANSIT AUTHORITY,

NO. 1:19-CV-5196-JMF

Plaintiff,

V.

EXPRESS SCRIPTS, INC.,

Defendant.

### THE NYCTA'S MEMORANDUM OF LAW IN SUPPORT OF MOTIONS IN *LIMINE* NUMBERS 1-6

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Phone: (212) 589-4200
Fax: (212) 589-4201
John Siegal
Maximillian S. Shifrin
Stephanie A. Ackerman
Alexa T. Bordner

*Attorneys for Plaintiff*
*New York City Transit Authority*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................... 1

EVIDENTIARY STANDARDS .................................................................................................. 2

I.     MOTION *IN LIMINE* NUMBER 1 TO PRECLUDE ANY MENTION BEFORE THE JURY OF THE COURT'S ORDER EXCLUDING MR. KOZLOWSKI'S SUMMARY EVIDENCE CHARTS AND THE RELATED FEE AWARD TO ESI ............................ 4

II.    MOTION *IN LIMINE* NUMBER 2 TO EXCLUDE THE MTA ALJ'S DETERMINATION THAT THE PRIOR ARBITRATION AWARD DID NOT PRECLUDE THE TA FROM IMPLEMENTING ESI'S COMPOUND MANAGEMENT SOLUTION ("CMS") ........................................................................... 6

III.   MOTION *IN LIMINE* NUMBER 3 TO EXCLUDE EVIDENCE REGARDING ESI'S ENHANCED FRAUD, WASTE AND ABUSE PROGRAM, INCLUDING THAT THE TA COULD HAVE PURCHASED IT .......................................................... 8

IV.   MOTION *IN LIMINE* NUMBER 4 TO EXCLUDE ESI'S REBUTTAL EXPERT WITNESS FROM TESTIFYING ON TOPICS NOT DISCLOSED IN HIS REPORT OR NOT RELEVANT ................................................................................................. 9

V.    MOTION *IN LIMINE* NUMBER 5 TO PROHIBIT ESI FROM CALLING THE TA'S 30(B)(6) WITNESSES TO TESTIFY AT TRIAL ....................................... 11

VI.   MOTION *IN LIMINE* NUMBER 6 TO PRECLUDE ESI FROM CHALLENGING THE AUTHENTICITY OR ADMISSIBILITY OF ITS OWN CLAIMS DATA AS PRODUCED IN THIS LITIGATION ............................................................................ 14

CONCLUSION ......................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Analytics, Inc. v. Citigroup Global Mkts., Inc.*,
301 F.R.D. 31 (S.D.N.Y. 2014) ....................................................................................10

*Arlio v. Lively*,
474 F.3d 46 (2d Cir. 2007)..........................................................................................10

*Barbarian Rugby Wear, Inc. v. PRL USA Holdings, Inc.*,
No. 06 Civ. 2652(JGK), 2009 WL 884515 (S.D.N.Y. Mar. 31, 2009) ....................................5

*Bieda v. JC Penny Communications*,
No. 92 CIV. 5910, 1995 WL 437689......................................................................................14

*Boykin v. W. Express, Inc.*,
No. 12-cv-7428 (NSR) (JSM), 2016 WL 8710481 (S.D.N.Y. Feb. 5, 2016) ..........................3

*Contreras v. Artus*,
778 F.3d 97 (2d Cir. 2015)....................................................................................................3, 10

*Curtis v. Perkins (In re Int'l Mgmt. Assocs., LLC)*,
781 F.3d 1262 (11th Cir. 2015) .............................................................................................14

*In re Enron Creditors Recovery Corp.*,
376 B.R. 442 (Bankr. S.D.N.Y. 2007)...................................................................................15

*Gonzales v. Barrett Bus. Servs., Inc.*,
No. CV-05-0104-EFS, 2006 WL 1582380 (E.D. Wash. June 6, 2006)....................................5

*Henry v. Wyeth Pharms., Inc.*,
616 F.3d 134 (2d Cir. 2010)......................................................................................................5

*Highland Capital Mgmt., L.P. v. Schneider*,
551 F. Supp. 2d 173 (S.D.N.Y. 2008).......................................................................................2

*LaMarca v. United States*,
31 F. Supp. 2d 110 (E.D.N.Y. 1998) ......................................................................................10

*Levy v. Bessemer Trust Co., N.A.*,
No. 97 Civ. 1785 (JFK), 2000 WL 1300402 (S.D.N.Y. Sept. 14, 2000)..........................12, 13

*In re McFadden*,
471 B.R. 136 (Bankr. D.S.C. 2012)........................................................................................15

