**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**NEW YORK CITY TRANSIT AUTHORITY,**

Plaintiff,

v.

**EXPRESS SCRIPTS, INC.**

Defendant.

---

Case No. 1:19-cv-05196-JMF

**EXPRESS SCRIPTS, INC.'S OPPOSITION TO NYCTA'S MOTIONS IN LIMINE**

## **<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

TABLE OF AUTHORITIES ...................................................................................................... ii

ARGUMENT .............................................................................................................................1

    I.     Express Scripts' Opposition to NYCTA's MIL No. 1 ................................................1

    II.    Express Scripts' Opposition to NYCTA's MIL No. 2 ................................................2

    III.   Express Scripts' Opposition to NYCTA's MIL No. 3 ................................................5

    IV.   Express Scripts' Opposition to NYCTA's MIL No. 4 ................................................8

    V.    Express Scripts' Opposition to NYCTA's MIL No. 5 ..............................................10

    VI.   Express Scripts' Opposition to NYCTA's MIL No. 6 ..............................................15

CONCLUSION .......................................................................................................................18

CERTIFICATE OF SERVICE ...............................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abbott Lab'ys v. Feinberg*,
  2020 WL 7706571 (S.D.N.Y. Oct. 15, 2020) ......................................................................... 11

*Accent Delight Int'l Ltd. v. Sotheby's*,
  394 F. Supp. 3d 399 (S.D.N.Y. 2019) ..................................................................................... 5

*Austin v. Cook Cnty.*,
  2012 WL 1530452 (N.D. Ill. Apr. 30, 2012) ................................................................... 15, 16

*Bank Brussels Lambert v. Credit Lyonnais (Suisse)*,
  220 F. Supp. 2d 283 (S.D.N.Y. 2002) ................................................................................... 13

*Barbini v. First Niagara Bank, N.A.*,
  331 F.R.D. 454 (S.D.N.Y. 2019) ........................................................................................... 13

*Capitol Recs., Inc. v. MP3tunes, LLC*,
  2014 WL 503959 (S.D.N.Y. Jan. 29, 2014) ......................................................................... 10

*Castro v. DeVry Univ., Inc.*,
  786 F.3d 559 (7th Cir. 2015) ................................................................................................ 17

*Commodity Futures Trading Comm'n v. Weintraub*,
  471 U.S. 343 (1985) .............................................................................................................. 14

*Complex Sys., Inc. v. ABN AMRO Bank N.V.*,
  279 F.R.D. 140 (S.D.N.Y. 2011) ..................................................................................... 13, 14

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*,
  138 F. Supp. 3d 352 (S.D.N.Y. 2015) .................................................................................... 9

*Dalton v. Educ. Testing Serv.*,
  87 N.Y.2d 384, 663 N.E.2d 289 (1995) .................................................................................. 4

*Djangmah v. Falcione*,
  2013 WL 6388364 (S.D.N.Y. Dec. 5, 2013) ........................................................................ 17

*Gonzalez Prod. Sys., Inc. v. Martinrea Int'l Inc.*,
  310 F.R.D. 341 (E.D. Mich. 2015) ........................................................................................ 10

*In re Gen. Motors LLC Ignition Switch Litig.*,
  80 F. Supp. 3d 521 (S.D.N.Y. 2015) ..................................................................................... 12

*In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*,
   731 F.2d 1032 (2d Cir. 1984) ................................................................................ 12

*In re Jacoby Airplane Crash*,
   2007 WL 559801 (D.N.J. Feb. 14, 2007) .............................................................. 10

*In re Lyman Good Dietary Supplements Litig.*,
   2020 WL 3414927 (S.D.N.Y. June 22, 2020) ........................................................ 17

*In re McFadden*,
   471 B.R. 136 (Bankr. D.S.C. 2012) ................................................................. 17, 18

*In re Northrop Grumman ERISA Litig.*,
   2017 WL 11685251 (C.D. Cal. Mar. 3, 2017) ...................................................... 15

*In re Rivastigmine Pat. Litig.*,
   237 F.R.D. 69 (S.D.N.Y. 2006),
   *abrogated on other grounds by In re Queen's Univ. at Kingston*,
   820 F.3d 1287 (Fed. Cir. 2016) ........................................................................... 13

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
   17 F. Supp. 3d 400 (S.D.N.Y. 2014) .................................................................... 13

*Keawsri v. Ramen-Ya Inc.*,
   2022 WL 2391692 (S.D.N.Y. July 1, 2022) .......................................................... 10

*Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*,
   295 F.R.D. 28 (E.D.N.Y. 2013) ...................................................................... 13, 14

*LSH Co. v. AXA Equitable Life Ins. Co.*,
   2019 WL 10947152 (S.D.N.Y. Aug. 26, 2019) ..................................................... 14

*Luce v. United States*,
   469 U.S. 38 (1984) ......................................................................................... 15, 16

*Monroe v. Town of Haverstraw*,
   2022 WL 16751919 (S.D.N.Y. Nov. 7, 2022) ....................................................... 16

*Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*,
   830 F.3d 152 (2d Cir. 2016) .............................................................................. 6, 9

*Peters v. MCI Telecommunications Corp.*,
   1989 WL 67220 (S.D.N.Y. June 14, 1989) ............................................................ 7

*Porter v. Quarantillo*,
   722 F.3d 94 (2d Cir. 2013) .................................................................................. 17

*Pritchard v. County of Erie (In re the Cnty. of Erie),*
    473 F.3d 413 (2d Cir. 2007) ........................................................................ 13

*Reynolds v. Am. Airlines, Inc.,*
    2017 WL 6017355 (E.D.N.Y. Dec. 4, 2017) ................................................ 18

*Romanelli v. Long Island R.R. Co.,*
    898 F. Supp. 2d 626 (S.D.N.Y. 2012) ......................................................... 15

*Samad Bros. v. Bokara Rug Co. Inc.,*
    2012 WL 1604849 (S.D.N.Y. May 8, 2012) ................................................ 16

*Sara Lee Corp. v. Kraft Foods Inc.,*
    276 F.R.D. 500 (N.D. Ill. 2011).................................................................... 11

*Sec. Plans, Inc. v. CUNA Mut. Ins. Soc'y,*
    769 F.3d 807 (2d. Cir. 2014) .......................................................................... 4

