**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NEW YORK CITY TRANSIT AUTHORITY,

        Plaintiff,

        v.

EXPRESS SCRIPTS, INC.

        Defendant.

Case No. 1:19-cv-05196

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE 1-9***

**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, New York 10111
T. 212-589-4200
F. 212-589-4201

*Attorneys for Plaintiff*

i

# TABLE OF CONTENTS

**Page**

I. MOTION #1:  THERE IS NO BASIS FOR EXCLUDING THE TA'S DAMAGES
TOTALS OR MR. FRYE'S TESTIMONY .................................................................. 1

    A. The TA's Summaries Utilize Claims Data That ESI Produced In This Action, Will
Be   Offered Through A Properly Disclosed Witness, And Satisfy Fed. R. Evid.
1006 .................................................................................................................... 1

    B. The TA's Supplemental Disclosures Are Substantially Justified And Have Caused
No Prejudice To ESI ............................................................................................ 2

    C. Summary Evidence Of The ESI Claims Data Is Not An Expert Opinion ............... 5

II. MOTION # 2: THE AON REPORT, CARIBOU DATASET AND MR. KOZLOWSKI'S
TESTIMONY ARE ADMISSIBLE ...................................................................... 7

    A. The Aon Report Need Not Cover Every Element Of Damages To Be
Admissible .......................................................................................................... 7

    B. Mr. Kozlowski's Testimony Is Admissible ........................................................... 8

    C. Caribou's Pharmacy Claims Dataset Is Admissible For A Limited Purpose .......... 9

    D. Ms. Ridgway Has Not Been Identified By The TA As A Witness........................ 11

III. MOTION #3: THE AMOUNT OF MONEY PAID BY THE TA DURING THE
CONTRACT TERM IS RELEVANT AND ADMISSIBLE UNDER RULE 403 .......... 11

IV. MOTION #4:  ESI'S SIZE AND OWNERSHIP ARE RELEVANT TO ITS ABILITY TO
MEET THE STANDARD OF CARE UNDER THE CONTRACT ................................ 13

V. MOTION #5:  THE TA'S FINANCIAL SITUATION IS A PUBLIC FACT SUBJECT
TO JUDICIAL NOTICE AND NOT UNDULY PREJUDICIAL TO ESI ...................... 14

VI. MOTION #6:  DAVID ROSS'S TESTIMONY IS ADMISSIBLE BECAUSE IT IS
RELEVANT AND BASED ON HIS PERSONAL KNOWLEDGE ............................... 16

VII. MOTION #7:  THE DETERMINATION OF DAMAGES IS FOR THE JURY AND
DEFENDANT'S MOTION *IN LIMINE* 7 IS IMPROPER BECAUASE IT MAKES NO
EVIDENTIARY ARGUMENTS ........................................................................ 19

VIII. MOTION #8: ESI'S WORK AS TRICARE'S PBM IS RELEVANT EVIDENCE OF
ESI'S KNOWLEDGE OF THE RISKS OF COMPOUND PRESCRIPTION PROBLEMS
FOR PUBLIC AGENCY BENEFIT FUNDS ...................................................... 21

IX.     MOTION #9:  THE COHEN INVESTIGATION REPORTS ARE RELEVANT TO
        ESI'S KNOWLEDGE OF DR. COHEN'S ACTIVITIES AND ESI'S RESULTING
        BREACH OF ITS CONTRACTUAL STANDARD OF CARE ...................................... 23

CONCLUSION .......................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&G Tree Serv., Inc. v. Tenn. Valley Auth.*,
   No. 3:06-cv-91, 2007 WL 922172 (E.D. Tenn. Mar. 23, 2007) ...............................................13

*Agfa-Gevaert, A.G. v. A.B. Dick Co.*,
   879 F.2d 1518 (7th Cir. 1989) ...............................................................................................17

*Cunningham v. Town of Ellicott*,
   No. 04CV301, 2007 WL 1040013 (W.D.N.Y. Apr. 3, 2007)....................................................8

*Desly Int'l Corp. v. Otkrytoe Aktsionernoe Obshchestvo*,
   13-CV-2303(ENV)(LB), 2017 WL 9989599 (E.D.N.Y. June 16, 2017) ...............................13

*Edmark v. Zurich Am. Ins. Co.*
   No. 1:15-cv-00520-BLW-CWD, 2019 WL 1002952, *1 (D.C.D. Idaho Mar.
   1, 2019) ...................................................................................................................................14

*Eiben v. Epstein & Sons Intern., Inc.*,
   57 F. Supp.2d 607 (N.D. Ill. 1999) .........................................................................................13

*In re Elysium Health-ChromaDex Litigation*,
   17-cv-7394 (LJL), 2021 WL 1249223 (S.D.N.Y. Apr. 5, 2021)............................................10

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*,
   343 F.3d 189 (2d Cir.2003).....................................................................................................14

*Euro Pacific Capital, Inc. v. Bohai Pharmaceuticals, Inc.*,
   15-CV-4410 (VM) (JLC), 2018 WL 1229842 (S.D.N.Y. 2018) ..............................................7

*Fagiola v. Nat'l Gypsum Co. AC & S., Inc.*,
   906 F.2d 53 (2d Cir. 1990).........................................................................................................2

*Fieldcamp v. City of New York*,
   242 F. Supp. 2d 388 (S.D.N.Y. 2003).....................................................................................20

*Finnish Fur Sales Co., Ltd. v. Furs Unlimited, Inc.*
   1992 WL 47372 (S.D.N.Y. March 4, 1992) ...........................................................................17

*Fournier v. Erickson*,
   242 F. Supp. 2d 318 (S.D.N.Y. 2003)......................................................................................13

*Harsco Corp. v. Segui*,
   91 F.3d 337 (2d Cir.1996).......................................................................................................14

*Hart v. RCI Hospitality Holdings, Inc.*,
　　90 F. Supp. 3d 250 (S.D.N.Y. 2015).........................................................................20

*Hein v. Cuprum, S.A.*,
　　No. 99–C–1360, 2002 WL 34453309 (S.D.N.Y. Jan.23, 2002)....................................8

*Linkco, Inc. v. Fujitsu Ltd.*,
　　232 F. Supp. 2d 182 (S.D.N.Y. 2002).......................................................................13

*Luce v. United States*,
　　469 U.S. 38 (1984).....................................................................................................20

*Lujan v. Cabana Mgmt., Inc.*,
　　284 F.R.D. 50 (E.D.N.Y 2012)....................................................................................6

*MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*,
　　No. 09 Civ. 3255, 2012 WL 2568972 (S.D.N.Y. July 3, 2012) ................................12

*Miss Jones LLC v. Shahid*,
　　17-CV-716 (AMD) (LB), 2022 WL 4642716 (E.D.N.Y. Sept. 30, 2022) ................10

*N.Y.C. Transit Auth. v. Express Scripts, Inc.*,
　　588 F. Supp. 3d 424 (S.D.N.Y. 2022), *reconsideration denied*, No. 19-CV-
　　5196 (JMF), 2022 WL 3577426 (S.D.N.Y. Aug. 19, 2022)....................8, 20, 21, 22

*Orr v. Shea*,
　　No. 3:17-cv-00788 (VAB), 2021 WL 1946381 (D. Conn. May 14, 2021) ...............18

*Park West Radiology v. CareCore Nat. LLC*,
　　675 F. Supp. 2d 314 (S.D.N.Y. 2009).......................................................................18

