**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **NEW YORK CITY TRANSIT AUTHORITY,** | Case No. 1:19-cv-05196 |
| Plaintiff, | |
| v. | **EXPRESS SCRIPTS, INC.'S** |
| **EXPRESS SCRIPTS, INC.** | **REPLY IN SUPPORT OF ITS** |
| Defendant. | **MOTIONS IN LIMINE** |

## <u>TABLE OF CONTENTS</u>

I.      MIL No. 1: NYCTA Should Not Be Permitted to Benefit from Its Continued
        Rule 26 Violations. ..................................................................................................1

II.     MIL No. 2: The AON Report Caribou Datasets, and Testimony from Mr.
        Kozlowski and Ms. Ridgway Are Inadmissible and Should Be Excluded.............2

III.    MIL No. 3:The Estimated Amount Paid to Express Scripts Is Not Relevant to
        Any Element of a Breach of Contract Claim. .........................................................4

IV.     MIL No. 4: Express Scripts' Size, Financials, and Parent Company Are Not
        Relevant to the Contractual Standards ...................................................................5

V.      MIL No. 5: The Court Should Exclude Evidence or Testimony on NYCTA's
        Supposed Struggling Financial Condition ...............................................................6

VI.     MIL No. 6: NYCTA Has Not Demonstrated How Mr. Ross's Testimony Would
        Be Relevant, Has Not Identified an Exception to Hearsay Rules, and Cannot
        Overcome Mr. Ross's Lack of Personal Knowledge...............................................7

VII.    MIL No. 7: Evidence of NYCTA's Damages After April 6, 2017 Should Be
        Excluded Because Express Scripts Could Not Have Caused Those Damages........8

VIII.   MIL No. 8: NYCTA Cannot Establish the Relevant of TRICARE Especially
        Given the Waste and Prejudice that Would Result from Introducing this
        Evidence...................................................................................................................9

IX.     MIL No. 9: The Cohen Reports are Irrelevant, and NYCTA Has Evinced and
        Intent to Use Them to Confuse the Jury. ..............................................................10

**TABLE OF AUTHORITIES**

*Agfa-Gevaert, A.G. v. A.B. Dick Co.*,
879 F.2d 1518 (7th Cir. 1989). ..................................................................... 7-8

*Catipovic v. Turley*,
68 F. Supp. 3d 983 (N.D. Iowa 2014)............................................................6

*Downey v. Adloox Inc.*,
2018 WL 794592 (S.D.N.Y. Feb. 8, 2018).....................................................4

*Emergent Capital Investment Management, LLC v. Stonepath Group*,
343 F.3d 189 (2d Cir. 2003)........................................................................ 5-6

*Fasolino Foods Co. v. Banca Nazionale del Lavoro*,
761 F. Supp. 1010 (S.D.N.Y. 1991).............................................................. 6-7

*Griffith v. United States*,
2007 WL 1222586 (S.D.N.Y. Apr. 25, 2007).................................................9

*Harsco Corp. v. Segui*,
91 F.3d 337 (2d Cir. 1996)...........................................................................6

*In re: General Motors LLC Ignition Switch Litigation*,
2016 WL 954593 (S.D.N.Y. Mar. 11, 2016). ...............................................2

*Pal v. New York University*,
2008 WL 2627614 (S.D.N.Y. June 30, 2008). ..............................................4

*Palmieri v. Defaria*,
88 F.3d 136 (2d Cir. 1996)............................................................................8

*Point Productions A.G. v. Sony Music Entertainment, Inc.*,
215 F. Supp. 2d 336 (S.D.N.Y. 2002)......................................................... 8-9

*Reilly v. Natwest Markets Group*,
181 F.3d 253 (2d Cir. 1999).........................................................................6

*State v. United Parcel Service, Inc.*,
253 F. Supp. 3d 583 (S.D.N.Y. 2017)...........................................................1

*Tesser v. Board of Education*,
370 F.3d 314 (2d Cir. 2004)..........................................................................6

*Williams v. Boulevard Lines, Inc.*,
2013 WL 5652589 (S.D.N.Y. Sept. 30, 2013)................................................1

Express Scripts Inc. respectfully asks that the Court grant its motions in limine for the reasons set forth within in its motions and as further described below.

