# BakerHostetler

Baker&Hostetler LLP

45 Rockefeller Plaza
New York, NY 10111

T 212.589.4200
F 212.589.4201
www.bakerlaw.com

March 19, 2023

Maximillian S. Shifrin
direct dial: 212.589.4252
mshifrin@bakerlaw.com

**VIA ECF**

Honorable Jesse M. Furman
United States District Court
Southern District of New York
40 Centre Street, Room 2202
New York, NY 10007

Re:   *New York City Transit Authority v. Express Scripts, Inc.*
      No. 1:19-cv-05196-JMF (S.D.N.Y.)

Dear Judge Furman:

We write on behalf of Plaintiff the New York City Transit Authority seeking sanctions under Fed. R. Civ. P. 37(c)(1) for a variety of discovery failures that came to light during trial on March 16, 2023, when Mr. Rutkowski testified that he had just recently reviewed a document that had not previously been produced. Express Scripts subsequently produced additional missing documents on March 17, 2023. The productions made to date establish that NYCTA has been unduly prejudiced—both during discovery and during trial—by Express Scripts' failure to produce not just relevant documents the NYCTA originally requested in 2019, but documents that have materially altered the NYCTA's presentation of its case and prosecution of its claims.

## The New Documents Significantly Affect the NYCTA's Prosecution of its Claims

On Friday evening, March 17, 2023, Express Scripts produced 59 additional documents after Mr. Rutkowski disclosed during his testimony that he had found a previously undisclosed communication regarding Express Scripts' investigation of Dr. Jaimy Honig's prescribing activity through Fusion Pharmacy. Included in that production were documents related to a desk audit Express Scripts conducted of Fusion Pharmacy in June of 2016, less than three months into the contract term. The documents reveal that ESI had "pro-actively identified [Fusion] for utilization spike," that Fusion was "heavily billing one client," and that "the spike is driven by compound claims with Fluticasone and Sodium Hyaluronate as high paying ingredients." Below these statements is a chart illustrating the "spike . . . driven by [these] compound claims":



*See* Exhibit A.

These revelations significantly alter the NYCTA's entire case.  As the Court and Express Scripts are well-aware, the NYCTA's long-standing position has been that Express Scripts *should have* identified the Fusion and Honig claims activity in its own data early in the contract term and informed the NYCTA so that it could take corrective action.  These documents establish that Express Scripts *did* review the claims data, *did* identify a "spike in utilization" at Fusion that was driven by compound claims including Fluticasone and Sodium Hyaluronate, and *did* determine that it was "heavily" affecting a single client—all very early in the Contract term.

*See* PX-322. As evidence in the record has established, Fluticasone and Sodium Hyaluronate were far and away the largest prescribed compounds under the NYCTA's benefit plan, accounting for over $30 million in the first 20 months of the contract:

**Optum**

| Rank | PBM Drug Name | # of Scripts | Total $ | Cost/Script | % of all Compounds |
|---|---|---|---|---|---|
| 1 | FLURBIPROFEN POW | 377 | $721,196 | $1,913 | 11% |
| 2 | CYCLOBENZAPR POW HCL | 257 | $710,223 | $2,764 | 11% |
| 3 | BACLOFEN POW | 406 | $511,660 | $1,260 | 8% |
| 4 | KETOPROFEN POW | 427 | $313,100 | $733 | 5% |
| 5 | AMANTADINE POW HCL | 334 | $309,952 | $928 | 5% |
| 6 | MOMETASONE POW | 58 | $269,893 | $4,653 | 4% |
| 7 | AMITRIPTYLIN POW HCL | 265 | $249,307 | $941 | 4% |
| 8 | RESVERATROL POW | 56 | $231,899 | $4,141 | 4% |
| 9 | LIDOCAINE POW HCL | 112 | $173,787 | $1,552 | 3% |
| 10 | GABAPENTIN POW | 197 | $170,660 | $866 | 3% |
|  | Other | 5,028 | $2,684,949 | $534 | 42% |
|  | Total | 7,517 | $6,346,627 | $844 | 100% |

