# HUSCH BLACKWELL

Sarah C. Hellmann
Partner

190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Direct: 314.480.1920
Fax: 314.480.1505
sarah.hellmann@huschblackwell.com

March 20, 2023

**VIA ECF**

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
40 Centre Street
New York, NY 10007

      Re:   *New York City Transit Authority v. Express Scripts, Inc.*
               No. 1:19-cv-05196-JMF (S.D.N.Y.)

Dear Judge Furman:

Defendant Express Scripts, Inc. respectfully responds to the letter application filed by Plaintiff New York City Transit Authority, seeking sanctions under Fed. R. Civ. P. 37(c)(1). (ECF 270). For the reasons set forth herein, Express Scripts asks that the Court deny NYCTA's request to award any additional sanctions.

**I.      Express Scripts' Document Collection & Production.**

As Steve Rutkowski testified in this case, all documents relating to Express Scripts' investigation of Fusion Pharmacy were supposed to be located in Express Scripts' central "Case Manager" file. (Trial Tr. at 531:15-533:17). Express Scripts and its counsel understood the same, and thus, at the outset of discovery, the Case Manager files were collected, and responsive documents were produced in response to NYCTA's discovery requests. At the outset of discovery in this case, Express Scripts and its counsel also interviewed the Sale and Account Management team ("SAM") to identify locations where potentially responsive documents could be stored, including computers, shared drives, and/or other file locations. These documents (including a shared drive) were subsequently collected and reviewed for responsive materials. All of these responsive materials were produced to NYCTA in December 2019 and early 2020.

When talking to Mr. Rutkowski after his trial testimony, Express Scripts learned for the first time that Mr. Rutkowski—despite his standard practice of maintaining investigation documents in Case Manager—did not transfer all documents relating to his investigation of Fusion Pharmacy ("Fusion") to the Case Manager file but instead stored some documents on his personal shared drive ("s:drive") that were never transferred to Case Manager. Upon learning this, Express Scripts immediately collected his share drive and reviewed against the documents previously

**HUSCH BLACKWELL**

The Honorable Jesse M. Furman
March 20, 2023
Page 2

produced. All previously non-produced documents that were responsive to NYCTA's discovery requests were produced on March 17, 2022 (the "Additional Documents").

In accordance with the Court's order, Express Scripts also reached out to other witnesses in this case to confirm that all locations of potentially responsive documents were searched and, if applicable, produced in this case. This included a discussion with Thomas Eich, another FWA employee who conducted investigations that have been discussed in this matter, who confirmed that he did not use his share drive to save any documents relating to the relevant investigations. Express Scripts verified this via its own search of Mr. Eich's shared drive, which also confirmed that there are no investigative files pertaining to Mr. Eich' investigation of Drs. Cohen and/or Honig on his shared drive or computer. The only source of potentially responsive investigative files from Mr. Eich's investigation are, therefore, the Case Manager file, which was previously collected and produced.

While Mr. Stockwell was not the investigator assigned to Fusion Pharmacy or Drs. Cohen or Honig, he was Express Scripts' corporate representative on certain topics, including the results of audits and investigations of the blocked pharmacies and prescribers. Mr. Stockwell confirmed that he has no documents relating to Fusion, Dr. Cohen, and/or Dr. Honig on any shared drive or his computer.

As a result of this investigation, Express Scripts confirms that all sources of potentially responsive documents have been collected and all responsive materials have been produced to NYCTA, consistent with the scope of the parties' agreements in discovery.

Express Scripts' non-collection of Mr. Rutkowski's s:drive was inadvertent and based off of what Mr. Rutkowski and other FWA investigators had previously stated about the maintenance of investigation files. Express Scripts worked diligently and in good faith to collect and produce responsive materials in response to NYCTA's discovery requests, resulting in the production of over 28,000 documents.

