**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**NEW YORK CITY TRANSIT AUTHORITY,**

        Plaintiff,

        v.

**EXPRESS SCRIPTS, INC.**

        Defendant.

Case No. 1:19-cv-05196

**EXPRESS SCRIPTS, INC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(A)**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

LEGAL STANDARD....................................................................................................1

ARGUMENT ...............................................................................................................2

I.    NYCTA'S BREACH OF CONTRACT CLAIMS SHOULD BE LIMITED TO FUSION, HONIG, AND COHEN AT A MINIMUM ......................................2

II.   EXPRESS SCRIPTS DID NOT BREACH SECTION 4.2 ..................................3

III.  EXPRESS SCRIPTS DID NOT BREACH SECTION 4.16 ...............................6

IV.  EXPRESS SCRIPTS DID NOT BREACH SECTION 4.7 .................................8

V.   EXPRESS SCRIPTS DID NOT BREACH SECTION 4.1 ...............................13

VI.  EXPRESS SCRIPTS' PURPORTED BREACHES OF THE AGREEMENT DID NOT CAUSE NYCTA'S ALLEGED DAMAGES....................................15

VII. NYCTA DID NOT PUT FORTH A RELIABLE METHOD FOR CALCULATING DAMAGES ...................................................................17

CONCLUSION..........................................................................................................18

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Anthem, Inc. v. Express Scripts, Inc.*,
2022 WL 1558879 (S.D.N.Y. Mar. 31, 2022) ...................................................... 4, 14

*Ashland Mgmt. Inc. v. Janien*,
82 N.Y.2d 395 (1993) ............................................................................................ 17

*Bausch & Lomb, Inc. v. Bressler*,
977 F.2d 720 (2d Cir. 1992)................................................................................... 15

*Dockery v. Tucker*,
2006 WL 5893295 (E.D.N.Y. Sept. 6, 2006) ........................................................ 17

*Ehrlich v. Town of Glastonbury*,
348 F.3d 48 (2d Cir. 2003).................................................................................... 1

*ESI, Inc. v. Coastal Corp.*,
61 F. Supp. 2d 35 (S.D.N.Y. 1999) ........................................................................ 9

*Indu Craft, Inc. v. Bank of Baroda*,
47 F.3d 490 (2d Cir. 1995)................................................................................ 2, 17

*Medina v. 163 Ashley Deli Grocery*,
2020 WL 2097605 (S.D.N.Y. May 1, 2020) ......................................................... 5

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
500 F.3d 171 (2d Cir. 2007).................................................................................. 17

*Point Productions A.G. v. Sony Music Entm't, Inc.*,
215 F. Supp. 2d 336, 341 (S.D.N.Y. 2002)
*opinion amended on reconsideration*, 2002 WL 31856951 (S.D.N.Y. Dec. 19, 2002) .......... 15

*Scholastic, Inc. v. Snap TV, Inc.*,
2011 WL 1330246 (S.D.N.Y. Apr. 8, 2011)........................................................... 17

*T.E.A.M. Entm't, Inc. v. Douglas*,
2006 WL 587326 (S.D.N.Y. Mar. 9, 2006) ........................................................... 17

### **Rules**

Fed. R. Civ. P. 50(a) ................................................................................................. 1

Defendant Express Scripts, Inc. ("Express Scripts") respectfully moves for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a).  No reasonable jury could find by a preponderance of the evidence:  (1) that Express Scripts breached the pharmacy benefit management agreement between the New York City Transit Authority ("NYCTA") and Express Scripts with respect to alleged contractual duties involving pharmacies or prescribers other than Fusion Specialty Pharmacy ("Fusion"), Dr. Honig, and Dr. Cohen, or with respect to Express Scripts' alleged payment of $3.2 million for medications that were not approved by the Food and Drug Administration ("FDA"); (2) that Express Scripts breached Section 4.2 of the Agreement; (3) that Express Scripts breached Section 4.16 of the Agreement; (4) that Express Scripts breached Section 4.7 of the Agreement; (5) that Express Scripts breached Section 4.1 of the Agreement; (6) that NYCTA's purported damages were caused by Express Scripts' alleged breach of the Agreement; and (7) that NYCTA put forth a reliable methodology for calculating its alleged damages.  Express Scripts is therefore entitled to judgment as a matter of law on all of NYCTA's claims.

## LEGAL STANDARD

Federal Rule of Civil Procedure 50(a) provides in relevant part that:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1).  A court should grant judgment as a matter of law under Rule 50(a) when, "viewing the evidence in the light most favorable to the non-moving party, 'there can be but one conclusion as to the verdict that reasonable persons could have reached.'"  *Ehrlich v. Town of*

*Glastonbury*, 348 F.3d 48, 52 (2d Cir. 2003) (quoting *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 494 (2d Cir. 1995)).

