UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                            :

NEW YORK CITY TRANSIT AUTHORITY,     :
                            :

               Plaintiff,     :          19-CV-5196 (JMF)
                            :

       -v-                  :          <u>ORDER</u>
                            :

EXPRESS SCRIPTS, INC.,            :
                            :

              Defendant.    :
                            :
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

    Attached to this Order are

- the juror questionnaire that was used during *voir dire* on March 13, 2023;

- the draft jury charge that was considered at the charge conference held on March 21, 2023; and

- the final jury charge that was delivered to the jury on March 22, 2023.

    SO ORDERED.

Dated: March 23, 2023
      New York, New York

                                _____
                                     JESSE M. FURMAN
                             United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                :

NEW YORK CITY TRANSIT AUTHORITY,      :
                                                :

                 Plaintiff,        :            19-CV-5196 (JMF)
                                                  :

          -v-                       :           <u>VOIR DIRE</u>
                                                  :

EXPRESS SCRIPTS, INC.,               :
                                                :

                 Defendant.      :
                                                :
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:


**<u>PLEASE DO NOT READ FURTHER OR WRITE ANYTHING ON</u>**

**<u>THIS QUESTIONNAIRE UNTIL THE JUDGE TELLS YOU TO DO SO</u>**

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Voir Dire

When directed to do so, please indicate if your answer to any of the following questions is "**yes**" by circling the number of that question. If your answer to a question is "**no**," you should not do anything. Do *not* write your name or make *any other* marks on the questionnaire; the only marks you should make are circles around the questions for which the answer is "yes." If, when asked about a "yes" answer, you prefer not to elaborate in open court, please say so.

A.    General Questions

1.    As I noted, this trial is expected to last approximately two weeks. Do you have any unmovable commitments or extraordinary personal hardship that would interfere with your serving as a juror at a trial that is expected to end, at the latest, by Tuesday, March 28, 2023?

2.    Do you have any difficulty understanding or reading English?

3.    Do you have any ideas or prejudices that would make it difficult for you to follow my instructions as to the law?

4.    Do you have any doubt that you will be able to apply the law as I explain it even if you disagree with it?

5.    Do you have any religious or ethical beliefs that would prevent you from passing judgment on another person or entity?

6.    Have you, or has any close friend or relative, ever studied or practiced law or worked in any capacity for a law office or a court?

B.    Case-Specific Questions

7.    Do you have any personal knowledge of this case between the New York City Transit Authority and Express Scripts, Inc., or have you heard or read anything about the claims in this case as I have described them?

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Voir Dire

8.      Have you, or has any member of your immediate family, ever worked for a transportation agency or company?

9.      Have you, or has any member of your immediate family, ever worked for a pharmacy or a pharmacy benefits management company (a "PBM")?

10.     Have you, or has any member of your immediate family, ever worked for a federal, state, or local government agency?

11.     Have you, or has any member of your immediate family, ever been a member of a union?  If so, did that union provide you or your immediate family member health insurance benefits?

12.     Do you know anyone who works, or has worked, for the New York City Transit Authority, the Metropolitan Transit Authority (the "MTA"), Metro-North, or the Long Island Railroad?

13.     Do you know anyone who works, or has worked, for Express Scripts, Inc.?

14.     Have you ever interacted with a pharmacy benefits management company (a "PBM")?

15.     Have you, or has any member of your immediate family, ever been in a situation involving any kind of insurance fraud?

16.     Do you have any personal experience with compound drug prescriptions?

17.     Do you have any reason to think that you could not sit fairly and impartially as a juror in this case?

C.      <u>Knowledge of Parties, Lawyers, and Witnesses</u>

18.     The plaintiff in this case is the New York City Transit Authority, and it is represented by Stephanie Ackerman, Alexa Bordner, Ariana Dindiyal, Jonathan New, Maximillian Shifrin, and John Siegal of the law firm Baker & Hostetler LLP.  They will be assisted during trial by Ramon Cabrera, Michael Pusterla, and Daniel Russo.  Do you know, or have you had any personal or business dealings with, the plaintiff's counsel and support staff, or its counsels' law firm?

19.    The defendant is Express Scripts, Inc., and it is represented by Rollo Baker, Samuel Johnson, Michael Lyle, Eric Lyttle, Meghan McCaffrey, Michael Sebring, Kyra Simon, and Michael Smith of the law firm Quinn Emanuel Urquhart & Sullivan, LLP; and Elizabeth Bozicevic and Sarah Hellmann of the law firm Husch Blackwell LLP.  They will be assisted during trial by Kelly Atanacio, Urmila Baumann, Todd Beattie, Patrick Bond, Adam Fuemmeler, Marco Heim, Christine Herrmann, Ian Ibarra, Carol Kayser, Kaycie McCarthy, Shahreen Mehjabeen, and Yuval Newman.  Do you know, or have you had any personal or business dealings with, Express Scripts, its counsel and support staff, or either of its law firms?

20.    Do you have any knowledge, opinions, feelings, or impressions about the plaintiff (the New York City Transit Authority), the defendant (Express Scripts, Inc.), or the Metropolitan Transportation Authority (the "MTA") that would affect your ability to be a fair and impartial juror in this case?

21.    Do you know or have you heard of any of the following people who may testify or whose names may be mentioned during the course of the trial?

| | | |
|---|---|---|
| Hazel Abool | Patrick Foye | Thomas Latimer |
| John Agbi | Christopher Frusci | Chris Lightbourne |
| Rick Battelle | Derek Frye | Patricia Lodge |
| Mary Beese | Andrea Grande | Charles Love |
| Patricia Burke | Joanne Guarente | Alyson Mahoney |
| Jill Kraft Butler | Bonny Harper | James Masella |
| Nathan Cassin | Susan Hayes | Kenneth McCabe |
| Mary R. Wendt Clifton | Wael Hibri | Dexter McKenzie |
| Anne Coatney | Jaimy Honig | Beverly McNeil-Dieudonnne |
| Mitchell Cohen | Sharon Hutcherson | |
| Lisa Curty | Enver Kalaba | Anita Miller |
| Ajay Dalal | Natasha Kelly | Kim Moore-Ward |
| Frederick Scott Dattel | Robin Kelly | Christine Myers |
| Yessica Diaz | Hasan Khondker | Alan Ng |
| Thomas Eich | Ajay Kiri | Maria Nieto |
| Marina Elliot | Michael Klein | Ross Nochimson |

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Voir Dire

| | | |
|---|---|---|
| Claudia O'Connor | Eric Rubenstein | Blake Stockwell |
| Cornelius O'Leary | Erik Ruebenacker | Koby Taylor |
| Peter Periconi | Steve Rutkowski | Anthony Utano |
| Phyllis Rachmuth | Steven Schadle | Navija Valladares |
| Elemer Raffai | Una Sibirceva | Samir Wahib |
| Michael Raggi | Jonathan Simhaee | Karsten Weber |
| Mary Reilly | Musadag Ma Sinada | Kristie Weinert |
| David Ross | Alyssa Stefanic | Matthew Wert |
| Kenneth Rostkowski | David Steiner | |

22.     Are you familiar with anyone else present in the courtroom, including your fellow jurors, all

Court personnel, and myself?

D.     <u>Experience with, and Opinions of, Lawsuits</u>

23.     If you or any member of your immediate family has ever brought a lawsuit against anyone or

been sued, would that experience affect your ability to be fair and impartial in this case?

24.     Do you believe that simply because someone brings a lawsuit that must mean the person

deserves to get money?

25.     Have you, or has any member of your immediate family, ever appeared as a witness either at a

trial or in a grand jury investigation?

E.     <u>Difficulties in Understanding or Serving</u>

26.     Do you have any problem with your hearing or vision, or any physical or medical issues

(including any medication you may be taking), that would prevent you from giving your full

attention to all of the evidence presented during this trial?

27.     Is there anything about COVID-19 that would affect your ability to be a fair and impartial juror

in this case?

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Voir Dire

28.     In these questions, I have tried to direct your attention to possible reasons why you might not be able to sit as a fair and impartial juror.  Apart from any prior question I have asked you, is there *any* reason that you could *not* be a conscientious, fair, and impartial juror in this case, and render a true and just verdict without fear, favor, sympathy, or prejudice, according to the law as I will explain it to you?

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Voir Dire

## QUESTIONS FOR INDIVIDUAL JURORS

1.  Please state your name and every county of residence in which you have lived during the past

     five years.

2.  How old are you?

3.  How far did you go in school?

4.  Do you regularly ride public transportation (i.e., the subway, public buses, or trains)?

5.  What do you do?

6.  How long have you been employed in your current position?  (If fewer than five years, where

     else did you work in the last five years?)

7.  Do you live with anyone and, if so, what do they do?

8.  Do you have grown children?  What do they do?

9.  Where do you typically get your news?  For example, what print newspapers, magazines,

     television shows, radio shows, podcasts, internet news site(s), or apps do you read, watch, or

     listen to on a regular basis?

10. Do you belong to or volunteer your time to any associations, organizations, clubs, or unions?

11. What do you like to do in your spare time?

12. Have you ever served as a juror?  If so, when did you serve and was it a civil or criminal case?

     Were you the foreperson?  Did you reach a verdict?  (**Do not tell us what the verdict was.**)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
NEW YORK CITY TRANSIT AUTHORITY                                         :
                                                                        :
                              Plaintiff,                                :
                                                                        :
                -v-                                                     :
                                                                        :            19-CV-5196 (JMF)
EXPRESS SCRIPTS, INC.,                                                  :
                                                                        :
                              Defendant.                                :
                                                                        :
------------------------------------------------------------------------X

# JURY CHARGE

March 22, 2023

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

# Table of Contents

I. GENERAL INTRODUCTORY CHARGES .................................................................. 3
   Role of the Court and the Jury ............................................................................4
   The Parties .......................................................................................................4
   Conduct of Counsel ............................................................................................4
   Direct and Circumstantial Evidence .....................................................................5
   Limited Purpose Evidence ...................................................................................6
   What Is and What Is Not Evidence .......................................................................6
   Charts and Summaries .......................................................................................8
   Demonstratives .................................................................................................8
   Credibility of Witnesses .....................................................................................9
   Prior Inconsistent Statements ...........................................................................10
   Knowledge and Conduct of Corporate Employees ...............................................11
   Expert Witnesses ............................................................................................11
   All Available Evidence Need Not Be Produced ....................................................12
   Preponderance of the Evidence .........................................................................13
II. SUBSTANTIVE ISSUES ................................................................................... 14
   Breach of Contract: Elements ............................................................................14
   First Element: Breach by the Defendant .............................................................16
   Second Element: Performance by the Plaintiff ....................................................19
   Third Element: Damage Caused by the Breach ...................................................21
   Calculating Damages .......................................................................................21
   Mitigation of Damages .....................................................................................23
   Multiple Claims ...............................................................................................24
III. CONCLUDING INSTRUCTIONS ....................................................................... 24
   Selection of Foreperson ....................................................................................24
   Sending Notes .................................................................................................25
   Right to See Exhibits and Hear Testimony .........................................................25
   Juror Note-Taking ...........................................................................................26
   Duty to Deliberate ...........................................................................................26
   Return of the Verdict .......................................................................................27
   Closing Comments ...........................................................................................28

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

# I. GENERAL INTRODUCTORY CHARGES

Members of the jury, you have now heard all of the evidence in the case, along with the lawyers' closing arguments. It is my duty at this point to instruct you as to the law. My instructions to you will be in three parts.

First, I will give you general instructions — for example, about your role as the jury, what you can and cannot consider in your deliberations, and the burden of proof.

Second, I will describe the law that you must apply to the facts as you find them to be established by the evidence.

Finally, I will give you some instructions for your deliberations.

I am going to read my instructions to you. It is not my favorite way to communicate — and not the most scintillating thing to listen to — but there is a need for precision, and it is important that I get the words just right, and so that is why I will be reading.

I have given you a copy of my instructions to follow along because they cover many points. Please limit yourself to following along; that is, do *not* read ahead in the instructions. If you find it easier to listen and understand while you are following along with me, please do so. If you would prefer, you can just listen and not follow along. In the unlikely event that I deviate from the written instructions, it is my oral instructions that govern and that you must follow. But you may take your copy of the instructions with you into the jury room so you can consult it if you want to re-read any portion of the charge to facilitate your deliberations.

For now, listen carefully and try to concentrate on the substance of what I'm saying. You should not single out any instruction as alone stating the law. Instead, you should consider my instructions as a whole when you retire to deliberate in the jury room.