*NYCTA v. ESI*,
    2022 WL 3577426*1 (S.D.N.Y. Aug. 19, 2022)......................................................4, 9, 10, 14

*Palmieri v. Defaria*,
    88 F.3d 136 (2d Cir. 1996).............................................................................................2

*Perry v. Ethan Allen, Inc.*,
    115 F.3d 143 (2d Cir. 1997)...........................................................................................4

*PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*,
    520 F.3d 109,119 (2d Cir. 2008)....................................................................................5

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*,
    592 B.R. 513 (Bankr. S.D.N.Y. 2018).......................................................................14, 15

*Sprint/United Mgmt. Co. v. Mendelsohn*,
    552 U.S. 379 (2008).......................................................................................................3

*United States v. Beech-Nut Nutrition Corp.*,
    871 F.2d 1181 (2d Cir. 1989).........................................................................................3

*United States v. Caldwell*,
    776 F.2d 989 (11th Cir. 1985) ......................................................................................15

*United States v. Gupta*,
    747 F. 3d 111 (2d Cir. 2014)..........................................................................................3

*United States v. Potapova*,
    880 Fed. Appx. 14 (2d Cir. 2020)..................................................................................3

*United States v. Sine*,
    493 F.3d 1021 (9th Cir. 2007) .......................................................................................7

*Yeager v. United States*,
    557 U.S. 110 (2009)........................................................................................................3

## Rules

Fed. R. Civ. P. 26(a)(2)(B)(i)..................................................................................................10

Fed. R. Civ. P. 30(b)(6)..................................................................................................2, 11

Fed. R. Civ. P. 32(a)(3)........................................................................................................12

Fed. R. Civ. P. Rule 37(c)(1)................................................................................................10

Fed. R. Evid. 104 ...................................................................................................................3

Fed. R. Evid. 401 .................................................................................................3, 5, 10

Fed. R. Evid. 402 .................................................................................................3, 5, 10

Fed. R. Evid. 403 .......................................................................................................3, 5

Fed. R. Evid. 602 ..........................................................................................................12

Fed. R. Evid. 803(6) ......................................................................................................15

Fed. R. Evid. 901 ....................................................................................................14, 15

Fed. R. Evid. 901(b)(1) .................................................................................................14

## Other Authorities

Weinstein's Fed. Evid. § 401.04[2][b] (2021) ...............................................................3

Weinstein's Fed. Evid. § 402.02[1] (2021) ...............................................................3, 10

Plaintiff the New York City Transit Authority (the "TA") respectfully submits this memorandum of law and the Declaration of Stephanie A. Ackerman ("Ackerman Decl.") in support of its motions *in limine* 1-6.

## PRELIMINARY STATEMENT

There are two remaining issues for trial in this case.

The first is whether defendant Express Scripts, Inc. ("ESI") breached its contractual obligations and duty of care to manage the TA's prescription drug benefit using "that degree of care and reasonable diligence that an experienced and prudent plan administrator of pharmacy benefits under a group health plan familiar with such matters would use acting in like circumstances, and consistent with industry standards" when it failed to timely identify and promptly notify the TA of outlier compound prescription drug claims submitted through out-of-state pharmacies and prescribers so that the TA could authorize corrective action.

The second is the amount of damages the TA is entitled to recover to compensate it for the overspending approved by ESI on compound prescription claims that would have been avoided through ESI's proper exercise of its contractual obligations under the governing duty of care.

The TA moves *in limine* to exclude ESI's discussion of irrelevant and prejudicial evidence that would serve only to confuse the issues, mislead the jury and prolong the trial.

In motion *in limine* Number 1, the TA seeks preclusion of any reference in the presence of the jury to the TA's earlier attempt to submit damages summaries through Aon witness Vincent Kozlowski and this Court's prior ruling barring those summaries and imposing discovery sanctions.

Through motion *in limine* Number 2, the TA seeks to exclude from evidence the non-binding 2019 internal MTA Administrative Law Judge decision contrary to a controlling 2004

1

arbitration award concerning whether collective bargaining was required for changes in the TA's benefits plan that would require pre-approval of all compound prescription claims.

In motion *in limine* Number 3, the TA seeks to exclude testimony regarding ESI contract provisions that were not in force and effect here through which ESI provided to other customers an optional so-called enhanced fraud waste and abuse program.

Motion *in limine* Number 4 concerns subjects addressed by the TA's expert witness, Dr. Susan Hayes, on which ESI's rebuttal expert did not offer any opinion in his report and therefore should be precluded from addressing at trial.