*Shaw Grp. Inc. v. Triplefine Int'l Corp.,*
    322 F.3d 115 (2d Cir. 2003) .......................................................................... 6

*Tower 570 Co. LP v. Affiliated FM Ins. Co.,*
    2021 WL 1222438 (S.D.N.Y. Apr. 1, 2021) ........................................ 13, 14

*United Realty Advisors, LP v. Verschleiser,*
    2019 WL 5285043 (S.D.N.Y. Oct. 3, 2019)................................................. 15

*United States v. Arrington,*
    2022 WL 4077685 (W.D.N.Y. Sept. 6, 2022).............................................. 16

*United States v. Cedeno,*
    644 F.3d 79 (2d Cir. 2011) ............................................................................ 2

*United States v. Connelly,*
    874 F.2d 412 (7th Cir. 1989) ...................................................................... 16

*United States v. Int'l Bhd. of Teamsters,*
    119 F.3d 210 (2d Cir. 1997) ........................................................................ 12

*United States v. Komasa,*
    767 F.3d 151 (2d Cir. 2014) ........................................................................ 18

*United States v. Mejia,*
    655 F.3d 126 (2d Cir. 2011) ........................................................................ 12

*United States v. Mirilishvili,*
    2016 WL 751690 (S.D.N.Y. Feb. 19, 2016)................................................ 16

*United States v. Rajaratnam,*
    2014 WL 2696568 (S.D.N.Y. June 10, 2014) ......................................................... 16

*United States v. Raniere,*
    2019 WL 2163189 (E.D.N.Y. May 16, 2019) ......................................................... 15

*United States v. Schulte,*
    2022 WL 1284549 (S.D.N.Y. Apr. 29, 2022) ........................................... 12, 13, 14

*United States v. Triumph Cap. Grp., Inc.,*
    237 F. App'x. 625 (2d Cir. 2007) ............................................................................ 2

*United States v. Whitmore,*
    359 F.3d 609 (D.C. Cir. 2004) ................................................................................. 2

*von Bulow v. von Bulow,*
    811 F.2d 136 (2d Cir. 1987) .................................................................................. 14

*Wechsler v. Hunt Health Sys., Ltd.,*
    2003 WL 21998980 (S.D.N.Y. Aug. 22, 2003) ..................................................... 15

*Worthy v. Michigan Bell Tel. Co.,*
    472 F. App'x 342 (6th Cir. 2012) .......................................................................... 17

## **Rules**

Fed. R. Civ. P. 26 ................................................................................................... 8, 9

Fed. R. Civ. P. 30(b)(6) ............................................................................... 10, 11, 12

Fed. R. Civ. P. 32(a)(3) ............................................................................................ 10

Fed. R. Civ. P. 32(a)(3)(B) ....................................................................................... 11

Fed. R. Civ. P. 34(a) ................................................................................................ 17

Fed. R. Civ. P. 37(c)(1) .............................................................................................. 8

Fed. R. Evid. 106 ........................................................................................................ 7

Fed. R. Evid. 403 ........................................................................................................ 7

Fed. R. Evid. 602 ...................................................................................................... 11

Fed. R. Evid. 608(b) ................................................................................................... 2

Fed. R. Evid. 608(b)(1) ............................................................................................... 2

Fed. R. Evid. 801(c) .................................................................................................. 13

Fed. R. Evid. 803(6)..................................................................................................... 17, 18

Fed. R. Evid. 901(a)........................................................................................................ 16

Fed. R. Evid. 901(b)(1)................................................................................................... 16

**ARGUMENT**

NYCTA's motions in limine seek to exclude relevant evidence with arguments that enjoy no basis in law or fact. These motions should be denied.

## I.   Express Scripts' Opposition to NYCTA's MIL No. 1

NYCTA's first motion in limine seeks to exclude any "mention" of the Court's order on Express Scripts' motion for reconsideration, ECF No. 178 ("Reconsideration Decision"), which ordered that the damages charts created by Aon employee Vince Kozlowski were to be excluded from trial and that NYCTA pay Express Scripts' fees and costs as a sanction under Rule 37. NYCTA argues that any discussion of the fees award and the excluded charts before the jury is irrelevant and prejudicial. ECF No. 207 at 4–5.

Express Scripts agrees that Kozlowski's damages charts and the sanctions award are irrelevant, and it has no intention of referencing either at trial. However, to the extent NYCTA's motion seeks to exclude reference to any statement made by the Court within the Reconsideration Decision, then NYCTA stretches too far. For example, the Reconsideration Decision addressed various elements that NYCTA would have to establish for Mr. Kozlowski's damages charts to be admissible. ECF No. 178 at 3. These discussions in the Reconsideration Decision are just as applicable to NYCTA's latest attempt to admit complex damages calculations through a fact witness undisclosed for this purpose using documents that were not produced during discovery. *See* ECF No 205 at 19 (disclosing NYCTA's intent to use Derek Frye as a witness on damages), *and* ECF No. 203 at 5–8 (Express Scripts' motion in limine to exclude Mr. Frye from testifying on damages). Express Scripts expects that arguments about the admissibility of NYCTA's latest damages witness would not be held before a jury, but if such arguments were made within a jury's hearing, Express Scripts should not be prohibited from referring to the Court's prior legal analysis in addressing a nearly identical question of admissibility.

Mr. Kozlowski is also still listed as a witness who NYCTA intends to call at trial. ECF No. 205 at 19. The Reconsideration Order made findings on Mr. Kozlowski's credibility and reliability,

referring to his declaration as being "at best, misleading," and on his inability to provide a foundation for NYCTA's damages calculates. ECF No. 178 at 3–4. Express Scripts does not know why NYCTA intends to call Mr. Kozlowski, but Express Scripts should be permitted, under Rule 608(b) of the Federal Rules of Evidence, to introduce evidence of the Court's prior finding on Mr. Kozlowski's credibility. *See United States v. Triumph Cap. Grp., Inc.*, 237 F. App'x. 625, 629 (2d Cir. 2007) ("This Court has held that it can be appropriate to introduce false statements especially false sworn statements, under Rule 608(b)(1) to shed light on a witness' credibility."); *see also United States v. Cedeno*, 644 F.3d 79, 82 (2d Cir. 2011) ("Nothing could be more probative of a witness's character for untruthfulness than evidence that the witness has previously lied under oath." (quoting *United States v. Whitmore*, 359 F.3d 609, 619 (D.C. Cir. 2004))).