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*,
　　05-MD-1720 (MKB), 2022 WL 14814183 (E.D.N.Y. Oct. 26, 2022).......................10

*Perry v. Ethan Allen, Inc.*,
　　115 F.3d at 151 ....................................................................................................12, 15

*Reyes v. Aqua Life*,
　　No. 10-23548-Civ-COOKE/TURNOFF, 2012 WL 12892213 (S.D. Fla. Jul. 9,
　　2012) .........................................................................................................................14

*Rodriguez v. JLG Industries, Inc.*
　　2012 WL 12882925 (C.D. Cal. Oct. 29, 2012).........................................................14

*SEC v. Am. Growth Funding II, LLC*,
　　16-CV-828 (KMW), 2019 WL 1748186 (S.D.N.Y. Apr. 19, 2019) .........................12

*SEC v. Treadway*,
    430 F.Supp.2d 293 (S.D.N.Y. 2006)..................................................................6

*Shea v. Royal Enters., Inc.*,
    No. 09 Civ. 8709(THK), 2011 WL 2436709 (S.D.N.Y. June 16, 2011).................................12

*State v. United Parcel Serv. Inc.*,
    253 F. Supp. 3d. 583 (S.D.N.Y. 2017)..............................................................3, 4

*Stone Brewing Co., LLC v. Millercoors LLC*,
    Case No. 3:18-cv-00331-BEN-LL, 2021 WL 63139 (S.D. Cal. Jan. 7, 2021).......................13

*Tamarin v. Adam Caterers, Inc.*,
    13 F.3d 51 (2d Cir. 1993) ...........................................................................1

*U.S. Info. Systems, Inc. v. Int'l Bhd. of Elec. Workers*,
    2006 WL 2136249 (S.D.N.Y. Aug. 1, 2006).........................................................17

*United States v. Honeywell Int'l Inc.*,
    Case No. 08-0961, 2020 WL 5793307 (D.D.C Sept. 29, 2020) .................................6

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
    127 F. Supp. 3d 156 (S.D.N.Y. 2015).............................................................15, 16

*Williams v. Boulevard Lines, Inc.*
    Case No. 10-Civ .....................................................................................4

## Other Authorities

Fed. R. Civ. P. 26 ........................................................................................22

Fed. R. Civ. P. 26(a)(2) ...............................................................................10

Fed. R. Civ. P. 37 ........................................................................................7

Fed. R. Evid. 201(b)(1)-(2) ..........................................................................15, 16

Fed. R. Evid. 401 .......................................................................................12

Fed. R. Evid. 403 ...............................................................................11, 12, 18

Fed. R. Evid. 703 .......................................................................................10

Fed. R. Evid. 1006 .............................................................................1, 2, 5

Local Rule of the S.D.N.Y. R. 33.3(a)...........................................................4

Plaintiff the New York City Transit Authority (the "TA") respectfully submits this memorandum of law and the Declaration of Stephanie A. Ackerman ("Ackerman Decl.") in opposition to the Defendant's motions *in limine* 1 through 9.

## I.   MOTION #1:  THERE IS NO BASIS FOR EXCLUDING THE TA'S DAMAGES TOTALS OR MR. FRYE'S TESTIMONY

ESI's motion to preclude the TA from introducing summaries of a claims data file that ESI itself disclosed and produced in this litigation (the "ESI Claims Data") through a witness that the TA properly disclosed at the very outset of discovery lacks any valid basis.

## A.   The TA's Summaries Utilize Claims Data That ESI Produced In This Action, Will Be Offered Through A Properly Disclosed Witness, And Satisfy Fed. R. Evid. 1006

The Court's decision on ESI's reconsideration motion excluded the original Kozlowski exhibits the TA submitted in opposition to ESI's summary judgment motion but listed three alternative sources of information in the record that the TA could potentially use at trial— including the ESI Claims Data and the Aon Report. *See* Ackerman Decl., Exs. 1, 2. Because the Court's decision correctly contemplated that the ESI Claims Data "could potentially be used at trial to provide a 'stable foundation for a reasonable estimate of the damages incurred,'" it follows that the TA could also rely on alternative summaries of that data. *See Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53 (2d Cir. 1993) ("Summary evidence is admissible as long as the underlying documents also constitute admissible evidence and are made available to the adverse party.").

The TA has submitted summary exhibits that replace the now-excluded summaries prepared by Mr. Kozlowski as PX-316–PX-330, this time prepared using ***only*** the ESI Claims Data. *See* Ackerman Decl., Exs. 6-19. The TA will present these summaries through another Aon employee, Derek Frye, who the TA disclosed in its 2019 initial disclosures on a variety of topics,

including "the volume and nature of the compound prescription drug claims submitted under the Contract and the Benefit Plan." Pl.'s Initial Disclosures, ECF No. 204-2.

The new summary exhibits have none of the problems that plagued that Kozlowski summaries. The summaries are proper under Fed. R. Evid. 1006 because the underlying data—the ESI Claims Data—is itself admissible and has long been available to ESI as the producing party. Mr. Frye used only the ESI Claims Data. The TA properly disclosed Mr. Frye on this subject in the TA's initial disclosures three years ago. Mr. Frye prepared the summaries of the ESI Claims data himself. The summaries are therefore "based on foundation testimony connecting it with the underlying evidence summarized." *Fagiola v. Nat'l Gypsum Co. AC & S., Inc.*, 906 F.2d 53, 57 (2d Cir. 1990). As such, there is no basis to preclude the TA's summary evidence of the ESI Claims Data through Mr. Frye.

**B.    The TA's Supplemental Disclosures Are Substantially Justified And Have Caused No Prejudice To ESI**

Following the Court's reconsideration decision, the TA became concerned that the Kozlowski exhibits—which constituted the TA's original (albeit belated) damages computation—no longer fairly reflected the TA's damages computation because they were based on a different claims data source. In an effort to redress the situation, the TA (i) disclosed in writing during mediation its plan to recreate the original summary charts using the ESI Claims Data and present it through Mr. Frye; (ii) formally supplemented its initial disclosures immediately after mediation failed; and (iii) affirmatively offered to make Mr. Frye available for a deposition (which ESI ignored). The TA took these steps before the joint pretrial submissions were due to ensure fair play knowing that ESI intended to move *in limine* to exclude Mr. Frye's testimony and to make ESI fully aware of the TA's intended course. By providing ESI definitive clarity on the course it planned to take, the TA proceeded in a manner consistent with the Court's

reconsideration decision, compliant with the Federal Rules of Civil Procedure, and that mitigated any potential prejudice to Express Scripts.

The disclosures are not prejudicial to ESI. ESI itself disclosed the Claims Data in 2019 in its initial disclosures[1] and produced it to the TA in 2021, after fact discovery had closed. ESI has therefore long had everything it needs to challenge the TA's planned damages presentation. ESI has also long been aware of the TA's damages methodology. The TA disclosed to ESI during fact discovery that the TA's damages were based on the compound spend of a specific list of pharmacies and prescribers; the TA provided computations of the compound spend of those same pharmacies and prescribers in the Kozlowski summaries; and the TA's planned damages presentation through Mr. Frye remains based on the compound spend by the same pharmacies and prescribers. Nothing has changed about the TA's damages theory; it is still based on the same pharmacies and prescribers, and the number is still calculated the same way.[2]  The only difference is the underlying source data.