## I.    MIL No. 1: NYCTA Should Not Be Permitted to Benefit from Its Continued Rule 26 Violations.

The Court issued its order striking NYCTA's prior damages calculations on August 19, 2022. ECF No. 178. Months later, one week before the parties' mediation and less than a month before the pre-trial filing deadline, NYCTA provided Express Scripts with a confidential mediation statement that first notified Express Scripts that NYCTA intended to use a new witness to attempt to introduce the same kind of computations that the Court had struck. NYCTA waited another week to actually provide Express Scripts with those computations.[1]

Now, NYCTA contends that it wants to "ensure fair play" and provide Express Scripts with "definitive clarity" on its direction.[2] *Id.* NYCTA's new 'good faith' approach misses the point—it *already* violated Rule 26.  And NYCTA's assertion that Express Scripts has "long had everything it needs to challenge the TA's planned damages presentation"[3] has already been rejected by the Court. Express Scripts had no obligation to bring NYCTA's failures to NYCTA's attention,[4] and its attempt to place blame on Express Scripts for NYCTA's own negligent conduct is improper.[5]

With its belated disclosure, NYCTA does little more than swap out one Aon employee with another and one set of claims data with another while never addressing the underlying problems

---

[1] Declaration of Elizabeth Bozicevic ("Bozicevic Decl."), filed contemporaneously herewith, at ¶¶ 3-4.

[2] NYCTA's new disclosures bring no such clarity. For example, the Amended Initial Disclosures state that the computations were created using Express Scripts' claims data "*and* other [unidentified] sources of claims data and related analysis." ECF No. 204-1 at 5 (emphasis added). NYCTA now claims, however, that it "already explained to both ESI and the Court [that] Mr. Frye's summaries are based on the ESI Claims Data *alone*." ECF No. 216 at 4 (emphasis in original). These contradictory representations are not the picture of clarity NYCTA suggests.

[3] ECF No. 216 at 3.

[4] NYCTA's case citations do not support its proposed victim-blaming here. Unlike Express Scripts, the defendants in *Williams v. Boulevard Lines, Inc.* "articulated no prejudice that they suffered from the [plaintiff's Rule 26] failures." 2013 WL 5652589, at *7 (S.D.N.Y. Sept. 30, 2013); *see* ECF No. 203 at 5 n.5, 12–13 (articulating prejudice from NYCTA's Rule 26 violations). And in *State v. United Parcel Serv., Inc.*, the defendant refused to accept a late disclosure, which may have allowed it to seek an adjournment, in order "to retain a 'cleaner' position" on its motion in limine. 253 F. Supp. 3d 583, 686 (S.D.N.Y. 2017), *aff'd*, 942 F.3d 554 (2d Cir. 2019).

[5] NYCTA also tried to blame Express Scripts for supposedly producing its claims data after the close of discovery. In truth, Express Scripts produced the claims data in its first production in December 2019. *See* Bozicevic Decl. at ¶ 6.

and prejudice.  Moreover, NYCTA also attempts to assure the Court of how easy making these calculations are, stating that it involves nothing more than "[a]dding columns in a spreadsheet." ECF No. 216 at 6.  Express Scripts has repeatedly explained the complexity of this process,[6] and NYCTA has never contested these explanations. Instead, Mr. Kozlowski agreed that the process was not simple, such that he could not duplicate his own numbers because he could not recall which of the data fields he had used.[7] Creating these calculations is difficult, requiring judgment and expertise, and saying otherwise reflects a misunderstanding of the data and the process, at best.

The prejudice to Express Scripts for NYCTA's latest damages tactic cannot be understated. Had NYCTA complied with the federal rules, Express Scripts could have analyzed the computations, deposed Mr. Frye,[8] and timely disclosed a rebuttal witness. Instead, it is left with examining Mr. Frye on his methodology, foundation, and other topics for the first time, on the stand, at trial.  The Federal Rules of Civil Procedure do not contemplate a situation in which a party who failed to comply with Rule 26 to the degree of NYCTA would obtain a *benefit* from its conduct to the severe detriment of the other party, but that is exactly the situation that would exist if Mr. Frye testifies about calculations that NYCTA first provided—in some instances—with NYCTA's pretrial disclosures. Express Scripts' motion to exclude Mr. Frye should be granted.[9]

## II.    MIL No. 2: The Aon Report, Caribou Datasets, and Testimony from Mr. Kozlowski and Ms. Ridgway Are Inadmissible and Should Be Excluded.