**ESI**

| Rank | PBM Drug Name | # of Scripts | Total $ | Cost/Script | % of all Compounds |
|---|---|---|---|---|---|
| 1 | FLUTICASONE PROPIONATE MICRO | 2,695 | $16,806,952 | $6,236 | 25% |
| 2 | SODIUM HYALURONATE | 1,595 | $15,387,584 | $9,647 | 23% |
| 3 | FLURBIPROFEN | 1,753 | $6,868,432 | $3,918 | 10% |
| 4 | MOMETASONE FUROATE | 560 | $6,260,546 | $11,180 | 9% |
| 5 | SUMATRIPTAN | 601 | $3,911,856 | $6,509 | 6% |
| 6 | GABAPENTIN | 966 | $2,540,135 | $2,630 | 4% |
| 7 | LIDOCAINE | 1,388 | $1,486,192 | $1,071 | 2% |
| 8 | ALPROSTADIL | 129 | $1,443,371 | $11,189 | 2% |
| 9 | BUPIVACAINE HCL | 612 | $1,237,105 | $2,021 | 2% |
| 10 | MELOXICAM | 192 | $1,146,536 | $5,972 | 2% |
|  | Other | 9,072 | $10,543,061 | $1,162 | 16% |
|  | Total | 19,563 | $67,631,770 | $3,457 | 100% |

*See* PX-193 at AONNYCTAESI-0002277.

Prior to these revelations, the NYCTA had no evidence that Express Scripts had identified Fusion early in the contract term for a "spike in utilization," that Express Scripts knew the spike was affecting a single client, and that Express Scripts knew the spike was driven by the same compounds that would ultimately cost the NYCTA over $30 million. Now, according to this new evidence, we know that Express Scripts had all the information it needed in *June of 2016* to prevent the NYCTA's extraordinary compound spike from even happening. Mr. Frye's summary of the compound claims submitted through Fusion as reflected in Express Scripts' claims data demonstrate that the Fusion spike had reached "only" $550,000 through June of 2016. Nine months later, that spend would total nearly $30 million:

| Month/Year | Net Amt MTA Paid ESI for Compound Claims | Unique non-reversed, paid claim count |
|---|---|---|
| 2016-04 | $24,324.68 | 3 |
| 2016-05 | $118,608.03 | 14 |
| 2016-06 | $407,982.59 | 49 |
| 2016-07 | $1,078,319.41 | 141 |
| 2016-08 | $1,449,625.33 | 189 |
| 2016-09 | $1,856,961.11 | 247 |
| 2016-10 | $2,271,998.08 | 299 |
| 2016-11 | $2,387,870.91 | 309 |
| 2016-12 | $2,970,506.59 | 368 |
| 2017-01 | $3,593,993.73 | 450 |

| | | |
|---|---|---|
| 2017-02 | $4,107,233.26 | 542 |
| 2017-03 | $5,493,990.21 | 766 |
| 2017-04 | $3,815,759.89 | 524 |
| **Grand Total** | **$29,577,173.82** | **3,901** |

Unfortunately, there are additional revelations in this new production. Included was a new email from a previously undisclosed witness, Nathan Lown—a Senior Audit Manager, Retail Network Audit, Fraud, Waste & Abuse Services—raising additional and previously unknown red flags about Fusion:

> **From:** Lown, Nathan M. (EHQ) [/O=EXPRESS-SCRIPTS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=P058331]
> **Sent:** 7/25/2016 9:35:47 AM
> **To:** Rutkowski, Stephen L. (EHQ) [/o=Express-Scripts/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=EA6938]
> **Subject:** FW: Fusion desk
> **Attachments:** ExpressScripts-062916.pdf; Copy of Copy of vzn compound claims may service june adj to audit (2).xlsx
>
> Good Morning Steve,
>
> Recently Misty did a desk audit of Fusion in UT. What we were reviewing were VZN claims that adjudicated in June but the fill date was in May. The reason is because this member was on strike in May. There was a gap in our systems that would have allowed a may claim to process if adjudicated in June.
>
> We found these claims and wanted to ensure that it was filled in may. However, none of them were submitted correctly and were then reversed and rekeyed with new fill dates.
>
> What I found odd in this that I thought you may want to know is that the adjudication dates on the original submissions were prior to the dates of the log in which the compound was created. How did the pharmacy know what to bill if they had not created the prescription yet.
>
> Let me know if you have questions.
>
> Nathan Lown
> Sr. Audit Manager, Retail Network Audit | Fraud, Waste & Abuse Services
> Pharmacy Audit | Fraud Analytics | Special Investigations
> Express Scripts | 314-684-6528

*See* Exhibit B. The NYCTA served an interrogatory at the very outset of discovery seeking the identification of "each Person with knowledge about Fusion Pharmacy, including the volume of compound prescription drugs filled by Fusion Pharmacy" and "any audits and/or investigations of Fusion Pharmacy practices." *See* Exhibit C. Yet Express Scripts did not disclose Mr. Lown in response.