II.     **The Additional Documents Do Not Contain New Information.**

The Additional Documents do not contain information that was previously unknown to NYCTA. Rather, the relevant information contained within the Additional Documents was all disclosed to NYCTA during the course of discovery. As a result, NYCTA had every opportunity to (1) ask for follow-up discovery relating to said information, (2) provide said information to its expert, (3) develop its trial strategy and themes, and (4) otherwise evaluate its case.

**HUSCH BLACKWELL**

The Honorable Jesse M. Furman
March 20, 2023
Page 3

    **a.**    **Exhibit PX-339 (Email from Honig to Rutkowski)**

As testified to by Plaintiff's expert Dr. Susan Hayes, the relevant information in PX-339 is that Dr. Honig worked for the telemedicine company MyOnCallDoc. Dr. Hayes testified that the fact that Dr. Honig worked *for* MyOnCallDoc was a highly relevant red flag that she would have emphasized more greatly in her expert report had she known about it.

However, as made clear in the next exhibit shown to Dr. Hayes, Dr. Honig's employment was known. PX-28, a document produced during discovery *and* relied upon by Dr. Hayes in the preparation of her report,[1] unquestionably demonstrates this point:

> Top prescribers: Jaimy Honig 1518921857 NY, Fred Yeo 1881686616 CT, Albert Castano 1316912967 NJ, and Nadia Ali 1487728861 NJ. All of these prescribers work for MyOnCallDoc, a telemedicine company. One of the "ring leaders" the tip names is Rachel Eisner. Eisner is an office manager for My OnCall Doc and her name has appeared on prescription copy requests from pharmacies involved in prior investigations with above named prescribers.

PX-28 makes clear that NYCTA was aware of the relevant facts contained within PX-339, even if it was not previously aware of the existence of the email itself.[2] Any prejudice sustained by NYCTA from that prior non-production has been fully cured by the instruction given to the jury during Mr. Rutkowski's examination and NYCTA's ability to use the document with Dr. Hayes and all other remaining trial witnesses.

    **b.**    **Exhibit PX-341 (the Allegation/Summary Document)**

NYCTA's letter application stresses the critical importance of a statement in PX-341 that Express Scripts had "pro-actively identified" a "utilization spike" at Fusion Pharmacy. Again, this is a fact that was disclosed to NYCTA during discovery and was not new information to NYCTA.

Express Scripts employee Blake Stockwell was deposed by NYCTA as a corporate representative on topics that included the "results of any pharmacy audits or Fraud, Waste and Abuse ("FWA") investigations conducted of the pharmacies that were blocked by the NYCTA benefit plan." During his deposition, Mr. Stockwell testified that the 2016 investigation of Fusion

---

[1] *See* PX-109, Dr. Hayes' list of documents reviewed and relied upon in preparing her report, listing Express_Scripts_1095_00008288, the Bates number for PX-28.

[2] As noted by NYCTA, in his deposition, Mr. Rutkowski stated that he *thought* that Dr. Honig had responded to his questions but was not "a hundred percent," and that counsel for Express Scripts stated that she would double check whether the document existed. (ECF 270 at 5). As counsel explained in an email sent to NYCTA on 3/19/23, counsel reviewed the case manager file collected for the Fusion investigation and double checked that all emails from Honig within that file had been produced.

The Honorable Jesse M. Furman
March 20, 2023
Page 4

at issue was "based off of proactive analytics" and "proactive data monitoring."[3]  Mr. Stockwell further testified as follows[4]:

```
 6        Q.   And do you know what the data trends were
 7   that triggered the investigation?
 8        A.   I don't know specifically off the top of my
 9   head.  If I remember correctly, there was just an
10   increase in utilization, which, again, doesn't
11   indicate specific fraud, but it was concerning enough
12   that we wanted to take a look.
```

Clearly, NYCTA was informed during discovery that Express Scripts initiated its investigation of Fusion based off of proactive analytics showing a utilization spike at Fusion.

      Critically, it is apparent from the face of PX-341 that the client to which Fusion was "heavily billing" was *not* NYCTA, nor does NYCTA seek to make such an inference.  The charts on PX-341 indicate that the spike at issue—which showed an increase in dispensing up to $800,000-$1,000,0000—occurred in March or April 2016, a time when NYCTA's compound spend associated with Fusion was $24,000 (per PX-326).