## ARGUMENT

### I.     NYCTA'S BREACH OF CONTRACT CLAIMS SHOULD BE LIMITED TO FUSION, HONIG, AND COHEN AT A MINIMUM

NYCTA argues that Express Scripts breached Sections 4.2, 4.16, 4.7, and 4.1 of the Agreement by failing to alert NYCTA to purported red flags involving the compound spend traceable to certain pharmacies and prescribers.  As an initial matter, the pharmacies and prescribers at issue in NYCTA's claims should be limited to Fusion, Dr. Honig, and Dr. Cohen (the "At-Issue Providers").  NYCTA adduced no evidence whatsoever that Express Scripts failed to perform any contractual duties in connection with any other pharmacies or prescribers.  Indeed, NYCTA did not ask either of the Express Scripts witnesses that it called in its case—Stephen Rutkowski and Thomas Eich—a single question about any pharmacy other than Fusion.  While NYCTA did ask Express Scripts' witnesses about several non-blocked prescribers—*viz.*, Drs. Yeo, Castano, and Ali—those prescribers are irrelevant to NYCTA's claims because NYCTA does not claim any damages in connection with non-blocked prescribers or pharmacies.  *See* PX-317 through PX-330 (summary charts providing the basis for NYCTA's purported damages).

NYCTA also seeks recovery of the $3.2 million that Express Scripts paid for medications that were allegedly not approved by the FDA.  No reasonable jury could find for NYCTA on this claim.  NYCTA's sole evidence for its claim is an audit prepared by Derek Frye that asserted there were 3,150 claims for non-FDA approved drugs that were purportedly excluded from NYCTA's Health Plan, resulting in $3.2 million in plan costs.  PX-131 at '41216; Trial Tr. (Frye) 1015:4-1016:22.  Mr. Frye admitted at trial, however, that his sole basis for treating these claims as excluded was that he assumed the drugs appeared on the "Express Scripts Counterstrategies Drug

List"—a list of drugs that Mr. Frye admitted **he has never seen**. Trial Tr. (Frye) 1100:7-1101:9, 1102:2-9. Indeed, Mr. Frye conceded that he had no idea whether a single drug for his 3,150 claims actually showed up on the ESI Counterstrategies Drug List. Trial Tr. (Frye) 1103:18-20. Further, NYCTA offered no evidence of what drugs are included on the Express Scripts Counterstrategies Drug List *or* what drugs comprised the 3,150 claims. Accordingly, no reasonable jury could find that any of the 3,150 claims in question were actually excluded from NYCTA's Health Plan.

Express Scripts is therefore entitled to judgment as a matter of law as to those portions of NYCTA's claims pertaining to pharmacies or prescribers other than the At-Issue Providers, and to Express Scripts' payment of $3.2 million for allegedly non-FDA approved drugs.

## II. EXPRESS SCRIPTS DID NOT BREACH SECTION 4.2

No reasonable jury could find that Express Scripts breached Section 4.2 of the Agreement, which provides in relevant part as follows:

> **Claims Processing.** Contractor shall process Claims incurred during the Term of this Agreement and provide customer service in a prudent and expert manner, including investigating and reviewing such Claims to determine what amount, if any, is due and payable according to the terms and conditions of the Plan documents and this Agreement…. Contractor shall have authority under the Plan for purposes of (i) making initial Claims payments and denials under the Plan; (ii) performing the fair and impartial review(s) of all appeals of denied Claims; and (iii) issuing any required notices to Plan participants. In connection with those duties, Contractor shall determine what Benefits are payable under the Plan, subject to the eligibility and enrollment information the AUTHORITY gives to Contractor….

DX-49.018-19, § 4.2. The evidence and testimony at trial conclusively showed that the parties agreed to a set of "performance guarantees" that specified Express Scripts' required level of performance under Section 4.2. *See* Trial Tr. (Masella) 389:6-16 (agreeing that "there were a number of specific performance guarantees for each of the different contract provisions where you

negotiated those types of guarantee," including for Section 4.2).  Section 4.28 of the Agreement, titled "Performance Standards and Service Levels," states that Express Scripts "shall comply with the performance standards described in Exhibit D."  DX-49.034, § 4.28.  Exhibit D, in turn, sets forth the performance guarantees that Express Scripts needed to meet to satisfy its obligations under Section 4.2.  *E.g.*, DX-49.099.  These performance guarantees included a requirement that Express Scripts maintain a "Claims Adjudication Accuracy Rate" for each contract year of 99% or greater, and a "Claims processing accuracy compliance" requirement that "99% of all prescription drug claims submitted on behalf of a participant" be HIPAA compliant.  *Id.*; Trial Tr. (Masella) 390:2-391:9, 391:17-20.