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

1    <u>Role of the Court and the Jury</u>

2           You, the members of the jury, are the sole and exclusive judges of the facts.  You must

3    weigh and consider the evidence without regard to sympathy, prejudice, or passion for or against

4    any party.  It is your duty to accept my instructions as to the law and to apply them to the facts as

5    you determine them.  If either party has stated a legal principle differently from any that I state to

6    you in my instructions, it is my instructions that you must follow.

7

8    <u>The Parties</u>

9           As you know, the parties in this case are the New York City Transit Authority and

10   Express Scripts, Inc.  In reaching your verdict, you must remember that all parties stand equal

11   before a jury in the courts of the United States.  The fact that the Plaintiff is a public agency and

12   the fact that the Defendant is a company does not mean that either party is entitled to any greater

13   or lesser consideration by you.  All litigants are equal before the law and each party in this case

14   is entitled to the same fair consideration as you would give any other party.

15

16   <u>Conduct of Counsel</u>

17          The personalities and the conduct of counsel are not in any way at issue.  If you formed

18   opinions of any kind about any of the lawyers in the case, favorable or unfavorable, whether you

19   approved or disapproved of their behavior, those opinions should not enter into your

20   deliberations.

21          In addition, remember that it is the duty of a lawyer to object when the other side offers

22   testimony or other evidence that the lawyer believes is not properly admissible.  Therefore, you

23   should draw no inference from the fact that there was an objection to any testimony or evidence.

24   Nor should you draw any inference from the fact that I sustained or overruled an objection.

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

1   Simply because I have permitted certain testimony or evidence to be introduced does not mean

2   that I have decided on its importance or significance.  That is for you to decide.

3

4   <u>Direct and Circumstantial Evidence</u>

5       There are two types of evidence that you may properly use in reaching your verdict.  The

6   first type is direct evidence.  Direct evidence of a fact in issue is presented when a witness

7   testifies to that fact based on what he or she personally saw, heard, or otherwise observed

8   through the five senses.  The second type of evidence is circumstantial evidence.  Circumstantial

9   evidence is evidence that tends to prove a disputed fact indirectly by proof of other facts.

10      There is a simple example of circumstantial evidence that is often used in this courthouse.

11  Assume that when you came into the courthouse this morning, the sun was shining and it was a

12  nice day outside.  Also assume that the courtroom shades were drawn and you could not look

13  outside.  Assume further that as you were sitting here, someone walked in with an umbrella that

14  was dripping wet, and then, a few moments later, somebody else walked in with a raincoat that

15  was also dripping wet.

16      Now, because you could not look outside the courtroom and you could not see whether it

17  was raining, you would have no direct evidence of that fact.  But, on the combination of facts

18  that I have asked you to assume, it would be reasonable and logical for you to conclude that it

19  was raining.

20      That is all there is to circumstantial evidence.  You infer on the basis of your reason,

21  experience, and common sense from one established fact the existence or the nonexistence of

22  some other fact.  The matter of drawing inferences from facts in evidence is not a matter of

23  guesswork or speculation.  An inference is a logical, factual conclusion that you might

5

1   reasonably draw from other facts that have been proved.  It is for you, and you alone, to decide

2   what inferences you will draw.

3          Importantly, circumstantial evidence may be given as much weight as direct evidence.

4   The law makes no distinction between direct and circumstantial evidence.  It asks only that you

5   consider all the evidence presented.

6

7   Limited Purpose Evidence

8          If certain testimony or evidence was admitted or received for a limited purpose, you must

9   follow the limiting instructions I have given.

10

11  What Is and What Is Not Evidence

12         What, then, is the evidence in the case?

13         The evidence in this case is (1) the sworn testimony of the witnesses, (2) the exhibits

14  received into evidence, and (3) any stipulations made by the parties.  Nothing else is evidence.

15         A stipulation is an agreement between parties as to what certain facts were or what the

16  testimony would be if certain people testified before you.  The stipulations are the same for your

17  purposes as the presentation of live testimony.  You should consider the weight to be given such

18  evidence just as you would any other evidence.

19         As I just said, anything other than the sworn testimony of the witnesses, the exhibits

20  received into evidence, and any stipulations made by the parties is not evidence.  For example,

21  the questions posed to a witness are not evidence: It is the witnesses' answers that are evidence,

22  not the questions.  In addition, exhibits marked for identification but not admitted by me are not

23  evidence; nor are materials brought forth only to refresh a witness's recollection.  Moreover,

1   testimony that has been stricken or excluded by me is not evidence and may not be considered by

2   you in rendering your verdict.

3        Along these lines, you will recall that, among the exhibits received in evidence, some

4   documents are redacted.  "Redacted" means that part of the document was taken or blacked out.

5   You are to concern yourself only with the part of the document that has been admitted into

6   evidence.  You should not consider any possible reason why the other part of it has been deleted

7   or blacked out.

8        Arguments by the lawyers are also not evidence.  What you heard during the opening

9   statements and summations is merely intended to help you understand the evidence and reach

10   your verdict.  If your recollection of the facts differs from the lawyers' statements, you should

11   rely on your recollection.  If a lawyer made a statement during his or her opening or summation

12   and you find that there is no evidence to support the statement, you should disregard the

13   statement.

14        Finally, any statements that I may have made during the trial or during these instructions

15   do not constitute evidence.  At times, I may have admonished a witness or directed a witness to

16   be responsive to questions or to keep his or her voice up.  At times, I may have asked a question

17   myself.  Any questions that I asked, or instructions that I gave, were intended only to clarify the

18   presentation of evidence and to bring out something that I thought might be unclear.  You should

19   draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any

20   witness or any party in the case, by reason of any comment, question, or instruction of mine.

21   The rulings I have made during the trial and these instructions are no indication of my views as

22   to what your decision should be.  Nor should you infer that I have any views as to the credibility

1   of any witness, as to the weight of the evidence, or as to how you should decide any issue that is

2   before you.  That is entirely your role.

3

4   <u>Charts and Summaries</u>

5        The exhibits include certain charts and summaries.  As I mentioned to you during trial, I

6   admitted these charts and summaries in place of, or in addition to, the underlying testimony or

7   documents that they represent, in order to save time and avoid unnecessary inconvenience.  They

8   are no better than the testimony or the documents upon which they are based.  Therefore, you are

9   to give no greater consideration to these charts or summaries than you would give to the

10  evidence upon which they are based.  It is for you to decide whether they correctly present the

11  information contained in the testimony and in the exhibits on which they were based.

12

13  <u>Demonstratives</u>

14       During trial, the parties showed you what are called "demonstratives" — illustrations or

15  reproductions of what the parties consider relevant information in this case.  The demonstratives

16  are not evidence.  Instead, they were shown to you in order to make other evidence more

17  meaningful and to aid you in considering the evidence.  They are no better than the evidence

18  upon which they are based.  Therefore, you are to give no greater consideration to these

19  demonstratives than you would give to the evidence upon which they are based.

20       It is for you to decide whether the demonstratives correctly present the information

21  contained in the exhibits on which they were based.  You may consider the demonstratives if you

22  find that they are of assistance to you in analyzing and understanding the evidence.

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

1    Credibility of Witnesses

2        How do you evaluate the credibility or believability of the witnesses?  The answer is that

3    you use your common sense.  There is no magic formula by which you can evaluate testimony.

4    You may use the same tests here that you use in your everyday life when evaluating statements

5    made by others to you.  You may ask yourselves: Did the witness impress you as open, honest,

6    and candid?  How responsive was the witness to the questions asked on direct examination and

7    on cross-examination?

8        If you find that a witness intentionally told a falsehood, that is always a matter of

9    importance you should weigh carefully.  On the other hand, a witness may be inaccurate,

10   contradictory, or even untruthful in some respects and entirely believable and truthful in other

11   respects.  It is for you to determine whether such inconsistencies are significant or

12   inconsequential, and whether to accept or reject all of the testimony of any witness, or to accept

13   or reject only portions.

14       You are not required to accept testimony even though the testimony is uncontradicted and

15   the witness's testimony is not challenged.  You may reject it because of the witness's bearing or

16   demeanor, or because of the inherent improbability of the testimony, or for other reasons

17   sufficient for you to conclude that the testimony is not worthy of belief.

18       In evaluating the credibility of the witnesses, you should take into account any evidence

19   that a witness may benefit in some way from the outcome of the case.  Such an interest in the

20   outcome creates a motive to testify falsely and may sway a witness to testify in a way that

21   advances his or her own interests.  Therefore, if you find that any witness whose testimony you

22   are considering may have an interest in the outcome of this trial, you should bear that factor in

23   mind when evaluating the credibility of his or her testimony, and decide whether to accept it with

24   great care.

1     Keep in mind, though, that it does not automatically follow that testimony given by an

2     interested witness is to be disbelieved.  There are many people who, no matter what their interest

3     in the outcome of the case may be, would not testify falsely.  It is for you to decide, based on

4     your own perceptions and common sense, to what extent, if at all, the witness's interest has

5     affected his or her testimony.

6

7     <u>Prior Inconsistent Statements</u>

8     You have heard evidence that, at some earlier time, a witness may have said something

9     that one or the other party argued was inconsistent with the witness's testimony at trial.

10    As I explained to you, such prior statements were presented to you not because they

11    themselves are evidence, but rather for the purpose of helping you decide whether to believe the

12    witness's trial testimony.  If you find that a witness made an earlier statement that conflicts with

13    the witness's trial testimony, you may consider that fact in deciding how much of the witness's

14    trial testimony, if any, to believe.

15    In making this determination, you may consider whether the witness purposely made a

16    false statement or whether it was an innocent mistake; whether the inconsistency concerns an

17    important fact or whether it had to do with a small detail; and whether the witness had an

18    explanation for the inconsistency and, if so, whether that explanation appealed to your common

19    sense.

20    It is exclusively your duty, based upon all the evidence and your own good judgment, to

21    determine whether the prior statement was inconsistent and, if so, how much weight, if any, to

22    give to the inconsistent statement in determining whether to believe all, or part of, the witness's

23    trial testimony.

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

1    Knowledge and Conduct of Corporate Employees

2        A company can act only through its employees.  Consequently, when you are considering

3    the substantive rules of law about which I will instruct you, you should understand that a

4    company is generally responsible for the conduct and knowledge of its employees who are acting

5    in the course of, and within the scope of, their duties as employees for the company.

6        More specifically, a company can "know" things only through its employees.  As a

7    general matter, the knowledge of an individual employee is "imputed" or attributed to his or her

8    employer if the employee acquired the knowledge when he or she was acting within the scope of

9    his or her employment and authority.  That is true even if the employee did not formally

10   communicate the information to his or her employer.

11       An employee is acting within the scope of his or her employment and authority if (1) he

12   or she is engaged in the transaction of business that has been assigned to him or her by his or her

13   employer or (2) he or she is doing anything that may reasonably be said to have been

14   contemplated as part of his or her employment.  It is not necessary that an act or failure to act

15   was expressly authorized by the employer.

16

17   Expert Witnesses

18       During the trial, you heard testimony from expert witnesses.  As I told you, an expert

19   witness is someone who, by education or experience, has acquired learning or experience in a

20   specialized area of knowledge.  Such a witness is permitted to express his or her opinions on

21   matters about which he or she has specialized knowledge and training.  The parties may present

22   expert testimony to you on the theory that someone who is experienced in the field can assist you

23   in understanding the evidence or in reaching an independent decision on the facts.

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

1    The opinions stated by each expert who testified before you were based on particular

2    facts as the expert him- or herself observed them and testified to them before you, or as he or she

3    was told by somebody else or as appeared to him or her from some record or other material.  You

4    may reject an expert's opinion if you find, from the evidence in this case, that the underlying

5    facts are different from those that formed the basis of the expert's opinion.  You may also reject

6    an expert's opinion if, after careful consideration of all the evidence in the case, including expert

7    and other testimony, you disagree with that opinion.  In other words, you are not required to

8    accept an expert's opinion to the exclusion of the facts and circumstances disclosed by other

9    evidence.  Such an opinion is subject to the same rules concerning reliability as the testimony of

10   any other witness, and it is allowed only to aid you in reaching a proper conclusion.

11   In weighing an expert's opinion, you may consider the expert's qualifications, education,

12   and reasons for testifying, as well as all of the other considerations that ordinarily apply,

13   including all the other evidence in the case.  You may give expert testimony whatever weight, if

14   any, you find it deserves in light of all the evidence in this case.  You should not, however,

15   accept a witness's testimony merely because he or she qualifies as an expert.  Nor should you

16   substitute an expert's opinion for your own reason, judgment, and common sense.  The

17   determination of the facts in this case rests solely with you.

18

19   <u>All Available Evidence Need Not Be Produced</u>

20   The law does not require any party to call as witnesses all persons who may have been

21   present at any time or place involved in the case, or who may appear to have some knowledge of

22   the matters at issue in this trial.  Nor does the law require any party to produce as exhibits all

23   papers and things mentioned in the evidence in the case.