Through motion *in limine* Number 5, the TA seeks to preclude ESI from calling the TA's Federal Rule of Civil Procedure 30(b)(6) witnesses, in-house lawyer Bonnie Harper and Director of Risk and Insurance Phyllis Rachmuth, as trial witnesses because the proposed testimony is outside the scope of the Rule 30(b)(6) deposition testimony they provided and would entail only information of which they lack personal knowledge and that they could only know from receiving privileged (and hearsay) information in the course of their duties within and through discussions with the MTA's Office of General Counsel.

In motion *in limine* Number 6, the TA seeks to preclude ESI from raising admissibility and hearsay challenges to the TA's use of ESI's own claims data, produced during discovery, in ESI's continuing attempt to block the TA's presentation of its damages claims.

## **EVIDENTIARY STANDARDS**

The purpose of a motion *in limine* is "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence . . . without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (pending appeal on other grounds); *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) ("A district court's inherent authority to manage the course of its trials

encompasses the right to rule on motions *in limine*.").  Under Fed. R. Evid. 104, the Court has

full discretion to determine preliminary questions concerning the admissibility of evidence.  *See*

Fed. R. Evid. 104; *see also Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008)

(holding a district court has "wide discretion in determining the admissibility of evidence");

*United States v. Gupta*, 747 F. 3d 111, 137 (2d Cir. 2014) (same).

Fed. R. Evid. 402 prohibits the admission of irrelevant evidence, as defined in Fed. R.

Evid. 401, to ensure "nothing is received into evidence that is not logically probative of some

matter to be proved." 2 Weinstein's Federal Evidence § 402.02[1] (2021); *see* Fed. R. Evid. 401

advisory committee notes (1972) (noting a court must determine whether the evidence

"possesses sufficient probative value to justify receiving it into evidence"); *see, e.g.*, *Contreras v.*

*Artus*, 778 F.3d 97, 108 (2d Cir. 2015).  Relevant evidence has a purpose in a trial and helps

prove or disprove a material fact at issue in the litigation.  *See, e.g.*, *Yeager v. United States*, 557

U.S. 110, 121-22 (2009) (evidence is not relevant when it fails to make a fact more or less

probable); *see also* 2 Weinstein's Federal Evidence § 401.04[2][b] (2021) (relevant evidence

"advance[s] the inquiry").

Even relevant evidence should be excluded if the court finds "its probative value is

substantially outweighed by a danger of one or more of the following: unfair prejudice,

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

cumulative evidence."  Fed. R. Evid. 403; *Boykin v. W. Express, Inc.*, No. 12-cv-7428 (NSR)

(JSM), 2016 WL 8710481, at *1 (S.D.N.Y. Feb. 5, 2016); *see also, United States v. Potapova*,

880 Fed. Appx. 14, 16 (2d Cir. 2020).  Under Rule 403, "the trial court [has] broad discretion to

exclude even relevant evidence if its probative value is substantially outweighed by the danger of

confusion of the issues or if it would be needlessly cumulative."  *United States v. Beech-Nut*

*Nutrition Corp.*, 871 F.2d 1181, 1193 (2d Cir. 1989).  Prejudice is "unfair" if the evidence has

"an undue tendency to suggest decision on an improper basis." *Perry v. Ethan Allen, Inc.*, 115

F.3d 143, 151 (2d Cir. 1997) (quoting Fed. R. Evid. 403 advisory committee notes (1972)).

## I.      MOTION *IN LIMINE* NUMBER 1 TO PRECLUDE ANY MENTION BEFORE THE JURY OF THE COURT'S ORDER EXCLUDING MR. KOZLOWSKI'S SUMMARY EVIDENCE CHARTS AND THE RELATED FEE AWARD TO ESI

The Court has precluded the TA from offering certain evidence in support of its damages

at trial.  ESI should likewise be precluded from referring to that excluded evidence or the Court's

ruling on that issue in the presence of the jury.

The TA originally submitted summary evidence of its damages in opposition to ESI's

motion for summary judgment through the declaration of Mr. Vincent Kozlowski.  *NYCTA v.*

*ESI*, 2022 WL 3577426*1, *2 (S.D.N.Y. Aug. 19, 2022) ("*Reconsideration Decision*").  The

Court's August 19, 2022 decision denying ESI's motion for reconsideration excluded those

summary exhibits because Mr. Kozlowski was unable to lay proper foundation.  *Reconsideration*

*Decision*, 2022 WL 3577426 at *3.[1]  In conjunction with its exclusion of Mr. Kozlowski's

exhibits, the Court awarded ESI its attorney's fees for post-summary judgment discovery and

reconsideration briefing. *Id.* at *5.  Neither the precluded exhibits nor the award of attorneys fees

are relevant to the remaining issues for trial, and thus ESI should be precluded from discussing

them before the jury.