Express Scripts thus does not oppose NYCTA's request to exclude evidence on the prior damages charts or the sanctions fee award. It does oppose NYCTA's attempt to prevent Express Scripts from referencing any other relevant information and holdings within the Reconsideration Decision.

## II.    Express Scripts' Opposition to NYCTA's MIL No. 2

NYCTA moves to exclude the 2019 decision by an MTA Administrative Law Judge ruling that NYCTA's implementation of Express Scripts' Compound Management Solution ("CMS") ("ALJ Ruling") did not violate NYCTA's health plan or a prior 2004 arbitration ruling ("2004 Arbitration Ruling"). Yet at the same time, NYCTA seeks to present evidence to the jury that NYCTA's initial rejection of the CMS was in "good faith" based on (i) the 2004 Arbitration Ruling; and (ii) a 2019 grievance filed by a health plan member challenging NYCTA's implementation of the CMS rejected by the ALJ Ruling.

NYCTA's motion aims to create a misleading and incomplete presentation to the jury: NYCTA would present evidence that it believes supports its "good faith" while, at the same time, it seeks to exclude evidence highly relevant evidence that undermines the reasonableness or *good faith* of NYCTA's initial rejection of the CMS. NYCTA cannot have it both ways. Its motion in

limine on this issue either (1) should be denied or (2) evidence of NYCTA's "good faith"—the 2004 Arbitration Ruling (as well as any evidence on NYCTA's purported consideration of that ruling in first rejecting the CMS) and the grievance—should be excluded along with the ALJ Ruling. In other words, all evidence relating to the ALJ Rulings in 2004 and 2019 should come in or all evidence should stay out. To allow otherwise would mislead the jury and distort the record.

NYCTA asserts that its purported "good faith belief" that it could not implement the CMS is a relevant issue for the jury to decide. ECF No. 207 at 7. But NYCTA seeks to bar the jury from considering the critical piece of evidence that calls that good faith into question. NYCTA takes great liberties in characterizing—or mischaracterizing—the ALJ Ruling itself. For example, NYCTA suggests that the thrust of the ALJ Ruling centered on "exhorbident [sic] compound spend." *Id.* at 6. But NYCTA fails to mention that the ALJ adopted NYCTA's position that the CMS was mainly "an anti-fraud mechanism and *not* a cost-saving measure," and that the CMS did not violate the 2004 Arbitration Ruling or NYCTA's health plan. Ex. 1 (DX-248) at NYCTA000057471–73 (emphasis added). Finally, NYCTA highlights that the ALJ Ruling "was never arbitrated" and "is not binding authority." ECF No. 207 at 7. But the lack of challenge or appeal suggests, if anything, that the ALJ Ruling did not merit a challenge from the unions and that NYCTA's position to the ALJ—that the CMS ***did not violate the 2004 Arbitration Ruling or health plan***—was firmly supported under the facts and law. At a minimum, the ALJ Ruling confirming NYCTA's position that the CMS was fully permitted casts doubt on NYCTA's "good faith" in rejecting the CMS out-of-hand and refusing—for several years—to implement the compound protections that Express Scripts stated were necessary again and again.

On top of this, at the same time NYCTA seeks to exclude evidence that would undercut its alleged "good faith," NYCTA otherwise seeks to *introduce* evidence related to the grievance that was filed (and which was then rejected by the ALJ Ruling). Thus, under NYCTA's proposal, the jury would be presented with evidence that: (1) there was a 2004 Arbitration Ruling; (2) NYCTA was afraid of triggering a grievance; and (3) when NYCTA implemented the CMS, a grievance followed, but the jury would not learn that the grievance was rejected. Without this necessary

context, NYCTA would provide a misleading and incomplete picture to the jury like it has done in its pleadings to date. Indeed, NYCTA has claimed many times not only that it had a "*good faith belief* that the 2004 Arbitration Ruling prohibited implementation of [Express Scripts'] Compound Management Solution" (ECF No. 207 at 7–8), but it has consistently contended that the 2004 Arbitration Ruling rendered it "unable to institute" (ECF No. 123 at 2) or "precluded it from implementing" (*id.* at 9), the CMS. NYCTA continues to make similar claims, stating in its November 23, 2022 proposed pretrial order that one of its witnesses "will testify about the previous arbitration decision that ***prevented*** the TA from implementing ESI's Compound Management Solution." ECF No. 205 at 19 (emphasis added). NYCTA is prepared to present to the jury the false impression that it was barred from adopting the CMS. Yet this falsehood can be exposed to the jurors only if Express Scripts can present the ALJ Ruling.

If NYCTA is right that its putative "good faith" is a live and relevant issue, then Express Scripts must have the chance to test the basis and reasonableness of that "good faith." *See, e.g.*, *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389, 663 N.E.2d 289 (1995) ("Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion."); *see also Sec. Plans, Inc. v. CUNA Mut. Ins. Soc'y*, 769 F.3d 807, 821 (2d. Cir. 2014) (finding whether a defendant's arbitrary or irrational actions could violate the covenant of good faith to be a triable issue of fact). The ALJ Ruling, which adopted the arguments that NYCTA submitted to the ALJ, is a key piece of evidence relevant to testing NYCTA's purported "good faith" basis for rejecting the CMS for three years. There is no basis for excluding the evidence, and it would be highly prejudicial to Express Scripts.

At the same time, should the Court find, as NYCTA suggests, that the ALJ Ruling is irrelevant, then it follows that none of the evidence related to NYCTA's stated reasons for refusing to adopt the CMS is relevant, and the evidence presented at trial should merely be that NYCTA declined to implement the CMS, with no explanation for the reasons why. The story of NYCTA's invocation of the 2004 Arbitration Ruling as the reason for rejecting the CMS requires the story's completion—the 2019 ALJ Ruling—or it becomes a broken narrative. The story cannot be cropped

arbitrarily to serve only NYCTA's interests. NYCTA's motion should be denied outright, or all evidence related to NYCTA's putative basis or justification for first rejecting the CMS should be excluded.