ESI cannot be prejudiced by the TA's summarization of ESI's own data based on a known formula the TA disclosed and has consistently maintained throughout this case. *See State v. United Parcel Serv. Inc.*, 253 F. Supp. 3d. 583, 685-86 (S.D.N.Y. 2017) (denying preclusion of damages where defendant "possessed the information to replicate this same calculation" and "knew plaintiffs' general methodology"). This is especially true given that the TA's damages

---

[1] ESI disclosed "[c]laims data for Plaintiff related to its members that was submitted during the term of Express Scripts' contract with Plaintiff" as a category of documents it may use to support its claims or defenses. Ackerman Decl., Ex. 3 (Def.'s Initial Disclosures).

[2] Three pharmacies were inadvertently left off the supplemental disclosures but were subsequently included in the TA's statement of damages in the JPTO. Those three pharmacies were included in the TA's list of pharmacies and prescribers disclosed in 2020 and the subsequent Kozlowski summaries. ESI has long been on notice that these pharmacies were included in the TA's claims and has not been prejudiced at all by their inadvertent omission from the supplemental disclosures and their subsequent inclusion in the JPTO and Frye summaries. Nor does their exclusion in the supplemental disclosures cast any doubt on the admissibility of the Frye summaries.

computation—the total compound spend by certain pharmacies and prescribers—is the type of rudimentary claims analysis that the TA hired ESI to do during the contract.

ESI's approach to the damages issue throughout this case further establishes a lack of any actual prejudice. Despite raising a multitude of discovery disputes during fact discovery, both with the TA and with the Court, ESI never once raised the damages computation issue with the TA or requested a damages computation during discovery using tools expressly available for that purpose. *See* Local Civil Rule 33.3(a) (authorizing interrogatories seeking "the computation of each category of damages alleged"). Instead, ESI strategically raised the issue for the first time on summary judgment. As previously represented to the Court, the TA's failure to produce a formal damages computation during discovery was an oversight, and that oversight could have been cured had ESI raised the issue during discovery. The Court should not incentivize and reward these tactics by granting ESI's motion. *See, e.g., Williams v. Boulevard Lines, Inc.* Case No. 10-Civ. 2924, 2013 5652589, *6 (S.D.N.Y. Sept. 30, 2013) (denying preclusion where defendants never "requested clarification from Plaintiff, during discovery, regarding his claimed compensatory damages" or alleged  "that Plaintiff failed to cooperate"); *United Parcel Serv. Inc.,* 253 F. Supp. 3d. at 686-87 (denying preclusion based on defendant's tactics on damages and noting "the Court views [defendant] as having made deliberate, tactical choices as to how it would approach plaintiffs' damages case: It drew careful lines to position this preclusion argument as best it could").

ESI's assertion that the TA has not "fully disclosed the documents used to create the damages totals" is false and yet another reflection of its approach to this issue. As already explained to both ESI and the Court, Mr. Frye's summaries are based on the ESI Claims Data *alone.* The TA *also* disclosed the Aon Report because, consistent with the Court's reconsideration decision, it additionally and independently supports the TA's damages. ESI's

attempts to create a specter of uncertainty surrounding the supplemental disclosures with the conclusory statement that it has been unable to "duplicate" Mr. Frye's totals using the claims data is unsupported by anything in the record—including the absence of its own summaries of the compound spend using the ESI Claims Data it disclosed that it would be relying on in 2019. It is telling that, despite disclosing its own claims data in 2019 and being fully aware of the TA's damages methodology, ESI has listed certain summaries on its exhibit list but has not actually included those summaries with its submitted exhibits.[3]  ESI has had multiple opportunities at this point to show the Court how the TA's alleged compound spend is inaccurate, and its failure to do so—especially now on a motion seeking to exclude the TA's summaries detailing that compound spend—speaks volumes.

Given ESI's tactics on the damages issue, including its most recent decision to ignore the TA's offer to make Mr. Frye available for a deposition, it is abundantly clear that ESI has no genuine interest in minimizing any supposed prejudice to its ability to rebut the TA's damages presentation. The TA submits that ESI has no such interest because ESI *has* all the information it needs to rebut Mr. Frye's summaries. Instead, ESI's goal is and always has been to prevent the TA from showing evidence of the compound spend damages to the jury at all. At this point, there is nothing in the record rebutting the accuracy of the ESI Claims Data that ESI itself produced in response to the TA's discovery request. While ESI will have the opportunity to cross-examine Mr. Frye on his totals based on the ESI Claims Data, the TA does not believe based on the total record that its compound spending through the pharmacies and prescribers subsequently blocked will even be a substantially disputed fact.

**C.      Summary Evidence Of The ESI Claims Data Is Not An Expert Opinion**

---

[3] Despite identifying two Rule 1006 Summary Exhibits on its proposed exhibit list and despite the TA's request for copies of those exhibits, ESI has not provided them to the TA or the Court. JPTO, Attch. F.

Finally, ESI once again attempts to frame summarization of its own claims data as an "expert opinion." It is not. There is no scientific expertise required to summarize the total compound spend for the relevant pharmacies and prescribers reflected in the ESI Claims Data. "It is not uncommon for a witness, without providing an expert opinion based on specialized knowledge, to summarize complicated information in a form that enables the finder of fact to understand certain evidence." *Lujan v. Cabana Mgmt., Inc.,* 284 F.R.D. 50, 77 (E.D.N.Y 2012); *see SEC v. Treadway*, 430 F.Supp.2d 293, 321–22 (S.D.N.Y. 2006) (summary financial evidence relating to trade activity based on review of brokerage statements). Summary evidence, by definition, is not even an *opinion*, expert or otherwise. *United States v. Honeywell Int'l Inc.*, Case No. 08-0961, 2020 WL 5793307, at *3 (D.D.C Sept. 29, 2020) ("In order to constitute summary evidence, the witness' declaration or testimony cannot contain opinions or conclusions."). Nor does "a calculation . . . constitute a conclusion or opinion." *Id.* A summary computation of total dollars spent contained in a database maintained by the defendant in the ordinary course of business and produced in discovery is not a matter for expert testimony, and would not have been a matter for expert testimony regardless of when during discovery it was disclosed. Adding columns in a spreadsheet involves no scientific or other expertise, no opinion, and no basis for expert testimony. And ESI's snapshot of a text file divorced from any context is insufficient to convert Mr. Frye's summary testimony into an opinion. If and to the extent ESI has questions for Mr. Frye as to how he prepared his summary exhibits from the ESI Claims Data, those are foundational questions Mr. Frye will address and on which ESI will be able to cross examine him. There is no basis on the current record to conclude Mr. Frye's summary testimony is an expert opinion.

The TA's good faith supplement of its initial disclosures with information ESI had *previously-disclosed* and *previously-produced* and the Court had already noted the TA could

potentially use to prove its damages in no way prejudices ESI. ESI is fully and fairly equipped to challenge the TA's presentation of compound spend by pharmacy and prescriber at trial because that presentation is based on ESI's own data that it produced during discovery and disclosed in its own initial disclosures. Preclusion under Rule 37 is completely unwarranted under these circumstances and motion *in limine* number 1 should be denied.

## II.   **MOTION # 2: THE AON REPORT, CARIBOU DATASET AND MR. KOZLOWSKI'S TESTIMONY ARE ADMISSIBLE**

### A.   **The Aon Report Need Not Cover Every Element Of Damages To Be Admissible**

ESI's motion to exclude the Aon Report is baseless. As explained above, the TA will prove its damages through Mr. Frye's summaries of the ESI Claims Data. But the TA could certainly offer the Aon Report to corroborate a portion of Mr. Frye's testimony.[4]  *See* Ackerman Decl., Ex. 2.