*The Aon Report.*  NYCTA's opposition does nothing to rebut the simple fact that the Aon Report is inadmissible to prove damages in this case and must be excluded as misleading,

---

[6] *See, e.g.*, ECF No. 203 at 7.

[7] ECF No. 167-1 at 73-74 (243:18-244:10).

[8] Although NYCTA offered on November 9, 2022 to have Mr. Frye sit for a deposition, Express Scripts can no longer depose Mr. Frye at will: "[D]epositions are governed by the scheduling order set by the Court, and may not be conducted after the close of discovery absent good cause to modify that order." *In re: Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 954593, at *2 (S.D.N.Y. Mar. 11, 2016) (Furman, J.). Knowing this, Express Scripts asked the Court for leave to depose Mr. Frye (ECF No. 197 at 3-4)—which the Court rejected. *See* ECF No. 201.

[9] Express Scripts also asks that the Court exclude the "summary exhibits" supposedly prepared by Frye, which NYCTA seeks to admit under Rule 1006 and marked as PX-317 through PX-330. NYCTA attached the exhibits to its opposition to the motion in limine (ECF Nos. 215-6 - 215-19), but copies were not provided to Express Scripts until NYCTA submitted its exhibits to the Court and Express Scripts on November 23, 2022.  Bozicevic Decl. at ¶ 5.

irrelevant, and prejudicial.  The damages that NYCTA now seeks cannot be calculated using the Aon Report, as it contains summary information concerning just 10 pharmacies and prescribers and does not purport, in any way, to attribute any associated spend with any alleged breach of the Contract.[10]  The summary numbers are therefore not relevant, misleading, and prejudicial, and the Aon Report must therefore be excluded.

> ***The Caribou Pharmacy Claims Dataset.***  NYCTA does not dispute that it would be improper to use the Caribou Pharmacy Claims Dataset to prove its damages.  *See* ECF No. 216 at 10 ("[NYC]TA will not use the Caribou Pharmacy Claims Dataset to prove its damages").  NYCTA instead confirms that it "does not intend to rely on this data in any context other than as information considered by its expert witness" Susan Hayes, who opines on whether Express Scripts' performance under the contract complied with industry standards.  *Id*.  The Court should enter an order limiting its admission for that purpose only.

> ***Damages Witnesses.*** The Court should preclude NYCTA witnesses Mr. Kozlowski and Ms. Ridgway from offering trial testimony because their post-discovery disclosure violates Rule 26, and NYCTA's failure to comply with Rule 26 was not "substantially justified or [] harmless." Fed. R. Civ. P. 37(c)(1).  NYCTA has removed Ms. Ridgway from its pretrial witness list, so there should be no dispute as to Ms. Ridgeway and she should be excluded entirely.

Mr. Kozlowski, however, is another story, as NYCTA now confirms it intends to call Mr. Kozlowski to testify live "about NYCTA's compound spend during the contract term" (ECF No. 205 at 19).  NYCTA has known since at least May 2021 that it would need to rely on Mr. Kozlowski, yet it waited until November 2022—on the eve of pretrial submissions—to amend its disclosures and identify Mr. Kozlowski's expanded testimonial role to Express Scripts. *See* ECF No. 216 at 9 ("But Mr. McCabe left Aon unexpectedly [in May 2021], and that is why [NYC]TA relied on Mr. Kozlowski . . . .").  Even one year later, in May 2022, when Mr. Kozlowski was deposed, NYCTA still did not tell Express Scripts that Mr. Kozlowski was a witness on issues

---

[10]  Express Scripts has updated its Exhibit List to object to the introduction of the Aon Report and remove it from Express Scripts' list, but its prior inclusion is not, as NYCTA suggests, a waiver of Express Scripts' motion to exclude.

outside his damages calculations, but it instead instructed Mr. Kozlowski **not to answer any questions outside the scope of his damages declaration**. ECF No. 204-5 at 45:12-48:21. Having presented no credible basis for its late disclosure, these facts alone warrant exclusion. *See Downey v. Adloox Inc.*, 2018 WL 794592, at *1 (S.D.N.Y. Feb. 8, 2018) (stating that when deciding whether to exclude witness, courts consider as a factor "the party's explanation for the failure to comply with the disclosure requirement.").