Last, but not least, the production included <u>41 new patient verification letters sent by Mr. Rutkowski regarding Fusion compound claims</u>. Up until this point, including during Mr. Rutkowski's examination last week, the NYCTA was only aware of 12. Trial Tr., 628:7–23, Mar. 16, 2023.

The prejudice to the NYCTA is dramatic. Its case has been built around an alternative record and therefore an alternative theory of liability. Had these documents been timely and properly disclosed to the NYCTA during the course of discovery, it could have sought additional discovery about this desk audit, including deposing Mr. Lown and anyone else involved. That, in turn, would have materially affected the report of the NYCTA's expert witness, Susan Hayes,

4

which states that Express Scripts should have identified Fusion early in the contract term—which, we now know, Express Scripts actually did, including identifying the specific compound ingredients addressed in her report. All of this could have potentially affected the ultimate resolution of this case, including on summary judgment and during mediation and settlement discussions. And at this point, the NYCTA has no idea what additional discovery would have come to light had the NYCTA known about these materials over three years ago.

Needless to say, the NYCTA has also been prejudiced during trial by Express Scripts' failure to produce highly relevant documents. If the NYCTA had known of these documents during discovery, the NYCTA would have developed this case differently and tried the case differently. This has affected everything from its opening statement, its examinations of witnesses that have already testified, the anticipated expert testimony of its expert witness, and its planned damages presentation.

All of this is made worse by the fact that, at Mr. Rutkowski's 2020 deposition, I "re-requested" the specific document that directly led to these revelations: the email Mr. Rutkowski unexpectedly disclosed during his recent trial testimony:

> Q. Did you ever get answers to these questions?
> A. I can't -- I think I did, but I can't recall a hundred percent.
> MR. SHIFRIN: Okay. I don't think there was anything in Express Scripts' production containing a response to this e-mail, but to the extent it exists, we request or re-request that this e-mail be produced, because we haven't seen it.
> MS. BOZICEVIC: We will double check.

Rutkowski Dep. at 162:9-19, Oct. 12, 2020.[1] The NYCTA heard nothing further from Express Scripts about the existence of this document until Mr. Rutkowski testified on March 16, 2023, that he had personally located the document "within the past few days." Trial Tr., 613:6-17, Mar. 16, 2023. Moreover, defense counsel admitted that she "did find out about it a couple of days ago" yet did not inform plaintiff's counsel. Counsel for Express Scripts was subsequently able to produce a copy of this document for the Court on the spot.

What is more, toward the very end of discovery, the NYCTA sought 30(b)(6) testimony on FWA investigations into each of the pharmacies and prescribers subject to its claims, and Express Scripts' subsequently produced spreadsheets that Express Scripts' 30(b)(6) witness, Blake Stockwell, created to aid in his testimony. Those spreadsheets revealed multiple desk audits of Fusion Pharmacy in 2016. The NYCTA assumed that any documents related to these desk audits would have been produced as responsive to the NYCTA's previous, broad document demands for Fusion materials. Now, given the production of a small handful of documents

---

[1] During the sidebar on this very issue, Counsel erroneously stated: "Your Honor, if I may, this question was not asked in his deposition." Trial Tr., 616:9-10, Mar. 16, 2023.

related to the June 2016 desk audit, the NYCTA remains concerned that there are additional Fusion related documents that have not been produced in response to the NYCTA's multiple Fusion-related document requests served at the very outset of discovery in 2019.

### **In This Extraordinary Situation, Plaintiff Is Entitled To The Full Range Of Sanctions Under Rule 37**

Fed. R. Civ. P. 26(e)(1)(A) instructs that a party must supplement or correct a disclosure under Fed. R. Civ. P. 26(a) "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." "A party found to have violated its Rule 26 obligations is subject to sanctions under Rule 37." *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 68 (E.D.N.Y. 2012).