      PX-341 shows that Express Scripts' data analytics identified an increase in utilization at Fusion that warranted the opening of a fraud, waste, and abuse investigation into Fusion.  Those facts were known to NYCTA during discovery, and the implication of those facts—that Express Scripts investigated Fusion, that it was aware of patterns at Fusion that warranted review, and that Express Scripts did not pass that information on to NYCTA—have all been known to and argued by the parties throughout the lifetime of this case.

      c.      **Exhibit PX-396, PX-397, and PX-398 (the audit email and attachments)**

      Relatedly, PX-396, PX-397, and PX-398 show that Express Scripts had performed an audit of Fusion in mid-2016.  NYCTA's letter application points to the non-disclosure of the sender of the email as a potential witness and to their believed inability to provide the audits to Dr. Hayes to review.  (ECF 270 at 4-5).

      In fact, Express Scripts produced the audit results at the very start of discovery.  The audit documents attached to the email admitted as PX-396 (and marked by NYCTA as PX-397) were

---

[3] *See* Ex. A (excerpts of deposition of Blake Stockwell), at 136:8-137:5.

[4] *Id* at 137:6-12.

**HUSCH BLACKWELL**

The Honorable Jesse M. Furman
March 20, 2023
Page 5

previously produced as Express_Scripts_1095_00002514 – Express_Scripts_1095_00002575 in Express Scripts' very first document production in this case in December 2019. In addition to the audit documents marked as PX-397, Express Scripts produced additional audit materials for Fusion that Express Scripts performed during NYCTA's contract period, consisting of several hundred pages of materials.[5]

The Express Scripts employee who performed the audit referenced in PX-396 was Misty Prater. Ms. Prater was disclosed in Express Scripts' interrogatory responses as a person who might have knowledge about audits or investigations of Fusion. (ECF 270-3 at 8). Had NYCTA wanted to gather additional information about this audit, it had the audit documents since December 2019 and had Ms. Prater's name in the interrogatory responses since December 2019. It had every opportunity to seek a deposition of other discovery from the person performing the audit.

Additionally, as noted above, Mr. Stockwell testified as Express Scripts' corporate representative on topics that included the "results of any pharmacy audits" of Fusion and the other blocked pharmacies. To prepare for that deposition, Mr. Stockwell prepared a spreadsheet that was produced to NYCTA that listed all prescription drug claims that were audited by Express Scripts for all the blocked pharmacies, including Fusion, and the results of those audits.

All relevant and responsive information about the audits was produced, and NYCTA could have sought additional follow up or deposition testimony. The existence of the audit in PX-396 and PX-397, the identity of the auditor, and the results of that audit—the relevant information—were all timely disclosed.

At trial, NYCTA has already used PX-396 as an exhibit with Dr. Hayes and been able to elicit her opinion about the information contained within it. NYCTA is also able to discuss the document with Mr. Stockwell, who is Mr. Rutkowski's current supervisor. Most critically, the 62-page relevant attachment to that email (PX-397) was previously produced, and any prejudice to NYCTA has already been minimized by its ability to question trial witnesses about the email, as well as Dr. Hayes' testimony in response to the Court's question regarding the timing of her receipt of the document.

> d. **Exhibit PX-346 (and additional blank member letters)**

The final Additional Documents referenced by NYCTA in its letter application are the blank patient verification letters sent by Mr. Rutkowski. Fourteen of those patients responded to

---

[5] Express Scripts can provide the exact Bates numbers for each of these documents upon NYCTA's or the Court's request.

the letters, and Express Scripts produced the responses of all fourteen during discovery.[6] The only information not previously produced were the additional 38 letters sent to patients who did not respond.