Express Scripts' claims processing duties under Section 4.2 were limited to certain performance guarantees specified in the Exhibit D performance standards charts.  Indeed, in a case from this District involving a similarly structured Express Scripts' pharmacy benefit management contract, Judge Ramos ruled as a matter of law that the base contract's "prior authorization" provisions could not impose obligations beyond those specified in the contract's "performance guarantees."  *See Anthem, Inc. v. Express Scripts, Inc.*, 2022 WL 1558879, at *13 (S.D.N.Y. Mar. 31, 2022) (ruling that Express Scripts' performance guarantees, contained within the agreement's "performance standards charts," provided "the standards of performance Express Scripts is contractually obligated to meet with respect to the different types of prior authorizations").  The court reached this result even though, as here, the base contract required Express Scripts to perform its services "in a prudent and expert manner."  *Id.* at *12-13 ("In light of the performance standards charts, [the 'prudent and expert' standard] is not sufficiently specific to impose an obligation relevant to this claim." (citation omitted)).  As the court in *Anthem* observed, a general provision like the "prudent and expert" standard is inapplicable when, as here, the contract supplies a more

precise standard.  *Id.* at *13; *see Medina v. 163 Ashley Deli Grocery*, 2020 WL 2097605, at *1 (S.D.N.Y. May 1, 2020) ("Under New York law, specific terms in a contract will override the general …." (internal quotation marks omitted)).

But even if the Agreement were ambiguous as to whether Express Scripts' claims processing duties under Section 4.2 were limited to the performance guarantees set forth in Exhibit D, no reasonable jury could resolve that ambiguity any other way.  James Masella, the NYCTA employee who oversaw its prescription drug benefit program, conceded several times that certain performance guarantees in Exhibit D provided the standard for Section 4.2 claims processing.  Trial Tr. (Masella) 394:2-4 ("Q.  This is accuracy claim processing.  That's section 4.2 of the contract, right?   A.   Yes."); 394:11-15 ("Q.  So here is the standard for section 4.2 claims processing.  The claims adjudication accuracy rate for each contract year will be 99 percent or greater.  Do you see that?  A.  Yes."); 396:4-6 ("Q. Again, claims processing, that's section 4.2 of the contract, right?  A.  Yes.").  NYCTA, on the other hand, adduced no countervailing evidence that Section 4.2 imposed any obligations beyond the specified performance guarantees.

The evidence and testimony at trial conclusively showed that Express Scripts did not breach any of the performance guarantees that set the standard of performance for Section 4.2.  Aon, a healthcare consulting firm retained by NYCTA, prepared an audit report dated March 2019 assessing whether Express Scripts satisfied its performance guarantees in 2017.  PX-131 at '41194-96; Trial Tr. (Masella) 392:22-393:22.  The audit found that for "Accuracy - Claim Processing"— which provides "the standard for section 4.2 claims processing," Trial Tr. (Masella) 393:23-394:19—Express Scripts received a perfect score of 100% accuracy for each quarter.  PX-131 at '41218; Trial Tr. (Masella) 394:20-395:23.  The audit also found that for "Accuracy – Claim Processing Compliance"—which also corresponds to Section 4.2, Trial Tr. (Masella) 395:24-

5

396:6—Express Scripts met its performance guarantee for all four quarters.  PX-131 at '41218; Trial Tr. (Masella) 396:7-22.  The audit further found that Express Scripts achieved all of its Section 4.2 performance guarantees related to customer service.  PX-131 at '41219; Trial Tr. (Masella) 396:23-398:23.  Finally, for the "Overall account satisfaction guarantee," the audit found that Express Scripts met its performance guarantee that NYCTA's "overall satisfaction with Account Management will be greater than or equal to Meets Expectations."  PX-131 at '41219; Trial Tr. (Masella) 399:5-400:1.  Consistent with Aon's audit, Mary Beese, NYCTA's Senior Director of Employee Benefits, admitted at trial that Express Scripts "did its job" with respect to its prescription clams processing obligations under the Agreement.  Trial Tr. (Beese) at 934:6-19.  NYCTA, however, adduced no evidence that Express Scripts failed to achieve *any* of its performance guarantees, much less those performance guarantees that set the standard of performance for Section 4.2.[1]

Because no reasonable jury could find that Express Scripts breached Section 4.2, Express Scripts is entitled to judgment as a matter of law.