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

1    You are not to rest your decision on what some absent witness who was not brought in

2    might or might not have testified to.  Each party had an equal opportunity, or lack of opportunity,

3    to call any of these witnesses.  Therefore, you should not draw any inferences or reach any

4    conclusions as to what an absent witness would have testified to had they been called.  Their

5    absence should not affect your judgment in any way.

6

7    Preponderance of the Evidence

8        Before I instruct you on the issues you must decide, I want to define for you the standard

9    under which you will decide whether a party has met its burden of proof on a particular issue.

10   The standard that applies in this case is the preponderance of the evidence.  As I told you at the

11   beginning of the trial, proof beyond a reasonable doubt, which is the proper standard of proof in

12   a criminal trial, does not apply to a civil case such as this and you should put it out of your mind.

13       To establish something by a preponderance of the evidence means that the evidence of

14   the party that has the burden of proof must be more convincing and persuasive to you than that

15   opposed to it.  The difference in persuasiveness need not be great: So long as you find that the

16   scales tip, however slightly, in favor of the party with the burden of proof — that what the party

17   claims is more likely true than not — then that element will have been proved by a

18   preponderance of the evidence.  And here it is important for you to realize that this refers to the

19   quality of the evidence and not to the number of witnesses, the number or variety of the exhibits,

20   or the length of time spent on a subject.  In determining whether any fact has been proved by a

21   preponderance of the evidence, you may consider all of the exhibits and the testimony of all of

22   the witnesses.

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

1                           II. SUBSTANTIVE ISSUES

2          That completes your general instructions.  Let me turn, then, to the law that applies to the

3   issues in this case.  As you are aware, this case arises from, and relates to, a contract between the

4   New York City Transit Authority (which I will refer to as the "Transit Authority") and Express

5   Scripts, pursuant to which Express Scripts served as the Transit Authority's pharmacy benefits

6   manager (or "PBM") from 2016 to 2019.  I will discuss the contract in more detail soon, but the

7   entirety of the contract is in evidence (as Plaintiff's Exhibits 105 and 106 and Defense Exhibit

8   49) for you to examine during your deliberations.  The Transit Authority claims that Express

9   Scripts breached the contract in two ways: (1) by failing to investigate, inform the Transit

10  Authority of, and prevent fraud, waste, and abuse related to compound drug prescriptions; and

11  (2) by processing claims for non-FDA approved drugs.  Express Scripts denies these claims.

12  **Adapted from _N.Y.C. Transit Auth. v. Express Scripts, Inc._, 588 F. Supp. 3d 424, 429-33**

13  **(S.D.N.Y. 2022).**

14

15  Breach of Contract: Elements

16         A contract is an agreement involving reciprocal obligations between the contracting

17  parties.  A breach of contract therefore occurs when one party fails to fulfill one or more of its

18  obligations even though the other party has complied with its obligations.

19         In order to prevail on its breach-of-contract claim, the Transit Authority has to prove, by

20  a preponderance of the evidence, three elements:

21         First, that Express Scripts breached the parties' contract;

22         Second, that it — that is, the Transit Authority — performed its own obligations under

23         the contract; and

14

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

1      <u>Third</u>, that it was damaged by Express Scripts's breach.

2      In deciding these issues, your job is to interpret the contract to determine what it means

3   and what it obligates the parties to do.  You should interpret the contract holistically — that is, as

4   a whole.  You should not pluck individual parts of the contract out of context; instead, you

5   should understand each part of the contract in reference to the contract as a whole.

6      You should interpret the contract in accordance with what you believe to be the parties'

7   intent.  In doing so, keep in mind the reasonable expectations of the parties, their sophistication

8   and business acumen, and their purposes for entering into the contract.  The best evidence of the

9   parties' intent, however, is what they express in their written contract.

10     To the extent that the document includes a provision that is optional, and one or both

11  parties did not agree to the provision, the provision is not part of the parties' contract or

12  agreement.  The contract encompasses only those provisions to which both parties agreed.

13     When the terms of the contract are clear, you must enforce them according to their plain

14  and ordinary meaning.  You will also come across terms that are ambiguous and unclear.  That

15  means that certain terms in the contract, when read, could have more than one reasonable,

16  objective meaning.  You should interpret those ambiguous terms and ascertain their meaning to

17  the best of your ability, in line with the principles I have outlined.

18  **Adapted from *DeCastro v. Kavadia*, No. 12-CV-1386 (JMF); *N.Y.C. Transit Auth. v. Express***

19  ***Scripts, Inc.*, 588 F. Supp. 3d 424, 434 (S.D.N.Y. 2022); *Degas Sculpture Project Ltd. v. Long*,**

20  **No. 14-CV-4304 (ALC); N.Y. Pattern Jury Instructions Civil 4:1.**

21

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

1   <u>First Element: Breach by the Defendant</u>

2       The first element that the Transit Authority must prove, by a preponderance of the

3   evidence, is that Express Scripts breached the parties' contract — that is, that the contract

4   imposed certain duties on Express Scripts and that Express Scripts did not fulfill those duties.

5       The Transit Authority alleges that Express Scripts breached three provisions of the

6   contract, Sections 4.2, 4.7, and 4.16.  Before I explain those provisions to you, however, let me

7   bring some other relevant provisions to your attention.  And remember, you do not have to

8   memorize any of these provisions; the entire contract is in evidence (as Plaintiff's Exhibits 105

9   and 106 and Defense Exhibit 49) and will be available to you as you deliberate.

10      First, the preamble and Article 1 of the contract define certain terms that are used

11  throughout the contract.  These terms usually appear capitalized.  For example:

12      • "AUTHORITY" is defined to mean the Transit Authority;

13      • "Contractor" is defined to mean Express Scripts;

14      • "Agreement" is defined to mean the contract itself;

15      • "Plan" is defined to mean the prescription drug benefit plan to which employees
16        and retirees of the Transit Authority belong;

17      • "Claim" is defined in relevant part to mean "any written or electronic request for
18        Benefits made by or on behalf of a Participant . . . and submitted to Contractor for
19        adjudication";

20      • "Covered Drugs" is defined in relevant part to mean "any federal or state legend
21        medication that is not excluded from coverage under the Plan . . . .  Exclusions
22        from coverage are as defined in the Plan."; and

23      • "Overpayments" is defined to mean "payments that exceed the amount payable
24        under the Plan and [the] Agreement" and "may occur for reasons including, but
25        not limited to, a Pharmacy billing error, retroactive or inaccurate eligibility
26        information, an error in the administration of coordination of benefits, a Medicare
27        dispute, or missing information."

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

1   Where a term used in the contract is defined, as these are, you must give the term that definition.

2   Where a term used is not defined in the contract, you should, as noted, give the term its plain and

3   ordinary meaning.

4   Second, Section 4.1 of the contract defines the duty of care that Express Scripts owed to

5   the Transit Authority with respect to its obligations under the contract.  In relevant part, it reads:

6       In the exercise of its duties under this Agreement, Contractor shall use that degree
7       of care and reasonable diligence that an experienced and prudent plan
8       administrator of pharmacy benefits under a group health plan familiar with such
9       matters would use acting in like circumstances, and consistent with industry
10      standards.

11  This standard of care applies to the other contract provisions that I will get to in a moment.  In

12  other words, in performing its obligations under these other provisions, Express Scripts was

13  required to use "that degree of care and reasonable diligence that an experienced and prudent

14  plan administrator of pharmacy benefits under a group health plan familiar with such matters

15  would use acting in like circumstances, and consistent with industry standards."  If you find that

16  the Transit Authority established by a preponderance of the evidence that Express Scripts did not

17  abide by this standard of care in carrying out one of its obligations under the contract, you should

18  find that the Transit Authority satisfied its burden to prove the first element of its claim.  If you

19  find that the Transit Authority did not establish that by a preponderance of the evidence (or you

20  find that Express Scripts *did* satisfy that standard of care in carrying out its obligations under the

21  contract), you should find that the Transit Authority failed to prove its claims.

22  That brings me to the three specific provisions that the Transit Authority argues

23  Express Scripts breached.

24  The first is Section 4.2 of the contract.  The relevant portion of this section reads:

25      Contractor shall process Claims incurred during the Term of this Agreement and
26      provide customer service in a prudent and expert manner, including investigating

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

1    and reviewing such Claims to determine what amount, if any, is due and payable
2    according to the terms and conditions of the Plan documents and this Agreement.

3    Remember, in determining whether Express Scripts breached this provision, you should analyze

4    its behavior in line with the standard of care articulated in Section 4.1 of the contract.  It is up to

5    you to decide whether Express Scripts acted "in a prudent and expert manner" in processing

6    claims on behalf of the Transit Authority, which includes whether Express Scripts used "that

7    degree of care and reasonable diligence that an experienced and prudent plan administrator of

8    pharmacy benefits under a group health plan familiar with such matters would use acting in like

9    circumstances, and consistent with industry standards."

10       The second provision that the Transit Authority alleges Express Scripts breached

11   is Section 4.7 of the contract.  The relevant portion of this section reads:

12       With respect to any Overpayment of any Claim made to a Participant, Contractor
13       shall pursue recovery of such Overpayment in accordance with applicable law and
14       industry standards and, upon recovery, repay the amount of such Overpayment to
15       the Plan.  With respect to any Overpayment of any Claim made to a Network
16       Pharmacy, Contractor shall withhold such Overpayment from any subsequent
17       Claim for the Network Pharmacy and, upon recovery shall repay such amount to
18       the Plan.  With respect to any Overpayment of any Claim made to a Pharmacy
19       who is not a Network Pharmacy, Contractor shall use its best efforts to obtain
20       recovery of such Overpayment and, upon recovery, repay the amount of such
21       Overpayment to the Plan.  Notwithstanding the foregoing, Contractor shall be
22       liable for all un-recovered Overpayments due to Contractor's breach of this
23       Agreement (including, without limitation, Contractor's failure to meet the
24       standard of care) . . . .  After termination of this Agreement, Contractor shall
25       continue to identify Overpayments, and pursue recovery on Claims, as required
26       by this section, paid during the Term of this Agreement and the Run-Out Period.

27   I remind you that the capitalized terms ("Overpayment," "Claim," "Participant," and so on) are

28   defined in Article 1 of the contract.  Moreover, in determining whether Express Scripts breached

29   this provision of the contract, you should once again analyze its behavior in line with the

30   standard of care articulated in Section 4.1 that I discussed earlier.

18

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

1    <u>The third</u> and final provision of the contract that the Transit Authority alleges

2    Express Scripts breached is Section 4.16.  It reads in relevant part as follows:

3        Contractor shall maintain a Network of Pharmacies throughout the term of this
4        Agreement adequate to meet the prescription drug and professional pharmacy
5        service needs of Participants.

6        . . . .

7        Contractor shall be solely responsible for the selection, monitoring, and retention
8        of its Network Pharmacies.  Contractor represents and warrants that . . .
9        Contractor has exercised and shall exercise due diligence in the selection and
10       retention of Network Pharmacies.

11   "Represents and warrants" is another way of saying "promises."  Once again, in determining

12   whether Express Scripts breached this provision of the contract, you should analyze its behavior

13   in line with the standard of care articulated in Section 4.1 that I discussed earlier.

14       During trial, you heard a lot of testimony about fraud, waste, and abuse.  I should note

15   that, to prove that Express Scripts breached its obligations under these provisions of the contract,

16   the Transit Authority does not necessarily have to prove that any particular claim processed by

17   Express Scripts was in fact fraudulent, wasteful, or abusive.  Instead, the Transit Authority must

18   prove that Express Scripts failed to fulfil one of its obligations under the contract as I have

19   summarized them.

20   **Adapted from _N.Y.C. Transit Auth. v. Express Scripts, Inc._, 588 F. Supp. 3d 424, 435-39**

21   **(S.D.N.Y. 2022).**

22

23       Second Element: Performance by the Plaintiff

24       The second element that the Transit Authority must prove, by a preponderance of the

25   evidence, is that it performed its own obligations under the parties' contract.  More specifically,

26   if you find that Express Scripts did in fact breach its contract with the Transit Authority, the

1   Transit Authority must then prove, again by a preponderance of the evidence, that it itself was

2   not in material breach of its own obligations under the contract.

3          As you have heard, Express Scripts argues that the Transit Authority breached two

4   provisions of the parties' contract.

5          The first is Section 3.1, which provides, in relevant part, as follows:

6          Unless otherwise specifically provided under the terms of this Agreement, the
7          AUTHORITY retains full and final authority and responsibility for the Plan and
8          its operation.  Contractor is empowered to act on behalf of the AUTHORITY, but
9          only as expressly stated in this Agreement or as mutually agreed upon in writing
10         by the parties.