The Court's August 19, 2022 findings regarding the admissibility of the Kozlowski

Declaration and exhibits are irrelevant to the remaining claims in this action because they are no

longer in the case, will not be presented to the jury, and have no bearing on the evidence that *will*

---

[1] The Court did not, however, exclude the ESI Claims Data or prohibit the TA from relying on it to prepare and present summary exhibits as evidence at trial.  The TA plans to present summary evidence of damages prepared using the ESI Claims Data through a previously disclosed witness, Aon auditor Derek Frye.

be presented to the jury. Nor does the fee award—either the fact that it was awarded or the amount—have any bearing on the issues remaining for trial. *See Barbarian Rugby Wear, Inc. v. PRL USA Holdings, Inc.*, No. 06 Civ. 2652(JGK), 2009 WL 884515, at *8 (S.D.N.Y. Mar. 31, 2009) (excluding discussion of attorney fees as irrelevant "and any probative value . . . would be substantially outweighed by the danger of unfair prejudice before the jury under Federal Rule of Evidence 403"); *Gonzales v. Barrett Bus. Servs., Inc.*, No. CV-05-0104-EFS, 2006 WL 1582380, at *22 (E.D. Wash. June 6, 2006) (excluding evidence concerning counsel's fee arrangement under Rules 401 and 402).

ESI alluding to the Court's decision excluding Mr. Kozlowski's charts and awarding fees to ESI in the presence of the jury would also create a real risk of prejudice against the TA—indeed, that would appear to be the only conceivable purpose for mentioning the episode given its irrelevance to the remaining issues for trial.  The jury could find that the exclusion of the charts demonstrated deficiencies in the TA's evidence leading the jury to look at the TA's current proofs and all evidence with the same skepticism.  *See PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*, 520 F.3d 109,119 (2d Cir. 2008) (excluding evidence with high capacity for prejudice).  "Unfair prejudice is that which might dispose a jury to render a verdict for reasons unrelated to the merits of the case." *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 150 (2d Cir. 2010).  Likewise, discussion of the fee award could signal to the jury that the TA was admonished for wrongful behavior and that the TA should be held responsible in part for the damages.

As such, the Court should preclude any discussion of its exclusion of the Kozlowski charts and the related fee award because they are irrelevant to the remaining issues and potentially prejudicial to the TA.

## II. MOTION *IN LIMINE* NUMBER 2 TO EXCLUDE THE MTA ALJ'S DETERMINATION THAT THE PRIOR ARBITRATION AWARD DID NOT PRECLUDE THE TA FROM IMPLEMENTING ESI'S COMPOUND MANAGEMENT SOLUTION ("CMS")

In 2004, a union grievance resulted in an arbitration award entered by the arbitrator Mr. Richard Adelman (the "2004 Arbitration Award") that prohibited the TA from unilaterally reducing health benefits without collective bargaining.[2]  For years, and including nearly the entire period at issue in this action, the TA understood that the 2004 Arbitration Award precluded implementing strict compound controls like ESI's Contract Management Solution because such controls would effectively eliminate the TA's compound drug benefit and trigger a union grievance.  That is exactly what eventually happened.  After the TA ultimately directed ESI to implement the Compount Management Solution at the very end of the contract term, the TA's compound spend plummeted to a tiny fraction of what it was under its *previous* PBM—which was the baseline the TA wanted the compound spend to be under ESI—and a Union grievance immediately followed.  An MTA internal Administrative Law Judge ("MTA ALJ") subsequently determined that the 2004 Arbitration Award did not preclude implementation of the CMS because, among other reasons, it was a necessary measure targeting the exhorbident compound spend and fraud the TA experienced under ESI.  Ackerman Decl. Ex. 1, 2019 MTA ALJ Decision at 4.  The internal MTA ALJ determination was never appealed or arbitrated, and thus the 2004 Arbitration Award continues to govern the TA's administration of benefits.