## III.   Express Scripts' Opposition to NYCTA's MIL No. 3

Express Scripts opposes NYCTA's motion in limine to exclude highly relevant evidence and testimony on Express Scripts' Enhanced Fraud, Waste, and Abuse ("EFWA") contract provision (Section 4.35) and program.

*First*, NYCTA misleadingly suggests that the EFWA provision is irrelevant because NYCTA did not sign up for the EFWA services. ECF No. 207 at 8–9. But the EFWA provision is found within the executed contract and expressly provided that, at NYCTA's option, NYCTA could sign up for the EFWA services for additional fees at any time:

> **Fraud Detection and Prevention.** Upon the AUTHORITY's request, the Contractor shall administer, for the fees set forth in Exhibit A, a fraud prevention and detection program, including system edits and other procedures to critically examine charges for all services that appear abusive, excessive, or fraudulent, and cooperate with the AUTHORITY's efforts to eliminate and prosecute health care fraud. Without limiting any of its obligations hereunder, Contractor shall supply the AUTHORITY with real-time desktop claim reporting capability.

ECF No. 116-1 at 37 (§ 4.35).

NYCTA never chose to sign up for the fee-based program, and it now claims that it was still entitled to the same (or greater) level of services *for free*. That NYCTA chose not to pay for these services during the life of the contract does not negate that the program existed or that it was an available option for NYCTA under the contract. Nor does it mean that this provision "was not agreed to by the parties and was not in force and effect." ECF No. 207 at 13. These competing arguments and related evidence are for the jury to weigh and resolve.

*Second*, the EFWA provision is relevant to both the meaning of the contract provisions in question and the scope of Express Scripts' duties under the contract. *Accent Delight Int'l Ltd. v. Sotheby's*, 394 F. Supp. 3d 399, 414 (S.D.N.Y. 2019) ("[A] contract's meaning must be discerned

as 'viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.'" (quoting *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016))) (emphasis added)).[1] The EFWA provision specifically mentions and describes fraud prevention and detection as a service offered by Express Scripts. This provision, ***unlike §§ 4.2, 4.16, or 4.7*** (which NYCTA alleges were breached), expressly commits Express Scripts on enrollment to administering "a fraud prevention and detection program, including system edits and other procedures to critically examine charges for all services that appear ***abusive, excessive, or fraudulent***, and cooperate with [NYCTA]'s efforts ***to eliminate and prosecute health care fraud***." ECF No. 116-1 at 37 (emphasis added).

That these potential services are specifically identified in a separate provision and are offered only for an extra fee is relevant evidence that the parties did not agree that these services would be provided automatically under the other provisions, especially considering that those other provisions do not mention any type of fraud, waste, or abuse prevention or detection duty on the part of Express Scripts. Set in that context, the absence of discussion of these types of services in the other provisions of the contract is critical to the jury's assessment of the scope and meaning of the contract provisions at issue, whether Express Scripts needed to provide fraud, waste, and abuse services as alleged by NYCTA under those other provisions, and whether Express Scripts breached those provisions.

Beyond the EFWA provision itself, evidence pertaining to the types of fraud, waste, and abuse monitoring and prevention offered by the EFWA program—specifically about the prescriber and patient kickback fraud alleged in NYCTA's amended complaint—but not for non-enrolled members is also relevant to the parties' understanding of the meaning of Express Scripts' duties under the contract, whether Express Scripts breached the provisions that NYCTA claims were breached, and whether Express Scripts offered the services provided by a reasonable and prudent

---

[1] *See also Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003) (identifying as "principles of New York contract law" that "in interpreting a contract, the intent of the parties governs [and] a contract should be construed so as to give full meaning and effect to all of its provisions" (citation omitted)).

PBM. Express Scripts' role as a PBM is largely to provide clients with access to its network of pharmacies and process claims from those **pharmacies**, as described in §§ 4.2, 4.16, and 4.7. Evidence and testimony on the EFWA program will show that the added monitoring for fraud from **prescribers** (including Drs. Cohen and Honig) and **patient populations** (including Messrs. Kalaba and Frusci) that underpin NYCTA's claims for breach of contract are an extra service not offered to non-enrolled clients. Ex. 2 (Battelle Dep. at 12:10–13:11) ("I'm responsible for enhanced fraud, waste and abuse services, which is a program offered to our Express Scripts clients. The program is responsible for proactive analytics, fraud modeling, and case identification for investigations for those clients that are enrolled in our program . . . . [I]t's specific to our clients that are enrolled in the program and specific to their prescriber provider network as well as their patient population."). In other words, evidence of the services provided under the EFWA program will show that Express Scripts never agreed to provide such services to NYCTA absent enrollment in the program.[2]

*Third*, that this provision harms NYCTA's case does not make it unfairly prejudicial. *See Peters v. MCI Telecommunications Corp.*, 1989 WL 67220, at *3 (S.D.N.Y. June 14, 1989) ("[T]he more pertinent evidence against a [party] is, the more prejudicial it is. What 'prejudice,' as used in Rule 403 means, is, as the rule itself literally requires, namely 'unfair prejudice' rather than 'harmful' evidence."). Whether NYCTA was "obligated to contract with ESI for additional protection against fraud in order to expect ESI . . . to monitor and prevent excessive compound prescriptions claims" (ECF No. 207 at 9), is the **central issue** for the jury to decide. To exclude such evidence would usurp the jury's role, present a misleading and incomplete picture to the jury, and unfairly prejudice Express Scripts. *See* Fed. R. Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time."). There is no basis for exclusion.

---

[2] NYCTA itself apparently recognizes that EFWA evidence is both relevant and admissible, having included Rick Battelle, the Director of Enhanced Fraud, Waste, and Abuse Services, on NYCTA's witness list to testify about "ESI's Enhanced Fraud, Waste and Abuse Program, and ESI's capabilities with respect to ESI's investigations of prescribers." *See* ECF No. 205 at 21.