The Aon Report is relevant and its presentation of data on the top 10 pharmacies and prescribers is neither misleading nor prejudicial. First, each piece of evidence does not need to independently encompass the total damages claimed. *Euro Pacific Capital, Inc. v. Bohai Pharmaceuticals, Inc.*, 15-CV-4410 (VM) (JLC), 2018 WL 1229842, at *4 (S.D.N.Y. 2018) (finding party sufficiently established its damages claim upon consideration of multiple pieces of evidence, including copies of agreements, notes and sworn statements). Second, the relevance of the Aon Report is not limited to damages; the compound spend details in that report are also relevant to the issues of duty and breach because they detail the nature of the compound spend that ESI failed to convey to the TA.

---

[4] If the Court precludes the TA's use of the Frye summaries of the ESI Claims Data at issue in ESI's motion *in limine* #1 (although the TA submits that would be error), the TA would likely rely on multiple pieces of evidence in the record to provide a reasonable estimate of its damages, including, but not limited to, the Aon Report. As such, the TA must preserve its right to use evidence in the record to corroborate Mr. Frye's testimony and establish its damages by other means if necessary.

Finally, ESI apparently intends to rely, at least in part, on the Aon Report. ESI included the Aon Report on its proposed exhibit list as DX-10[5], as did the TA as PX-193. Neither party objected to the report, confirming that ESI did not find the Aon Report irrelevant or prejudicial at the time the Joint Pretrial Order was filed. Proposed Joint Pretrial Order ("JPTO"), Attach. F, ECF No. 205 (Nov. 23, 2011).

### B.     Mr. Kozlowski's Testimony Is Admissible

As with the Aon Report, the TA does not intend to rely on Mr. Kozlowski to prove damages, given Mr. Frye's summary exhibits.[6]  That said, ESI's argument that Mr. Kozlowski's testimony should be excluded as a late disclosed witness is a rehashing of its previously rejected summary judgment argument. *See generally, N.Y.C. Transit Auth. v. Express Scripts, Inc.*, 588 F. Supp. 3d 424 (S.D.N.Y. 2022), *reconsideration denied*, No. 19-CV-5196 (JMF), 2022 WL 3577426 (S.D.N.Y. Aug. 19, 2022). ESI's attempts to repackage and repeat its previously rejected summary judgment arguments should be rejected. *Hein v. Cuprum, S.A.*, No. 99–C–1360, 2002 WL 34453309, at *1 (S.D.N.Y. Jan.23, 2002) (denying motions *in limine* concerning expert witness where defendant had pressed the same arguments in a prior summary judgment motion).

To the extent the Court seeks to revisit Mr. Kozlowski's ability to testify on matters other than damages, the TA's failure to formally include Mr. Kozlowski in its initial disclosures was both substantially justified and harmless. *See Cunningham v. Town of Ellicott*, No. 04CV301, 2007 WL 1040013, at *3 (W.D.N.Y. Apr. 3, 2007) (denying motions to exclude testimony of several witnesses that were not named in a party's initial disclosures because some witnesses were representatives of a party to the case and others were deposed during discovery). The TA

---

[5] ESI also included the Aon Report without the authenticating email or deposition exhibit marking as DX-11.
[6] The Court excluded Mr. Kozlowski's summary exhibits, but not his testimony generally. *See N.Y.C. Transit Auth. v. Express Scripts, Inc.*, No. 19-CV-5196 (JMF), 2022 WL 3577426, at *2 (S.D.N.Y. Aug. 19, 2022).

did not include Mr. Kozlowski in its initial disclosures because it intended to rely on Ken

McCabe, Mr. Kozlowski's supervisor, to address the various analyses of compound spend that

Aon provided for the TA. But Mr. McCabe left Aon unexpectedly after discovery closed, and

that is why the TA relied on Mr. Kozlowski to create the exhibits. Mr. Kozlowski appears on

hundreds of emails exchanged between the parties during the contract term and produced during

fact discovery. Mr. Kozlowski was also involved in the preparation of Aon's various analyses,

including the Aon Report. ESI was aware of this during discovery; Mr. Kozlowski himself sent

the cover email to the TA attaching the Aon Report, which was produced to ESI. Ackerman

Decl., Ex. 2 at 1. ESI used many documents referencing Kozlowski as exhibits in their

depositions, and even specifically asked about Mr. Kozlowski during Aon's 30(b)(6) deposition.

*Id.*, Ex. 4, McCabe Dep. Tr. at 13:13-22, 14:9-22, 67:19-68:7. ESI's assertion that it was

deprived of an opportunity to depose Kozlowski rings hollow given that he was deposed by ESI

on May 31, 2022 and ESI did not even depose the two Aon witnesses the TA *did* disclose;

instead, it took a 30(b)(6) deposition of Aon, and it was Aon that produced Mr. McCabe and Mr.

Frye on certain specified topics.

It is worth noting that ESI did not disclose numerous witnesses on its own witness list,

including Battelle, Eich, Rutkowski, and Klein. *Compare* Ackerman Decl., Ex. 3 (Def.'s Initial

Disclosures) *with* JPTO, Sec. X.B. But the TA served an interrogatory requesting ESI to identify

a number of witnesses serving in different capacities at ESI, and then further used documents

produced by ESI to identify and narrow witnesses to depose. ESI could have easily deposed Mr.

Kozlowski using this same method. Given that the TA would merely use Mr. Kozlowski to

provide testimony on specific documents that have long been produced and used by ESI, there is

no basis to preclude Mr. Kozlowski from testifying on these subjects.

###   C.   Caribou's Pharmacy Claims Dataset Is Admissible For A Limited Purpose

The TA will not use the Caribou Pharmacy Claims Dataset to prove its damages. Its relevance is limited to a certain portion of the TA's planned testimony for its expert witness, Susan Hayes, who relied on that information in preparing her expert opinion. The TA does not intend to rely on this data in any context other than as information considered by its expert witness. *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 05-MD-1720 (MKB), 2022 WL 14814183, at *13 (E.D.N.Y. Oct. 26, 2022) (Under Rule 703, "[a]n expert may base his opinions on facts that are otherwise inadmissible, such as hearsay that does not fall within a recognized exception, if 'experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject.'") (citations omitted).

The TA affirmatively produced materials to ESI that Ms. Hayes reviewed in preparation of her report, including the Caribou data set. *See* Ackerman Decl. Ex., 21 at 14. The fact that the TA produced this specific data set during expert discovery rather than fact discovery is of no import. It was produced as material that the TA's expert witness considered and that ESI had not previously requested. *See In re Elysium Health-ChromaDex Litigation*, 17-cv-7394 (LJL), 2021 WL 1249223, at *3-4 (S.D.N.Y. Apr. 5, 2021) (holding an expert witness was required by Fed. R. Civ. P. 26(a)(2) to produce the materials relied upon in an expert report).