NYCTA's argument that Express Scripts was aware of Mr. Kozlowski's existence during discovery (ECF No. 216 at 9) is also unavailing. The purpose of Rule 26 disclosures "is to alert an opposing party of the need to take discovery of the named witness," and Rule 26 is "fulfilled only if [Plaintiffs] informed [Defendants] that [they] might call the witness in support of its claims or defenses." *Downey*, 2018 WL 794592, at *1 (citing *Pal v. N.Y. Univ.*, 2008 WL 2627614, at *4 (S.D.N.Y. June 30, 2008)). Having failed to comply with its Rule 26 obligations at every turn, NYCTA can and should be prohibited from calling Mr. Kozlowski at trial.

## III.   MIL No. 3: The Estimated Amount Paid to Express Scripts Is Not Relevant to Any Element of a Breach of Contract Claim.

NYCTA argues that it should be permitted to introduce evidence of the total *estimated* payments[11] made under the parties' contract for all drugs (not just compounds) because it is "probative of the TA's performance under the contract" and "relevant to the questions of duty and breach." ECF No. 216 at 12. However, NYCTA never goes beyond blanketly stating, "the number is relevant," to explain *how* it is relevant. In truth, the dollar amount at issue has no bearing on Express Scripts' duties or performance and does not make it more or less likely that a breach occurred. All the estimated dollar amount does is risk misleading a jury into believing that Express Scripts made hundreds of millions of dollars, which is not the truth.

Moreover, the high dollar amount does not show the "size and scope of the pharmacy benefit program," *id.* at 11, as NYCTA claims. If the size of the program was relevant (which

---

[11] NYCTA states that it is "undisputed" that the parties contracted for a $728 million contract. ECF No. 216 at 11. Express Scripts merely agrees that $728 million was the total *estimated* cost to NYCTA for the pharmacy benefits contract, including the cost of all compound and non-compound claims processed. ECF No. 203 at 13.

Express Scripts does not concede), then such story would be better told by discussing the number of plan members or the number of prescriptions processed rather than the total spend. Considering the high cost of some prescription drugs, the dollar amount of total claims processed presents a misleading portrait that risks substantial jury confusion.

Incredibly, NYCTA states that Federal Rule of Evidence 403 does not permit excluding relevant evidence. ECF No. 216 at 12. That is exactly what Rule 403 allows: the exclusion of "relevant evidence if its probative value is substantially outweighed by a danger of" prejudice, confusion, or misleading the jury. F.R.E. 403. This is not a case, like those cited by NYCTA, in which the potential prejudice is what makes the evidence relevant. Here, the prejudice and confusion stems from the jury mistakenly believing that Express Scripts was paid (and therefore made) $728 million for its work, while the relevance is merely NYCTA's claim that the benefits program was large and complex. Whatever relevance the number has is substantially outweighed by the risk of prejudice and confusion, and it warrants exclusion under Rule 403 for this reason.

## IV.   MIL No. 4: Express Scripts' Size, Financials, and Parent Company Are Not Relevant to the Contractual Standards.

Express Scripts' size and financial condition are irrelevant to this case. The relevant contractual terms define objective standards, including "that degree of care and reasonable diligence that an experienced and prudent plan administrator . . . would use . . . consistent with industry standards." ECF No. 205 at 4 (citing Contract § 4.1). Contrary to NYCTA's assertion, Express Scripts' "size and reputation as a PBM" have nothing to do with whether Express Scripts acted "consistent with industry standards" with respect to this particular contract.  Indeed, the contractual standard is not defined with respect to the relative financial strength, reputation, or size of "plan administrator[s]."  Thus, the only purpose of such evidence would be to impermissibly bias the jury against Express Scripts based on its size and financial condition.  The same is true for any references to Express Scripts' parent company, Cigna Corporation.