Under Fed. R. Civ. P. 37(c)(1)(C), the Court "may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)," if a party fails to provide required information. Rule 37(b)(2)(A) authorizes courts to "issue further just orders," which "may include the following":

   (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

   (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

   (iii) striking pleadings in whole or in part;

   (iv) staying further proceedings until the order is obeyed;

   (v) dismissing the action or proceeding in whole or in part;

   (vi) rendering a default judgment against the disobedient party; or

   (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

"Where a party does not meet its discovery obligations, '[a] district court has wide discretion to impose sanctions, including severe sanctions, under Federal Rule of Civil Procedure 37.'" *Agence France Presse v. Morel*, 293 F.R.D. 682, 685 (S.D.N.Y. 2013) (quoting *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006)). The purpose of Fed. R. Civ. P. 37(c) is to prevent the practice of "sandbagging" an adversary with new evidence. *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004).

The Court has articulated that any sanction imposed under Rule 37(b) must be "just," and its severity "must be commensurate with the non-compliance." *Joint Stock Co. Channel One v. Russia Worldwide v. Informir, LLC*, 2019 WL 4727537, at *21 (S.D.N.Y. Sept. 26, 2019) (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302-03 (2d Cir. 2009)). The sanction imposed must also "relate to the particular claim to which the discovery order was addressed." *Seena Int'l Inc. v. One Step Up, Ltd.*, 2016 WL 2865350, at *14 (S.D.N.Y. May 11, 2016).

Courts are mindful that if documents were timely produced, the party learning of such documents later in the case could have tried the case differently if the disclosure was made earlier. *Id.* at 32-33 (recognizing that if disclosures were made timely, defendant could have "better formulate[d] and execute[d] its overall litigation strategy"). *Joint Stock Co. Channel One*, 2019 WL 4727537, at *32.

Putting aside any culpability by Express Scripts, the prejudice to NYCTA is significant. The documents produced by Express Scripts go to the heart of the NYCTA's claims, are damaging to Express Scripts, have remained unidentified and undisclosed for several years, and are making their debut in this case toward the end of trial. *Id.* at 33 (citation omitted) (non-compliance for a period of only several months was sufficient to warrant dismissal or default). Given the gravity of the failures and the obvious prejudice, the NYCTA submits that several of Rule 37's available sanctions are appropriate here.

First, the NYCTA respectfully requests that the Court admit these new exhibits into evidence and allow the NYCTA to publish them to the jury before the NYCTA closes its case-in-chief. At that point, the Court should instruct the jury about Express Scripts' failure to disclose these documents to the NYCTA in violation of their discovery obligations.

Second, the NYCTA respectfully requests instructions to the jury that the following facts are taken as established for purposes of the action and that the NYCTA may reference the below, including Express Scripts' discovery failures, in its summation:

1. No later than June 2016, Express Scripts' data analysis group reported a sharp spike in compound prescription claims at Fusion Pharmacy in Utah paid on behalf of one unidentified Express Scripts client that was graphically depicted within Express Scripts as follows:



2. No later than June 2016, Express Scripts had "pro-actively identified [Fusion] for utilization spike," that Fusion was "heavily billing one client," and that "the spike is driven by compound claims with Fluticasone and Sodium Hayluronate as high paying ingredients."

3. In June of 2016, Express Scripts discovered that Fusion had submitted incorrect claims for compound prescriptions that were ultimately reversed. Express Scripts also noticed discrepancies in the dates between when the prescriptions were supposedly filled and the date of adjudication.

4. In August and September of 2016, Express Scripts sent 41 patient verification letters to purported customers of Fusion Pharmacy, most at addresses in the Greater New York metropolitan area, and that no responses to those patient verification letters have been produced.

5. Express Scripts knew as of October 6, 2016 that Dr. Jaimy Honig was actually employed by a third-party telemarketing company, "My OnCall Doc." PX-339 (Express_Scripts_ 1095_00241816).

Finally, given the extraordinary discovery violations that have occurred in this situation and the extreme prejudice caused to Plaintiff both throughout the discovery phase of the case and at this trial, even the curative order and instructions we have requested will not fully remedy that prejudice. Accordingly, we submit that this is an appropriate case for the Court to consider exercising its discretion under Rule 37 by entering a partial default judgment on liability against Defendant on Plaintiff's claims relating to Fusion Pharmacy. The consideration of this remedy is justified given the NYCTA's inability at this juncture to get the full benefit of this evidence in fact discovery, expert discovery, dispositive motion practice, mediation, and trial.

Respectfully submitted,

*/s/ Maximillian S. Shifrin*

Maximillian S. Shifrin