The number of letters sent out and not returned is not inconsistent with the information previously known to NYCTA. In his trial testimony, Mr. Rutkowski testified that he likely sent out more than a dozen letters. (Trial tr. at 628:14-23). NYCTA remains able to argue about the response rate to the letters—an issue about which they elicited testimony from Dr. Hayes in connection with PX-346.

### III. Any Prejudice to NYCTA Has Been Cured, and Further Sanctions Are Not Warranted.

Express Scripts stipulates to the admission of each of the Additional Documents. The Court has also already instructed the jury regarding the untimely production of PX-339, and Dr. Hayes has testified about only gaining access to documents over the weekend. These actions have addressed any prejudice that NYCTA sustained as a result of the late production of the Additional Documents, and no additional sanctions are necessary as curative measures.

"The guiding principle underlying the imposition of sanctions is that any sanction must be narrowly tailored to remedy the specific prejudice that the party seeking discovery would otherwise suffer." *Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prod., Inc.*, No. 1:19-CV-3766-GHW, 2020 WL 7342724, at *18 (S.D.N.Y. Dec. 11, 2020). "[T]he imposition of sanctions for the untimely production of documents should not result in a windfall for uncovering evidence that would have made little difference in the underlying case." *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023 CBA RLM, 2010 WL 3173785, at *10 (E.D.N.Y. Aug. 11, 2010) (imposing monetary fines and refusing to impose more severe sanctions for a defendant's delayed production—despite finding that the defendant's was willful and not innocent—since the party receiving the materials was not so prejudiced by the late production).

In the case NYCTA relies upon, *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, the sanctioned party failed to produce evidence, made numerous false statements of fact in bad faith, and ultimately produced the evidence only after violating a series of court orders and facing spoliation sanctions. No. 16CV1318GBDBCM, 2019 WL 4727537, at *31 (S.D.N.Y. Sept. 26, 2019). This discovery non-compliance lasted for over two years, and the Court ultimately granted sanctions precluding plaintiffs from introducing evidence related to the withheld evidence and ordering them to pay fees and costs incurred by defendant in response to their non-compliance. *Id.* at *33-34. That is not the situation here.

---

[6] NYCTA's letter application appears to state that it is not aware of all 14 responses. Express Scripts can provide the Bates numbers of the member response letters upon request as well.

**HUSCH BLACKWELL**

The Honorable Jesse M. Furman
March 20, 2023
Page 7

      NYCTA provides no legal support for its request for a partial default judgment on liability. In fact, courts have granted such a sanction only in incredibly limited circumstances. *See, e.g., Urbont v. Sony Music Ent.*, 2014 WL 6433347, at *1 (S.D.N.Y. Nov. 6, 2014) (stating that "severe sanctions like dismissal or default should be imposed only if the party has been warned that such a sanction will follow from continued non-compliance and has nevertheless refused to comply," and ordered a default judgment after the defendant failed to participate in discovery in any way over a period of months—including failing to appear for a deposition and failing to produce a single document).

      Express Scripts' inadvertent non-collection of a single folder in the midst of a large-scale document collection and review does not merit the severest of sanctions. Moreover, the Additional Documents did not contain materially new facts. NYCTA had all material, relevant information during discovery, summary judgment briefing, and trial preparation. Since the disclosure of the Additional Documents, NYCTA has been able to use the documents and question witnesses about them. There is no element that supports the imposition of a default judgment under these circumstances.

      The other sanctions requested by NYCTA are also unnecessary to cure prejudice and unwarranted as a punitive measure. An instruction to the jury about the timing of the production of the Additional Documents—beyond the instruction already given by the Court with regard to PX-339 is not needed to cure any jury confusion or misconception. Moreover, it is unnecessary for the Court to specifically instruct the jury that information on the face of the documents is true. Express Scripts stipulates to the documents' admission, and NYCTA is free to present them to the jury during summation. A specific instruction places undue weight on the documents and encourages the jury to believe that the Court believes them to have specific importance. Such an inference is not designed to cure prejudice.

      Respectfully submitted,

      HUSCH BLACKWELL LLP

      *Sarah C. Hellmann*