## III.   EXPRESS SCRIPTS DID NOT BREACH SECTION 4.16

No reasonable jury could find that Express Scripts breached Section 4.16 of the Agreement, which sets forth various duties that Express Scripts had in connection with its management of network pharmacies.  As relevant here, Section 4.16 provides that Express Scripts "shall be solely responsible for the selection, monitoring, and retention of its Network Pharmacies," and "shall exercise due diligence in the selection and retention of Network Pharmacies."  DX-49.024-25, § 4.16.  As an initial matter, NYCTA's claim under Section 4.16 is limited to Express Scripts'

---

[1]   Because Express Scripts achieved all of its performance guarantees, NYCTA's allegation that Express Scripts improperly paid $3.2 million for drugs that were not approved by the FDA is immaterial to NYCTA's claim for breach of Section 4.2.

diligence in monitoring and retaining Fusion:  Section 4.16 pertains only to network pharmacies, not prescribers, and NYCTA adduced no evidence that Express Scripts failed to exercise due diligence in connection with any network pharmacies besides Fusion.  (Section I, *supra*.)

As to Fusion, NYCTA maintains that Section 4.16 required Express Scripts to alert NYCTA to potential red flags earlier.  The evidence and testimony at trial conclusively showed, however, that there was no evidence of fraud or waste at Fusion.  Indeed, Mr. Masella admitted that, as far he knows, all the prescriptions filled by Fusion were legitimate.  Trial Tr. (Masella) 226:18-227:1 ("Q. … I'm asking you, do you have any reason to explain to this jury that the doctor didn't properly prescribe a prescription that was filled at Fusion?  A.  I assume it's legitimate because it was honored by the pharmacy, and the pharmacy is licensed.  Q.  As far as you know, the prescriptions that were filled by the Fusion Pharmacy were legitimate prescriptions?  A. Yes.").  Likewise, Mr. Frye testified that in conducing his analyses for his charts, his "understanding was that all the claims that showed up in [the] 6.2 million lines of data in the claim file were valid."  Trial Tr. (Frye) 1077:1-4.

As for the volume of prescriptions, Mr. Masella admitted that Express Scripts sent all of its claims data to NYCTA and Aon on a weekly basis, and that this information included the pharmacies, medications, and costs associated with each prescription.  Trial Tr. (Masella) 243:9-245:20.  Express Scripts also regularly warned NYCTA about its increasing compound spend and recommended that NYCTA enroll in the free Compound Management Solution program.  Trial Tr. (Masella) 228:18-230:5 (discussing DX-287), 254:6-255:13 (discussing DX-112), 257:11-258:11 (discussing DX-108.009), 259:6-262:14 (discussing DX-99.007-8, DX-99.018), 264:8-11 (discussing DX-99.039), 280:12-283:7 (discussing PX-97).  NYCTA adduced no evidence of any industry standard that would have required Express Scripts to do anything more.

IV.     **EXPRESS SCRIPTS DID NOT BREACH SECTION 4.7**

No reasonable jury could find that Express Scripts breached Section 4.7 of the Agreement,

which provides in relevant part as follows:

> With respect to any Overpayment of any Claim made to a
> Participant, Contractor shall pursue recovery of such Overpayment
> in accordance with applicable law and industry standards and, upon
> recovery, repay the amount of such Overpayment to the Plan….
> Notwithstanding the foregoing, Contractor shall be liable for all un-
> recovered Overpayments due to Contractor's breach of this
> Agreement (including, without limitation, Contractor's failure to
> meet the standard of care) …. After termination of this Agreement,
> Contractor shall continue to identify Overpayments, and pursue
> recovery on Claims, as required by this section, paid during the
> Term of this Agreement and the Run-Out Period.

DX-49.021, § 4.7.  The Agreement defines "Overpayments" as follows:

> "**Overpayments**" means payments that exceed the amount payable
> under the [NYCTA Health] Plan and this Agreement.    An
> Overpayment may occur for reasons including, but not limited to, a
> Pharmacy billing error, retroactive or inaccurate eligibility
> information, an error in the administration of coordination of
> benefits, a Medicare dispute, or missing information.

DX-49.013, § 1.32.  The Agreement defines "Claim" as "any written or electronic request for

Benefits made by or on behalf of a Participant in a form acceptable to a Contractor, and submitted

to Contractor for adjudication."  DX-49.010, § 1.9.  Thus, to establish an Overpayment, NYCTA

must prove that the payment made *on a particular Claim* "exceed[ed] the *amount payable* under

the [NYCTA Health] Plan and this Agreement."  DX-49.013, § 1.32 (emphasis added).

NYCTA argues that its payments for compound medications traced to the At-Issue

Providers were Overpayments within the meaning of the Agreement and therefore recoverable

under Section 4.7—apparently on the basis that, according to NYCTA, the claims relating to those

providers were fraudulent or waste.   No reasonable jury could reach this conclusion.