11         The second is Section 3.6.  It reads in relevant part as follows:

12         The AUTHORITY will, within sixty (60) days of receipt of a Claims listing from
13         Contractor reflecting Claim payments, notify Contractor in writing with
14         appropriate documentation of any disputed Claims . . . .  Notwithstanding the
15         foregoing, the AUTHORITY's failure to dispute any error within the 60-day time
16         period set forth herein shall not be deemed as a waiver of Contractor's obligation
17         to correct such error upon identification at a later date.

18   Although Express Scripts has argued that the Transit Authority breached these provisions of the

19   contract, remember that it is the Transit Authority's burden to prove, by a preponderance of the

20   evidence, that it was not in material breach of its obligations under the contract.

21         Let me explain what I mean by "material" breach.  A plaintiff can sue for any breach,

22   even if minor, provided that the breach causes it measurable injury or damage.  But a plaintiff

23   cannot bring suit if it has committed a "material" or fundamental breach of the contract, unless it

24   was excused from performing its own obligations under the contract.

25         In order for a breach by the Transit Authority itself to qualify as material, such breach

26   must deprive Express Scripts of a benefit that it reasonably expected from the contract.  The

27   breach must go to the essence of the contract.  In deciding whether a breach was material, it is

28   appropriate to ask whether Express Scripts would have agreed to the contract if the breached

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

1   element or clause had been absent.  In analyzing this issue, you should look at all the terms of the

2   contract and all of the evidence regarding the relationship between the parties.

3   **Adapted from _DeCastro v. Kavadia_, No. 12-CV-1386 (JMF).**

4

5           Third Element: Damage Caused by the Breach

6           The third and final element that the Transit Authority must prove, by a preponderance of

7   the evidence, is that it was damaged or harmed by the breach.  That is, if you find that the Transit

8   Authority has proved the first two elements of its breach-of-contract claim, you must then

9   determine whether it has proved, again by a preponderance of the evidence, that Express

10  Scripts's breach of the contract caused the Transit Authority damages.  I will give you further

11  instructions on damages shortly.

12  **Adapted from _DeCastro v. Kavadia_, No. 12-CV-1386 (JMF).**

13

14  Calculating Damages

15          If you conclude that the Transit Authority has met its burden of proving liability — that

16  is, that it has established the elements I just discussed by a preponderance of the evidence —

17  then you must determine the damages, if any, to which it is entitled.  Here too, the Transit

18  Authority bears the burden of proving the amount of damages it is entitled to, and that burden is

19  again by a preponderance of the evidence.  You should not infer that the Transit Authority is

20  entitled to recover damages merely because I am instructing you on how to calculate damages.  It

21  is exclusively your function to decide upon liability, and I am instructing you on damages only

22  so that you will have guidance should you decide that they are warranted.

23          The Transit Authority is seeking what are known as "compensatory damages."

24  Compensatory damages seek to make the plaintiff whole — that is, to compensate it for the

1 injury suffered as a result of the defendant's breach.  Compensatory damages are not intended to

2 punish the defendant and should not provide the plaintiff with more than it would have received

3 had the contract been fully performed.  The damages that you award must be fair and reasonable,

4 neither inadequate nor excessive.  You should not award compensatory damages based on

5 speculation, but only for those injuries that the Transit Authority has proved according to the

6 standards that I described to you.

7      In awarding compensatory damages, if you do decide to award them, you must be guided

8 by dispassionate common sense.  Computing damages may be difficult, but you must not let that

9 difficulty lead you to engage in arbitrary guesswork.  On the other hand, the law does not require

10 that a plaintiff prove the amount of its losses with mathematical precision, but only with as much

11 definiteness and accuracy as the circumstances permit.  Nonetheless, damages must be

12 established with reasonable certainty.  In all instances, you are to use sound discretion in fixing

13 an award of damages, drawing reasonable inferences where you deem appropriate from the facts

14 and circumstances in evidence.

15      In the alternative, the Transit Authority is seeking what are known as "nominal

16 damages."  If you find that Express Scripts breached the parties' contract but that you are unable

17 to compute monetary damages except by engaging in pure speculation and guessing, you should

18 award nominal damages.  You may <u>not</u> award both nominal and compensatory damages to the

19 Transit Authority; either it was measurably injured, in which case you must award compensatory

20 damages, or else it was not, in which case you may award nominal damages.  Nominal damages

21 may not be awarded for more than a token sum, such as $1.

22 **Adapted from *DeCastro v. Kavadia*, No. 12-CV-1386 (JMF); *Rinaldi v. SCA La Goutte,***

23 ***D'Or*, No. 16-CV-1901 (VSB).**

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

1      Mitigation of Damages

2      The law requires a party injured by a breach of contract to make reasonable efforts to

3   reduce or avoid its losses.  If the injured party fails to do so, then it may not recover for any

4   resulting increased loss.  The duty to reduce or avoid damages arises when it is no longer

5   reasonable to believe that the other party will perform the contract.  If the injured party made

6   reasonable efforts to reduce or avoid its losses, it does not matter if, in hindsight, another, better

7   means of limiting the financial injury was possible.  Nor does it matter whether the reasonable

8   conduct was actually successful in reducing or avoiding losses.

9      What does "reasonable" mean in this setting?  Reasonable conduct is to be determined

10   from all the facts and circumstances of the case, and must be judged in the light of one viewing

11   the situation at the time and under the circumstances and contract terms when the problem was

12   presented.

13      If you decide to award damages to the Transit Authority, you must next decide whether

14   the amount of damages you have calculated should be reduced, in whole or in part, because the

15   Transit Authority failed to use reasonable efforts to reduce or avoid its losses.  On this issue —

16   and this issue alone — Express Scripts bears the burden of proof.  That is, Express Scripts has

17   the burden of proving, by a preponderance of the evidence, that the Transit Authority failed to

18   use reasonable efforts to reduce or avoid its losses.

19      Thus, if you find that Express Scripts established, by a preponderance of the evidence,

20   that the Transit Authority failed to use reasonable efforts to reduce or avoid its losses, you must

21   calculate how much the damages sustained by the Transit Authority should be reduced by and

22   reduce them.  But if you find that Express Scripts did not establish, by a preponderance of the

23   evidence, that the Transit Authority failed to use reasonable efforts to reduce or avoid its losses,

24   then you must not reduce the Transit Authority's damages that you calculated earlier.

23

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

1  **Adapted from *DeCastro v. Kavadia*, No. 12-CV-1386 (JMF); *Rinaldi v. SCA La Goutte,***

2  ***D'Or*, No. 16-CV-1901 (VSB).**

3

4         Multiple Claims

5         You should not award damages more than once for the same injury.  The Transit

6  Authority is not entitled to more than one full and fair award of damages for the same injury.  In

7  other words, the Transit Authority is entitled to be compensated only for the injury that it

8  actually suffered — it is entitled only to be made whole, not to recover more than it lost.  Of

9  course, if different injuries are attributed to separate claims, then you must compensate the

10 Transit Authority fully for all of the injuries.  Thus, if you find Express Scripts liable on more

11 than one claim or theory of breach, but the resulting injury was no greater than it would have

12 been had Express Scripts been found liable on only one claim or theory, the award of damages

13 cannot be greater than if Express Scripts had been found liable only with respect to one claim or

14 theory.  On the other hand, if you find Express Scripts liable on more than one claim or theory

15 and there have been established separate injuries resulting from each claim or theory, then the

16 Transit Authority would be entitled to be compensated for each of the separate injuries it

17 suffered.

18 **Adapted from *DeCastro v. Kavadia*, No. 12-CV-1386 (JMF).**

19

20              III. CONCLUDING INSTRUCTIONS

21 Selection of Foreperson

22        In a few minutes, you are going to go into the jury room and begin your deliberations.

23 Your first task will be to select a foreperson.  The foreperson has no greater voice or authority

24

1   than any other juror, but is the person who will communicate with me when questions arise and

2   when you have reached a verdict.  The foreperson is also who will be asked in open court to pass

3   your completed Verdict Form to me.

4

5   Sending Notes

6          You may have questions or comments for me as you deliberate.  If you do, you can

7   communicate with me by sending notes using forms and envelopes that you will be provided for

8   that purpose.  Your notes to me should be signed by the foreperson and should include the date

9   and time they were sent.  They should also be as clear and as precise as possible, as they will

10  become part of the record in this case.  Do not tell me or anyone else how you stand on any issue

11  until after a unanimous verdict is reached.

12

13  Right to See Exhibits and Hear Testimony

14         All of the exhibits will be given to you near the start of deliberations.  Most of it will be

15  provided to you in an electronic format.  When you retire to deliberate, my staff will provide you

16  with instructions on how to access and display evidence in the jury room.  In addition, you will

17  also be provided with a list of all the exhibits that were received into evidence.

18         If you prefer to view any evidence here in the courtroom or if you want any of the

19  testimony submitted to you or read back to you, you may also request that.  Keep in mind that if

20  you ask for testimony, however, the court reporter must search through his or her notes, the

21  parties must agree on what portions of testimony may be called for, and if they disagree I must

22  resolve those disagreements.  That can be a time-consuming process.  So please try to be as

23  specific as you possibly can in requesting portions of the testimony, if you do.

25

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

1    Again, your requests for testimony — in fact, any communication with the Court —

2 should be made to me in writing, signed by your foreperson with the date and time, and given to

3 one of the Court Security Officers.

4

5 Juror Note-Taking

6    If any one of you took notes during the course of the trial, you should not show your

7 notes to, or discuss your notes with, any other jurors during your deliberations.  Any notes you

8 have taken are to be used solely to assist you.  The fact that a particular juror has taken notes

9 entitles that juror's views to no greater weight than those of any other juror.  Finally, your notes

10 are not to substitute for your recollection of the evidence in the case.  If, during your

11 deliberations, you have any doubt as to any of the testimony, you may — as I just told you —

12 request that the official trial transcript that has been made of these proceedings be submitted or

13 read back to you.

14

15 Duty to Deliberate

16    The most important part of this case, members of the jury, is the part that you as jurors

17 are now about to play as you deliberate on the issues of fact.  I know you will try the issues

18 have been presented to you according to the oath that you have taken as jurors.  In that oath, you

19 promised that you would well and truly try the issues joined in this case and a true verdict render.

20    As you deliberate, please listen to the opinions of your fellow jurors, and ask for an

21 opportunity to express your own views.  Every juror should be heard.  No one juror should hold

22 the center stage in the jury room and no one juror should control or monopolize the deliberations.

23 If, after listening to your fellow jurors and if, after stating your own view, you become convinced

24 that your view is wrong, do not hesitate because of stubbornness or pride to change your view.

1  On the other hand, do not surrender your honest convictions and beliefs solely because of the

2  opinions of your fellow jurors or because you are outnumbered.

3          Your verdict must be unanimous.  If at any time you are not in agreement, you are

4  instructed that you are not to reveal the standing of the jurors — that is, the split of the vote — to

5  anyone, including me, at any time during your deliberations.

6

7  <u>Return of the Verdict</u>

8          We have prepared a Verdict Form for you to use in recording your decisions, a copy of

9  which is attached to these instructions.  Do not write on your individual copies of the Verdict

10 Form.  My staff will give the official Verdict Form to Juror Number One, who should give it to

11 the foreperson after the foreperson has been selected.

12         As you will see, the Verdict Form is kind of like those old "choose your own adventure"

13 books.  Depending on your answer to a question or questions, you will be directed to either

14 answer another question or to sign the Verdict Form.  You should draw no inference from the

15 questions on the Verdict Form as to what your verdict should be.  The questions are not to be

16 taken as any indication that I have any opinion as to how they should be answered.

17         When you have completed the Verdict Form, please review your answers to ensure that

18 they accurately reflect your unanimous determinations.  If they do, the foreperson should note

19 the date and time and you should all sign the Verdict Form.  The foreperson should then give a

20 note — **<u>not</u>** the Verdict Form itself — to the Court Security Officer outside your door, stating

21 that you have reached a verdict.  Do not specify what the verdict is in your note.  Instead, the

22 foreperson should retain the Verdict Form and hand it to me in open court when I ask for it.

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

1    I will stress again that **all** of you must be in agreement with the verdict that is announced

2    in court.  Once your verdict is announced in open court and officially recorded, it cannot

3    ordinarily be revoked.

4

5    <u>Closing Comments</u>

6    Finally, I say this, not because I think it is necessary, but because it is the custom in this

7    courthouse to say it: You should treat each other with courtesy and respect during your

8    deliberations.