Defendant should be precluded from raising the 2019 internal MTA ALJ decision before the jury because it is a non-binding internal finding that has no relevance to whether ESI breached its duties under the Agreement.  Challenging the TA's stated reasons for its inability to

---

[2] The TA has submitted the 2004 Arbitration Award as proposed trial exhibit PX-249.

implement the Compound Management Solution has no logical connection to the remaining questions of breach of contract and damages.  The TA had no obligation to participate in that program, nor has ESI ever claimed that implementation of the Compound Management Solution was necessary in order for ESI to perform its duties under the contract.  ESI offering the Compound Management Solution may be relevant, but using the MTA ALJ decision to cast doubt on the TA's stated reasons for not enrolling in the Compound Management Solution has no bearing on whether ESI breached the contract.  And even if it did, an internal MTA ALJ decision that was never arbitrated, and that itself rested on the record of exorbitant compound spend under ESI during the contract term, is irrelevant to the TA's earlier belief that it was unable to enroll in the program.

Should the Court find that the MTA ALJ's decision is somehow relevant, it should still be excluded because its probative value far exceeds its potential for confusion and prejudice to the TA.  The grievance that led to the decision shows that the TA was right all along—a fact that the decision itself will prejudicially obscure.  Allowing ESI to reference the MTA ALJ's decision could lead to jury confusion as to the weight and strength of the decision, causing the jury to defer to the ALJ's finding of facts and law.  *United States v. Sine*, 493 F.3d 1021, 1033-34 (9th Cir. 2007) ("[J]urors are likely to defer to findings and determinations relevant to credibility made by an authoritative, professional factfinder rather than determine those issues for themselves.")  This, in turn, could lead to the jury prejudicially questioning the credibility of the TA's stated reasons for being unable to enroll in the Compound Management Solution *before* the MTA ALJ's decision.

The 2019 MTA ALJ decision is not binding authority and does not negate  the TA's good faith belief that the 2004 Arbitration Award prohibited implementation of the Compound

Management Solution. Even if it was binding authority that did negate the TA's prior good faith

belief (although it is not), that is irrelevant to the question of ESI's breach.  Any discussion of it

would only serve to confuse or mislead the jury and ultimately prejudice the TA, and therefore

ESI should be precluded from any discusion of the MTA ALJ decision before the jury.


III.    **MOTION *IN LIMINE* NUMBER 3 TO EXCLUDE EVIDENCE REGARDING
        ESI'S ENHANCED FRAUD, WASTE AND ABUSE PROGRAM, INCLUDING
        THAT THE TA *COULD* HAVE PURCHASED IT**

Whether the TA could have secured additional fraud waste and abuse protections from

ESI for an additional fee is irrelevant to whether ESI breached its duties under the specific terms

of the contract to which the parties actually agreed.  A contract provision that was *not agreed to

by the parties and was not in force and effect* is not relevant to a breach of contract action.  ESI

should be precluded from presenting testimony about the Enhanced Fraud Waste and Abuse

program because it is irrelevant, unfairly prejudicial, and would only confuse the issues and the

jury.

The fact that ESI's Enhanced Fraud Waste and Abuse program existed and the TA chose

not to purchase it will not assist the jury in deciding whether ESI performed under or breached

the contract provisions that were agreed to and are remaining in this case.  Those contract

provisions encapsulate separate, independent obligations that have nothing to do with a different

program acquired by others but not by the TA, offering so-called enhanced fraud, waste, and

abuse protection for a fee.  As this Court held in its summary judgment decision:

> NYCTA need only present evidence that Express Scripts breached its
> obligations to process claims in a "prudent and expert manner,"
> Contract Part 1, 19; "monitor[]" its Network Pharmacies and
> "exercise due diligence in the selection and retention of Network
> Pharmacies," *id.* at 25-26; "pursue recovery of . . . Overpayments"
> and reimburse the TA for "un-recovered Overpayments due to
> [Express Scripts's] breach" of the Contract, *id.* at 22; and meet the
> contractual standard of care as to the exercise of any of those duties,

> *id.* at 19 — which the TA has, *see* Pl.'s Opp'n 15, 17-21; *see also*
> ECF No. 116-15, ("Hayes Report"), at 5-20 (opining on the industry
> standard of care for processing claims and monitoring network
> pharmacies and Express Scripts's deviations from those standards).
> Given that a "reasonable jury" could conclude Express Scripts
> breached its obligations under Sections 4.1, 4.2, 4.7, and 4.16 based
> on the evidence the TA has presented, Express Scripts is not entitled
> to summary judgment on these grounds.

*NYCTA v. ESI*, 588 F.Supp.3d 424, 439 (S.D.N.Y. 2022) ("*Summary Judgment Decision*").

ESI's offering of services beyond the agreed upon terms, specifically those that ESI is alleged to

have breached, is not relevant to the issues before the jury.