### IV.    Express Scripts' Opposition to NYCTA's MIL No. 4

Eric Rubenstein, Express Scripts' rebuttal expert, concluded that: (1) Express Scripts' fraud, waste, and abuse monitoring and investigations complied with industry standards; (2) it is not within industry standards for a PBM to report to clients "the fact that it observed red flags when the investigations into those red flags resulted in no findings of fraud"; ***and*** (3) "the best means of stopping and preventing [kickback] schemes is by implementing front-end, benefit de-sign solutions, like Express Scripts' Compound Management Solution." Ex. 3 (Rubenstein Rep.) at 19. NYCTA's fourth motion in limine seeks to improperly cabin Mr. Rubenstein's testimony to rebutting NYCTA's expert Susan Hayes' opinion that Express Scripts did not meet industry stand-ards for fraud, waste, and abuse services. NYCTA's only argument for limiting Mr. Rubenstein's testimony is that any other testimony "exceed[s] the bounds of [Mr. Rubenstein's] expert report" in violation of Rule 26 of the Federal Rules of Civil Procedure and is thus "excludable pursuant to Rule 37(c)(1)." ECF No. 207 at 10 (citation omitted).

NYCTA's motion rests on the false premise that Mr. Rubenstein "attempted to rebut only one of Ms. Hayes' [three] opinions." *Id*. As explained by NYCTA, Ms. Hayes opined on

> (1) the industry standard of care as applied to account management, including iden-tification and communication of outlier data to the client; (2) the industry standard of care as applied to fraud, waste, and abuse services, including fraud investiga-tions; and (3) business incentives created by the use of a 'spread' or traditional pricing model.

*Id*. at 9–10. According to NYCTA, Mr. Rubenstein "attempted to rebut only" Ms. Hayes' second opinion on "the industry standard of care as applied to fraud, waste, and abuse services, including fraud investigations." *Id*. at 10. This is false.

Mr. Rubenstein's report directly responds to Ms. Hayes' first opinion on "the industry standard of care as applied to account management, including identification and communication of outlier data to the client." ECF No. 207 at 9. Mr. Rubenstein concluded that "it is my opinion that it is not the industry standard for a PBM to report to a client every suspicion it has about possible fraudulent conduct, red flag that it observes, and every investigation that it conducts that

uncovers no evidence of fraud." Ex. 3 (Rubenstein Rep.) at 17; *see also id.* at 15 ("Ms. Hayes'
conclusion"—"that once Express Scripts received the fraud tip, it should have pulled the prescription activity for these members, noticed 'irregular activity,' and raised the issue with NYCTA"—
"has multiple flaws.").

Indeed, NYCTA had the opportunity to ask Mr. Rubenstein about his opinions during his
deposition. During his deposition, Mr. Rubenstein confirmed that he was refuting Ms. Hayes'
opinions about the standard of care in identifying and communicating outlier data to the client:

> Q. And her first opinion is that: 'By failing to identify and/or
> communicate to NYCTA egregious trends in compound spending
> readily identifiable in the data it monitors as well as failing to iden-
> tify certain red flags' – and I'm skipping over here – 'ESI did not
> process, monitor, investigate and/or review claims in a prudent and
> expert manner and otherwise failed to use that degree of care and
> reasonable diligence that should be applied by a PBM.' Should I
> understand your opinion in your report to be a rebuttal to that first
> Haye opinion as well?
>
> A. Correct.

Ex. 4 (Rubenstein Dep. at 70:7-20). And during the deposition, NYCTA asked many questions on
the bases for Mr. Rubenstein's opinion on this topic. *See id*. at 186–209.

Because Express Scripts fully complied with its disclosure obligations under Rule 26 and
there is no suggestion that Express Scripts intends to elicit testimony from Mr. Rubenstein that
exceeds the scope of his report, it would be improper to issue a ruling that excludes Mr. Rubenstein
from testifying on matters within the scope of his timely served expert report. *Cf. Congregation
Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 138 F. Supp. 3d 352, 398–99 (S.D.N.Y.
2015) ("[E]xcluding expert testimony is a drastic remedy, and should be used sparingly, even when
there has not been strict compliance with Rule 26[.]") (cleaned up), For these reasons, NYCTA's
fourth motion in limine should be denied.

## V.        Express Scripts' Opposition to NYCTA's MIL No. 5

Express Scripts reserved the right to call Bonnie Harper, Metropolitan Transportation Authority's Assistant General Counsel, as a witness to testify about "NYCTA's understanding of alleged harm caused by the compounding fraud, as well as restitution, reimbursement or repayment from the compounding fraud." ECF No. 205 at 22. Express Scripts also reserved the right to call Phyllis Rachmuth, MTA's Director of Risk and Insurance Management, as a witness to testify about "NYCTA's understanding of the compounding fraud and its efforts to obtain insurance reimbursement." *Id.* NYCTA seeks to exclude their testimony on various unpersuasive grounds.

*First*, citing Rule 32(a)(3) of the Federal Rules of Civil Procedure, NYCTA argues that Ms. Harper's and Ms. Rachmuth's testimony should be excluded because they "already" testified on parts of the identified topics in their 30(b)(6) depositions. ECF No. 207 at 12–13. NYCTA misreads the rule. Rule 32(a)(3) merely provides that "[a]n adverse party may use for any purpose the deposition of a . . . designee under Rule 30(b)(6)[.]" The rule does not prohibit a Rule 30(b)(6) designee from testifying at trial just because they already testified. NYCTA does not cite a case for this novel proposition. ECF No. 207 at 12–13. Rather, courts analyzing Rule 32(a)(3)'s application grapple with the exact opposite question: whether an adverse party is *allowed* to introduce Rule 30(b)(6) deposition testimony when the witness is available to testify live. For example, a court in this district recently stated that "[a]lthough the court has discretion to exclude parts of the deposition that are unnecessarily repetitious in relation to the testimony of the party on the stand, it may not refuse to allow the deposition to be used merely because the party is available to testify in person." *Keawsri v. Ramen-Ya Inc.*, 2022 WL 2391692, at *1 (S.D.N.Y. July 1, 2022) (cleaned up); *accord, e.g.*, *Capitol Recs., Inc. v. MP3tunes, LLC*, 2014 WL 503959, at *16 (S.D.N.Y. Jan. 29, 2014) (rejecting argument that Rule 32(a)(3) mandates that deposition excepts should be precluded because witness would be testifying live); *Gonzalez Prod. Sys., Inc. v. Martinrea Int'l Inc.*, 310 F.R.D. 341, 344 (E.D. Mich. 2015) (noting that there is a split in authority on whether Rule 32(a)(3) gives a party the *right* to read the deposition of an adverse party into the record, or whether it is merely an *option* to be used for presenting the testimony and "agree[ing] with the courts that

have found that Rule 32(a)(3) precludes an opposing party from presenting the deposition of a party . . . at trial as opposed to calling such individual to provide direct testimony") (cleaned up); *In re Jacoby Airplane Crash*, 2007 WL 559801, at *8 (D.N.J. Feb. 14, 2007) ("A party is not required to use deposition testimony in place of having the person testify live at trial, but Rule 32(a)(3)(B) certainly gives the party that option and nothing within the rule gives discretion to the court.").