ESI has not been prejudiced in the slightest by the TA's proper production of the Caribou Data during expert discovery. In fact, ESI concedes that it had the opportunity to depose Ms. Hayes on her use of the claims data. Def.'s Mot. in Lim. ("Def. Mot.") at 10-11, ECF No. 203. ESI deposed the only TA witness that may testify on this data and asked her about her use of that data. *See* Ackerman Decl., Ex. 20, Hayes Dep. Tr. at 50:12-17, 111:12-22, 123:18-124:24, 207:1-210-2. There is no "sandbagging" here whatsoever. *Miss Jones LLC v. Shahid*, 17-CV-716 (AMD) (LB), 2022 WL 4642716, at *6 (E.D.N.Y. Sept. 30, 2022) (holding no prejudice where a party was on notice that an employee would be a potential witness and parties had years to

10

prepare for the testimony at issue). Again, leaving aside that the underlying data is ESI's own data, ESI has been aware of the data set since at least February of 2021 when it deposed the TA's expert. *See Id.*, Ex. 20, Hayes Dep. Tr. at 50:12-17. And as the keeper of the claims data, ESI has had ample time to analyze it in any way necessary.

### D. Ms. Ridgway Has Not Been Identified By The TA As A Witness

The TA did not identify Ms. Ridgway as a witness in the November 23, 2022 Proposed JPTO because the TA does not intend to call her as a witness. JPTO, Sec. X.A. The Court should therefore deny ESI's motion *in limine* number 2 as to Ms. Ridgway as moot, and as to Mr. Kozlwoski and the Caribou Dataset because both are admissible and neither are prejudicial to ESI.

### III. MOTION #3: THE AMOUNT OF MONEY PAID BY THE TA DURING THE CONTRACT TERM IS RELEVANT AND ADMISSIBLE UNDER RULE 403

It is undisputed that the TA contracted with ESI for a "three (3) year contract in the amount of $728,490,000 . . . to provide pharmacy benefits management services for represented NYC Transit employees."[7] Decl. of Elizabeth Bozicevic, Decl., Ex. 6 (Notice of Award), ECF No. 204-6; Def. Mot. at 13. The amount paid to and through ESI under the contract at the core of this dispute places the relationship and the specific job ESI was hired to do into context. The money spent by the TA and the amount of claims filled for TA beneficiaries—*viz.,* the size and scope of the pharmacy benefit program that ESI was tasked to manage in a prudent and expert manner—is critical to understanding whether ESI discharged its standard of care and satisfied its contractual obligations. Given ESI's anticipated defense that the proactive monitoring of claims activity was not its job and somehow was the TA's responsibility—with its small handful of benefits employees and no specific pharmacy benefits training and resources—the TA must be

---

[7] The TA is not relying on this total as evidence of its damages. *See* Def. Mot. at 1-9.

able to explain to the jury the size and costs of the pharmacy benefits program. This information is also probative of the TA's performance under the contract and therefore relevant. Fed. R. Evid. 401 ("[E]vidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action.").

ESI's argument that the total paid under the Contract is irrelevant because the TA cannot rely on it as evidence of damages is beside the point. First, the TA is not relying on the total paid under the Contract for its damages calculation, and second, the total paid *is* relevant to the questions of duty and breach. Def. Mot. at 7-15.

ESI's claim that the evidence of the total paid is prejudicial also fails. A party's concern that reference to relevant evidence will have a negative or detrimental impact on its defense does not make it unfairly prejudicial under Federal Rule of Evidence 403. *See MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, No. 09 Civ. 3255, 2012 WL 2568972, at *11 (S.D.N.Y. July 3, 2012) ("Evidence cannot be excluded under Fed. R. Evid. 403 on the basis that, due to its relevance, such evidence has a negative impact on a party's litigation position."); *Shea v. Royal Enters., Inc.*, No. 09 Civ. 8709(THK), 2011 WL 2436709, at *9 (S.D.N.Y. June 16, 2011) ((same). "The prejudice that Rule 403 is concerned with involves some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'" *Perry v. Ethan Allen, Inc.*, 115 F.3d at 151. The TA is entitled to provide the relevant background of this dispute to the jury. This includes the terms and formation of the Contract, the size and scope of the benefit program ESI was tasked to manage, as well as the TA's performance under the Contract.[8] ESI's motion *in limine* number 3 should be denied.

---

[8] The decisions cited by ESI are factually inapposite and do not support exclusion of the total paid under the contract as prejudicial. *SEC v. Am. Growth Funding II, LLC*, 16-CV-828 (KMW), 2019 WL 1748186, at *2 (S.D.N.Y. Apr.

## IV.   MOTION #4:  ESI'S SIZE AND OWNERSHIP ARE RELEVANT TO ITS ABILITY TO MEET THE STANDARD OF CARE UNDER THE CONTRACT

Similar to the relevance of the size and scope of benefit program ESI was tasked to manage, ESI's size in relation to other PBMs in the United States market and its ownership by one of the largest insurance companies in the country is relevant to ESI's discharge of the operative standard of care. The standard of care in the Contract required ESI to "use that degree of care and reasonable diligence that an ***experienced and prudent*** plan administrator of pharmacy benefits under a group health plan familiar with such matters would use acting in like circumstances, and ***consistent with industry standards***." JPTO, Sec. IV.A  at 4 (Contract Sec. 4.1). The Contract also required ESI to "process claims incurred . . . and provide customer service in a ***prudent and expert manner***." *Id.* ESI's size and reputation as a PBM are therefore expressly relevant to ESI's discharge of the relevant Contract provisions. Where, as here, there is a question of whether a standard of care was employed properly, the size and expertise of the provider is relevant.

ESI's sophistication, size, and ownership is relevant not only to its capabilities to perform under the contract, but it is also relevant to why the TA selected it. ESI's status as the largest PBM in the country and a Fortune 25 Company speaks to the TA's expectations as to why it

---

19, 2019) (excluding evidence related to wrongdoing by dismissed defendants because of its potential prejudicial impact on the remaining defendants); *Linkco, Inc. v. Fujitsu Ltd.*, 232 F. Supp. 2d 182, 191 (S.D.N.Y. 2002) (excluding "projections [that] were not available until after the hypothetical negotiation" at issue because plaintiff was required to establish damages using "evidence available to the parties before the alleged theft"); The remaining cases from other Circuits similarly miss the mark. *A&G Tree Serv., Inc. v. Tenn. Valley Auth.*, No. 3:06-cv-91, 2007 WL 922172, at *2 (E.D. Tenn. Mar. 23, 2007) (denying motion to compel because the documents at issue did not relate to any claim in the case); *Eiben v. Epstein & Sons Intern., Inc.*, 57 F. Supp.2d 607, 614 (N.D. Ill. 1999) (excluding evidence of gross revenue where plaintiff sought to use that information to assert a new case theory at trial); *Stone Brewing Co., LLC v. Millercoors LLC*, Case No. 3:18-cv-00331-BEN-LL, 2021 WL 63139, at *8 (S.D. Cal. Jan. 7, 2021) (excluding evidence of total revenue and profits from *other* brands of beer as irrelevant to show that plaintiff's decision to rebrand its beer); *Fournier v. Erickson*, 242 F. Supp. 2d 318, 330 (S.D.N.Y. 2003) (rejecting evidence of *speculative* revenue and profit figures because jury would determine portion of the overall gross revenues attributable to factors other than the alleged infringement); *Desly Int'l Corp. v. Otkrytoe Aktsionernoe Obshchestvo*, 13-CV-2303(ENV)(LB), 2017 WL 9989599, at *3 (E.D.N.Y. June 16, 2017)(rejecting proposed use of "profits" and "revenues," interchangeably as misleading and confusing to the jury).

hired a PBM of that magnitude and expertise in the first place. "In assessing the reasonableness

of a plaintiff's alleged reliance, [courts are] to consider the entire context of the transaction,

including factors such as complexity and magnitude, the sophistication of the parties, and the

content of any agreements between them." *Emergent Capital Inv. Mgmt., LLC v. Stonepath*

*Group, Inc.*, 343 F.3d 189, 195 (2d Cir.2003); *Harsco Corp. v. Segui*, 91 F.3d 337, 342 (2d

Cir.1996) (accounting for the sophistication of the parties and size of the contract when assessing

a common law fraud claim). The TA does not intend to present evidence of ESI's parent

company to appeal to the jury's sympathy but rather to present evidence of ESI's sophistication

as it relates to its failure to meet its obligations under the Contract. [9] Def. Mot. at 16. Because

ESI's size and reputation is directly related to the operative standards in the Contract, it is

relevant to the question of ESI's breach and therefore admissible. For these reasons, motion *in*

*limine* number 4 should be denied.