The cases relied upon by NYCTA are irrelevant because they concern fraud claims where the sophistication of the plaintiff was relevant to the element of justifiable reliance. *See Emergent*

*Capital Inv. Mgmt., LLC v. Stonepath Grp.*, 343 F.3d 189, 191 (2d Cir. 2003) ("This is a securities fraud action."); *Harsco Corp. v. Segui*, 91 F.3d 337, 342-43 (2d Cir. 1996) (discussing sophistication of parties in the context of proving "reasonable reliance . . . as an element of a securities fraud claim"). But this is a breach of contract case, not a fraud case; therefore, NYCTA's contention that this evidence shows its alleged reasonable reliance is irrelevant.

## V.      MIL No. 5: The Court Should Exclude Evidence or Testimony on NYCTA's Supposed Struggling Financial Condition.

NYCTA's financial situation is not relevant to NYCTA's breach of contract claim. NYCTA incorrectly argues that its financial situation is relevant because it is "probative of what the [NYC]TA's expectations were from ESI, including how ESI was expected to discharge its contractually imposed standard of care." ECF No. 216 at 14.  Whether Express Scripts met its standard of care has nothing to do with NYCTA's financial condition. *See Catipovic v. Turley*, 68 F. Supp. 3d 983, 1002 (N.D. Iowa 2014) (A "party's financial condition, wealth, or bargaining power" is not relevant to "determining the terms of a contract" and is not relevant to "demonstrat[ing] the roles and relationships of the parties."). This is even more critical here, as it is undisputed that there is no record evidence that Express Scripts was even ***aware*** of NYCTA's supposed financial conditions (thus further underscoring that any "probative value of NYCTA's expectations" is nothing more than an after-the-fact, lawyer-created argument). Indeed, a party's financial condition is "generally inadmissible in trials not involving punitive damages," *Tesser v. Bd. of Educ.*, 370 F.3d 314, 318 (2d Cir. 2004) (quoting *Reilly v. Natwest Mkts. Grp.*, 181 F.3d 253, 266 (2d Cir. 1999)), as it may cause the jury to decide the case based on NYCTA's financial condition, rather than on proof of the specific claims. *See* ECF No. 203 at 15, 17.

Moreover, NYCTA's fiscal condition cannot be judicially noticed.  ECF No. 216 at 15. NYCTA's financial condition is not an undisputed fact, ECF No. 50 (Answer to NYCTA's Amended Complaint) at ¶¶ 1, 70 (denying ¶¶ 1, 70 of the Amended Complaint, which allege, *inter alia*, that NYCTA is "facing substantial financial challenges" and in "dire financial condition")), and thus is not subject to judicial notice under Federal Rule of Evidence 201. *See Fasolino Foods*

*Co. v. Banca Nazionale del Lavoro*, 761 F. Supp. 1010, 1019 (S.D.N.Y. 1991), *aff'd,* 961 F.2d 1052 (2d Cir. 1992) (holding that judicial notice was unwarranted with respect to newspaper articles where the matter was not "beyond reasonable controversy.") (citing Fed. R. Evid. 201(b) advisory committee's note).

## VI.    MIL No. 6: NYCTA Has Not Demonstrated How Mr. Ross's Testimony Would Be Relevant, Has Not Identified an Exception to Hearsay Rules, and Cannot Overcome Mr. Ross's Lack of Personal Knowledge

NYCTA concedes that it is not seeking to call Mr. Ross to testify "about the day-to-day particulars of administering the Contract," or "about any particular claim or the management of ESI on a daily basis." ECF No. 216 at 18–19. But Mr. Ross has also disclaimed any knowledge whatsoever concerning ***any*** of Express Scripts' alleged breaching conduct, namely: Express Scripts' pharmacy selection or monitoring practices; alleged overpayments; Express Scripts' fraud investigations; or reporting that Express Scripts provided concerning compound claims. *See* ECF No. 203 at 18. Thus, Mr. Ross has no relevant or personal knowledge related to the claims at issue.