"Overpayments" is expressly defined as "payments that exceed the *amount payable* under the

[NYCTA Health] Plan and this Agreement." DX-49.013, § 1.32 (emphasis added). In the event that NYCTA could establish that any particular claim was fraudulent or wasteful (and it has not), such claim would not have been "payable" because it should never had been made in the first place. Indeed, as Mr. Eich testified, when a claim is identified as "discrepant" (*i.e.*, fraudulent or wasteful), it is reversed because it should never had been paid in the first place. Trial Tr. (Eich) 818:17-819:4. This plain meaning of the first sentence of the "Overpayment" definition is reinforced by the second sentence, which provides a list of potential Overpayments—all of which related to billing or coding errors. Under the doctrine of *ejusdem generis*, where a contract includes an "including but not limited to" clause, followed by a list of similar items, any additional items not expressly listed must be construed as similar to those expressly listed. *See ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 75 (S.D.N.Y. 1999) ("The phrase 'including, but not limited to' does not alter this analysis—the general expression is not limited to the single specific example given, but should nevertheless be restricted to obligations of the same type or class."). Fraudulent or wasteful claims are not of the same type as "a Pharmacy billing error, retroactive or inaccurate eligibility information, and error in the administration of coordination of benefits, a Medicare dispute, or missing information"—all of which relate to claim processing errors or mistakes.

But even if discrepant payments were not excluded from the definition of "Overpayments," Express would still be entitled to judgment as a matter of law. It is undisputed that NYCTA's Health Plan covered all prescribed compound drugs, meaning that payments for those compound drugs were "payable" under the terms of the Plan. NYCTA adduced no evidence that Express Scripts charged NYCTA for compounds at rates higher than that set by the Agreement. In addition, Mr. Masella admitted that he is unaware of any "billing errors Express Scripts made," "mistakes or inaccuracies in the eligibility information that Express Scripts utilized," "errors in the

administration or coordination of benefits," or "a Medicare dispute or any missing information." Trial Tr. (Masella) 507:15-508:11.  NYCTA was therefore required to prove that the payments for compounds traced to the At-Issue Providers "exceed[ed] the amount payable" due to Express Scripts' failure to discharge its duties under Sections 4.2 or 4.16—the only other provisions of the Agreement that Express Scripts is alleged to have breached.[2]  No reasonable jury could conclude that NYCTA carried this burden.

As previously explained (Sections II and III, *supra*), no reasonable jury could find that Express Scripts breached Sections 4.2 or 4.16.  Consequently, Express Scripts' performance with respect to those provisions cannot have resulted in any Overpayments within the meaning of the Agreement.  In any event, neither Section 4.2 nor 4.16 can ground NYCTA's claim for recovery of alleged Overpayments.  NYCTA was required to show, on a Claim-by-Claim basis, that the actual payment on a particular Claim "exceed[ed] the amount payable"—*i.e.*, the amount that ***would have been paid*** on the Claim had Express Scripts exercised the requisite standard of care in processing Claims (Section 4.2) or monitoring and retaining Network Pharmacies (Section 4.16).  Although Section 4.7 requires a Claim-by-Claim analysis, NYCTA adduced no evidence that any individual prescriptions traced to the At-Issue Providers were improper.  Indeed, Mr. Masella admitted that, as far he knows, the prescriptions filled by Fusion were legitimate.  Trial Tr. (Masella) 226:18-227:1.

In addition, NYCTA adduced no evidence of the amount that would have been paid on any individual Claim had Express Scripts exercised the requisite standard of care under Section 4.2 or Section 4.16.  NYCTA's position—that the amount would have been zero—rests on two

---

[2]  The Court previously determined that Section 4.1 "does not create independent duties under the Contract."  Dkt. 144 at 16.

implausible assumptions for which NYCTA offered no evidence. The first is that NYCTA would have blocked the At-Issue Providers had Express Scripts alerted NYCTA to potential red flags earlier. The evidence at trial showed that Express Scripts shared a report with NYCTA in December 2016 that disclosed the outsized compound spend associated with the At-Issue Providers. PX-132; Trial Tr. (Masella) 269:16-272:21. Yet NYCTA did not block Fusion until four months later and did not block Drs. Cohen and Honig until fourteen months later. Dkt. 205 at 17 (Stipulated Fact Nos. 8 & 10). Mr. Masella delayed in blocking the At-Issue Providers not because he lacked information from Express Scripts, but because NYCTA management did not authorize him to block pharmacies or prescribers:

> Q. Mr. Masella, you didn't have authority from your bosses to start blocking pharmacies in April of 2017; correct?
>
> ….
>
> A. Correct.
>
> Q. And after you started blocking in 2017 and kept blocking, you never got authority from your bosses to do it?
>
> ….
>
> A. No, I didn't get permission.
>
> ….
>
> Q. And before you started blocking doctors, you didn't get permission from your management to do that either, right?
>
> A. Right.
>
> …
>
> Q. It says here: The position of management/labor relations was and continues to be that any changes, including blocking of pharmacies, needs to be collectively bargained. Right?
>
> A. Right.
>
> ….