9    All litigants stand equal in this room.  All litigants stand equal before the bar of justice.

10   All litigants stand equal before you.  Your duty is to decide between these parties fairly and

11   impartially, and to see that justice is done.

12   Under your oath as jurors, you are not to be swayed by sympathy or prejudice.  You

13   should be guided solely by the evidence presented during the trial and the law as I gave it to you,

14   without regard to the consequences of your decision.  You have been chosen to try the issues of

15   fact and to reach a verdict on the basis of the evidence or lack of evidence.  If you let sympathy

16   or prejudice interfere with your clear thinking, there is a risk that you will not arrive at a just

17   verdict.  All parties to a civil lawsuit are entitled to a fair trial.  You must make a fair and

18   impartial decision so that you will arrive at a just verdict.

19   Members of the jury, I ask your patience for a few moments longer.  It is necessary for

20   me to spend a few moments with the lawyers and the court reporter at the side bar.  I will ask you

21   to remain patiently in the jury box, without speaking to each other, and we will return in just a

22   moment to submit the case to you.  Thank you.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X
                                          :

NEW YORK CITY TRANSIT AUTHORITY,         :

                             Plaintiff,      :        19-CV-5196 (JMF)

                                         :

           -v-                      :

                                       :        <u>VERDICT FORM</u>

EXPRESS SCRIPTS, INC.,               :

                                       :

                          Defendant.     :

                                       :
----------------------------------------------------------------X

## PLEASE CIRCLE YOUR ANSWER(S)

### *Your Answer(s) Must Be Unanimous*

1.    Did the Transit Authority prove, by a preponderance of the evidence, that Express Scripts breached Section 4.2 of the contract?

          YES          NO

2.    Did the Transit Authority prove, by a preponderance of the evidence, that Express Scripts breached Section 4.7 of the contract?

          YES          NO

3.    Did the Transit Authority prove, by a preponderance of the evidence, that Express Scripts breached Section 4.16 of the contract?

          YES          NO

**[*If you answer NO to <u>all</u> three of the above questions, skip the remaining questions and proceed directly to sign the Verdict Form.  If you answer YES to <u>any one</u> of the three above questions, proceed to Question 4 on the next page.*]**

4.      Did the Transit Authority prove, by a preponderance of the evidence, that it performed its own obligations under the contract?

      YES          NO

***[If you answer NO to Question 4, skip the remaining questions and proceed directly to sign the Verdict Form.  If you answer YES to Question 4, proceed to Question 5.]***

5.      Did the Transit Authority prove, by a preponderance of the evidence, that it suffered damages as a result of Express Scripts's breach of the contract?

      YES          NO

***[If you answer NO to Question 5, skip the remaining questions and proceed directly to sign the Verdict Form.  If you answer YES to Question 5, proceed to Question 6.]***

6.      What is the amount of damages you award the Transit Authority?

      $_____

7.      Did Express Scripts prove, by a preponderance of the evidence, that the Transit Authority failed to mitigate (that is, use reasonable efforts to reduce or avoid) its damages?

      YES          NO

***[If you answer NO to Question 7, skip the remaining question and proceed directly to sign the Verdict Form.  If you answer YES to Question 7, proceed to Question 8.]***

8.      By what amount should the damages specified in Question 6 be reduced?

      $_____

***Please review your answers to all of the Questions above to ensure that they accurately reflect your unanimous determinations.  When you have done so, sign your names on the next page, fill in the date and time, and inform the Court Security Officer — with a note, <u>not the Verdict Form itself</u> — that you have reached a verdict.***

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Verdict Form

1    After completing the form, each juror who agrees with this verdict must sign below:

2

3

4    _____        _____

5       Foreperson

6

7

8

9    _____        _____

10

11

12

13

14    _____        _____

15

16

17

18

19    _____        _____

20

21

22

23    Date and time:    _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                                                  :
NEW YORK CITY TRANSIT AUTHORITY,                                  :
                                                                  :
                              Plaintiff,                          :        19-CV-5196 (JMF)
                                                                  :
              -v-                                                 :
                                                                  :        VERDICT FORM
EXPRESS SCRIPTS, INC.,                                            :
                                                                  :
                              Defendant.                          :
                                                                  :
------------------------------------------------------------------X


## PLEASE CIRCLE YOUR ANSWER(S)

### *Your Answer(s) Must Be Unanimous*

1.   Did the Transit Authority prove, by a preponderance of the evidence, that Express Scripts
     breached Section 4.2 of the contract with respect to compound drug prescriptions?

           YES          NO

2.   Did the Transit Authority prove, by a preponderance of the evidence, that Express Scripts
     breached Section 4.2 of the contract with respect to non-compound drug prescriptions?

           YES          NO

3.   Did the Transit Authority prove, by a preponderance of the evidence, that Express Scripts
     breached Section 4.7 of the contract with respect to compound drug prescriptions?

           YES          NO

4.   Did the Transit Authority prove, by a preponderance of the evidence, that Express Scripts
     breached Section 4.7 of the contract with respect to non-compound drug prescriptions?

           YES          NO

5.   Did the Transit Authority prove, by a preponderance of the evidence, that Express Scripts
     breached Section 4.16 of the contract?

           YES          NO

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Verdict Form

1    [*If you answer NO to __all__ five of the above questions, skip the remaining questions and*
2    *proceed directly to sign the Verdict Form.  If you answer YES to __any one__ of the five*
3    *above questions, proceed to Question 6.*]
4
5    6.    Did the Transit Authority prove, by a preponderance of the evidence, that it performed its
6          own obligations under the contract?
7
8          YES _____    NO _____
9
10   [*If you answer NO to Question 6, skip the remaining questions and proceed directly to*
11   *sign the Verdict Form.  If you answer YES to Question 6, proceed to Question 7.*]
12
13   7.    Did the Transit Authority prove, by a preponderance of the evidence, that it suffered
14         damages as a result of Express Scripts's breach of the contract?
15
16         YES _____    NO _____
17
18   [*If you answer NO to Question 7, skip the remaining questions and proceed directly to*
19   *sign the Verdict Form.  If you answer YES to Question 7, proceed to Question 8.*]
20
21   8.    What is the amount of damages you award the Transit Authority?
22
23         $_____
24
25   [*If you answered NO to __both__ Question 2 and Question 4, skip Question 9 and proceed*
26   *to Question 10.  If you answered YES to __either or both__ Question 2 and Question 4,*
27   *proceed to Question 9 and then Question 10.*]
28
29   9.    What amount of the damages awarded in Question 8 are attributable to Express Scripts's
30         breach of the contract with respect to non-compound drug prescriptions?
31
32         $_____
33
34   10.   Did Express Scripts prove, by a preponderance of the evidence, that the Transit Authority
35         failed to mitigate (that is, use reasonable efforts to reduce or avoid) its damages with
36         respect to compound drug prescriptions?
37
38         YES _____    NO _____
39
40   [*If you answer NO to Question 10, skip the remaining question and proceed directly to*
41   *sign the Verdict Form.  If you answer YES to Question 10, proceed to Question 11.*]
42

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Verdict Form

11.     By what amount should the damages awarded in Question 8 be reduced based on the
        Transit Authority's failure to mitigate?

            $_____

***Please review your answers to all of the Questions above to ensure that they accurately
reflect your unanimous determinations.  When you have done so, sign your names
below, fill in the date and time, and inform the Court Security Officer — with a note,
<u>not the Verdict Form itself</u> — that you have reached a verdict.***

After completing the form, each juror who agrees with this verdict must sign below:

_____          _____
Foreperson

_____          _____

_____          _____

_____          _____

Date and time:     _____

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                        :

NEW YORK CITY TRANSIT AUTHORITY       :
                                          :

                Plaintiff,          :

                                          :

            -v-                       :               19-CV-5196 (JMF)

EXPRESS SCRIPTS, INC.,                 :

                                          :

                Defendant.       :

                                          :
------------------------------------------------------------------------X

# JURY CHARGE

March 22, 2023

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

# Table of Contents

I. GENERAL INTRODUCTORY CHARGES ........................................................................ 3
    Role of the Court and the Jury ..................................................................................4
    The Parties ...............................................................................................................4
    Conduct of Counsel ................................................................................................4
    Direct and Circumstantial Evidence .......................................................................5
    Limited Purpose Evidence ......................................................................................6
    What Is and What Is Not Evidence .........................................................................6
    Charts and Summaries .............................................................................................8
    Demonstratives .......................................................................................................8
    Credibility of Witnesses ..........................................................................................9
    Prior Inconsistent Statements ...............................................................................10
    Knowledge and Conduct of Corporate Employees ...............................................11
    Expert Witnesses ..................................................................................................11
    All Available Evidence Need Not Be Produced ....................................................12
    Preponderance of the Evidence .............................................................................13
II. SUBSTANTIVE ISSUES ....................................................................................... 14
    Breach of Contract: Elements ...............................................................................14
    First Element: Breach by the Defendant ...............................................................15
    Second Element: Performance by the Plaintiff ......................................................19
    Third Element: Damage Caused by the Breach ......................................................20
    Calculating Damages ............................................................................................21
    Mitigation of Damages .........................................................................................22
    Multiple Claims ....................................................................................................23
III. CONCLUDING INSTRUCTIONS ........................................................................ 23
    Selection of Foreperson .........................................................................................23
    Sending Notes .......................................................................................................24
    Right to See Exhibits and Hear Testimony ...........................................................24
    Juror Note-Taking .................................................................................................25
    Duty to Deliberate ................................................................................................25
    Return of the Verdict ............................................................................................26
    Closing Comments ................................................................................................27

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

# I. GENERAL INTRODUCTORY CHARGES

1

2      Members of the jury, you have now heard all of the evidence in the case, along with the

3  lawyers' closing arguments.  It is my duty at this point to instruct you as to the law.  My

4  instructions to you will be in three parts.

5      First, I will give you general instructions — for example, about your role as the jury,

6  what you can and cannot consider in your deliberations, and the burden of proof.

7      Second, I will describe the law that you must apply to the facts as you find them to be

8  established by the evidence.

9      Finally, I will give you some instructions for your deliberations.

10      I am going to read my instructions to you.  It is not my favorite way to communicate —

11  and not the most scintillating thing to listen to — but there is a need for precision, and it is

12  important that I get the words just right, and so that is why I will be reading.

13      I have given you a copy of my instructions to follow along because they cover many

14  points.  Please limit yourself to following along; that is, do *not* read ahead in the instructions.  If

15  you find it easier to listen and understand while you are following along with me, please do so.

16  If you would prefer, you can just listen and not follow along.  In the unlikely event that I deviate

17  from the written instructions, it is my oral instructions that govern and that you must follow.  But

18  you may take your copy of the instructions with you into the jury room so you can consult it if

19  you want to re-read any portion of the charge to facilitate your deliberations.

20      For now, listen carefully and try to concentrate on the substance of what I'm saying.  You

21  should not single out any instruction as alone stating the law.  Instead, you should consider my

22  instructions as a whole when you retire to deliberate in the jury room.

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

1    Role of the Court and the Jury

2    You, the members of the jury, are the sole and exclusive judges of the facts.  You must

3    weigh and consider the evidence without regard to sympathy, prejudice, or passion for or against

4    any party.  It is your duty to accept my instructions as to the law and to apply them to the facts as

5    you determine them.  If either party has stated a legal principle differently from any that I state to

6    you in my instructions, it is my instructions that you must follow.

7

8    The Parties

9    As you know, the parties in this case are the New York City Transit Authority and

10   Express Scripts, Inc.  In reaching your verdict, you must remember that all parties stand equal

11   before a jury in the courts of the United States.  The fact that the Plaintiff is a public agency and

12   the fact that the Defendant is a company does not mean that either party is entitled to any greater

13   or lesser consideration by you.  All litigants are equal before the law and each party in this case

14   is entitled to the same fair consideration as you would give any other party.

15

16   Conduct of Counsel

17   The personalities and the conduct of counsel are not in any way at issue.  If you formed

18   opinions of any kind about any of the lawyers in the case, favorable or unfavorable, whether you

19   approved or disapproved of their behavior, those opinions should not enter into your

20   deliberations.

21   In addition, remember that it is the duty of a lawyer to object when the other side offers

22   testimony or other evidence that the lawyer believes is not properly admissible.  Therefore, you

23   should draw no inference from the fact that there was an objection to any testimony or evidence.

24   Nor should you draw any inference from the fact that I sustained or overruled an objection.

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

1   Simply because I have permitted certain testimony or evidence to be introduced does not mean

2   that I have decided on its importance or significance.  That is for you to decide.