In the alternative, if the Court finds the Enhanced Fraud Waste and Abuse program

relevant, discussion of it should be excluded because its probative value is outweighed by its

potential to confuse and mislead the jury as to the TA's duties under the agreed upon terms of the

contract.  ESI's presentation of the TA's decision not to purchase the Enhanced FWA program as

a failure on its part could lead the jury to conclude that the TA failed at its duties in some way

and therefore contributed to its own damages.  The TA was not obligated to contract with ESI for

*additional* protection against fraud in order to expect ESI to perform its duties to monitor and

prevent excessive compound prescription claims and the jury should not be led to believe

otherwise.  As such, discussion of the Enhanced Fraud Waste and Abuse program should be

precluded.

## IV.   MOTION *IN LIMINE* NUMBER 4 TO EXCLUDE ESI'S REBUTTAL EXPERT WITNESS FROM TESTIFYING ON TOPICS NOT DISCLOSED IN HIS REPORT OR NOT RELEVANT

The TA's expert witness, Susan Hayes, provided opinions on (1) the industry standard of

care as applied to account management, including identification and communication of outlier

data to the client; (2) the industry standard of care as applied to fraud, waste, and abuse services,

including fraud investigations; and (3) business incentives created by the use of a "spread" or

traditional pricing model.  *See Summary Judgment Decision*, 588 F.Supp.3d at 442-43.  ESI's rebuttal expert provided an opinion that attempted to rebut only one of Ms. Hayes' opinions regarding the industry standard of care as applied to fraud, waste, and abuse services.  "With respect to the conduct at issue in this case, Express Scripts performed its Base Fraud Monitoring consistent with industry standards." Ackerman Decl. Ex. 2, Rubenstein Expert Opinion Report at 7.  Therefore, ESI's rebuttal expert may testify *only* to the industry standard as applied to fraud, waste and abuse services.  He may not testify to the industry standard of care as applied to account management, traditional pricing, or any other topics outside of those disclosed in his report.

Federal Rule of Civil Procedure 26 requires an expert report to include, *inter alia*, "a complete statement of all opinions [an expert] will express."  Fed. R. Civ. P. 26(a)(2)(B)(i); *see* advisory committee's note (1993 Amendments) (an expert "must prepare a detailed and complete written report, stating the testimony the witness is expected to present during direct examination").  "Expert testimony exceeding the bounds of the expert's report is excludable pursuant to Rule 37(c)(1)." *LaMarca v. United States*, 31 F. Supp. 2d 110, 122 (E.D.N.Y. 1998).  Expert witnesses are not allowed to attempt to "rescue a deficient expert report" through previously undisclosed testimony and should not be "free to continually bolster, strengthen, or improve . . . reports by endlessly researching the issues . . . already opined upon, or to continually supplement . . . opinions.").  *See Advanced Analytics, Inc. v. Citigroup Global Mkts., Inc.*, 301 F.R.D. 31, 41 (S.D.N.Y. 2014) (internal quotation marks omitted).

As with all testimony provided at trial, expert testimony must be relevant as to the remaining issues for trial. *See* Fed. R. Evid. 401; *Arlio v. Lively*, 474 F.3d 46, 52 (2d Cir. 2007) at 52; Fed. R. Evid. 402; 2 Weinstein's Federal Evidence § 402.02[1] (2021); *see, e.g., Artus*,

778 F.3d at 108.  ESI's rebuttal expert's opinion relates to one discreet aspect of the case and attempts to rebut only one of the TA's expert's opinions.  To the extent issues related to this single rebuttal opinion are resolved in advance of trial, his testimony should be limited to relevant topics included within the four corners of his expert opinion.

## V.     MOTION *IN LIMINE* NUMBER 5 TO PROHIBIT ESI FROM CALLING THE TA'S 30(B)(6) WITNESSES TO TESTIFY AT TRIAL

On December 3, 2020, Bonnie Harper, Assistant General Counsel for the MTA, appeared as a Rule 30(b)(6) witness for the TA to testify on "any amounts received by the TA, MTA, or the Plan as restitution, reimbursement, or repayment for any alleged fraudulent drug claims, including (but not limited to) any amounts received from (1) Christopher Frusci or Enver Kalaba as restitution payments."[3]

Also on December 3, 2020, Phyllis Rachmuth, Director, Risk and Insurance Management appeared as a Rule 30(b)(6) witness for the TA to testify on the NYCTA's "insurance claim made relating to alleged fraudulent prescription drug claims submitted under the Plan, as referenced in the document produced at NYCTA000059346 -  NYCTA000059356.[4]