At any rate, Express Scripts reserved the right to call these witnesses in their capacity as both fact witnesses *and* corporate designees. Although fact witness may testify only on matters within the witness' "personal knowledge," Fed. R. Evid. 602, a Rule 30(b)(6) witness may testify on matters outside her personal knowledge, *see Abbott Lab'ys v. Feinberg*, 2020 WL 7706571, at *1 (S.D.N.Y. Oct. 15, 2020) ("This Court, therefore, will not limit [the Rule 30(b)(6) deponent's] testimony strictly to matters within [deponent's] personal knowledge."); *accord Sara Lee Corp. v. Kraft Foods Inc.*, 276 F.R.D. 500, 503 (N.D. Ill. 2011) ("When it comes to using Rule 30(b)(6) depositions at trial, strictly imposing the personal knowledge requirement would only recreate the problems that Rule 30(b)(6) was created to solve. . . . This Court, therefore, will not limit [the Rule 30(b)(6) deponent's] testimony strictly to matters within [deponent's] personal knowledge."). For Ms. Harper, NYCTA does not challenge that she has personal knowledge on NYCTA's "restitution, reimbursement or repayment from the compounding fraud" or that this falls within the scope of her Rule 30(b)(6) topic.[3] ECF No. 207 at 12. NYCTA argues only that Ms. Harper lacks personal knowledge on the "understanding of alleged harm caused by the compounding fraud." *Id*. Despite this broad phrasing and NYCTA's attempt to tie this description to Ms. Harper's "involvement in the contractual Pharmacy Benefit Management relationship between New York Transit and

---

[3] NYCTA designated Ms. Harper to testify on Topic 17: "Any amounts received by New York City Transit Authority, MTA, or the plan as restitution, reimbursement, or repayment for any alleged fraudulent drug claims, including but not limited to any amounts received from Christopher Frusci or Enver Kalaba, as restitution payments or amounts received as a result of insurance claim, any insurance claim made with regard to any fraudulent prescription drug claims." Ex. 5 (Harper Dep. at 10:3-12).

Express Scripts," which she admitted to not knowing about, *id.*, Express Scripts has no intention to ask Ms. Harper about topics beyond her personal knowledge or her Rule 30(b)(6) topic: NYCTA's efforts to secure restitution from the Department of Justice for the NYCTA-employee compound fraud.

The same applies for Ms. Rachmuth. NYCTA does not dispute that Ms. Rachmuth has personal knowledge on "NYCTA's . . . efforts to obtain insurance reimbursement" or that this falls within the scope of her Rule 30(b)(6) topic.[4] *Id.* at 13. Express Scripts has no intention of trying to elicit testimony on topics outside the scope of Ms. Rachmuth's personal knowledge or her Rule 30(b)(6) topic: NYCTA's filing of an insurance claim for the compounding fraud, including the materials submitted, amounts sought, and the timing of these efforts.

Ignoring basic evidentiary principles, NYCTA throws out attorney-client privilege in one last try to exclude Ms. Harper's and Ms. Rachmuth's testimony. Neither witness' testimony implicates privilege, and even if it did, NYCTA falls woefully short of meeting its burden. "The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Schulte*, 2022 WL 1284549, at *5 (S.D.N.Y. Apr. 29, 2022) (Furman, J.) (citing *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011)). "The burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it." *United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997).

There are multiple problems with NYCTA's blanket privilege assertion. First, "[i]t is well established . . . that the attorney-client privilege 'protects communications rather than information.'" *In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 528–29 (S.D.N.Y. 2015) (Furman, J.) (quoting *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1037 (2d Cir. 1984)). Yet NYCTA seeks to exclude not "communications" but "any

---

[4] NYCTA designated Ms. Harper to testify on Topic 18: "[Y]our insurance claim made relating to alleged fraudulent prescription drug claims submitted under the plan . . . ." Ex. 6 (Rachmuth Dep. at 12:9-12).

information Ms. Harper or Ms. Rachmuth may possess." ECF No. 207 at 13; *see also id.* (explaining that Ms. Rachmuth's knowledge is "based on information and materials provided to her by the legal department"). In fact, NYCTA does not claim that Ms. Harper **communicated** with anyone at NYCTA, only that by being an attorney, Ms. Harper need not testify at all.[5] *Id.*

Second, even if NYCTA had identified Ms. Rachmuth's privileged communications—or the attorneys on the other end of those communications rather than the generic "legal department" (ECF No. 207 at 13)[6]—NYCTA has not shown that the communications were "for the purpose of obtaining or providing legal advice." *Schulte*, 2022 WL 1284549, at *5. "[N]ot all conversations between an attorney and a client are privileged." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 17 F. Supp. 3d 400, 404 (S.D.N.Y. 2014). The privilege "attaches only if 'the predominant purpose of the communication is to render or solicit legal advice.'" *Tower 570 Co. LP v. Affiliated FM Ins. Co.*, 2021 WL 1222438, at *2 (S.D.N.Y. Apr. 1, 2021) (Furman, J.) (quoting *Pritchard v. County of Erie (In re the Cnty. of Erie)*, 473 F.3d 413, 420 (2d Cir. 2007)). This is particularly relevant in the corporate context where "[i]n-house counsel often fulfill the dual role of legal advisor and business consultant." *Barbini v. First Niagara Bank, N.A.*, 331 F.R.D. 454, 459 (S.D.N.Y. 2019) (citation omitted); *see also Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 38 (E.D.N.Y. 2013), *aff'd,* 29 F. Supp. 3d 142 (E.D.N.Y. 2014) ("It is well-recognized that in-house counsel may serve both legal and business functions, and courts will scrutinize the nature of their communications before finding that those communications are privileged."); *Bank Brussells Lambert v. Credit Lyonnais (Suisse)*, 220 F. Supp. 2d 283, 286 (S.D.N.Y. 2002) (noting the "concern that in-house attorneys are more likely to mix legal and business functions"). For this reason, "[i]n cases involving corporations and in-house counsel, courts have maintained a stricter standard for

---

[5] NYCTA doubles-down on its frivolous objections, arguing that Ms. Harper's personal knowledge about her efforts to secure restitution from the Department of Justice is inadmissible hearsay. That makes no sense. *See* Fed. R. Evid. 801(c) (defining hearsay as an out-of-court "statement").