## V.      MOTION #5:  THE TA'S FINANCIAL SITUATION IS A PUBLIC FACT SUBJECT TO JUDICIAL NOTICE AND NOT UNDULY PREJUDICIAL TO ESI

ESI itself calls the TA "a cash-strapped public agency." *See* Def. Mot. at 17. Yet it

nevertheless seeks to keep that relevant, judicially noticeable, and more probative than

prejudicial fact from the jury. The TA's fiscal situation is relevant to the remaining issues for

trial because it is probative of what the TA's expectations were from ESI, including how ESI

was expected to discharge its contractually imposed standard of care, and why it mattered so

much to the TA that ESI carry out its duties consistent with the contractual standard of care.

---

[9] The TA is unlike the defendants in *Rodriguez v. JLG Industries, Inc.* 2012 WL 12882925, 1 (C.D. Cal. Oct. 29, 2012) and *Reyes v. Aqua Life,* No. 10-23548-Civ-COOKE/TURNOFF, 2012 WL 12892213, *1 (S.D. Fla. Jul. 9, 2012), the courts excluded evidence of defendant's parent company against an individual plaintiff seeking damages for injuries sustained by defendant's machinery and of the individual owners' *personal* wealth in a lost wages suit. *Edmark v. Zurich Am. Ins. Co.* directly counters ESI's position because the Court found Zurich's submission of its parent-company's financials insufficient to support exclusion and instead reserved judgment. ESI presents no evidence to support its arguments and therefore, at best, *Edmark* supports the Court's reservation of a ruling on this issue.  No. 1:15-cv-00520-BLW-CWD, 2019 WL 1002952, *1 (D.C.D. Idaho Mar. 1, 2019).

The TA's witnesses will testify that this standard of care was central to the contract for the purpose of protecting the TA's limited funds. *See* JPTO, Sec. X.A. The TA's fiscal condition is also probative of the TA's performance under the Contract—its $728 million in payments under the Contract made despite the fiscal demands of operating the subway and bus systems and paying the people who operate them—which ESI apparently now disputes.

Evidence of the TA's fiscal situation is not unfairly prejudicial to ESI. As discussed above, there is a distinction between a fact that is prejudicial and one that will have a negative impact on ESI's defense. Reference to a generally known fact regarding the TA does not "involve[] some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'" *Perry v. Ethan Allen, Inc.*, 115 F.3d at 151.

The MTA's fiscal situation is a matter of public information that can be judicially noticed because it is a fact of which all courts in this jurisdiction and jurors are undoubtedly aware. The Court can take judicial notice on its own or by request of a party at any stage of the preceding. Under Federal Rule of Evidence 201, "a court may take judicial notice, at any stage of the proceeding, of any fact that is not subject to reasonable dispute because it is generally known within the trial court's jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). The TA's fiscal situation is judicially noticeable under both elements of Rule 201.

***First***, ESI "does not actually dispute" the TA's "fiscal situation," nor does it argue that the Court and potential jurors are ignorant to this fact, it would "simply prefer that the Court [and jury] not consider" it. *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015); Def. Mot. at 16-17 (discussing, without disputing, the TA's fiscal situation).

15

**Second**, the Court may take judicial notice of both news media reports of the TA's finances and reports published by the TA and MTA. "Pursuant to Rule 201, courts have considered newspaper articles, documents publicly filed with the SEC or FINRA, documents filed with a Secretary of State, documents filed with governmental entities and available on their official websites, and information publicly announced on certain nongovernmental websites, such as a party's official website." *Wells Fargo*, 127 F. Supp. 3d at 166 (collecting cases). The TA's financials and financial forecasts are the subject of regular news articles in reputable and reliable news outlets. *See, e.g.*, Ackerman Decl., Exs. 22-28. In addition, the MTA issues reports and press releases regarding its financials, publicly available on its and other websites. *See, e.g.*, *Id.*, Exs. 29-32.

For these reasons, ESI's motion *in limine* to exclude evidence and testimony of the MTA's fiscal situation must be denied because it seeks to exclude relevant and nonprejudicial evidence that is both a generally known fact and may be judicially noticed.

## VI.   MOTION #6:  DAVID ROSS'S TESTIMONY IS ADMISSIBLE BECAUSE IT IS RELEVANT AND BASED ON HIS PERSONAL KNOWLEDGE

David Ross's testimony is based on his personal knowledge resulting from his service as Chief Procurement Officer for the MTA. In that role, Mr. Ross was responsible for the oversight of all contracts related to prescription spending under the MTA and its agencies, including the TA, Long Island Rail Road, Metro-North, and the Triborough Bridge and Tunnel Authority which operates seven bridges and two tunnels connecting New York City to the surrounding area. This included the Contract between the TA and ESI. As detailed in the TA's opposition to ESI's motion *in limine* number 5, the overall fiscal situation of the TA is relevant and a well-known fact subject to judicial notice; likewise, the specific relationship between the compound spend and the TA's overall budget is within Mr. Ross's personal knowledge in his role as CPO. Ackerman Decl., Ex. 33, Ross Dep. Tr. at 46:6-23 ("I'm not sure of the exact date, but what I

would say is that around the time that the staff summary began to get circulated, . . . I was looking, as I always do, at expenditures on the contract in relation to estimates.").

ESI's argument that Mr. Ross's testimony is inadmissible hearsay ignores the realities of business operations which regularly require executives to gain information through discussions with other employees. This is precisely the type of executive-level testimony courts routinely admit. *U.S. Info. Systems, Inc. v. Int'l Bhd. of Elec. Workers*, 2006 WL 2136249 *1, * 11 (S.D.N.Y. Aug. 1, 2006) ("[C]ited testimony is not hearsay because it was founded on personal knowledge acquired through others."). An executive's "assessments are inferential, and as long as they are the sorts of inference that businessmen customarily draw they count as personal knowledge, not hearsay." *Agfa-Gevaert, A.G. v. A.B. Dick Co.*, 879 F.2d 1518, 1523 (7th Cir. 1989) (holding business executives' testimony about their products based on their knowledge from engineers instead of from first hand inspection is not hearsay).