Nevertheless, NYCTA intends to call Mr. Ross—who did not negotiate the PBM Agreement—to opine about Express Scripts' duties under the PBM Agreement. And the reason NYCTA seeks to call Mr. Ross is because they believe Mr. Ross—unlike other NYCTA witnesses who have personal knowledge and would be readily impeached by their own contemporaneous emails—will serve as an effective mouthpiece for NYCTA's case. NYCTA has not explained why this highly prejudicial trial strategy, whereby Mr. Ross would testify "about specific information he reviewed" and became aware of years after the fact, is permissible. ECF No. 216 at 18. Mr. Ross's testimony as to his opinion about what others told him is irrelevant and is based on hearsay.

NYCTA has failed to identify a single applicable exception that would permit Mr. Ross to testify to hearsay. Instead, NYCTA seeks only to rebut Express Scripts' argument that Mr. Ross lacks the requisite personal knowledge to testify by citing to a Seventh Circuit case from 1989 and an unpublished report and recommendation. Reliance even on those cases is misplaced.  In *Agfa-Gevaert, A.G. v. A.B. Dick Co.*, the Seventh Circuit held that an executive's assessments of his

company's *own products* were personal knowledge because it was the sort of inference he "customarily draw[s]." 879 F.2d 1518, 1523 (7th Cir. 1989). Mr. Ross has already testified in this case that oversight of the parties' performances "was not his specific responsibility under [the PBM Agreement]" and not based on any direct personal knowledge. ECF No. 204-9 at 148:18-149:10. Instead, the sole basis for Mr. Ross's testimony is purported second or third-hand knowledge based on discussions with, or documents prepared by, other NYCTA employees many months after the underlying events occurred. It is quintessential hearsay. Mr. Ross must be excluded.

**VII.    MIL No. 7: Evidence of NYCTA's Damages After April 6, 2017 Should Be Excluded Because Express Scripts Could Not Have Caused Those Damages.**

Express Scripts' motion in limine No. 7 addresses issues that could have arisen during discovery or the summary judgment process but were left until now due to NYCTA's failure to comply with Rule 26. Express Scripts has always intended to challenge NYCTA's demand for reimbursement for *all* prescription drug claims associated with certain pharmacies and prescribers. Express Scripts has had no opportunity to raise such a challenge since NYCTA did not timely notify Express Scripts of its damages calculations. It is proper for consideration now. *See Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) ("The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial . . . as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.").

The present motion in limine seeks to exclude evidence that NYCTA would use to support damages associated with a group of pharmacies and prescribers after a certain date—the date that Express Scripts undisputedly provided NYCTA with the exact type of information NYCTA argues Express Scripts was contractually obligated to provide. After that date (April 6, 2017), the cause of any losses sustained by NYCTA connected to those pharmacies and prescribers cannot, as a matter of law, be attributed to any breach by Express Scripts. Under these circumstances, a motion in limine limiting NYCTA's damages evidence in this respect is warranted. *See Point Prods. A.G. v. Sony Music Entm't, Inc.*, 215 F. Supp. 2d 336, 347 (S.D.N.Y. 2002) (granting motion in limine

to exclude evidence of damages before a date certain when the plaintiff had no evidence to support that the defendant caused the plaintiff's losses after that date).

## VIII.   MIL No. 8: NYCTA Cannot Establish the Relevance of TRICARE Especially Given the Waste and Prejudice that Would Result from Introducing This Evidence.

NYCTA's opposition raises a series of baseless justifications for introducing information regarding Express Scripts' previous work for the Department of Defense's TRICARE benefits plan. First, NYCTA's suggestion that the Court's February 2020 ruling ordering discovery regarding TRICARE should instruct the Court here misses the mark. As this Court recognized, its discovery order was limited to "the broad meaning of [relevance] *for the purposes of Rule 26*." ECF No. 66 (emphasis added). "Relevance under Federal Rule 26 is far broader than the standard under Federal Rule of Evidence 401." *Griffith v. United States*, 2007 WL 1222586, at *2 (S.D.N.Y. Apr. 25, 2007).  For the reasons set forth in Express Scripts' opening brief, the TRICARE evidence is irrelevant, prejudicial, and would subject the Court to a needless mini-trial.