> Q.  Mr. Masella, you write here:  The position of management was and continues to be that any changes, including blocking of pharmacies, needs to be collectively bargained.  They told you that that's what their view was.  And even though they told you that, you went ahead and blocked?
>
> A.  Yes.
>
> Q.  Okay.  And so you didn't have authority from your management from the time that you started blocking until December of 2018 right?
>
> A.  Right.

Trial Tr. (Masella) 313:8-317:22; *see* DX-156.001 ("Aon brought to my attention the excessive Compound spend of the pharmacy in Utah (Fusion Pharmacy) which accounted for around $20 million.  I again made my management aware but nothing came of it.  The position of management/Labor Relations was and continues to be that any changes including blocking of pharmacies needs to be collectively bargained.").  NYCTA adduced no evidence that Mr. Masella would have acted any sooner had Express Scripts done anything different (let alone **when** Mr. Masella would have blocked the pharmacies or prescribers).  To the contrary, Mr. Masella specifically and repeatedly testified that his strategy was to block pharmacies and prescribers **"gradually"** over an extended time period to assess any potential member disruption and pushback from management.  Trial Tr. (Masella) 293:24-295:9.

The second assumption behind NYCTA's position is that each individual Member involved in an Overpayment would *not* have had an alternative prescription filled (perhaps for a medically equivalent alternative product) had the At-Issue Providers been blocked.  NYCTA provided no evidence for this assumption—much less evidence on a Claim-by-Claim basis.  Indeed, Mr. Masella wrote in an email to Aon that "shut[ting] down Fusion and Honig" did not address "the root of the problem," which he compared to "a balloon, squeeze one end that the other end pops out."  DX-6.001; Trial Tr. (Masella) 319:19-320:14.  Because an "Overpayment" is

defined as the amount by which a payment "***exceed[s]***" the amount payable, it was incumbent upon NYCTA to offer evidence bearing on the payments that would have been made absent Express Scripts' alleged breach.  NYCTA did not do so.

Finally, to the extent that NYCTA argues that it is entitled to alleged Overpayments owing to Express Scripts' alleged payment of $3.2 million for medications that were putatively not approved by the FDA.  NYCTA adduced no evidence on a Claim-by-Claim basis that any of the 3,150 individual prescriptions involved non-FDA approved drugs.  (Section I, *supra*.)  Moreover, NYCTA offered no evidence of the amount by which the payments for such drugs exceeded the amount that would have been paid had the prescriptions been filled by an FDA-approved alternatives.

Because no reasonable jury could find that Express Scripts breached Section 4.7, Express Scripts is entitled to judgment as a matter of law.

## V.   EXPRESS SCRIPTS DID NOT BREACH SECTION 4.1

No reasonable jury could find that Express Scripts breached Section 4.1 of the Agreement, which provides in relevant part as follows:

> In the exercise of its duties under this Agreement, Contractor shall use that degree of care and reasonable diligence that an experienced and prudent plan administrator of pharmacy benefits under a group health plan familiar with such matters would use acting in like circumstances, and consistent with industry standards.

DX-49.018, § 4.1.  In its ruling on Express Scripts' motion for summary judgment, the Court determined that Section 4.1 "does not create *independent* duties under the Contract," but "can give rise to a claim for breach if Express Scripts fails to adhere to the standard of care in the exercise of *another* duty under the Contract."  Dkt. 144 at 16-17.  The only other relevant duties that could possibly ground NYCTA's claim for breach of Section 4.1 are the other provisions of the Agreement that Express Scripts is alleged to have breached:  Sections 4.2, 4.16, and 4.7.  No

13

reasonable jury could find that Express Scripts breached the standard of care set forth in Section 4.1 with respect to any of these three provisions.

*First*, as to Section 4.2, the evidence and testimony at trial conclusively showed (1) that certain performance guarantees set forth in Exhibit D of the Agreement provided the standard of performance for Express Scripts, and (2) that Express Scripts achieved all of these performance guarantees. (Section II, *supra*.)  In light of the Exhibit D performance guarantees, the "experienced and prudent" standard set forth in Section 4.1—like the "prudent and expert" standard in Section 4.2 itself—"is not sufficiently specific to impose an obligation relevant to this claim."  *Anthem*, 2022 WL 1558879, at *13.