3

4   <u>Direct and Circumstantial Evidence</u>

5        There are two types of evidence that you may properly use in reaching your verdict.  The

6   first type is direct evidence.  Direct evidence of a fact in issue is presented when a witness

7   testifies to that fact based on what he or she personally saw, heard, or otherwise observed

8   through the five senses.  The second type of evidence is circumstantial evidence.  Circumstantial

9   evidence is evidence that tends to prove a disputed fact indirectly by proof of other facts.

10        There is a simple example of circumstantial evidence that is often used in this courthouse.

11   Assume that when you came into the courthouse this morning, the sun was shining and it was a

12   nice day outside.  Also assume that the courtroom shades were drawn and you could not look

13   outside.  Assume further that as you were sitting here, someone walked in with an umbrella that

14   was dripping wet, and then, a few moments later, somebody else walked in with a raincoat that

15   was also dripping wet.

16        Now, because you could not look outside the courtroom and you could not see whether it

17   was raining, you would have no direct evidence of that fact.  But, on the combination of facts

18   that I have asked you to assume, it would be reasonable and logical for you to conclude that it

19   was raining.

20        That is all there is to circumstantial evidence.  You infer on the basis of your reason,

21   experience, and common sense from one established fact the existence or the nonexistence of

22   some other fact.  The matter of drawing inferences from facts in evidence is not a matter of

23   guesswork or speculation.  An inference is a logical, factual conclusion that you might

5

1   reasonably draw from other facts that have been proved.  It is for you, and you alone, to decide

2   what inferences you will draw.

3          Importantly, circumstantial evidence may be given as much weight as direct evidence.

4   The law makes no distinction between direct and circumstantial evidence.  It asks only that you

5   consider all the evidence presented.

6

7   <u>Limited Purpose Evidence</u>

8          If certain testimony or evidence was admitted or received for a limited purpose, you must

9   follow the limiting instructions I have given.

10

11   <u>What Is and What Is Not Evidence</u>

12          What, then, is the evidence in the case?

13          The evidence in this case is (1) the sworn testimony of the witnesses, (2) the exhibits

14   received into evidence, and (3) any stipulations made by the parties.  Nothing else is evidence.

15          A stipulation is an agreement between parties as to what certain facts were or what the

16   testimony would be if certain people testified before you.  The stipulations are the same for your

17   purposes as the presentation of live testimony.  You should consider the weight to be given such

18   evidence just as you would any other evidence.

19          As I just said, anything other than the sworn testimony of the witnesses, the exhibits

20   received into evidence, and any stipulations made by the parties is not evidence.  For example,

21   the questions posed to a witness are not evidence: It is the witnesses' answers that are evidence,

22   not the questions.  In addition, exhibits marked for identification but not admitted by me are not

23   evidence; nor are materials brought forth only to refresh a witness's recollection.  Moreover,

1   testimony that has been stricken or excluded by me is not evidence and may not be considered by

2   you in rendering your verdict.

3        Along these lines, you will recall that, among the exhibits received in evidence, some

4   documents are redacted.  "Redacted" means that part of the document was taken or blacked out.

5   You are to concern yourself only with the part of the document that has been admitted into

6   evidence.  You should not consider any possible reason why the other part of it has been deleted

7   or blacked out.

8        Arguments by the lawyers are also not evidence.  What you heard during the opening

9   statements and summations is merely intended to help you understand the evidence and reach

10   your verdict.  If your recollection of the facts differs from the lawyers' statements, you should

11   rely on your recollection.  If a lawyer made a statement during his or her opening or summation

12   and you find that there is no evidence to support the statement, you should disregard the

13   statement.

14        Finally, any statements that I may have made during the trial or during these instructions

15   do not constitute evidence.  At times, I may have admonished a witness or directed a witness to

16   be responsive to questions or to keep his or her voice up.  At times, I may have asked a question

17   myself.  Any questions that I asked, or instructions that I gave, were intended only to clarify the

18   presentation of evidence and to bring out something that I thought might be unclear.  You should

19   draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any

20   witness or any party in the case, by reason of any comment, question, or instruction of mine.

21   The rulings I have made during the trial and these instructions are no indication of my views as

22   to what your decision should be.  Nor should you infer that I have any views as to the credibility

1   of any witness, as to the weight of the evidence, or as to how you should decide any issue that is

2   before you.  That is entirely your role.

3

4   <u>Charts and Summaries</u>

5        The exhibits include certain charts and summaries.  As I mentioned to you during trial, I

6   admitted these charts and summaries in place of, or in addition to, the underlying testimony or

7   documents that they purport to represent, in order to save time and avoid unnecessary

8   inconvenience.  They are no better than the testimony or the documents upon which they are

9   based.  Therefore, you are to give no greater consideration to these charts or summaries than you

10   would give to the evidence upon which they are based.  It is for you to decide whether they

11   correctly present the information contained in the testimony and in the exhibits on which they

12   were based.

13

14   <u>Demonstratives</u>

15        During trial, the parties showed you what are called "demonstratives" — illustrations or

16   reproductions of what the parties consider relevant information in this case.  The demonstratives

17   are not evidence.  Instead, they were shown to you in order to make other evidence more

18   meaningful and to aid you in considering the evidence.  They are no better than the evidence

19   upon which they are based.  Therefore, you are to give no greater consideration to these

20   demonstratives than you would give to the evidence upon which they are based.

21        It is for you to decide whether the demonstratives correctly present the information

22   contained in the exhibits on which they were based.  You may consider the demonstratives if you

23   find that they are of assistance to you in analyzing and understanding the evidence.

24

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

1   <u>Credibility of Witnesses</u>

2   How do you evaluate the credibility or believability of the witnesses?  The answer is that

3   you use your common sense.  There is no magic formula by which you can evaluate testimony.

4   You may use the same tests here that you use in your everyday life when evaluating statements

5   made by others to you.  You may ask yourselves: Did the witness impress you as open, honest,

6   and candid?  How responsive was the witness to the questions asked on direct examination and

7   on cross-examination?

8   If you find that a witness intentionally told a falsehood, that is always a matter of

9   importance you should weigh carefully.  On the other hand, a witness may be inaccurate,

10  contradictory, or even untruthful in some respects and entirely believable and truthful in other

11  respects.  It is for you to determine whether such inconsistencies are significant or

12  inconsequential, and whether to accept or reject all of the testimony of any witness, or to accept

13  or reject only portions.

14  You are not required to accept testimony even though the testimony is uncontradicted and

15  the witness's testimony is not challenged.  You may reject it because of the witness's bearing or

16  demeanor, or because of the inherent improbability of the testimony, or for other reasons

17  sufficient for you to conclude that the testimony is not worthy of belief.

18  In evaluating the credibility of the witnesses, you should take into account any evidence

19  that a witness may benefit in some way from the outcome of the case.  Such an interest in the

20  outcome creates a motive to testify falsely and may sway a witness to testify in a way that

21  advances his or her own interests.  Therefore, if you find that any witness whose testimony you

22  are considering may have an interest in the outcome of this trial, you should bear that factor in

23  mind when evaluating the credibility of his or her testimony, and decide whether to accept it with

24  great care.

1      Keep in mind, though, that it does not automatically follow that testimony given by an

2  interested witness is to be disbelieved.  There are many people who, no matter what their interest

3  in the outcome of the case may be, would not testify falsely.  It is for you to decide, based on

4  your own perceptions and common sense, to what extent, if at all, the witness's interest has

5  affected his or her testimony.

6

7  <u>Prior Inconsistent Statements</u>

8      You have heard evidence that, at some earlier time, a witness may have said something

9  that one or the other party argued was inconsistent with the witness's testimony at trial.

10      As I explained to you, such prior statements were presented to you not because they

11  themselves are evidence, but rather for the purpose of helping you decide whether to believe the

12  witness's trial testimony.  If you find that a witness made an earlier statement that conflicts with

13  the witness's trial testimony, you may consider that fact in deciding how much of the witness's

14  trial testimony, if any, to believe.

15      In making this determination, you may consider whether the witness purposely made a

16  false statement or whether it was an innocent mistake; whether the inconsistency concerns an

17  important fact or whether it had to do with a small detail; and whether the witness had an

18  explanation for the inconsistency and, if so, whether that explanation appealed to your common

19  sense.

20      It is exclusively your duty, based upon all the evidence and your own good judgment, to

21  determine whether the prior statement was inconsistent and, if so, how much weight, if any, to

22  give to the inconsistent statement in determining whether to believe all, or part of, the witness's

23  trial testimony.

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

1   Knowledge and Conduct of Corporate Employees

2        A company can act only through its employees.  Consequently, when you are considering

3   the substantive rules of law about which I will instruct you, you should understand that a

4   company is generally responsible for the conduct and knowledge of its employees who are acting

5   in the course of, and within the scope of, their duties as employees for the company.

6        More specifically, a company can "know" things only through its employees.  As a

7   general matter, the knowledge of an individual employee is "imputed" or attributed to his or her

8   employer if the employee acquired the knowledge when he or she was acting within the scope of

9   his or her employment and authority.  That is true even if the employee did not formally

10  communicate the information to his or her employer.

11       An employee is acting within the scope of his or her employment and authority if (1) he

12  or she is engaged in the transaction of business that has been assigned to him or her by his or her

13  employer or (2) he or she is doing anything that may reasonably be said to have been

14  contemplated as part of his or her employment.  It is not necessary that an act or failure to act

15  was expressly authorized by the employer.

16

17  Expert Witnesses

18       During the trial, you heard testimony from an expert witness, Dr. Susan Hayes.  As I told

19  you, an expert witness is someone who, by education or experience, has acquired learning or

20  experience in a specialized area of knowledge.  Such a witness is permitted to express her

21  opinions on matters about which she has specialized knowledge and training.  A party may

22  present expert testimony to you on the theory that someone who is experienced in the field can

23  assist you in understanding the evidence or in reaching an independent decision on the facts.

1    The opinions stated by Dr. Hayes were based on particular facts as she herself observed

2    them and testified to them before you, or as she was told by somebody else or as appeared to her

3    from some record or other material.  You may reject an expert witness's opinion if you find,

4    from the evidence in this case, that the underlying facts are different from those that formed the

5    basis of the expert's opinion.  You may also reject an expert's opinion if, after careful

6    consideration of all the evidence in the case, including expert and other testimony, you disagree

7    with that opinion.  In other words, you are not required to accept an expert's opinion to the

8    exclusion of the facts and circumstances disclosed by other evidence.  Such an opinion is subject

9    to the same rules concerning reliability as the testimony of any other witness, and it is allowed

10   only to aid you in reaching a proper conclusion.

11   In weighing an expert's opinion, you may consider the expert's qualifications, education,

12   and reasons for testifying, as well as all of the other considerations that ordinarily apply,

13   including all the other evidence in the case.  You may give expert testimony whatever weight, if

14   any, you find it deserves in light of all the evidence in this case.  You should not, however,

15   accept a witness's testimony merely because she qualifies as an expert.  Nor should you

16   substitute an expert's opinion for your own reason, judgment, and common sense.  The

17   determination of the facts in this case rests solely with you.

18

19   <u>All Available Evidence Need Not Be Produced</u>

20   The law does not require any party to call as witnesses — whether fact or expert

21   witnesses — all persons who may have been present at any time or place involved in the case or

22   who may appear to have some knowledge of the matters at issue in this trial.  Nor does the law

23   require any party to produce as exhibits all papers and things mentioned in the evidence in the

24   case.

1    You are not to rest your decision on what some absent witness who was not brought in

2    might or might not have testified to.  Each party had an equal opportunity, or lack of opportunity,

3    to call any of these witnesses.  Therefore, you should not draw any inferences or reach any

4    conclusions as to what an absent witness would have testified to had they been called.  Their

5    absence should not affect your judgment in any way.

6

7    <u>Preponderance of the Evidence</u>

8    Before I instruct you on the issues you must decide, I want to define for you the standard

9    under which you will decide whether a party has met its burden of proof on a particular issue.

10   The standard that applies in this case is the preponderance of the evidence.  As I told you at the

11   beginning of the trial, proof beyond a reasonable doubt, which is the proper standard of proof in

12   a criminal trial, does not apply to a civil case such as this and you should put it out of your mind.

13   To establish something by a preponderance of the evidence means that the evidence of

14   the party that has the burden of proof must be more convincing and persuasive to you than that

15   opposed to it.  The difference in persuasiveness need not be great: So long as you find that the

16   scales tip, however slightly, in favor of the party with the burden of proof — that what the party

17   claims is more likely true than not — then that element will have been proved by a

18   preponderance of the evidence.  And here it is important for you to realize that this refers to the

19   quality of the evidence and not to the number of witnesses, the number or variety of the exhibits,

20   or the length of time spent on a subject.  In determining whether any fact has been proved by a

21   preponderance of the evidence, you may consider all of the exhibits and the testimony of all of

22   the witnesses.