Despite this previous 30(b)(6) testimony by both witnesses, Defendant now seeks to call Ms. Harper to testify at trial "about the TA's understanding of alleged harm caused by the compounding fraud, as well as restitution, reimbursement or repayment from the compounding fraud, and to call Ms. Rachmuth to testify at trial on the TA's "understanding of the compounding fraud and its efforts to obtain insurance reimbursement." *See* Joint Pretrial Order,

---

[3] Ackerman Decl. Ex. 3, Amended Notice of Videotaped Deposition to Plaintiff New York City Transit Authority Pursuant to Federal Rule of Civil Procedure 30(b)(6), ESI Dep. Ex. 105, at ¶ 17.  Ms. Harper did not testify as to the second sub-topic of topic 17: "or (2) amounts received as a result of any insurance claim made with regard to any fraudulent prescription drug claims."
[4] *Id.* at ¶ 18.

11

Section X.B.1(c), 1(f), ECF No. 205 (Nov. 23, 2022).  Neither witness should be permitted to

testify on these subjects.

ESI should be precluded from calling Ms. Harper as a witness at trial because she has

already testified on the TA's knowledge of "any amounts received by the TA, MTA or the Plan

as restitution, reimbursement, or repayment for *any alleged fraudulent drug claims*" which, on its

face, is inclusive of "restitution, reimbursement or repayment from *the compounding fraud*."

Because the subject of the prospective trial testimony includes the 30(b)(6) topic, Ms. Harper

should not be forced to testify regarding matters within the scope of her previous 30(b)(6)

testimony. *See* Fed. R. Civ. P. 32(a)(3) (permitting adverse party to designate 30(b)(6) testimony

regardless of availability).

Moreover, Ms. Harper cannot be called testify to the "understanding of alleged harm

caused by the compounding fraud" because she has already testified in her 30(b)(6) deposition

that she has no personal knowledge on the subject.  Specifically, Ms. Harper testified that "has

no involvement in the contractual Pharmacy Benefit Management relationship between New

York Transit and Express Scripts," Ackerman Decl. Ex. 4, Deposition of Bonny Harper at 66:22-

67:2, that she is "only knowledgeable on the issues of restitution with connection with the

criminal matters and the DOJ's office." *Id.*; *see also Id.* 67:11-15.  Under Fed. R. Evid. 602, a

witness may not testify to a matter absent sufficient evidence to support a finding that he or she

has personal knowledge of the matter. *See* Fed. R. Evid. 602.  Ms. Harper testified under oath

that she lacks personal knowledge of these issues and therefore may not testify to them.  *Levy v.*

*Bessemer Trust Co., N.A.*, No. 97 Civ. 1785 (JFK), 2000 WL 1300402, at *1 (S.D.N.Y. Sept. 14,

2000) (holding deposition testimony establishing lack of personal knowledge is sufficient to

exclude such testimony from admission at trial).

Likewise, Ms. Rachmuth has already provided her testimony as a 30(b)(6) witness as to the TA's "efforts to obtain insurance reimbursements." Moreover, Ms. Rochmuth has no personal knowledge about the fraud, and her testimony confirms that any knowledge she have is based on information and materials provided to her by the legal department.  Ackerman Decl. Ex. 5, Deposition of Phyllis at 38:7-17.  Ms. Rachmuth also lacks the requisite personal knowledge to testify as to the TA's knowledge of the "compounding fraud" beyond her responsibility to submit and manage the associated insurance claims.

Furthermore, any information Ms. Harper or Ms. Rachmuth may possess would be privileged.  Ms. Harper's testimony would undoubtedly be based on her work as an attorney within the MTA's Office of General Counsel and would therefore be protected by the attorney-client privilege as well as inadmissible hearsay.  *Bessemer Trust Co., N.A.*, No. 97 Civ. 1785 (JFK), 2000 WL 1300402, *1 (S.D.N.Y. Sept. 14, 2000) (excluding witness testimony because "information [from discussion with general counsel] is not only protected by the attorney-client privilege, it is also hearsay under Article VIII of the FRE.").  Ms. Rachmuth's testimony is similarly problematic because any information regarding the fraud that led to the submission of the TA's claims for insurance reimbursement was provided to her from the TA's legal department.  *Id.* at 19:4-24 (testifying that she was working with the "internal legal department" in dealing with the claims); *id.* at 36:23-38:17 (explaining that the process related to submitting insurance claims under to the TA's "crime policy" involved working directly with the legal department).  Ms. Rachmuth's discussions with the internal legal department would be inadmissible both as privileged communications and hearsay.