[6] "Without information identifying the individuals involved in the particular communications, it is impossible for the plaintiffs to meet their burden of establishing the 'attorney' element of the attorney-client privilege." *In re Rivastigmine Pat. Litig.*, 237 F.R.D. 69, 83 (S.D.N.Y. 2006), *abrogated on other grounds by In re Queen's Univ. at Kingston*, 820 F.3d 1287 (Fed. Cir. 2016).

determining whether to protect confidential information through the attorney-client privilege." *Bank Brussels Lambert*, 220 F. Supp. 2d at 286; *see also Complex Sys., Inc. v. ABN AMRO Bank N.V.*, 279 F.R.D. 140, 150 (S.D.N.Y. 2011) ("Application of the attorney-client privilege to the corporate context poses 'special problems.'" (quoting *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985))).

Here, the most that can be gathered from Ms. Rachmuth's testimony is that her department "work[s] directly with the legal department" to submit insurance claims under NYCTA's "crime policy." ECF No. 207 at 13; *see generally* Ex. 6 (Rachmuth Dep. at 36:23–38:17). Without more information about the nature of the specific communications, NYCTA has failed to establish that the communications served a legal, rather than a business function. *See LSH Co. v. AXA Equitable Life Ins. Co.*, 2019 WL 10947152, at *1 (S.D.N.Y. Aug. 26, 2019) (Furman, J.) (refusing to apply attorney-client privilege because the party "fail[ed] to establish that the predominant purpose of [the document] was to render or solicit legal advice" when "on its face, the document [wa]s pre-dominantly a business communication").

And finally, even if the unspecified information provided by the legal department to Ms. Rachmuth is covered by the attorney-client privilege, NYCTA waived any privilege when it pro-vided that information to its insurer to support its insurance claim and when it allowed Ms. Rachmuth to testify about it during her deposition. *See Tower 570 Co.*, 2021 WL 1222438, at *2 (privilege is waived through voluntary disclosure to a third party); Ex. 7 at NYCTA000059346 (listing materials considered in evaluating MTA's claim, all of which are publicly available docu-ments anyway); Ex. 6 (Rachmuth Dep. 26:14–28:10) (testifying that these materials were submit-ted to the insurer as part of the claims notice).

In the end, NYCTA's burden to establish privilege "[can]not, of course, [be] discharged by mere conclusory or ipse dixit assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed." *Schulte*, 2022 WL 1284549, at *6 (quoting *von Bulow v. von Bulow*, 811 F.2d 136, 146 (2d Cir. 1987)). NYCTA's assurance that both Ms. Harper's and Ms. Rachmuth's testimony "would likely be

privileged" does not cut it. ECF No. 207 at 13; *see Koumoulis*, 295 F.R.D. at 38 ("Any ambiguities as to whether the essential elements have been met are construed against the party asserting the privilege.") (collecting cases). NYCTA's fifth motion in limine must be denied.

## VI.   Express Scripts' Opposition to NYCTA's MIL No. 6

Without identifying a single exhibit—by Bates-number or by exhibit designation—NYCTA seeks to prohibit Express Scripts not from *introducing* any evidence but from *objecting* at trial to NYCTA's evidence. That is not how a motion in limine works. For one, "[a] district court is well within its discretion to deny a motion in limine that fails to identify the evidence with particularity or to present arguments with specificity." *Wechsler v. Hunt Health Sys., Ltd.*, 2003 WL 21998980, at *3 (S.D.N.Y. Aug. 22, 2003) (citation omitted); *see, e.g.*, *United Realty Advisors, LP v. Verschleiser*, 2019 WL 5285043, at *1 (S.D.N.Y. Oct. 3, 2019) ("The motion in limine is plainly improper. It does not specify any evidence that the plaintiffs seek to preclude . . . . "). But more to the point, the purpose of a motion in limine is not to ask the court to force a party to waive potential appeal issues by prohibiting the party from raising an objection at trial; "[t]he purpose . . . is to allow a court to rule on the admissibility of potential ***evidence*** in advance of trial." *Romanelli v. Long Island R.R. Co.*, 898 F. Supp. 2d 626, 629 (S.D.N.Y. 2012) (emphasis added); *see also Luce v. United States,* 469 U.S. 38, 41 n.4 (1984) (defining a motion in limine as "any motion, whether made before or during trial to exclude anticipated prejudicial evidence before evidence is actually offered"); *In re Northrop Grumman ERISA Litig.*, 2017 WL 11685251, at *1 (C.D. Cal. Mar. 3, 2017) ("Motions in limine afford the court and counsel the opportunity to give more deliberate consideration to *specific* objections to *specific* evidence.") (emphasis in original).

The reverse scenario highlights the impropriety of NYCTA's motion. Had Express Scripts moved in limine to exclude the same "claims data" based on authenticity or admissibility, even if the Court denied its motion, Express Scripts would *still* be able to object to this evidence at trial. *See United States v. Raniere*, 2019 WL 2163189, at *4 (E.D.N.Y. May 16, 2019) (denying motion in limine with the caveat that "[o]f course, [the defendant] remains free to object at trial to the

admission of such evidence"); *accord, e.g.*, *Austin v. Cook Cnty.*, 2012 WL 1530452, at *1 (N.D. Ill. Apr. 30, 2012) ("[T]he denial of a motion in limine does not preclude a party from objecting to the admission of any evidence at trial." (citing *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989) ("a ruling [on a motion in limine is] subject to change based upon the court's exposure to the evidence at trial")). Yet NYCTA seeks to short-circuit the whole process, denying Express Scripts and the Court the opportunity to evaluate the evidence in context at trial. *See Monroe v. Town of Haverstraw*, 2022 WL 16751919, at *2 (S.D.N.Y. Nov. 7, 2022) ("Courts considering a motion in limine may reserve decision until trial, so that the motion is placed in the appropriate context."); *Luce*, 469 U.S. at 41–42 ("[A] ruling [in limine] is subject to change when the case unfolds, particularly if the actual testimony differs from what was [expected]."); *United States v. Mirilishvili*, 2016 WL 751690, at *6 (S.D.N.Y. Feb. 19, 2016) ("The Court cannot say, without hearing a particular witness' testimony or attorney argument, whether [certain evidence] would necessarily be objectionable. The admissibility of such evidence will be argued and determined at trial and in context."); *United States v. Arrington*, 2022 WL 4077685, at *6 (W.D.N.Y. Sept. 6, 2022) (reserving decision on motion in limine "so that the parties' objections to admission of evidence may be placed in their appropriate factual context at trial").