ESI's statement that because Mr. Ross joined the MTA in 2017, "all of his purported knowledge is . . . second-hand," Def. Mot. at 18, is wholly unsupported by the record and contradicts ESI's own witness list. ESI's arguments to exclude David Ross's testimony because (1) he "was not employed by the NYCTA";[10] (2) was not hired "until August 2017"; and (3) lacked any knowledge of the compound issue should also be rejected because ESI has identified Mr. Ross as a witness who will testify "***about NYCTA's knowledge of the compound issues***, its ***decisions regarding the compound management solution***, and NYCTA's request to extend the PBM contract." JPTO, Sec. X.B.3(e); *see Finnish Fur Sales Co., Ltd. v. Furs Unlimited, Inc.*

---

[10] ESI's argument that the MTA and TA are "different" is, at best, misinformed and, at worst, frivolous. "The MTA's operating agencies are New York City Transit, Long Island Rail Road, Metro-North Railroad, and Bridges and Tunnels." About Us, https://new.mta.info/about (last visited Dec. 2, 2022). Surely, after more than three years of litigating this matter, ESI is aware of the corporate structure of the TA as an agency of the larger MTA. Indeed, it was the MTA board that voted to not renew the TA's contract with ESI—which ESI knows because it brought an Article 78 petition challenging the emergency transition to a new PBM due to the exorbitant compound spend under the Contract.

1992 WL 47372 (S.D.N.Y. March 4, 1992) (citing *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121–22 (2d Cir.1990) ("Unless a party moves to amend a statement made in a pleading or pretrial order, that statement is a judicial admission, conclusive against the party that made it.")  Mr. Ross's knowledge was based on his work as the Chief Procurement Officer of the MTA, developed through his experience in the role including review of materials, as well as discussions with subordinates, and therefore it is not hearsay.

Mr. Ross's affidavit from a prior state court litigation is inadmissible because the affidavit lacks any probative value to the matters at issue here, is irrelevant and is not necessary to replace Mr. Ross's testimony at trial. Evidence of prior litigation including testimony and statements made in the course of a former case, may be admitted only if it is relevant and probative of an issue in the present case. *Orr v. Shea*, No. 3:17-cv-00788 (VAB), 2021 WL 1946381, at *5 *(D. Conn. May 14, 2021) (citing *Barnes v. Long Island R.R.*, 205 F.3d 1321 (2d Cir. 2000)). But such evidence of prior testimony is not admissible unless a party identifies with a "degree of specificity" why the evidence or testimony would be "inconsistent" with his current position or relate in any particular way to issues in the present case. *Id.* (denying motion *in limine* due to lack of specificity regarding prior litigations). Where documents from other litigations lack probative value, they are plainly inadmissible under Fed. R. Evid. 403. *Park West Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314, 330 (S.D.N.Y. 2009) (excluding references from another litigation because any probative is substantially outweighed by the risk of unfair prejudice, confusion of the issues, misleading the jury, and waste of time.)  ESI has not provided any specific reason for introducing Mr. Ross's state court affidavit here.

Mr. Ross is not testifying about the day-to-day particulars of administering the Contract, including any specific pharmacies, prescribers, or compound prescriptions. Rather, Mr. Ross is testifying about specific information he reviewed and was aware of in the normal course of his

work, namely the huge spikes in spending above the TA's projections. The TA does not intend to present Mr. Ross to testify about any particular claim or the management of ESI on a daily basis. Mr. Ross's testimony as to the contract, the parties 'performance under the Contract, and the TA's decision to not renew the contract are based on his personal knowledge developed in his position with the TA and are thus not hearsay. ESI's motion *in limine* number 6 should therefore be denied.

## VII.   MOTION #7:  THE DETERMINATION OF DAMAGES IS FOR THE JURY AND DEFENDANT'S MOTION *IN LIMINE* 7 IS IMPROPER BECAUASE IT MAKES NO EVIDENTIARY ARGUMENTS

Motion *in limine* number 7 should be denied because it is a belated summary judgment argument thinly veiled as an *in limine* motion. ESI does not identify any evidence it seeks to exclude or why any evidence should be excluded. Instead, although the motion is framed in terms of damages, ESI actually asks the Court to conclude that ESI discharged its contractual obligations as a matter of law by a certain date based on a single email it sent the TA and to exclude *any* contrary evidence after that date. Def. Mot. at 19-20. The Court should deny the motion for at least four fundamental reasons.

***First***, ESI once again gets the TA's theory of the case wrong. The TA's claims are based on certain *red flags* that ESI missed in the claims data and separately identified through its FWA investigations but failed to communicate to the TA. Red flags are serious and obvious problems—and they need to be communicated in a serious and obvious way. The TA has never asserted that simply providing a list of high-cost pharmacies and prescribers, without actually pointing out the problem, would have discharged ESI's obligations under the Contract. A prudent PBM satisfying its standard of care would have identified the problem clearly and specifically and suggested a workable solution.

*Second*, "notice" is not some check-the-box fact that can be established as a matter of law merely because an email was sent. The adequacy and quality of any notice ESI provided is a critical fact issue for the jury to explore and determine. ESI is certainly free to argue that it provided whatever notice it thinks it provided to the TA, and the TA is free to argue that this was insufficient to discharge ESI's obligations under the Contract. But there is no basis for the Court to decide this issue as a matter of law now.

*Third*, ESI is again improperly using this motion *in limine* to make arguments it failed to set forth during summary judgment rather than to exclude any specified piece of evidence. "*In limine* has been defined as on or at the threshold; at the very beginning; preliminarily. Black's Law Dictionary 708 (5th ed. 1979). We use the term in a broad sense to refer to any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984) (cleaned up). ESI points to no specific evidence for the Court to exclude, but rather makes an argument it should have made at summary judgment but failed to do so. "[T]he failure to provide argument on a point at issue constitutes abandonment of the issue." *See, e.g.*, *Fieldcamp v. City of New York*, 242 F. Supp. 2d 388, 391 (S.D.N.Y. 2003) (quoting *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997), aff'd, 130 F.3d 1101 (2d Cir. 1997)); *NYCTA v. ESI*, 588 F. Supp. 3d 424, 437 (S.D.N.Y. 2022) (citing *Lima v. Hatsuhana of USA, Inc.*, No. 13-CV-3389 (JMF), 2014 WL 177412, at *1 (S.D.N.Y. Jan. 16, 2014) ("It is well established that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (cleaned up)).

*Fourth*, in the alternative, to the extent this is even a damages-based motion, the motion should be denied as premature. *Hart v. RCI Hospitality Holdings, Inc.*, 90 F. Supp. 3d 250, 283 (S.D.N.Y. 2015) (denying a motion *in limine* regarding a determination of damages as premature

and noting that the Court would welcome and resolve a motion on the issue if the jury's verdict requires attention to it). As this Court explained in denying ESI's summary judgment motion, it is *ESI's* burden to present evidence of the *amount* of damages at issue at trial: "Indeed, 'the burden of uncertainty as to the amount of damage is upon the wrongdoer,' and at trial the 'plaintiff need only show a stable foundation for a reasonable estimate of damages incurred as a result of the breach.'" *N.Y.C. Transit Auth. v. Express Scripts, Inc.*, 19-CV-5196 (JMF), 2022 WL 3577426, at *3 (S.D.N.Y. Aug. 19, 2022) (quoting *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 141 (2d Cir. 2016) (cleaned up); *accord Boyce v. Soundview Tech. Grp., Inc.*, 464 F.3d 376, 391 (2d Cir. 2006)). Once a "stable foundation" is established, "the burden of any uncertainty as to the amount of damages is on the breaching party." *Id.*

The parties agree that whether the TA is entitled to damages and, if so, in what amount are the ultimate questions to be answered by the jury. *See* JPTO, Attch. B. Motion *in limine* number 7 seeking to short-circuit that process should be denied.