NYCTA suggests that it is now entitled to "an exploration of this issue at trial." ECF No. 216 at 23. Yet it had more than enough opportunity to "explore" this issue in discovery, receiving mountains of documents and conducting 10 depositions—where all fact witness confirmed that they had no specific knowledge of TRICARE. After all that, the best NYCTA can demonstrate is that TRICARE experienced "somewhat of a similar trend" in compound spend to NYCTA and that, when TRICARE implemented Express Scripts' CMS, it worked exactly as designed. *See* Excerpts from the Deposition of Blake Stockwell, attached as Ex. 1 to the Bozicevic Decl., at 55:16-25.

Not only is this undisputed by Express Scripts, it is also undisputed that TRICARE was not the only health plan that experienced increased compound spend during the same time period, and it would be highly prejudicial and arbitrary to emphasize TRICARE only to the jury simply because there was high-profile fraud associated with TRICARE. This is especially true where none of Express Scripts' fact witnesses can testify as to any specific details of the TRICARE issues beyond the fact the TRICARE contract was different from those of other Express Scripts clients.

Further, NYCTA downplays the need for a mini-trial associated with TRICARE. If TRICARE is introduced at trial, Express Scripts will need to spend time setting forth the specific details of the TRICARE contract and its health plan—and, in particular, how it was different from the NYCTA contract. This would unnecessarily complicate matters and waste party and judicial resources, particularly where the only relevant conclusion—that Express Scripts was aware of the potential for high spend and fraud with compound drugs—has never been disputed.

**IX.    MIL No. 9: The Cohen Reports are Irrelevant and NYCTA Has Evinced An Intent to Use Them to Confuse the Jury.**

The Cohen Reports were prepared in March 2019, long after Express Scripts had blocked Dr. Cohen in February 2018; they have nothing to do with NYCTA or Express Scripts' performance under the Contract and should be excluded. That the "Contract period" extended into 2019 as NYCTA alleges, ECF No. 216 at 23, is irrelevant, as Dr. Cohen was blocked from NYCTA's network well before the end of the contract in February 2018. There was no further risk to NYCTA from Dr. Cohen after he was blocked, and Express Scripts' March 2019 findings obviously cannot be probative of what Express Scripts should have been aware of years earlier.

Indeed, the "significant information about Dr. Cohen" that NYCTA argues "ESI should have been aware of" occurred *after* Dr. Cohen was blocked in February 2018: Dr. Cohen pleaded guilty to filing a false tax return in *March 2018*, Dr. Cohen's medical license was suspended *as a result* of that plea in *March 2018*, and Express Scripts referred Dr. Cohen to the NY State Office of the Professions *in 2019*. None of this is relevant to or probative of what Express Scripts knew in February 2018. Allowing these reports in will, as NYCTA's own brief shows, mislead the jury about the timing of relevant events.  They must be excluded.

Finally, NYCTA's complaints about the length of the investigation or communications with Express Scripts are red herrings. Prescriptions from Dr. Cohen were blocked in February 2018—a few weeks after NYCTA requested that Express Scripts investigate Dr. Cohen in January 2018 (13 months prior to the Cohen reports). Any alleged delay in responding to NYCTA did not impact how long it took for Express Scripts to actually block claims from Dr. Cohen.

Dated: December 14, 2022                By: /s/ Elizabeth A. Bozicevic

Christopher A. Smith, *Admitted Pro Hac Vice*
Sarah C. Hellmann, *Admitted Pro Hac Vice*
Elizabeth A. Bozicevic, *Admitted Pro Hac Vice*
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
P: (314) 480-1500 / F: (314) 480-1505
chris.smith@huschblackwell.com
sarah.hellmann@huschblackwell.com
elizabeth.bozicevic@huschblackwell.com

Michael J. Lyle, *Admitted Pro Hac Vice*
Eric Lyttle, *Admitted Pro Hac Vice*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I St. NW, Ste. 900
Washington, DC 20005
Tel.: 202-538-8000
Fax: 202-538-8100
mikelyle@quinnemanuel.com
ericlyttle@quinnemanuel.com

Rollo Baker
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel.: 212-849-7000
Fax: 212-849-7100
rollobaker@quinnemanuel.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on December 14, 2022, the foregoing was filed electronically with the Clerk of Court, to be served by operation of the Court's electronic filing system upon all counsel of record.

*s/ Elizabeth A. Bozicevic*