*Second*, as to Section 4.16, the evidence and testimony at trial conclusively showed that there were no indicia of fraud or waste at Fusion except for the volume of compound prescriptions filled there. (Section III, *supra*.)  Express Scripts provided NYCTA with weekly claims data and regularly warned NYCTA about its increasing compound spend. (*Id.*)  NYCTA adduced no evidence of any industry standard that would have required Express Scripts to do more. (*Id.*)

*Third*, as to Section 4.7, the evidence and testimony at trial conclusively showed that Express Scripts did not violate the "experienced and prudent" standard with respect to its obligation under Section 4.7 to pursue recovery of Overpayments.  As previously explained, no reasonable jury could find that any payments made by Express Scripts constituted "Overpayments" within the meaning of the Agreement. (Section IV, *supra*.)  *A fortiori*, no reasonable jury could find that Express Scripts did not meet the "experienced and prudent" standard in pursuing recovery of Overpayments.

Because NYCTA failed to adduce evidence that Express Scripts violated any other provision in the Agreement that could ground its claim for breach of Section 4.1, Express Scripts is entitled to judgment as a matter of law.

## VI. EXPRESS SCRIPTS' PURPORTED BREACHES OF THE AGREEMENT DID NOT CAUSE NYCTA'S ALLEGED DAMAGES

Even if NYCTA had proven that Express Scripts breached Sections 4.2, 4.16, 4.7, or 4.1 of the Agreement (which it did not), no reasonable jury could find that such breach caused NYCTA's alleged damages.  Under New York law, "[a] plaintiff seeking damages for breach of contract … must demonstrate that the damages were caused by and are directly traceable to the … breach." *Bausch & Lomb, Inc. v. Bressler*, 977 F.2d 720, 731 (2d Cir. 1992) (internal quotation marks omitted); *see Point Productions A.G. v. Sony Music Entm't, Inc.*, 215 F. Supp. 2d 336, 341 (S.D.N.Y. 2002) ("In a breach of contract action, the plaintiff must demonstrate more than simply that defendant breached its contract and that the plaintiff suffered damage.  Plaintiff cannot recover if it would have suffered the harm regardless of defendant's actions."), *opinion amended on reconsideration*, 2002 WL 31856951 (S.D.N.Y. Dec. 19, 2002).

NYCTA offered no evidence that it would have paid less for compound prescription claims had Express Scripts notified NYCTA of potential outliers earlier (let alone that such outliers were not identified in real-time in the claims data and through other reporting and discussions).  Under Section 3.4 of the Agreement, NYCTA retained "sole authority over the design of the Plan, including any modification or termination of the Plan."  DX-49.016, § 3.4.  It was therefore NYCTA's burden at trial to prove that, had Express Scripts alerted it to putative red flags earlier, NYCTA would have taken measures to reduce compound spend, and those measures would have been effective in lowering costs.  No reasonable jury could find that NYCTA carried this burden.  The testimony and evidence at trial centered on two categories of potential cost-savings measures:

(1) blocking pharmacies and prescribers, and (2) implementing the Compound Management Solution, the free program that Express Scripts offers to its clients for controlling compound prescription costs, or other industry-standard practices for prescription drug management. NYCTA adduced no evidence that it would have undertaken any of these measures and reduced its compound spend if Express Scripts had done anything differently.

*First*, as previously explained (Section IV, *supra*), NYCTA delayed in blocking pharmacies and prescribers not because Express Scripts failed to alert NYCTA to any issue, but because NYCTA's management purportedly believed they could not do so without union approval. Moreover, to prove that NYCTA would not have suffered the same harm regardless of Express Scripts' purported breach of contract, NYCTA needed to prove that Members with prescriptions traceable to the At-Issue Providers would not have had alternative prescriptions filled had the At-Issue Providers been blocked.  NYCTA offered no evidence on this issue.  (Section IV, *supra*.)

*Second*, the testimony and evidence at trial showed that Express Scripts repeatedly recommended to NYCTA that it implement the free Compound Management Solution and other industry-standard cost-controls to address its rising compound spend, but that NYCTA refused to do so.   Trial Tr. (Masella) 227:21-23, 228:18-230:5 (discussing DX-287), 254:6-255:13 (discussing DX-112), 259:6-262:14 (discussing DX-99), 282:24-284:7 (discussing PX-97).  As with the blocking of pharmacies and prescribers, NYCTA delayed in taking any of these measures not because Express Scripts failed to alert NYCTA to any specific information, but because NYCTA management would not authorize them.  Trial Tr. (Masella) at 360:19-361:2 ("Q.  So all of these industry standard tools that Ms. Isaacs independently identified were all tools that were either recommended by Express Scripts or used by the NYCTA, right?  A.  Correct.  Q.  And those industry standard practices, cost controls that were recommended to the NYCTA, paid by Express

Scripts, those that were not implemented were not done so because NYCTA management didn't authorize it, right?  A.  Correct.").