23

## II. SUBSTANTIVE ISSUES

That completes your general instructions.  Let me turn, then, to the law that applies to the issues in this case.  As you are aware, this case arises from, and relates to, a contract between the New York City Transit Authority (which I will refer to as the "Transit Authority") and Express Scripts, pursuant to which Express Scripts served as the Transit Authority's pharmacy benefits manager (or "PBM") from 2016 to 2019.  I will discuss the contract in more detail soon, but the entirety of the contract is in evidence (as Defense Exhibit 49) for you to examine during your deliberations.  The Transit Authority claims that Express Scripts breached the contract by failing to investigate, inform the Transit Authority of, and prevent fraud, waste, and abuse related to compound drug prescriptions.  Express Scripts denies the Transit Authority's claims.

At the beginning of the case, I told you that the Transit Authority also claimed that Express Scripts breached the parties' contract by processing certain non-compound prescription drug claims not covered by the Transit Authority's benefit plan.  You will not be asked to deliberate on that claim.  You should not speculate as to why.  The bottom line is that that claim is no longer part of the case and should not factor into your deliberations at all.

Breach of Contract: Elements

A contract is an agreement involving reciprocal obligations between the contracting parties.  A breach of contract therefore occurs when one party fails to fulfill one or more of its obligations even though the other party has complied with its obligations.

In order to prevail on its breach-of-contract claim, the Transit Authority has to prove, by a preponderance of the evidence, three elements:

First, that Express Scripts breached the parties' contract;

14

1    <u>Second</u>, that it — that is, the Transit Authority — performed its own obligations under

2    the contract; and

3    <u>Third</u>, that it was damaged by Express Scripts's breach.

4    In deciding these issues, your job is to interpret the contract to determine what it means

5    and what it obligates the parties to do.  You should interpret the contract holistically — that is, as

6    a whole.  You should not pluck individual parts of the contract out of context; instead, you

7    should understand each part of the contract in reference to the contract as a whole.

8    You should interpret the contract in accordance with what you believe to be the parties'

9    intent.  In doing so, keep in mind the reasonable expectations of the parties, their sophistication

10   and business acumen, and their purposes for entering into the contract.  The best evidence of the

11   parties' intent, however, is what they express in their written contract.

12   To the extent that the document includes a provision that is optional, and one or both

13   parties did not agree to the provision, the provision is not part of the parties' contract or

14   agreement.  The contract encompasses only those provisions to which both parties agreed.

15   When the terms of the contract are clear, you must enforce them according to their plain

16   and ordinary meaning.  You will also come across terms that are ambiguous and unclear.  That

17   means that certain terms in the contract, when read, could have more than one reasonable,

18   objective meaning.  You should interpret those ambiguous terms and ascertain their meaning to

19   the best of your ability, in line with the principles I have outlined.

20

21   <u>First Element: Breach by the Defendant</u>

22   The first element that the Transit Authority must prove, by a preponderance of the

23   evidence, is that Express Scripts breached the parties' contract — that is, that the contract

24   imposed certain duties on Express Scripts and that Express Scripts did not fulfill those duties.

1    The Transit Authority alleges that Express Scripts breached three provisions of the

2    contract, Sections 4.2, 4.7, and 4.16.  Before I explain those provisions to you, however, let me

3    bring some other relevant provisions to your attention.  And remember, you do not have to

4    memorize any of these provisions; the entire contract is in evidence (as Defense Exhibit 49) and

5    will be available to you as you deliberate.

6        First, the preamble and Article 1 of the contract define certain terms that are used

7    throughout the contract.  These terms usually appear capitalized.  For example:

8        • "AUTHORITY" is defined to mean the Transit Authority;

9        • "Contractor" is defined to mean Express Scripts;

10       • "Agreement" is defined to mean the contract itself;

11       • "Plan" is defined to mean the prescription drug benefit plan to which employees
12         and retirees of the Transit Authority belong;

13       • "Claim" is defined in relevant part to mean "any written or electronic request for
14         Benefits made by or on behalf of a Participant . . . and submitted to Contractor for
15         adjudication";

16       • "Covered Drugs" is defined in relevant part to mean "any federal or state legend
17         medication that is not excluded from coverage under the Plan . . . .  Exclusions
18         from coverage are as defined in the Plan."; and

19       • "Overpayments" is defined to mean "payments that exceed the amount payable
20         under the Plan and [the] Agreement" and "may occur for reasons including, but
21         not limited to, a Pharmacy billing error, retroactive or inaccurate eligibility
22         information, an error in the administration of coordination of benefits, a Medicare
23         dispute, or missing information."

24       • "Participant" is defined to mean "an Employee or Retiree who elects to participate
25         in the . . . Plan administered by Contractor" and includes "a Dependent who
26         participates in the Plan because of his or her relationship to a Participant."

27   Where a term used in the contract is defined, as these are, you must give the term that definition.

28   Where a term used is not defined in the contract, you should, as noted, give the term its plain and

29   ordinary meaning.

1    Second, Section 4.1 of the contract defines the duty of care that Express Scripts owed to

2    the Transit Authority with respect to its obligations under the contract.  In relevant part, it reads:

3        In the exercise of its duties under this Agreement, Contractor shall use that degree
4        of care and reasonable diligence that an experienced and prudent plan
5        administrator of pharmacy benefits under a group health plan familiar with such
6        matters would use acting in like circumstances, and consistent with industry
7        standards.

8    This standard of care applies to the other contract provisions that I will get to in a moment.  In

9    other words, in performing its obligations under these other provisions, Express Scripts was

10   required to use "that degree of care and reasonable diligence that an experienced and prudent

11   plan administrator of pharmacy benefits under a group health plan familiar with such matters

12   would use acting in like circumstances, and consistent with industry standards."  If you find that

13   the Transit Authority established by a preponderance of the evidence that Express Scripts did not

14   abide by this standard of care in carrying out one of its obligations under the contract, you should

15   find that the Transit Authority satisfied its burden to prove the first element of its claim.  If you

16   find that the Transit Authority did not establish that by a preponderance of the evidence (or you

17   find that Express Scripts *did* satisfy that standard of care in carrying out its obligations under the

18   contract), you should find that the Transit Authority failed to prove its claims.

19   That brings me to the three specific provisions that the Transit Authority argues

20   Express Scripts breached.

21   The first is Section 4.2 of the contract.  The relevant portion of this section reads:

22       Contractor shall process Claims incurred during the Term of this Agreement and
23       provide customer service in a prudent and expert manner, including investigating
24       and reviewing such Claims to determine what amount, if any, is due and payable
25       according to the terms and conditions of the Plan documents and this Agreement.

26   Remember, in determining whether Express Scripts breached this provision, you should analyze

27   its behavior in line with the standard of care articulated in Section 4.1 of the contract.  It is up to

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

1   you to decide whether Express Scripts acted "in a prudent and expert manner" in processing

2   claims on behalf of the Transit Authority, which includes whether Express Scripts used "that

3   degree of care and reasonable diligence that an experienced and prudent plan administrator of

4   pharmacy benefits under a group health plan familiar with such matters would use acting in like

5   circumstances, and consistent with industry standards."

6       The second provision that the Transit Authority alleges Express Scripts breached

7   is Section 4.7 of the contract.  The relevant portion of this section reads:

8       With respect to any Overpayment of any Claim made to a Network Pharmacy,
9       Contractor shall withhold such Overpayment from any subsequent Claim for the
10      Network Pharmacy and, upon recovery shall repay such amount to the Plan.  With
11      respect to any Overpayment of any Claim made to a Pharmacy who is not a
12      Network Pharmacy, Contractor shall use its best efforts to obtain recovery of such
13      Overpayment and, upon recovery, repay the amount of such Overpayment to the
14      Plan.  Notwithstanding the foregoing, Contractor shall be liable for all un-
15      recovered Overpayments due to Contractor's breach of this Agreement (including,
16      without limitation, Contractor's failure to meet the standard of care), negligence,
17      willful malfeasance, or violation of applicable law.  After termination of this
18      Agreement, Contractor shall continue to identify Overpayments, and pursue
19      recovery on Claims, as required by this section, paid during the Term of this
20      Agreement and the Run-Out Period.

21   I remind you that the capitalized terms ("Overpayment," "Claim," "Participant," and so on) are

22   defined in Article 1 of the contract.  Moreover, in determining whether Express Scripts breached

23   this provision of the contract, you should once again analyze its behavior in line with the

24   standard of care articulated in Section 4.1 that I discussed earlier.

25       The third and final provision of the contract that the Transit Authority alleges

26   Express Scripts breached is Section 4.16.  It reads in relevant part as follows:

27      Contractor shall maintain a Network of Pharmacies throughout the term of this
28      Agreement adequate to meet the prescription drug and professional pharmacy
29      service needs of Participants.

30       . . . .

18

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

1       Contractor shall be solely responsible for the selection, monitoring, and retention
2       of its Network Pharmacies.  Contractor represents and warrants that . . .
3       Contractor has exercised and shall exercise due diligence in the selection and
4       retention of Network Pharmacies.

5       "Represents and warrants" is another way of saying "promises."  Once again, in determining

6       whether Express Scripts breached this provision of the contract, you should analyze its behavior

7       in line with the standard of care articulated in Section 4.1 that I discussed earlier.

8       During trial, you heard testimony about fraud, waste, and abuse.  I should note that, to

9       prove that Express Scripts breached its obligations under these provisions of the contract, the

10      Transit Authority does not necessarily have to prove that any particular claim processed by

11      Express Scripts was in fact fraudulent, wasteful, or abusive.  Instead, the Transit Authority must

12      prove that Express Scripts failed to fulfil one of its obligations under the contract as I have

13      summarized them.

14

15      <u>Second Element: Performance by the Plaintiff</u>

16      The second element that the Transit Authority must prove, by a preponderance of the

17      evidence, is that it performed its own obligations under the parties' contract.  More specifically,

18      if you find that Express Scripts did in fact breach its contract with the Transit Authority, the

19      Transit Authority must then prove, again by a preponderance of the evidence, that it itself was

20      not in material breach of its own obligations under the contract.

21      As you have heard, Express Scripts argues that the Transit Authority breached Section

22      3.6 of the parties' contract.  It reads in relevant part as follows:

23      The AUTHORITY will, within sixty (60) days of receipt of a Claims listing from
24      Contractor reflecting Claim payments, notify Contractor in writing with
25      appropriate documentation of any disputed Claims . . . .  Notwithstanding the
26      foregoing, the AUTHORITY's failure to dispute any error within the 60-day time
27      period set forth herein shall not be deemed as a waiver of Contractor's obligation
28      to correct such error upon identification at a later date.

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

1   Although Express Scripts has argued that the Transit Authority breached this provision of the

2   contract, remember that it is the Transit Authority's burden to prove, by a preponderance of the

3   evidence, that it was not in material breach of its obligations under the contract.

4        Let me explain what I mean by "material" breach.  A plaintiff can sue for any breach,

5   even if minor, provided that the breach causes it measurable injury or damage.  But a plaintiff

6   cannot bring suit if it has committed a "material" or fundamental breach of the contract, unless it

7   was excused from performing its own obligations under the contract.

8        In order for a breach by the Transit Authority itself to qualify as material, such breach

9   must deprive Express Scripts of a benefit that it reasonably expected from the contract.  The

10   breach must go to the essence of the contract.  In deciding whether a breach was material, it is

11   appropriate to ask whether Express Scripts would have agreed to the contract if the breached

12   element or clause had been absent.  In analyzing this issue, you should look at all the terms of the

13   contract and all of the evidence regarding the relationship between the parties.

14

15        <u>Third Element: Damage Caused by the Breach</u>

16        The third and final element that the Transit Authority must prove, by a preponderance of

17   the evidence, is that it was damaged or harmed by the breach.  That is, if you find that the Transit

18   Authority has proved the first two elements of its breach-of-contract claim, you must then

19   determine whether it has proved, again by a preponderance of the evidence, that Express

20   Scripts's breach of the contract caused the Transit Authority damages.  I will give you further

21   instructions on damages shortly.

22

20

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

1    Calculating Damages

2          If you conclude that the Transit Authority has met its burden of proving liability — that

3    is, that it has established the elements I just discussed by a preponderance of the evidence —

4    then you must determine the damages, if any, to which it is entitled.  Here too, the Transit

5    Authority bears the burden of proving the amount of damages it is entitled to, and that burden is

6    again by a preponderance of the evidence.  You should not infer that the Transit Authority is

7    entitled to recover damages merely because I am instructing you on how to calculate damages.  It

8    is exclusively your function to decide upon liability, and I am instructing you on damages only

9    so that you will have guidance should you decide that they are warranted.