Because Ms. Harper and Ms. Rachmuth lack personal knowledge as to any remaining issues for trial, and any testimony they may provide would likely be privileged, ESI should be

precluded from calling them as trial witnesses.

## VI.   MOTION *IN LIMINE* NUMBER 6 TO PRECLUDE ESI FROM CHALLENGING THE AUTHENTICITY OR ADMISSIBILITY OF ITS OWN CLAIMS DATA AS PRODUCED IN THIS LITIGATION

ESI should be prohibited from arguing that its own data is inauthentic or inadmissible. The ESI claims data is a file that contains the relevant information related to claims invoiced by ESI to the TA.  *Reconsideration Decision*, 2022 WL 3577426 at *4 (identifying "Express Scripts's raw 'claims data for all prescription drug claims submitted to Express Scripts on behalf of members of the NYCTA plan during the term of the Contract," which Express Scripts produced to NYCTA in discovery'" as evidence "in the record that NYCTA could potentially use at trial to provide a "stable foundation for a reasonable estimate of the damages incurred as a result of the breach").  The data was maintained by ESI in the normal course of its business and produced by ESI during fact discovery in response to the TA's document request for its claims data.  Ackerman Decl. Ex. 6, Plaintiff's First Request for Production of Documents ¶¶ 28–30.

The claims data was authenticated by ESI when it produced it in response to the TA's request.  Federal Rule of Evidence 901 sets forth the requirements for authentication of evidence and it is well-settled that the "authentication burden is a 'light one.'"  *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 592 B.R. 513, 524 (Bankr. S.D.N.Y. 2018) (quoting *Curtis v. Perkins (In re Int'l Mgmt. Assocs., LLC)*, 781 F.3d 1262, 1267 (11th Cir. 2015)).  "The Court is not required to hear the testimony of the document's author to demonstrate its authenticity."  *Id.* (citation omitted).  A proponent can satisfy the rule with "circumstantial evidence of the authenticity of the underlying documents through the testimony of a witness knowledgeable about them."  *Int'l Mgmt.*, 781 F.3d at 1267; Fed. R. Evid. 901(b)(1); *Bieda v. JC Penny Communications*, No. 92 CIV. 5910, 1995 WL 437689, *1 n. 2 ("[T]he mere fact that Defendants here produced most of the

documents in question is at least circumstantial, if not conclusive, evidence of authenticity."); *see also United States v. Caldwell*, 776 F.2d 989, 1001–02 (11th Cir. 1985) (holding that Rule 901 required only enough evidence that a jury "could have reasonably concluded" that a document was authentic). ESI's production of the claims data file in response to a document demand for it is dispositive evidence of its authenticity.

The ESI claims data is admissible as a business record under Federal Rule of Evidence 803(6). Business records are generally admissible where they are created "contemporaneous with the recorded event" and "maintained in the regular conduct of a business." *In re Enron Creditors Recovery Corp.*, 376 B.R. 442, 454–55 (Bankr. S.D.N.Y. 2007). "The business records exception has been construed generously in favor of admissibility, due to the general trustworthiness of regularly kept records and the need for this type of evidence in many cases." *BLMIS*, 592 B.R. at 528. To be admissible under Rule 803(6), records "do not have to be actually created by the witness testifying to authenticate them . . . nor do they even have to be created by the entity by which the witness is employed." *In re McFadden*, 471 B.R. 136, 160 (Bankr. D.S.C. 2012). "Rule 803(6) merely requires, for records to be admissible as business records, the witness must be familiar with the company's record keeping system." *Id.* (citation omitted). Testimony that establishes a witness's familiarity "with how [records] are obtained, modified, and stored" satisfies the rule. *Id.* Here, the produced ESI Claims Data is substantively identical to the data received and reviewed regularly by Aon and Mr. Frye on behalf of the TA.

As such, ESI should be precluded from wasting the Court's and jury's time by raising specious arguments as to authenticity and admissibility of its own data.

## <u>CONCLUSION</u>

For the foregoing reasons, the TA respectfully requests that the Court grant its motions *in limine* numbers 1 through 6.

Dated: New York, New York
       November 23, 2022

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: <u>/s/ *John Siegal*</u>
    45 Rockefeller Plaza
    New York, NY 10111
    Phone: (212) 589-4200
    Fax: (212) 589-4201
    John Siegal
    Maximillian S. Shifrin
    Stephanie A. Ackerman
    Alexa T. Bordner

    *Attorneys for Plaintiff New York City*
    *Transit Authority*