At any rate, prohibiting Express Scripts from objecting to unspecified documents' authenticity or admissibility is premature. NYCTA cannot offload its burden at trial to establish the authenticity and admissibility of evidence by foreclosing all objection now. *See Samad Bros. v. Bokara Rug Co. Inc.*, 2012 WL 1604849, at *5 (S.D.N.Y. May 8, 2012) ("The proponent of evidence . . . has the burden of establishing its authenticity."); *United States v. Rajaratnam*, 2014 WL 2696568, at *3 (S.D.N.Y. June 10, 2014) ("As the proponent of the evidence, the government has the burden of establishing admissibility.").

Take authenticity. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). NYCTA must produce "evidence," which includes things like "[t]estimony that an item is what it is claimed to be." Fed. R. Evid. 901(b)(1).

To be sure, Express Scripts produced some of its claims data—though not identified here—during discovery. But "[t]he mere act of producing a document in response to a discovery request based on the content of the document does not amount to an admission of the document's authenticity." *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 578–79 (7th Cir. 2015) ("A party's duty to produce documents under Federal Rule of Civil Procedure 34(a) applies to responsive documents in its 'possession, custody, or control.' They must be produced regardless of their authenticity, accuracy, or reliability, so the act of production does not say anything about authenticity, accuracy, or reliability."); *accord Worthy v. Michigan Bell Tel. Co.*, 472 F. App'x 342, 344 (6th Cir. 2012) ("[W]e have found [no support] for the idea that a litigant's own production of documents during discovery renders the documents authenticated."). NYCTA cannot skirt its burden to prove authenticity **with evidence** by blocking any objection at trial.

NYCTA's attempt to lock-in the admissibility of Express Scripts' unidentified claims data fares even worse. From the outset, NYCTA concedes that this "claims data" is hearsay (ECF No. 207 at 2, 15), which is "inadmissible unless made admissible by a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court." *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013). "[T]he introducing party must lay a foundation to introduce hearsay evidence under Rule 803(6)." *Djangmah v. Falcione*, 2013 WL 6388364, at *6 (S.D.N.Y. Dec. 5, 2013). The text of Rule 803(6) itself defines the proper foundation, requiring that a "custodian or another qualified witness" show that "(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business . . . ; (C) making the record was a regular practice of that activity." *In re Lyman Good Dietary Supplements Litig.*, 2020 WL 3414927, at *3 (S.D.N.Y. June 22, 2020) (quoting Fed. R. Evid. 803(6)). "[T]he witness must have enough familiarity with the record-keeping system of the entity in question to explain how the record came into existence in the course of a regularly conducted activity of the entity."[7] *Id.*, at *5 (cleaned up). And familiarity requires that

---

[7] As if the Southern District of New York lacks sufficient case law outlining the contours of Rule 803(6)'s business records exception, NYCTA cites *In re McFadden*, 471 B.R. 136 (Bankr. D.S.C.

the witness be able to "elaborate on [the] procedure, methodology, or accountability of the business procedure" to apply the business record exception. *Reynolds v. Am. Airlines, Inc.*, 2017 WL 6017355, at *3 (E.D.N.Y. Dec. 4, 2017). Whether NYCTA can establish with **testimony** that Mr. Frye (ECF No. 207 at 15)—who is not a "custodian" of Express Scripts' records—is a "another qualified witness" cannot be resolved now. *See United States v. Komasa*, 767 F.3d 151, 156 (2d Cir. 2014) ("To lay a proper foundation for a business record, a custodian or other qualified witness **must testify** [to the requirements of Rule 803(6)].") (emphasis added).

In short, the Court need not weigh in on potential not-yet-raised objections before considering the evidence that supports a document's authenticity or admissibility. NYCTA's sixth motion in limine must be denied.

## **CONCLUSION**

Express Scripts asks the Court to deny all NYCTA's Motions in Limine.

---

2012)—a case from the U.S. Bankruptcy Court for the District of South Carolina—to lighten its required showing for admissibility under Rule 803(6). ECF No. 207 at 15.

Dated: December 7, 2022             By: /s/ Elizabeth A. Bozicevic
                                    Christopher A. Smith, *Admitted* Pro Hac Vice
                                    Sarah C. Hellmann, *Admitted* Pro Hac Vice
                                    Elizabeth A. Bozicevic, *Admitted* Pro Hac Vice
                                    HUSCH BLACKWELL LLP
                                    190 Carondelet Plaza, Suite 600
                                    St. Louis, MO 63105
                                    P: (314) 480-1500 / F: (314) 480-1505
                                    chris.smith@huschblackwell.com
                                    sarah.hellmann@huschblackwell.com
                                    elizabeth.bozicevic@huschblackwell.com

                                    Michael J. Lyle, *Admitted* Pro Hac Vice
                                    Eric Lyttle, *Admitted* Pro Hac Vice
                                    QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                    1300 I St. NW, Ste. 900
                                    Washington, DC 20005
                                    Tel.: 202-538-8000
                                    Fax: 202-538-8100
                                    mikelyle@quinnemanuel.com
                                    ericlyttle@quinnemanuel.com

                                    Rollo Baker
                                    QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                    51 Madison Avenue, 22nd Floor
                                    New York, NY 10010
                                    Tel.: 212-849-7000
                                    Fax: 212-849-7100
                                    rollobaker@quinnemanuel.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 7, 2022, the foregoing was filed electronically with the Clerk of Court, to be served through the Court's electronic filing system upon all counsel of record.

*s/ Elizabeth A. Bozicevic*