## VIII.   MOTION #8: ESI'S WORK AS TRICARE'S PBM IS RELEVANT EVIDENCE OF ESI'S KNOWLEDGE OF THE RISKS OF COMPOUND PRESCRIPTION PROBLEMS FOR PUBLIC AGENCY BENEFIT FUNDS

ESI's knowledge of the potential for compound fraud and excess costs that it developed through its work on TRICARE is relevant to whether it acted within the appropriate standard of care under its subsequent contract with the TA. ESI's motion to exclude this evidence by emphasizing that the TA and TRICARE were governed by different contracts misses the point entirely. What happened under TRICARE, what ESI as a company learned from that experience, and how—if at all—ESI applied that experience in its performance under its *subsequent* contract with the TA is highly relevant to whether ESI satisfied its standard of care under the separate TA contract. That two independent contracts governed the parties' relationships is irrelevant on this

score. And the probative value of this evidence outweighs any prejudice ESI may suffer based on the hypothetical arguments ESI propounds here.

ESI was the PBM for TRICARE while it experienced a now public large-scale health care fraud perpetrated by pharmacies, prescribers, and members of the benefit plan that involved kickback schemes for compounded medications. Ackerman Decl., Ex. 34, Stockwell Dep. Tr. at 65:9-67:7.[11]  With Express Scripts as its PBM, the TA experienced a similar trend of increasing compound spend and similar compound fraud. *Id.* at 55:8-20. Whether ESI acted with that "degree of care and reasonable diligence" that under a group health plan familiar with such matters would use acting in "*like circumstances, and consistent with industry standards*" is central to whether ESI breached the contract. JPTO, Sec. IV.A. How ESI did—or did not—apply the knowledge it gained from the TRICARE engagement to its role "as an *experienced* and *prudent* plan administrator of pharmacy benefits acting in *like circumstances, and consistent with industry standards*" for the TA is central to whether ESI breached its duty under Section 4.1 of the Contract. If ESI did *not* implement any procedures under the TA's contract to protect the TA from vulnerabilities ESI knew about, this evidence is relevant and should be presented to the jury.

Indeed, this Court already heard and determined a related issue during discovery when ESI refused to produce discovery into TRICARE. *See* Order, ECF No. 66 (Feb. 6, 2020). At that time, the Court ruled that "ESI's knowledge (or lack thereof) of the alleged similar fraud in connection with the Tricare account is relevant—within the broad meaning of that term for purposes of Rule 26—to the issues in this case, including but not limited to whether Express Scripts knew or should have known about the alleged fraud in connection with NYCTA's

---

[11] *See also* https://www.justice.gov/opa/pr/compounding-pharmacy-mogul-sentenced-multimillion-dollar-health-care-fraud-scheme.

account." ESI makes the same contract-centered arguments now as it did then. The Court should again find for the same reasons that the Tricare situation is relevant trial evidence.

ESI concedes that its own witnesses testified that ESI was aware of the compound prescription fraud problem, but these concessions are no substitute for the TA's exploration of this issue at trial. ESI has offered no stipulation as to its prior knowledge of compound spend, and even if it did, the TA is not obligated to accept it. Nor does ESI assert any persuasive argument that it will be prejudiced, other than repeated and conclusory references that TRICARE will require a "mini trial" to address. The TA does not anticipate a mini-trial on TRICARE at all, and the Court can always limit testimony on the subject as needed at trial. ESI's motion *in limine* number 8 should be denied.

## IX.  MOTION #9:  THE COHEN INVESTIGATION REPORTS ARE RELEVANT TO ESI'S KNOWLEDGE OF DR. COHEN'S ACTIVITIES AND ESI'S RESULTING BREACH OF ITS CONTRACTUAL STANDARD OF CARE

The Cohen Investigation Reports marked as PX-026, and PX-138 to PX-141 are relevant. These reports are probative of what ESI knew, or should have known, about Dr. Cohen and what ESI did *and did not do* to meet the standard of care it owed the TA under the Contract.

Contrary to ESI's claim, the Cohen Investigation Reports are "probative of ESI's knowledge of Dr. Cohen or his prescriptions to NYCTA members" during the Contract period.[12] *See* Def. Mot. at 22. The TA first requested an investigation of Dr. Cohen in January 2018 after TA employee Mary Beese discovered through her own due diligence that Dr. Cohen, a California-based orthopedist, had been writing an extraordinary number of compound prescriptions for TA benefit members. Ackerman Decl., Ex. 35 at 1. In fact, he authorized nearly $20 million worth of compound prescriptions in 2017. *Id.*, Ex. 8. Ms. Beese followed up with ESI for months requesting an update on the investigation, but received no response until June

---

[12] ESI refers to "the relevant events" but provides no explanation of what they are. *See* Def. Mot. at 22.

2018. *Id.*, Ex. 36 at 11; Ex. 35. When ESI finally provided an update, it was only to inform the TA that it had been unable to substantiate fraud in connection with Mr. Cohen. *Id.*, Ex. 35. At least six months passed between the request for an investigation into Dr. Cohen and the result provided to the TA. *Id.* Just eight months later, the Cohen Investigation Reports were issued. *See Id.*, Ex. 37; Exs. 38-41. These Reports demonstrate that during the Contract period Express Scripts knew of red flags related to Dr. Cohen in connection with multiple accounts, was actively developing a case supporting referral of Dr. Cohen to the New York State Office of the Professions, and failed to communicate this information to the TA. The fact that ESI was actively investigating Dr. Cohen across its book of business during the Contract period and was aware of red flags associated with Dr. Cohen but failed to communicate them to the TA is unequivocally relevant to Express Scripts's breach of the duty of care under the relevant Contract provisions. *See* JPTO, Sec. IV.A.

The Reports also revealed significant information about Dr. Cohen that ESI should have been aware of before and throughout the Contract period, if it had conducted the requisite diligence: (i) in 2015, "Dr. Cohen was charged with filing a false tax return and admitted to failing to report income from $1.64 million in kickbacks . . . from a scheme in which thousands of patients were illegally referred for spinal surgeries"; (ii) Dr. Cohen pleaded guilty in 2018 to filing a false tax return[13]; (iii) his New York medical license was suspended for 24 months and he was placed on probation for 36 months and fined $5,000; and (iv) ESI referred Dr. Cohen to the New York State Office of the Professions. *See, e.g.*, Ackerman Decl., Ex. 37 at 1. By the time ESI issued its report, Dr. Cohen had already authorized $22 million in compounds for TA members. *Id.*, Ex. 8.

---

[13] As a result of his guilty plea, Dr. Cohen was subsequently convicted of this charge.

The Cohen Investigation Reports capture just what ESI failed to communicate to the TA. To be sure, the TA's position is that Dr. Cohen's prescribing activity alone should have caused ESI to affirmatively reach out to the TA and recommend specific remedial action on Dr. Cohen. But the fact that there was clearly more to his aberrant prescribing activity that ESI would have discovered more quickly had it been more responsive to the red flags in its own data further establishes the extent of its own failures. This evidence is probative of ESI's breach of its duty of care and therefore relevant to the remaining issues for trial. As such, ESI's motion should be denied.

## **CONCLUSION**

For the foregoing reasons, the TA respectfully requests that ESI's motions *in limine* 1-9 be denied in their entirety.

Dated: New York, New York
December 7, 2022

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:  /s/ *John Siegal*
45 Rockefeller Plaza
New York, NY 10111
Phone: (212) 589-4200
Fax: (212) 589-4201
John Siegal
Maximillian S. Shifrin
Stephanie A. Ackerman
Alexa T. Bordner

*Attorneys for Plaintiff New York City Transit Authority*