Because no reasonable jury could find that NYCTA would have paid less for compound prescription claims had Express Scripts notified NYCTA of putative red flags earlier, Express Scripts is entitled to judgment as a matter of law.

## VII.   NYCTA DID NOT PUT FORTH A RELIABLE METHOD FOR CALCULATING DAMAGES

Express Scripts is entitled to judgment as a matter of law because Mr. Frye's summary charts do not provide a reliable basis from which to calculate damages.[3]  "Under New York law, a successful plaintiff in a breach of contract action is entitled to damages in the 'amount necessary to put the plaintiff in the same economic position he would have been in had the defendant fulfilled his contract.'"  *Scholastic, Inc. v. Snap TV, Inc.*, 2011 WL 1330246, at *3 (S.D.N.Y. Apr. 8, 2011) (quoting *Indu Craft*, 47 F.3d at 495); *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 185 (2d Cir. 2007) ("A party injured by breach of contract is entitled to be placed in the position it would have occupied had the contract been fulfilled according to its terms.").  "As part of [its] burden, a plaintiff must [] provide a reasonable means of and basis for calculating damages." *Dockery v. Tucker*, 2006 WL 5893295, at *25 (E.D.N.Y. Sept. 6, 2006).  Such "damages 'must be capable of measurement based upon known reliable factors without undue speculation.'"  *T.E.A.M. Entm't, Inc. v. Douglas*, 2006 WL 587326, at *3 (S.D.N.Y. Mar. 9, 2006) (quoting *Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 403 (1993)).

NYCTA has not provided a reasonable basis for calculating damages.  NYCTA's sole evidence of damages consists of Mr. Frye's summary charts (PX-317 through PX-330), which

---

[3]   Express Scripts incorporates by reference, and does not waive, its arguments that Mr. Frye's charts are not proper summary exhibits and constituted improper expert testimony.  *See* Dkt. 246; Dkt. 261; March 7, 2023 Tr. 4:6-7:3, 22:10-21, 23:7-21, 32:24-33:14.

purport to calculate NYCTA's compound spend attributable to blocked pharmacies and prescribers (*e.g.*, Fusion, Honig, and Cohen).  Mr. Frye's summary charts do not provide a reliable basis from which to calculate NYCTA's purported damages.  Indeed, Mr. Frye testified that he did not even know that his charts would be offered as a damages calculation.  Trial Tr. (Frye) 1080:9-1081:12.  By basing its damages on Mr. Frye's charts, NYCTA assumes that the compound spend attributable to the blocked pharmacies and prescribers would have been avoided had Express Scripts done something different.  But as Mr. Frye admitted, his calculations do not account for whether any particular prescription was illegitimate or excessive, the value of the compounds that Members received, or the costs of alternative medications that Members would have received in a "but-for" world from a non-blocked pharmacy or prescriber.  Trial Tr. (Frye) 1074:4-1077:4.  An award of damages based on Mr. Frye's analysis would not put NYCTA in the same position it would have been in had Express Scripts fulfilled the contract; it would represent a windfall to NYCTA by failing to account for prescriptions that would have been filled even if the alleged breaches had not occurred.

## **CONCLUSION**

For the reasons set forth herein, Express Scripts respectfully requests that the Court grant judgment as a matter of law in favor of Express Scripts on all of NYCTA's claims.

Dated: March 21, 2023            By: */s/ Michael J. Lyle*

Michael J. Lyle, *Admitted Pro Hac Vice*
Eric Lyttle, *Admitted Pro Hac Vice*
Meghan A. McCaffrey, *Admitted Pro Hac Vice*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I St. NW, Ste. 900
Washington, DC 20005
Tel.: 202-538-8000
Fax: 202-538-8100
mikelyle@quinnemanuel.com
ericlyttle@quinnemanuel.com
meghanmccaffrey@quinnemanuel.com

Rollo C. Baker
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel.: 212-849-7000
Fax: 212-849-7100
rollobaker@quinnemanuel.com

Christopher A. Smith, *Admitted Pro Hac Vice*
Sarah C. Hellmann, *Admitted Pro Hac Vice*
Elizabeth A. Bozicevic, *Admitted Pro Hac Vice*
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
P: (314) 480-1500 / F: (314) 480-1505
chris.smith@huschblackwell.com
sarah.hellmann@huschblackwell.com
elizabeth.bozicevic@huschblackwell.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on March 21, 2023, the foregoing was filed electronically with the Clerk of Court, to be served by operation of the Court's electronic filing system upon all counsel of record.

*/s/ Michael J. Lyle*