10          The Transit Authority is seeking what are known as "compensatory damages."

11   Compensatory damages seek to make the plaintiff whole — that is, to compensate it for the

12   injury suffered as a result of the defendant's breach.  Compensatory damages are not intended to

13   punish the defendant and should not provide the plaintiff with more than it would have received

14   had the contract been fully performed.  The damages that you award must be fair and reasonable,

15   neither inadequate nor excessive.  You should not award compensatory damages based on

16   speculation, but only for those injuries that the Transit Authority has proved according to the

17   standards that I described to you.

18          In awarding compensatory damages, if you do decide to award them, you must be guided

19   by dispassionate common sense.  Computing damages may be difficult, but you must not let that

20   difficulty lead you to engage in arbitrary guesswork.  On the other hand, the law does not require

21   that a plaintiff prove the amount of its losses with mathematical precision, but only with as much

22   definiteness and accuracy as the circumstances permit.  Nonetheless, damages must be

23   established with reasonable certainty.  In all instances, you are to use sound discretion in fixing

1   an award of damages, drawing reasonable inferences where you deem appropriate from the facts

2   and circumstances in evidence.

3

4      <u>Mitigation of Damages</u>

5        The law requires a party injured by a breach of contract to make reasonable efforts to

6   reduce or avoid its losses.  If the injured party fails to do so, then it may not recover for any

7   resulting increased loss.  The duty to reduce or avoid damages arises when it is no longer

8   reasonable to believe that the other party will perform the contract.  If the injured party made

9   reasonable efforts to reduce or avoid its losses, it does not matter if, in hindsight, another, better

10   means of limiting the financial injury was possible.  Nor does it matter whether the reasonable

11   conduct was actually successful in reducing or avoiding losses.

12        What does "reasonable" mean in this setting?  Reasonable conduct is to be determined

13   from all the facts and circumstances of the case, and must be judged in the light of one viewing

14   the situation at the time and under the circumstances and contract terms when the problem was

15   presented.

16        If you decide to award damages to the Transit Authority, you must next decide whether

17   the amount of damages you have calculated should be reduced, in whole or in part, because the

18   Transit Authority failed to use reasonable efforts to reduce or avoid its losses.  On this issue —

19   and this issue alone — Express Scripts bears the burden of proof.  That is, Express Scripts has

20   the burden of proving, by a preponderance of the evidence, that the Transit Authority failed to

21   use reasonable efforts to reduce or avoid its losses.

22        Thus, if you find that Express Scripts established, by a preponderance of the evidence,

23   that the Transit Authority failed to use reasonable efforts to reduce or avoid its losses, you must

24   calculate how much the damages sustained by the Transit Authority should be reduced by and

1     reduce them.  But if you find that Express Scripts did not establish, by a preponderance of the

2     evidence, that the Transit Authority failed to use reasonable efforts to reduce or avoid its losses,

3     then you must not reduce the Transit Authority's damages that you calculated earlier.

4

5     <u>Multiple Claims</u>

6           You should not award damages more than once for the same injury.  The Transit

7     Authority is not entitled to more than one full and fair award of damages for the same injury.  In

8     other words, the Transit Authority is entitled to be compensated only for the injury that it

9     actually suffered — it is entitled only to be made whole, not to recover more than it lost.  Of

10     course, if different injuries are attributed to separate claims, then you must compensate the

11     Transit Authority fully for all of the injuries.  Thus, if you find Express Scripts liable on more

12     than one claim or theory of breach, but the resulting injury was no greater than it would have

13     been had Express Scripts been found liable on only one claim or theory, the award of damages

14     cannot be greater than if Express Scripts had been found liable only with respect to one claim or

15     theory.  On the other hand, if you find Express Scripts liable on more than one claim or theory

16     and there have been established separate injuries resulting from each claim or theory, then the

17     Transit Authority would be entitled to be compensated for each of the separate injuries it

18     suffered.

19

20     <b>III. CONCLUDING INSTRUCTIONS</b>

21     <u>Selection of Foreperson</u>

22           In a few minutes, you are going to go into the jury room and begin your deliberations.

23     Your first task will be to select a foreperson.  The foreperson has no greater voice or authority

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

1   than any other juror, but is the person who will communicate with me when questions arise and

2   when you have reached a verdict.  The foreperson is also who will be asked in open court to pass

3   your completed Verdict Form to me.

4

5   Sending Notes

6           You may have questions or comments for me as you deliberate.  If you do, you can

7   communicate with me by sending notes using forms and envelopes that you will be provided for

8   that purpose.  Your notes to me should be signed by the foreperson and should include the date

9   and time they were sent.  They should also be as clear and as precise as possible, as they will

10  become part of the record in this case.  Do not tell me or anyone else how you stand on any issue

11  until after a unanimous verdict is reached.

12

13  Right to See Exhibits and Hear Testimony

14          All of the exhibits will be given to you near the start of deliberations.  Most of it will be

15  provided to you in an electronic format.  When you retire to deliberate, my staff will provide you

16  with instructions on how to access and display evidence in the jury room.  In addition, you will

17  also be provided with a list of all the exhibits that were received into evidence.

18          If you prefer to view any evidence here in the courtroom or if you want any of the

19  testimony submitted to you or read back to you, you may also request that.  Keep in mind that if

20  you ask for testimony, however, the court reporter must search through his or her notes, the

21  parties must agree on what portions of testimony may be called for, and if they disagree I must

22  resolve those disagreements.  That can be a time-consuming process.  So please try to be as

23  specific as you possibly can in requesting portions of the testimony, if you do.

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

1      Again, your requests for testimony — in fact, any communication with the Court —

2  should be made to me in writing, signed by your foreperson with the date and time, and given to

3  one of the Court Security Officers.

4

## Juror Note-Taking

6      If any one of you took notes during the course of the trial, you should not show your

7  notes to, or discuss your notes with, any other jurors during your deliberations.  Any notes you

8  have taken are to be used solely to assist you.  The fact that a particular juror has taken notes

9  entitles that juror's views to no greater weight than those of any other juror.  Finally, your notes

10  are not to substitute for your recollection of the evidence in the case.  If, during your

11  deliberations, you have any doubt as to any of the testimony, you may — as I just told you —

12  request that the official trial transcript that has been made of these proceedings be submitted or

13  read back to you.

14

## Duty to Deliberate

16      The most important part of this case, members of the jury, is the part that you as jurors

17  are now about to play as you deliberate on the issues of fact.  I know you will try the issues that

18  have been presented to you according to the oath that you have taken as jurors.  In that oath, you

19  promised that you would well and truly try the issues joined in this case and a true verdict render.

20      As you deliberate, please listen to the opinions of your fellow jurors, and ask for an

21  opportunity to express your own views.  Every juror should be heard.  No one juror should hold

22  the center stage in the jury room and no one juror should control or monopolize the deliberations.

23  If, after listening to your fellow jurors and if, after stating your own view, you become convinced

24  that your view is wrong, do not hesitate because of stubbornness or pride to change your view.

25

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

1   On the other hand, do not surrender your honest convictions and beliefs solely because of the

2   opinions of your fellow jurors or because you are outnumbered.

3         Your verdict must be unanimous.  If at any time you are not in agreement, you are

4   instructed that you are not to reveal the standing of the jurors — that is, the split of the vote — to

5   anyone, including me, at any time during your deliberations.

6

7   <u>Return of the Verdict</u>

8         We have prepared a Verdict Form for you to use in recording your decisions, a copy of

9   which is attached to these instructions.  Do not write on your individual copies of the Verdict

10  Form.  My staff will give the official Verdict Form to Juror Number One, who should give it to

11  the foreperson after the foreperson has been selected.

12        As you will see, the Verdict Form is kind of like those old "choose your own adventure"

13  books.  Depending on your answer to a question or questions, you will be directed to either

14  answer another question or to sign the Verdict Form.  You should draw no inference from the

15  questions on the Verdict Form as to what your verdict should be.  The questions are not to be

16  taken as any indication that I have any opinion as to how they should be answered.

17        When you have completed the Verdict Form, please review your answers to ensure that

18  they accurately reflect your unanimous determinations.  If they do, the foreperson should note

19  the date and time and you should all sign the Verdict Form.  The foreperson should then give a

20  note — **<u>not</u>** the Verdict Form itself — to the Court Security Officer outside your door, stating

21  that you have reached a verdict.  Do not specify what the verdict is in your note.  Instead, the

22  foreperson should retain the Verdict Form and hand it to me in open court when I ask for it.

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Jury Charge

1    I will stress again that **all** of you must be in agreement with the verdict that is announced

2    in court.  Once your verdict is announced in open court and officially recorded, it cannot

3    ordinarily be revoked.

4

5    <u>Closing Comments</u>

6        Finally, I say this, not because I think it is necessary, but because it is the custom in this

7    courthouse to say it: You should treat each other with courtesy and respect during your

8    deliberations.

9        All litigants stand equal in this room.  All litigants stand equal before the bar of justice.

10   All litigants stand equal before you.  Your duty is to decide between these parties fairly and

11   impartially, and to see that justice is done.

12       Under your oath as jurors, you are not to be swayed by sympathy or prejudice.  You

13   should be guided solely by the evidence presented during the trial and the law as I gave it to you,

14   without regard to the consequences of your decision.  You have been chosen to try the issues of

15   fact and to reach a verdict on the basis of the evidence or lack of evidence.  If you let sympathy

16   or prejudice interfere with your clear thinking, there is a risk that you will not arrive at a just

17   verdict.  All parties to a civil lawsuit are entitled to a fair trial.  You must make a fair and

18   impartial decision so that you will arrive at a just verdict.

19       Members of the jury, I ask your patience for a few moments longer.  It is necessary for

20   me to spend a few moments with the lawyers and the court reporter at the side bar.  I will ask you

21   to remain patiently in the jury box, without speaking to each other, and we will return in just a

22   moment to submit the case to you.  Thank you.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                      :

NEW YORK CITY TRANSIT AUTHORITY,           :
                                                      :

                       Plaintiff,                 :               19-CV-5196 (JMF)
                                                      :

             -v-                                 :
                                                      :               <u>VERDICT FORM</u>

EXPRESS SCRIPTS, INC.,                         :
                                                      :

                       Defendant.             :
                                                      :
------------------------------------------------------------------------X

## PLEASE CIRCLE YOUR ANSWER(S)

### *Your Answer(s) Must Be Unanimous*

1.       Did the Transit Authority prove, by a preponderance of the evidence, that Express Scripts breached Section 4.2 of the contract?

           YES             NO

2.       Did the Transit Authority prove, by a preponderance of the evidence, that Express Scripts breached Section 4.7 of the contract?

           YES             NO

3.       Did the Transit Authority prove, by a preponderance of the evidence, that Express Scripts breached Section 4.16 of the contract?

           YES             NO

[***If you answer NO to <u>all</u> three of the above questions, skip the remaining questions and proceed directly to sign the Verdict Form.  If you answer YES to <u>any one</u> of the three above questions, proceed to Question 4 on the next page.***]

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Verdict Form

4.      Did the Transit Authority prove, by a preponderance of the evidence, that it performed its own obligations under the contract?

           YES           NO

***[If you answer NO to Question 4, skip the remaining questions and proceed directly to sign the Verdict Form.  If you answer YES to Question 4, proceed to Question 5.]***

5.      Did the Transit Authority prove, by a preponderance of the evidence, that it suffered damages as a result of Express Scripts's breach of the contract?

           YES           NO

***[If you answer NO to Question 5, skip the remaining questions and proceed directly to sign the Verdict Form.  If you answer YES to Question 5, proceed to Question 6.]***

6.      What is the amount of damages you award the Transit Authority?

           $_____

7.      Did Express Scripts prove, by a preponderance of the evidence, that the Transit Authority failed to mitigate (that is, use reasonable efforts to reduce or avoid) its damages?

           YES           NO

***[If you answer NO to Question 7, skip the remaining question and proceed directly to sign the Verdict Form.  If you answer YES to Question 7, proceed to Question 8.]***

8.      By what amount should the damages specified in Question 6 be reduced?

           $_____

***Please review your answers to all of the Questions above to ensure that they accurately reflect your unanimous determinations.  When you have done so, sign your names on the next page, fill in the date and time, and inform the Court Security Officer — with a note, <u>not the Verdict Form itself</u> — that you have reached a verdict.***

New York City Transit Authority v. Express Scripts, Inc.
No. 19-CV-5196 (JMF)
Verdict Form

After completing the form, each juror who agrees with this verdict must sign below:

_____          _____
Foreperson


_____          _____


_____          _____


_____          _____


Date and time:          _____